MATTHEW A. LESNICK (SBN 177594)
  matt@lesnickprince.com
LESNICK PRINCE & PAPPAS LLP
315 W. Ninth Street, Suite 705
Los Angeles, CA 90015
Telephone: (213) 493-6496
Facsimile:  (213) 493-6596

SHANNA M. KAMINSKI (*admitted pro hac vice*)
  smkaminski@varnumlaw.com
VARNUM LLP
160 W. Fort Street, 5th Floor
Detroit, MI 48226
Telephone: (313) 481-7332
Facsimile:  (313) 481-7340

Attorneys for Defendant West Coast Business
Capital, LLC f/k/a Yellowstone Capital West, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>LUMINANCE RECOVERY CENTER, LLC, et al.<br><br>                Debtor.<br><br>RICHARD A. MARSHACK,<br>Chapter 7 Bankruptcy Trustee<br><br>                Plaintiff,<br><br>      v.<br><br>WEST COAST BUSINESS CAPITAL, LLC f/k/a YELLOWSTONE CAPITAL WEST, LLC,<br><br>                Defendant. | Case No. 8:18-bk-10969-SC<br><br>Chapter 7<br><br>Adv. No. 8:19-ap-01050-SC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing:<br>Date:     October 23, 2019<br>Time:     10:00 a.m.<br>Place:    Courtroom 5C<br>           411 W. Fourth Street<br>           Santa Ana, CA 92701 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 23, 2019 at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 5C of the above-entitled Court, located at 411 West Fourth Street, Santa Ana, California 92701, Defendant West Coast Business Capital, LLC, fka Yellowstone Capital West, LLC ("WCBC"), will and hereby does move the Court to dismiss Plaintiff's First Amended Complaint [Dkt. No. 27] as follows:

- Counts One, Two, Three, Four of the Amended Complaint, which seek to avoid alleged transfers to WCBC pursuant to 11 U.S.C. §§ 547, 548, and 549, should be dismissed for failure to state a claim because they do not concern transfers of the Debtor's property or property of the estate.

- Count Eight of the Amended Complaint, by which the Trustee seeks turnover pursuant to 11 U.S.C. § 542, should be dismissed for failure to state a claim because they do not concern transfers of the Debtor's property or property of the estate.

- Count Seven of the Amended Complaint, which seeks to disallow WCBC's claims against the Debtor pursuant to 11 U.S.C. § 502(d), should be dismissed because WCBC never filed a proof of claim, and the deadline to do so was 14 months ago.

- Count Ten of the Amended Complaint seeks to have WCBC's claims equitably subordinated pursuant to 11 U.S.C. § 510(c), and should similarly be dismissed because WCBC did not filed a proof of claim in this case and the deadline to do so was 14 months ago.

- Count Nine of the Amended Complaint for fraud should be dismissed because the Trustee has failed to plead fraud with the requisite particularity required by Rule 9(b).

- If this Court dismisses Counts One, Two, Three, Four, and Eight of the Amended Complaint, it should likewise dismiss Counts Five (Recovery of

Property Pursuant to 11 U.S.C. § 550) and Six (Preservation of Avoided Transfers Pursuant to 11 U.S.C. § 551) because such claims would be mooted by the dismissal.

- Count Twelve of the Amended Complaint for usury should be dismissed for failure to state a claim because usury laws do not apply to the transaction at issue, which was not a loan.

- Count Eleven of the Amended Complaint for declaratory relief should be dismissed for failure to state a claim because the Trustee fails to allege an actual controversy.

PLEASE TAKE FUTHER NOTICE that this motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, and the papers and pleadings on file in this adversary proceeding and in the corresponding chapter 7 bankruptcy case, and any such oral and documentary evidence as may be presented prior to, or at the time of, the hearing on this matter.

PLEASE TAKE FURTHER NOTICE that Local Bankruptcy Rule 9013-1(f) requires that any response must be filed with the Court and served on the parties no less than 14 days before the hearing on the Motion.  The failure to timely respond to this Motion may be deemed to be consent to the relief requested in this Motion.

DATED: September 6, 2019          LESNICK PRINCE & PAPPAS LLP

                                                    and

                                          VARNUM LLP


                                          By:    /s/ Matthew A. Lesnick
                                                Matthew A. Lesnick
                                                Counsel for West Coast Business Capital,
                                                LLC f/k/a Yellowstone Capital West, LLC

1
2

# TABLE OF CONTENTS

3    I.     INTRODUCTION ................................................................... 1

4    II.    SUMMARY OF JUDICIALLY-NOTICEABLE FACTS .............................. 1

5    III.   LEGAL STANDARD FOR RULING ON THIS MOTION TO DISMISS ............ 4

     IV.    ARGUMENT ......................................................................... 5
6
7           A.    Counts One, Two, Three, Four and Eight of the Amended Complaint Should
                  Be Dismissed Because There Was No Transfer of an Interest of the Debtor
                  or Estate .......................................................................... 5
8
9           B.    Counts Seven and Ten of the Amended Complaint Should be Dismissed
                  Because WCBC Has Not Asserted Claims Against the Debtor ............... 6
10
            C.    Count Nine of the Amended Compliant Should be Dismissed Because the
                  Trustee has Failed to Plead Fraud with Particularity ....................... 7
11
12          D.    Count Twelve of the Amended Complaint Should be Dismissed Because
                  Usury is Entirely Inapplicable ................................................ 9
13
            E.    Count Eleven of the Amended Complaint Should be Dismissed Because the
                  Trustee Fails to Allege an Actual Controversy ............................ 10
14
     V.     CONCLUSION .................................................................... 12

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>                                                                                                <u>Page</u>

*Adams v. Johnson*
  355 F.3d 1179 (9th Cir. 2004) ....................................................................... 5

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ..................................................................................... 4

*Balistreri v. Pacifica Police Dep't*
  901 F.2d 696 (9th Cir. 1990) ....................................................................... 4

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ..................................................................................... 4

*Clegg v. Cult Awareness Network*
  18 F.3d 752 (9th Cir. 1994) ......................................................................... 4

*Conrad v. Bank of America*
  45 Cal.App.4th 133 (1996) ........................................................................... 8

*Elizabeth Womack & Oklahoma Specialized Transport, LLC v. Capital Stack, LLC et al.*
  2019 WL 4142740 (S.D.N.Y. August 30, 2019) ........................................... 3

*Falk v. Gen. Motors Corp.*
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ....................................................... 7

*Gibbo v. Berger*
  123 Cal. App.4th 396 (2004) ......................................................................... 9

*Ileto v. Glock, Inc.*
  349 F.3d 1191 (9th Cir. 2003) ....................................................................... 4

*In re R.J. Pizza Corp.*
  2014 Bankr. LEXIS 5461 (Bankr. E.D. N.Y. Oct. 14, 2014) ........................ 6

*Jensen v. Quality Loan Service Corp.*
  702 F.Supp.2d 1183 (E.D. CA 2010) ......................................................... 11

*Khan v. CitiMortgage, Inc.*
  975 F. Supp.2d 1127 (E.D. Cal. 2013) ......................................................... 8

*Lee v. City of Los Angeles*
  250 F.3d 668 (9th Cir. 2001) ....................................................................... 5

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
  519 F.3d 1025 (9th Cir. 2008) ..................................................................... 4

*Merit Healthcare Int'l, Inc. v. Merit Medical Systems, Inc.*
  721 Fed. Appx. 628 (9th Cir. 2018) ........................................................... 10

*Mullis v. U.S. Bankr.Court for Dist. Of Nev.*
  828 F.2d 1385 (9th Cir. 1987) ..................................................................... 5

*Neilson v. Union Bank of California, N.A.*
  290 F.Supp.2d 1101 (C.D. Cal. 2003) ......................................................... 7

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Robinson Helicopter Co. v. Dana Corp.*
  34 Cal.4th 979; 102 P.2d 268 (2004) ............................................................... 7

*Shroyer v. New Cigular Wireless Services, Inc.*
  622 F.3d 1035 (9th Cir. 2010) ......................................................................... 7

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2002) ........................................................................... 5

*Veoh Networks, Inc. v. UMG Recordings, Inc.*
  522 F.Supp.2d 1265 (S.D. Cal. 2007) ........................................................... 10

*Vess v. Ciba-Geigy Corp. USA*
  317 F.3d 1097 (9th Cir. 2003) ......................................................................... 7

*Wishnev v. Nw. Mut. Life Ins. Co.*
  162 F. Supp. 3d. 930 (N.D. Cal. 2016) ........................................................... 9

*WRO Opportunity Loans II LLC v. Cooper*
  154 Cal. App. 4th 525 (2007) .......................................................................... 9

*Yellowstone Capital, LLC v. Central USA Wireless* LLC
  60 Misc.3d 120(A) (N.Y. Sup. Ct. June 25, 2018) .......................................... 2

<u>Statutes</u>                                                                                      <u>Page</u>

11 United States Code § 542 ............................................................................ 5

11 United States Code § 547 ............................................................................ 5

11 United States Code § 548 ............................................................................ 5

11 United States Code § 549 ............................................................................ 5

California Civil Code § 3439.04(a)(2) ............................................................... 5

California Civil Code § 3439.05 ........................................................................ 5

California Civil Code §1916-3(a) ....................................................................... 9

California Constitution Article XV, § 1 ............................................................. 10

California Financial Code § 22002 .................................................................. 10

Federal Rule of Bankruptcy Procedure 7008(a) .............................................. 4

Federal Rule of Bankruptcy Procedure 7012(b) .............................................. 4

Federal Rule of Civil Procedure 12(b)(6) ................................................. 4, 5, 7

Federal Rule of Civil Procedure 8(a) ............................................................... 4

Federal Rule of Civil Procedure 9(b) ........................................................... 7, 8

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

This entire adversary proceeding is a baseless smear campaign against

4 Defendant, Yellowstone Capital West, LLC, now known as West Coast Business Capital,

5 LLC ("WCBC"), rather than a legitimate effort by the Trustee aimed at maximizing

6 recovery for the estate's creditors.

7

Contrary to the Trustee's unfounded assertions in his Amended Complaint, the

8 Debtor was not damaged in any way by WCBC.  In fact, the opposite is true.  WCBC paid

9 far more to the Debtor than WCBC ever received from the Debtor in return.  For this

10 reason, and for the reasons more fully stated below, this adversary proceeding should be

11 dismissed in its entirety, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6),

12 made applicable to these proceedings by Bankruptcy Rule 7012.

13

**II.    SUMMARY OF JUDICIALLY-NOTICEABLE FACTS**

14

<u>The Agreement</u>: On November 22, 2017, Luminance Health Group, Inc. (the

15 "Debtor") entered into a Secured Merchant Agreement (the "Agreement") with WCBC

16 pursuant to which the Debtor sold a portion of its "Receipts" (defined in the Agreement as

17 "all payments made by cash, check, credit or debit card, electronic transfer or other form

18 of monetary payment in the ordinary course of [the Debtor's] business") in exchange for

19 an upfront lump sum payment of the "Purchase Price" (defined in the Agreement as

20 $200,000, less fees and costs) to WCBC.  The Agreement is attached as Exhibit 1 to the

21 Trustee's Amended Complaint  [*See* Ex. 1 to Docket No. 27].

22

Pursuant to Section 1.8 of the Agreement, WCBC purchased and owned its

23 specified percentage of the daily Receipts as they were created up to the "Purchased

24 Amount" (defined in the Agreement as $289,800)  [*See* Dkt. No. 27, Ex. 1, § 1.8].  The

25 Debtor was required to deposit all of its Receipts into a bank account it had designated.

26 WCBC would then obtain the Receipts it purchased from the Debtor by withdrawing each

27 weekday from that bank account a "Specified Percentage" (defined in the Agreement as

28 15%) of the Receipts deposited by the Debtor.  The Specified Percentage is not an

interest rate (there is no interest rate associated with the transaction); it is merely the percentage of the Debtor's receipts that WCBC was entitled to withdraw on a daily basis. The Debtor had the right to request a reconciliation of the amounts withdrawn on any given day by WCBC to confirm it was indeed 15% of the Receipts for that particular day.

The entire transaction was contingent on the Debtor operating and generating Receipts. As a result, the agreement was for an indefinite term. The business relationship was to continue until WCBC received the Purchased Amount, however long that took. If the Debtor stopped operating at any point, WCBC would have no recourse, and the mere fact that the Debtor stopped operating was not considered a breach of the Agreement. This is why the Purchased Amount is more than the Purchase Price. It is best described as a risk factor that takes into account the possibility that the Debtor will stop operating and generating Receipts. And, unlike interest, it is a fixed amount that does not increase over time.

In general, the only ways the Debtor could breach the Agreement was by blocking WCBC's access to its Receipts or by transferring, moving, selling, disposing of, or otherwise conveying its assets without WCBC's consent  [*See* Dkt. No. 27, Ex. 1, § 1.10.]. If the Debtor did any of those things (and only then), WCBC had the option of taking certain protective actions specifically enumerated in Section 1.10 of the Agreement.

The Agreement contains a choice of law provision stating that it "shall be governed by and construed conclusively in accordance with the laws of the state of New York, without regards to any applicable principles of conflicts of law…"  [Dkt. No. 27, Ex. 1, § 4.6.].  New York courts have declined to recharacterize transactions virtually identical to the transaction outlined in the Agreement as loans.  *See* Exhibit 1 (sampling of New York cases, including *Yellowstone Capital, LLC v. Central USA Wireless* LLC, 60 Misc.3d 120(A), *1-2 (N.Y. Sup. Ct. June 25, 2018) (unpublished) ("Defendant's arguments (that the transactions effectuated by the merchant agreements at issue are actually loans) have been submitted time and time again to a plethora of New York Courts, and have

been almost uniformly been rejected.  Indeed, as this Court has previously determined in similar matters, the merchant agreements are in fact business contracts that are entered into between sophisticated business parties, which clearly reflect the purchase of a certain percentage of a merchant's total future accounts receivable, up to a certain amount, for a specified purchase price."); *Elizabeth Womack & Oklahoma Specialized Transport, LLC v. Capital Stack, LLC et al.*, 2019 WL 4142740, at *5 (S.D.N.Y. August 30, 2019) ("An MCA transaction is not a loan where the agreement provided that the buyer purchased a fixed amount of the seller's future sales proceeds which were deliverable to the buyer from a percentage of the seller's daily sales proceeds.").

WCBC's License:  WCBC is licensed by the State of California under the California Financing Law.  [RJN No. 1; Business License.]

The Bankruptcy Case:  The deadline to file proofs of claim in the Debtor's bankruptcy case was in July of 2018.  WCBC has not filed a proof of claim in the Debtor's bankruptcy case.  [See Bk. Docket No. 83 and Claims Register.]

The Adversary Complaint:  The Trustee filed his Amended Complaint on August 16, 2019  [Dkt. No. 27].  The Amended Complaint seeks (i) to avoid and recover the Receipts under Sections 547, 548, 549, and 550 of the Bankruptcy Code and California Civil Code §§ 3439.04(a)(2) and 3439.05 and preserve them pursuant to 11 U.S.C. § 551, (ii) to disallow and subordinate a claim that has never been filed by WCBC pursuant to 11 U.S.C. §§ 502(d) and 510(c), (iii) actual and treble damages and attorney's fees for supposed fraud, (iii) turnover of the Receipts under 11 U.S.C. § 542, (iv) a judgment in the amount of all interest paid to WCBC (even though there was never any interest paid to WCBC – WCBC did not even receive back the amount it paid to the Debtor to purchase the Receipts), plus a penalty equal to three times the amount of the interest paid (which was nothing), and (v) a declaratory judgment that the transaction between WCBC is a loan.

### III.    LEGAL STANDARD FOR RULING ON THIS MOTION TO DISMISS

A motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) (made applicable here by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012(b)) "tests the legal sufficiency of the claims asserted in the complaint." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Rule 12(b)(6) must be read in conjunction with Rule 8(a) (made applicable here by Bankruptcy Rule 7008(a)), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Ileto*, 349 F.3d at 1200. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To plead sufficiently, a plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct," the complaint is subject to dismissal. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "However, the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994). Mere

"conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (quotes and citation omitted).

Although courts will not normally look beyond the four corners of the complaint in resolving a Rule 12(b)(6) motion, a court may consider material that the plaintiff properly submitted as part of the complaint or, even if not physically attached to the complaint, material that is not contended to be inauthentic and that is necessarily relied upon by the plaintiff's complaint. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001). Moreover, the court is not required to accept as true allegations contradicted by judicially noticed facts. *Mullis v. U.S. Bankr. Court for Dist. Of Nev.,* 828 F.2d 1385, 1388 (9th Cir. 1987); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2002).

## IV.    ARGUMENT

### A.    Counts One, Two, Three, Four and Eight of the Amended Complaint Should Be Dismissed Because There Was No Transfer of an Interest of the Debtor or Estate[1]

In Counts One, Two, Three and Four of the Amended Complaint, the Trustee seeks to avoid alleged transfers of the Receipts to WCBC pursuant to 11 U.S.C. §§ 547, 548, and 549.  In Count Eight of the Amended Complaint the Trustee seeks turnover of the Receipts, pursuant to 11 U.S.C. § 542.  One of the essential elements of the causes of action set forth in Sections 547, 548 and 549 of the Bankruptcy Code and of the causes of action set forth in California Civil Code §§ 3439.04(a)(2) and 3439.05 is that the property that was allegedly transferred must be the debtor's property.  Likewise, Section 549 of the Bankruptcy Code requires that the property allegedly transferred be property of the debtor's estate.  Finally, Section 542 of the Bankruptcy Code simply requires that the property be property of the estate.

---

[1] If this Court dismisses these Counts it should likewise dismiss Counts Five and Six because such claims would be mooted by the dismissal.

It is apparent from the four corners of the Agreement that the Receipts the Trustee seeks to recover under Counts One, Two, Three and Four of the Amended Complaint were owned by WCBC at the time of the alleged transfers.  Indeed, the Agreement expressly provides that WCBC owned the Receipts it purchased from the Debtor up to the full Purchased Amount ***as the Receipts were created***.  [*See* Dkt. No. 27, Ex. 1, § 1.8.].

Additionally, there are bankruptcy courts that have expressly held that receipts purchased pre-petition in transactions virtually identical to the one that is at issue in this case were not property of the bankruptcy estate.  *See, e.g., In re R.J. Pizza Corp.,* 2014 Bankr.  LEXIS  5461 (Bankr. E.D. N.Y. Oct. 14, 2014).

Because the property was not property of the Debtor at the time of the transfers, is not property of the estate, and was not property of the estate at the time of the transfers the Trustee has not and cannot state a plausible claim for relief under Sections 542, 547, 548, or 549 of the Bankruptcy Code or California Civil Code §§ 3439.04(a)(2) and 3439.05.

**B.**   **Counts Seven and Ten of the Amended Complaint Should be Dismissed Because WCBC Has Not Asserted Claims Against the Debtor**

In Count Seven of the Amended Complaint, the Trustee asks that this Court disallow WCBC's claims against the Debtor, pursuant to 11 U.S.C. § 502(d).  In Count Ten of the Amended Complaint, the Trustee asks this Court to equitably subordinate WCBC's claims, pursuant to 11 U.S.C. § 510(c).  WCBC has not filed a proof of claim in this case and the deadline to do so was approximately 14 months ago.  [See Bk. Dkt. No. 83. and Claims Register.]  Therefore, even if WCBC believed it had claims (it does not) it would be prohibited from asserting them in this case anyway. As a result, Count Seven and Count Ten of the Amended Complaint should be dismissed.

**C.    Count Nine of the Amended Compliant Should be Dismissed Because the Trustee has Failed to Plead Fraud with Particularity**

Count Nine of the Amended Complaint is a common law fraud claim.  In the Ninth Circuit, "claims for fraud [] must meet Rule 9(b)'s particularity requirements."  *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003).  Rule 9(b) provides, in relevant part, that when alleging fraud "a party must state with particularity the circumstances constituting fraud…"  Rule 9(b)'s particularity requirement also applies to state law causes of action.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003))("[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule.").

In order to plead fraud with particularity, the complaint must allege time, place, and content of the fraudulent representation; conclusory allegations do not suffice."  *Shroyer v. New Cigular Wireless Services, Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010).  "Claims made on information and belief are usually not sufficiently particular."  *Id.*

A court may dismiss a claim grounded in fraud when its allegations fail to satisfy Rule 9(b)'s heightened pleadings requirements.  *Vess*, 317 F.3d at 1107.  A motion to dismiss a claim "grounded in fraud" under Rule 9(b) for failure to plead with particularity is the "functional equivalent" of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107.

The elements of fraud in California are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."  *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) citing *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4[th] 979, 990; 102 P.2d 268 (2004). Importantly, there must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the

plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment."   *Khan v. CitiMortgage, Inc.*, 975 F. Supp.2d 1127, 1139-40 (E.D. Cal. 2013) citing *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156 (1996).

Here, the Trustee's entire fraud claim consists of three allegations:

74.    Plaintiff is informed and believes and based thereon alleges that Defendant fraudulently represented to the Debtors that the interest rate chargeable for the Loan was 15% when in fact the rate was approximately 198%.

75.    Plaintiff is informed and believes and based thereon alleges that the Debtors reasonably relied upon the false representation and was induced to enter into the Agreement by this fraudulent and deceitful falsehood.

76.    Plaintiff is informed and believes and based thereon alleges that the Debtors were damages by the above fraud in the amount of all interest paid on the Loan above the stated rates per annum stated above.

Each and every one of these allegations is made on information and belief. As stated above, facts alleged on information and belief are not sufficient to meet Rule 9(b)'s particularity requirement.

Further, there are zero details regarding the allegedly fraudulent representation. The entire claim is essentially a formulaic recitation of the elements of a fraud claim.  It is not even clear whether the Trustee is claiming that the Agreement itself was the fraudulent representation or if an employee of WCBC made a mis-representation and if so, when and where the representation was made, among other necessary details.

What is clear, however, from the face of the Amended Complaint, is that the Debtor could not have justifiably relied on the alleged representation because there is no interest rate indicated anywhere in the Agreement.  The Specified Percentage of 15% that the Trustee claims is an interest rate is very clearly explained on the first page of the Agreement as the percentage of the Debtor's daily receipts that WCBC was entitled to obtain.  By simply reading the Agreement, the Debtor's principal, presumably a

1
2
sophisticated business owner, could have easily understood the meaning of the Specified

Percentage.

3
4
5
6
7
Finally, it would not even be possible to calculate an interest rate for the

transaction because the term of the Agreement is indefinite.  In order to calculate an

interest rate, there needs to be a time period involved.  The term of the Agreement is not

pre-determined, but instead, entirely based on how long it takes for WCBC to receive the

full amount of the Receipts that it purchased.

8
9
### D.    Count Twelve of the Amended Complaint Should be Dismissed Because Usury is Entirely Inapplicable

10
11
12
13
14
15
16
Count Twelve of the Amended Complaint is a usury claim.[2]  The Trustee claims

that WCBC charged the Debtor interest in excess of the amount permitted by California

law.  The essential elements of a usury claim in California are: "(1) the transaction must

be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum;

(3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender

must have a willful intent to enter into a usurious transaction."  *WRO Opportunity Loans II*

*LLC v. Cooper*, 154 Cal. App. 4th 525, 533 (2007).

17
18
19
As explained previously, the transaction was a sale of receivables not a loan.

Because the transaction is not a loan and interest was not charged (or collected), usury

laws do not apply to it.

20
21
22

23
24
25
26
27
28
[2] This claim is extremely perplexing because the Trustee stands to gain absolutely  nothing by bringing it.  The typical remedy for violation California usury law is that the lender can only collect the principal amount and not the interest.  *See e.g. Gibbo v. Berger*, 123 Cal. App.4th 396, 403 (2004) ("Rather, the typical remedy for violation of California's usury law is to reduce the interest on any loan to zero, and permit the borrower to pay back only the principal.")  While Cal. Civ. Code § 1916-3(a) allows for the recovery of triple the interest amount, the statute only applies where interest in excess of the usury limit has already been collected.  *See also, e.g. Wishnev v. Nw. Mut. Life Ins. Co.*, 162 F. Supp. 3d. 930, 950 (N.D. Cal. 2016)("A penalty of treble interest is recoverable where usurious interest has already been collected.")  Here, WCBC did not even receive back in Receipts the amount it paid to the Debtor.

Additionally, the Trustee has not even alleged that the transaction is "absolutely repayable" and, by the very terms of the Agreement, it is not.  The entire transaction is contingent on the Debtor continuing to operate and actually generating receipts.

Finally, even if this Court were to recharacterize this transaction, usury would still not apply because WCBC is licensed under the California Finance Law so it is exempt from usury laws.  Cal. Fin. Code § 22002; *see also* Cal. Const. Art XV, § 1.

> **E.    Count Eleven of the Amended Complaint Should be Dismissed Because the Trustee Fails to Allege an Actual Controversy**

In Count Eleven of the Amended Complaint, the Trustee asks this Court to enter a declaratory judgment deeming the transaction between WCBC and the Debtor to be a loan.  "The Complaint in a declaratory relief action must allege facts sufficient to establish an actual controversy."  *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F.Supp.2d 1265, 1269 (S.D. Cal.  2007).  Simply suggesting that there is a disagreement between the parties in the Amended Complaint does not mean that the nature and extent of the controversy has been adequately defined to support a declaratory judgment claim.  *Id*. Instead, the facts alleged must show that there is a *substantial* controversy between parties having adverse legal interests of sufficient immediacy and realty to warrant the issuance of a declaratory judgment.  *Id*. The controversy "must be based on a real and immediate injury or threat of future injury that is caused by the defendants."  *Merit Healthcare Int'l, Inc. v. Merit Medical Systems, Inc.,* 721 Fed. Appx. 628, 629 (9th Cir. 2018).

Like the Trustee's fraud claim, the Trustee's factual allegations in the declaratory relief claim are threadbare:

> 85.    A dispute exists between Plaintiff and Defendant over the existence and validity of the lien and claims asserted by the Defendant in this case.

> 86.    Plaintiff contends that the transactions reflected in the Agreement are loans of money under California law subject to California usury limitations.    Defendant disputes this contention and alleges the transactions reflected in the Agreement was [sic] purchase of future "receivables" not loans.

87.    Plaintiff is informed and believes and based thereon alleges that the funds subject to the Transfers are property of the Estates.

First off, the allegation in Paragraph 85 is contrary to judicially-noticed facts. WCBC did not file a claim and is not asserting any claims against the Debtor in this case and therefore, there cannot be a dispute regarding its "claims." As a result, the Court should disregard the allegation in Paragraph 85 of the Amended Complaint altogether.

This then leaves the allegations in Paragraph 86 of the Amended Complaint, which simply suggest that there is a disagreement between the parties, but provide no factual information that would lead one to the conclusion that the controversy is substantial or that there is an immediate injury or threat of injury to the Trustee if the Court does not make a decision. And indeed, there is no need for this Court to make the determination. The stated purpose for the determination is so usury law will apply. It is already clear that usury law will not apply even if the transaction is deemed a loan. Therefore, there is simply no need for the Court to make the determination.

Furthermore, the Declaratory Relief claim should be dismissed because it is duplicative of the other claims in the Amended Complaint. A "separate declaratory relief claim should not be used… to determine identical issues subsumed without other claims." *Jensen v. Quality Loan Service Corp.*, 702 F.Supp.2d 1183 (E.D. CA 2010). Here, each of issues in the Declaratory Relief claim will necessarily be decided by the other claims. The existence of claims asserted by Defendant would necessarily be determined by the Seventh Count for Disallowance of Claims. Whether the Agreements are loans of money subject to usury limitations will be decided in the Twelfth Count for Usury, and whether the funds subject to the Transfers are property of the estate will be determined by the avoidance claims. Accordingly, Count Eleven should be dismissed.

//

//

//

//

**V.    CONCLUSION**

For the reasons stated above, WCBC respectfully requests that the Court enter an

Order (1) granting this Motion and dismissing all claims without leave to amend, and

(2) for such further relief as the Court may deem just and proper.

DATED: September 6, 2019          LESNICK PRINCE & PAPPAS LLP

                                                      and

                                          VARNUM LLP


                                          By:    /s/ Matthew A. Lesnick
                                                  Matthew A. Lesnick
                                                  Counsel for West Coast Business Capital,
                                                  LLC f/k/a Yellowstone Capital West, LLC

# EXHIBIT 1

INDEX NO. 811837/2017

NYSCEF DOC. NO. 33    Case 8:19-ap-01050-SC    Doc 28    Filed 09/06/19    Entered 09/06/19 15:30:33    Desc
Main Document    Page 20 of 152    RECEIVED NYSCEF: 06/25/2018

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

---

YELLOWSTONE CAPITAL LLC,

               Plaintiff,

v.

CENTRAL USA WIRELESS LLC d/b/a CENTRAL
USA WIRELESS AND CHRISTOPHER R. HILDENBRANT,

               Defendants.

**DECISION AND ORDER**
Index No: 811837/2017

---

BEFORE:        **HON. TIMOTHY J. WALKER, Presiding Justice**

APPEARANCES:    **HODGSON RUSS, LLP**
                     Steven W. Wells, Esq., Of Counsel
                     Christopher Castro, Esq., Of Counsel
                     Attorneys for Plaintiff

                **LAW OFFICE OF LEWIS A. BARTELL**
                     Lewis A. Bartell, Esq., Of Counsel
                     Attorneys for Defendant

**WALKER, J.**

      Defendants have moved, pursuant to CPLR 5015, to vacate a certain Confession of

Judgment, void certain merchant agreements, and enjoin any prosecution thereon. Defendants'

arguments (that the transactions effectuated by the merchant agreements at issue are actually

loans) have been submitted time and time again to a plethora of New York Courts, and have

almost uniformly been rejected. Indeed, as this Court has previously determined in similar

matters, the merchant agreements are, in fact, business contracts that are entered into between

sophisticated business parties, which clearly reflect the purchase of a certain percentage of a

merchant's total future accounts receivable, up to a certain amount, for a specified purchase price. The terms of these merchant agreements are abundantly clear and, in most cases, these arrangements allow merchants to survive a period of cashflow shortage.

Equally important, every posited argument in support of Defendants' motion has already been considered and rejected numerous times by the trial courts of the State of New York. Additionally, there is clear Appellate Division case law determining that judgment debtors (such as Defendants) cannot challenge judgments entered against them by confession unless they are defective on their face, were entered without authority or in violation of its terms, were procured in violation of any due process requirements, or were the result of fraud - none of which are present in this case (*see Summerour, Inc. v. Bradhil Industries Inc.*, 91 AD2d 902, 902 [1st Dept. 1983]).

Courts across the state have considered almost identical arguments and agreements, and have (almost uniformly) denied motions to vacate on the grounds that (1) a judgment debtor must commence a plenary action, rather than a motion, if it seeks to challenge the merchant agreement and the confession of judgment that was entered against it; and/or (2) that the merchant agreements do not constitute loans subject to the usury laws (*see, e.g., EBF Partners, LLC v. Kevin R. Hackenberg d/b/a Nu Wave Botanicals and Kevin Hackenberg*, Index No. 802383/2017 [Erie Co. June 30, 2017]; *Yellowstone Capital, LLC v. Jevin*, Index No. 802457/2017 [October 6, 2017]).

There have been over twenty-eight (28) recent cases where New York State Courts considered substantially similar motions, involving substantially similar merchant agreements, and almost all of those courts denied the relief, at least in part, because a judgment debtor may

-2-

not seek to invalidate a confession of judgment entered against the judgment debtor on the grounds that it resulted from a usurious loan by way of motion (*see* NYSCEF DOC. NO. 30). In no less than thirty-eight (38) recent decisions, New York Courts have determined that the merchant agreements at issue (which are all substantially or exactly the same as the merchant agreement at issue here) do not constitute loans (*see* NYSCEF DOC. NO. 30; *see also Champion Auto Sales, LLC et al. V. Pearl Beta Funding, LLC*, 159 AD 2d 507 [1st Dept. 2018] [wherein the court determined that "the underlying agreement lending to the judgment by confession was not a usurious transaction"]). The merchant agreement at issue in *Champion Auto* is substantially similar to the merchant agreement in this case. Because there are no other Appellate Division decisions directly on point, the *Champion Auto* decision is binding on this Court (*Phelps v. Phelps* 128 AD 3d 1545, 1547 [4th Dept. 2015]).

In addition, CPLR 3218(a) provides that: "a judgment by confession may be entered, without an action, either for money due or to become due...upon an affidavit executed by the [confessing party]." The affidavit of confession "is sufficient if it adequately sets out the facts giving rise to the underlying debt..." (*Spires v. Mihou*, 273 AD 2d 844 [4th Dept. 2000]). This sufficiency requirement exists to protect third parties, i.e., creditors of the confessing party, who would be injured by a collusively obtained confession (*Eurofactors Int'l, Inc. v. Jacobowitz*, 21 AD 2d 443, 445 [2nd Dept. 2005]). Furthermore, courts will enforce a confession of judgment supported by consideration "irrespective of the alleged manner in which the underlying guarantee was procured" (*Demchuk v. North Fork Bank & Trust Co.*, 121 AD 2d 680, 680 [2nd Dept. 1986]). Courts will set aside a judgment by confession only where the party challenging the confession demonstrates "by a preponderance of clear, positive and satisfactory evidence... fraud,

-3-

misconduct or other [similar] circumstances..." (*City of Poughkeepsie v. Albano*, 122 AD 2d 14, 14-15 [2nd Dept. 1986]). Critically, "only a third-party judgment creditor has standing to question *on motion* the validity of a judgment by confession ... [whereas] a defendant debtor who seeks to attack such a judgment must proceed by plenary action" (*Id.* at 14) emphasis added; *see also Bufkor, Inc. v. Wasson & Fried, Inc.*, 33 AD 2d 636, 636 [4th Dept. 1969] [reversing the Trial Court's decision to vacate a judgment by confession on motion and holding that a plenary trial was required]).

In this case, the Confession of Judgment unequivocally complies with CPLR § 3218: (1) It states the sum for which judgment may be entered; (2) It authorizes the entry of judgment in Erie County and others; (3) It states concisely the facts out of which the debt arose and showed that the sum confessed is justly due, and (4) It is supported by an affidavit setting forth the default that was the basis for filing the Confession of Judgment.

Counsel for merchants filing these types of motions have previously, almost exclusively, cited the decision in *Merchant Funding Services, LLC v. Volunteer Pharmacy, Inc.*, 55 Misc.3d 316 [Westchester Co. Dec. 30, 2016] as the basis for attempting to use motion practice to vacate confessions of judgment. *Volunteer Pharmacy* is a decision from a trial court in Westchester County that not only represents the quintessential outlier, but is *not* controlling or precedential case law, and is not even *settled* case law (as it is the subject of an appeal to the Second Department). Indeed, the Second Department has consistently held that a confession of judgment can only be vacated by a plenary action (*see Regency Club at Wallkill, LLC v. Bienish,* 95 AD 3d 879 [2nd Dept. 2012]; *Estate of Zelman v. Scibelli*, 157 AD 2d 705 [2nd Dept. 1990]; *A.B.J.M. Corp. v. Prudenti,* 270 AD 2d 219 [2nd Dept. 2000]; and *City of Poughkeepsie,* 122 AD 2d at 14).

-4-

INDEX NO. 811837/2017

NYSCEF DOC. NO. 319    Case 8:19-ap-01050-SC    Doc 28    Filed 09/06/19    Entered 09/06/19 15:30:33    Desc RECEIVED NYSCEF: 06/25/2018
Main Document    Page 24 of 152

Hence, the decision in *Volunteer Pharmacy*, is a ruling on a procedural issue, and is no more "binding" on Plaintiff than it is on this Court.

Moreover, in *Merchant Funding Services, LLC v. Micromanos Corporation et al.*, (Index No. EF000598-2017), this Court analyzed the same merchant agreement as did the court in *Volunteer Pharmacy*, and came to a completely opposite conclusion: "Defendants' position is grounded on a dubious misreading of the [Merchant] Agreement." This Court dismissed the defendants' bases for claiming that the merchant agreement resulted in a loan (which are substantially the same bases asserted in the Motion for Defendants' claim that the YSC Merchant Agreement creates a loan), and ruled as follows:

> Therefore, the Secured Merchant Agreement is not on its face and as a matter of law a criminally usurious loan. Consequently, Defendants have failed to establish an exception to the general requirement that relief from a judgment entered against them upon the filing of an affidavit of confession of judgment must be sought by way of a separate plenary action.

*Micromanos* at p. 5.

Thus, Defendants lack standing to challenge the Judgment by way of motion practice and may only seek to have it vacated in a plenary action. There is no such action pending in Erie County, or anywhere else in New York. Defendants' Motion is denied for this threshold reason.

Assuming *arguendo*, if Defendants had standing, the merchant agreement does not create a usurious loan. Instead, as expressly provided in the agreement, the transaction is a purchase of a specified percentage of all future receipts generated by the merchant's accounts receivable, up to the "Purchased Amount".

"Usury is an affirmative defense, and a heavy burden rests upon the party seeking to impeach a transaction based upon usury" (*Hochman v. Larea*, 14 AD 3d 653, 654 [2nd Dept. 2005] [internal citations omitted]). "Thus, usury must be proved by clear and convincing

-5-

INDEX NO. 811837/2017

NYSCEF DOC. NO. 35    Case 8:19-ap-01050-SC    Doc 28    Filed 09/06/19    Entered 09/06/19 15:30:33    Desc
RECEIVED NYSCEF 06/25/2018
Main Document    Page 25 of 152

evidence as to all its elements and usury will not be presumed" ( *Id.*) "There is a strong

presumption against the finding of usury" (*Transmedia Rest. Co., Inc. v. 33 E. 61 Street Rest.

Corp.*, 184 Misc.2d 706, 710, 710 [Sup. Ct. N.Y. Co. 2000]). The only "proof" that Defendants

submit in support of their usury claim are self-serving misconstructions of cherry-picked

provisions of the merchant agreement, and an outright disregard for contrary provisions

contained in that document.

Criminal usury requires a loan. Pursuant to New York Penal Law § 190.40, the statute

relied upon by Defendants, a person commits criminal usury where he "knowingly charges, takes

or receives … interest on a loan or forbearance of any money or other property, at a rate

exceeding twenty-five percent per annum." Thus, the statute requires a "loan," payment of

"interest," and intent (*Accord, Seidel v. E. 17th Street Owners, Inc.*, 79 NY 2d 735, 744 [1992]

["If the transaction is not a loan, there can be no usury, however unconscionable the contract may

be"]). "In order for a transaction to constitute a loan, there must be a borrower and a lender; and

it must appear that the real purpose of the transaction was, on the one side, to lend money at

usurious interest reserved in some form by the contract and, on the other side, to borrow money

upon the usurious terms dictated by the lender" (*Donatelli v. Siskind*, 170 AD 2d 433, 434 [2nd

Dept. 1991]).

"[A] primary indicia of usury is repayment of the principal sum advanced absolutely" (*see

Merchants Advance, LLC v. Tera K, LLC T/A Tribeca Frank Crabetta*, 2008 NY Misc. LEXIS

10889, at p. * 4 [Sup. Ct. N.Y. Co. Dec. 19, 2008]). This is a strict and inflexible requirement

(*see Zoo Holdings, LLC v. Clinton*, 11 Misc.3d 1051(A), 814 NYS 2d 893, at p. * 4 [Sup. Ct.

N.Y. Co. Jan. 24, 2006]). "Where payment or enforcement rests upon a contingency, the

-6-

INDEX NO. 811837/2017

NYSCEF DOC. NO. 35    Case 8:19-ap-01050-SC    Doc 28    Filed 09/06/19    Entered 09/06/19 15:30:33    Desc    RECEIVED NYSCEF: 06/25/2018
Main Document    Page 26 of 152

agreement is valid even though it provides for a return in excess of the legal rate of interest"

(*Prof'l Merch. Advance Capital, LLC v. Your Trading Room, LLC*, 2012 NY Misc. LEXIS 6757,

at pp. *13-14 [Sup. Ct. Suffolk Co. Nov. 28, 2012]); *Kelly, Grossman & Flanagan, LLP v. Quick

Cash, Inc.*, 35 Misc.3d 1205(A) [Sup. Ct., Suffolk Co., 2012]; *O'Farrell v. Martin*, 163

Misc.353 [City Ct., N.Y. 1936]).  In this case, payment of the "Purchased Amount" is contingent

upon the merchant generating sufficient accounts receivable such that the "Specified Percentage"

of those receivables will support payment of the Purchased Amount over a reasonable period of

time, and, therefore, the payment is not absolutely payable.

Numerous courts -- at least thirty-eight (38) -- have reviewed the provisions of merchant

agreements structured almost exactly as the agreement at issue in this case, and uniformly held

that such agreements are not usurious (*see* NYSCEF DOC. NO. 31).

Recently, my colleague (Hon. Henry Nowak, J.S.C.) issued a decision in *Yellowstone

Capital,* involving a challenge to a merchant agreement on the grounds that it was criminally

usurious.  Justice Nowak's analysis focused on whether "the agreement was actually a purchase

for accounts receivables [or] a loan with a usurious interest rate. . . ."  Justice Nowak noted that:

> A distinguishing factor between a purchase of accounts receivable and a loan is the
> burden of risk and the contingency of repayment.  In a purchase of accounts
> receivable, repayment is for an indefinite term, contingent on the amount of accounts
> receivable.  Thus, the lender bares the risk that there could be no or low daily
> receipts.  However, if the lender holds only a loan, repayment is absolute and the
> merchant bears the risk of non-payment by the account debtor; while the lender only
> bears the risk that the account debtor's non-payment will leave the merchant unable
> to satisfy the loan.

Recognizing that the agreement at issue had a reconciliation clause, Justice Nowak

determined that New York Courts have found that the presence of a reconciliation provision such

as the one in this matter is a significant factor in determining that the agreement should be

characterized as a purchase of accounts receivables as opposed to a loan." He distinguished the

-7-

cases relied upon by the merchant there -- the same cases relied upon by Defendants in this case
– *Merchant Funding Services, LLC v. Volunteer Pharmacy Inc.*, 55 Misc.3d 316, 318 [Sup. Ct.
Westchester Co. 2016] and *Pearl Capital Rivis Ventures v. RDN Construction*, 54 Misc.3d 470,
474 [Sup. Ct. Westchester Co. 2016]), "because there was no evidence that the agreements at
issue included reconciliation provisions. Accordingly, the court held that the merchants had "not
demonstrated that the agreement is a usurious loan in violation of Penal Law § 190.40. (*Id.*)

Numerous New York Courts have reviewed the provisions of agreements structured
almost exactly as the agreement at issue in this case, and have uniformly held that such
agreements are not usurious. The reasoning of all of these cases applies equally to the present
dispute. The merchant agreement is not a loan, and the usury statutes do not apply (*see also,
Champion Auto Sales, LLC, supra.*

It is abundantly clear that the "Daily Payment," both in its initial calculation, based upon
Plaintiff's review of Defendants' past performance, and any adjustment based upon the
reconciliation provisions is directly based upon the Specified Percentage of accounts receivable
Plaintiff purchased. That is clearly not how a loan is structured.

Defendants never requested that a reconciliation be conducted. Instead, Defendants
ceased remitting Daily Payments after remitting only $20,982.00 of the $80,245.00 in accounts
receivable Plaintiff purchased.

INDEX NO. 811837/2017

NYSCEF DOC. NO. 35    Case 8:19-ap-01050-SC    Doc 28    Filed 09/06/19    Entered 09/06/19 15:30:33    Desc RECEIVED NYSCEF: 06/25/2018
Main Document     Page 28 of 152

For the reasons set forth above, the Motion is denied as a matter of law. In addition, the Court determines, in light of the history of these litigated matters and known binding precedent, Plaintiff is entitled to recover reasonable attorneys' fees and costs incurred in defending the Motion, subject to the submission of an affirmation setting forth the time detail with narratives.

Dated: June 25, 2018
       Buffalo, New York

**HON. TIMOTHY J. WALKER, J.C.C.**
Acting Supreme Court Justice
8th Judicial District

-9-

2019 WL 4142740
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

ELIZABETH WOMACK & OKLAHOMA
SPECIALIZED TRANSPORT, LLC, Plaintiffs,
v.
CAPITAL STACK, LLC ET AL., Defendants.

1:18-cv-04192 (ALC)
|
Filed 08/30/2019

**OPINION & ORDER**

ANDREW L. CARTER, JR. United States District Judge

*1 Plaintiffs Oklahoma Specialized Transport LLC ("OST"), and Elizabeth Womack bring this action against Defendants Capital Stack, LLC ("Capital Stack"), Anna Rubin, David Rubin, E-Prodigy Technology ("eProdigy"), The Rubin Law Firm, and Fig Capital alleging violations of N.Y.PL § 190.40, failure to disclose, fraudulent misrepresentation, breach of fiduciary duty, breach of contract, and deceptive acts and practices. The Defendants now move to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b) (1), (5) and (6). For the following reasons, Defendants' motion to dismiss is granted.

**BACKGROUND**

**I. Factual Background**
The following facts derive from Plaintiffs' Second Amended Complaint ("SAC") and the Agreement for the Purchase and Sale of Receipts ("the Agreement") it references.[1] See ECF No. 35. Many of Plaintiffs'

allegations are not consistent with the Agreement. The Court points out that though a complaint's factual allegations are presumed true for motion to dismiss purposes, the Court may consider documents attached to a complaint and "matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Under Fed. R. Evid. 201(b)(2), courts may take judicial notice of facts which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Additionally, courts may take notice of documents to establish their existence, not for the truth of the statements contained in those documents. *See Global Network Commc'ns Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

After laying out Plaintiffs' allegations, the Court will highlight the provisions of the Agreement relevant to Plaintiffs' claims.

**A. Plaintiffs' Allegations**
Plaintiff OST is a family-owned trucking company with its principal place of business in Bixby, Oklahoma. SAC ¶ 5-6. Plaintiff Elizabeth Womack is OST's registered agent and Danny Womack is its principal employee. *Id.*

Plaintiffs describe Defendants as "disreputable businesspeople in league with a pool of lawyers in league with securities law recidivists" who took advantage of and exploited Plaintiffs' "naiveté" and lack of business acumen. *Id.* ¶ 1. Specifically, Plaintiffs allege they were solicited, tricked, and deceived into entering a predatory personal loan agreement bearing an unconscionable and illegal 44% interest. *Id.*

Plaintiffs also allege that Defendant Capital Stack is a predatory lending arm created by Anna Rubin; a "crafty attorney" who carefully cloaks her loan instruments behind various labels to avoid New York's "loan sharking statute". *Id.* The SAC claims she is also Capital Stack's general counsel and founded the Rubin Law Firm. *Id.* ¶ 43. The SAC also depicts Defendant David Rubin, Anna's husband, as Capital Stack's undisclosed principal and agent. *Id.* Plaintiffs' claim David did not reveal his identity and background to hide his "prior uncharged criminal activity, including securities and wire fraud". *Id.* Plaintiffs' further allege that Defendants eProdigy and Fig Capital are "corporate artifices" solely created to bilk money from unsuspecting citizens and to hide David Rubin's identity from unsophisticated individuals who fall victim to Defendants' "diabolical machinations". *Id.* ¶ 14.

**B. The Agreement**

**\*2** On February 26, 2018, OTC and Capital Stack entered the Agreement. SAC. ¶ 22. Pursuant to the Agreement, Capital Stack purchased $216,000 of OTC's future receivables for $150,000. *Id.* Plaintiff Elizabeth Womack signed the Agreement as the owner of OST. Womack also signed a Personal Guaranty of Performance (the "Guaranty") of the Agreement. *Id*; *See also* ECF No. 1-1. Boxer Decl. Exhibit 2.

The Agreement provides that Capital Stack would deliver the purchase price to OTC in exchange for a specified percentage of OTC's future receivables up to an agreed-upon amount:

> Seller, identified above, hereby sells, assigns and transfers to CAPITAL STACK, LLC, ... ("Buyer"), without recourse, the Specified Percentage of the proceeds of each future sale made by Seller (collectively "Future Receipts") until Buyer has received the Purchased Amount. "Future Receipts" includes all payments made by cash, check, ACH or other electronic transfer, credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Payment Card") or other form of monetary payment in the ordinary course of Seller's business. As payment for the Purchased Amount, Buyer will deliver to Seller the Purchase Price, shown above, minus any Origination Fee shown above....

Agreement ¶ 1.

The receivables were payable to Capital Stack at the rate of 8% of each receipt and the Agreement called for a daily payment amount of $1,714.29.[2] *Id.* The Agreement also allowed OST to request a daily payment amount adjustment.[3] The Agreement does not provide Capital Stack with recourse against Plaintiffs in the event of business failure or slow down. Instead, the Agreement

provides that only the following events constitute a default:

> (a)Seller interferes with Buyer's right to collect the Daily Amount; (b) Seller violates any term or covenant in this Agreement; (c) Seller uses multiple depository accounts without the prior written consent of Buyer; (d) Seller changes its depositing account or its payment card processor without the prior written consent of Buyer; (e) Seller defaults under any of the terms, covenants and conditions of any other agreement with Buyer; or (f) Seller fails to provide timely notice to Buyer such that in any given calendar month there are four or more ACH transactions attempted by Buyer are rejected by Seller's bank.

*Id.* ¶ 5. The Agreement also specifies that it was a sale of future receivables, not a loan.[4] *Id.* ¶ 4.

**\*3** Pursuant to the Guaranty, Womack unconditionally guaranteed the performance of OTC's obligations under the Agreement and acknowledged that the Agreement was a purchase of receivables, not a loan. *See* Guaranty p. 2, 5. OTC received $150,000 from Capital Stack and only paid Capital Stack $9,000 of the $216,000 purchase price. *See* SAC ¶¶ 25-26.

**I. Procedural Background**

On May 11, 2018 Plaintiffs filed their initial Complaint and claimed the Agreement constituted a usurious loan. ECF No. 1. On June 13, 2018, Plaintiffs filed an Amended Complaint. ECF. No. 19. On October 1, 2018, the Court granted Plaintiffs' request to file the now operative Second Amended Complaint. ECF No. 36. Defendants now move to dismiss the SAC on various grounds. ECF No. 39.

Pursuant to Fed. R. Civ. P. 12(b)(5), Defendants move to dismiss the SAC based upon allegedly forged summonses which Plaintiffs attempted to serve.[5]

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants move to dismiss the SAC claiming it fails to state a claim entitled to relief. Plaintiffs' filed their opposition ("Pl's. Opp") on January 22, 2019 and Defendants replied on February 7, 2019.[6] ECF Nos. 47, 50.

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns. Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief...."). To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As previously stated, the Court accepts as true all factual allegations in the operative complaint and draws all reasonable inferences in Plaintiffs' favor. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S, at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570. The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins., Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

**\*4** Additionally, when considering fraud allegations, "the circumstances constituting fraud shall be stated with particularity." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (quotation and alteration omitted); *see also* Fed. R. Civ. P. 9(b). To meet this standard, a complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak*, 216 F.3d at 306 (quotation omitted).

## DISCUSSION

### I. Plaintiffs' Usurious Contract Claim

Plaintiffs argue the Agreement was "usury and void," whereas Defendants declare the transaction was a merchant cash advance transaction ("MCA") outside of New York's usury laws. The crux of Plaintiffs' SAC is the allegation that the Agreement constitutes a usurious loan. Thus, the Court must determine how to truly describe the Agreements.

### A. New York Usury Law

New York Penal Law § 190.40 provides in relevant part that:

> A person is guilty of criminal usury in the second degree when ... he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.

The essential element of usury is the existence of a loan or forbearance of money. *See Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274, 280 (S.D.N.Y. 2017) ("*TVT Capital*") (quoting *Feinberg v. Old Vestal Rd. Assocs.*, 157 A.D.2d 1002, 1003, 550 N.Y.S.2d 482, 483 (3d Dep't 1990). Without a loan, " 'there can be no usury, however unconscionable the contract may be.' " *TVT Capital*, 252 F. Supp. 3d at 280 (quoting *Seidel v. 18 E. 17th St. Owners, Inc.*, 79 N.Y.2d 735, 744, 598 N.E.2d 7, 11–12, 586 NY.S.2d 240, 244–45 (1992)). Determining usury is a question of fact. *Id.* (citing *Ujueta v. Euro-Quest Corp.*, 29 A.D.3d 895, 896 (2006)).

To constitute a loan, the transaction must involve a borrower and a lender. *See TVT Capital*, 252 F. Supp. 3d at 281. Furthermore, the lender must have purposefully loaned money at a usurious interest reserved in some form by the contract, and the borrower must have agreed to

ELIZABETH WOMACK & OKLAHOMA SPECIALIZED..., Slip Copy (2019)

these usurious terms. *Id.*; *see also Donatelli v. Siskind*, 170 A.D.2d 433, 434, 565 N.Y.S.2d 224, 226 (2d Dep't 1991). Thus, courts must determine a transaction's purpose by its true character, under all circumstances, rather than its title. *Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc.*, 950 N.Y.S.2d 723, 35 Misc.3d 1205(A), 2012 WL 1087341, at *6 (Sup. Ct. 2012); *see also Vjuetta v. Euro–Quest Corp.*, 29 AD3d 895 (2d Dep't 2006).

Additionally, where the effective interest rate is based upon a contingency in the debtor's control, usury laws do not apply. *Hamilton Capital VII, LLC v. Khorrami, LLP*, 2015 N.Y. Misc. LEXIS 2954, *20 fn. 14 (N.Y. Co. Sup. Ct. 2015); *see also Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*, No. 216CV1545DRHGRB, 2019 WL 1473090, at *5 (E.D.N.Y. Apr. 3, 2019) (quoting *TVT Capital*, 252 F. Supp. 3d at 281 ("When a payment or enforcement rests on a contingency, the agreement is valid though it provides for a return in excess of the legal rate of interest."))

**B. The Agreement is Not A Loan.**
The Agreement explicitly excludes an interest rate and boldly states "(THIS IS NOT A LOAN)". *See* Agreement ¶ 4. Nevertheless, "[w]hen a[n agreement] is not usurious on its face, a court will not presume usury; rather, the party asserting [usury] must prove all the elements, including usurious intent." *LG Capital Funding, LLC v. ExeLED Holdings, Inc.*, No. 17 Civ. 4006 (RJS), 2018 U.S. Dist. LEXIS 202540, 2018 WL 6547160, at *5 (S.D.N.Y. Aug. 28, 2018) (internal quotation marks omitted); *see also EMA Fin., LLC v. AIM Expl., Inc.*, 2019 U.S. Dist. LEXIS 26141, at *17 (S.D.N.Y. Feb. 19, 2019). There is a strong presumption against a finding of usury. *Giventer v. Arnow*, 37 N.Y.2d 305,309 (1975); *Richardson v. Brisard & Brisard, Inc.*, 2012 N.Y. Misc. LEXIS 3215, *8 (Sup. Ct. Kings. Co. 2012).

**\*5** Plaintiffs argue Defendants had a usurious intent. Specifically, Plaintiffs contend they were "tricked and deceived" into entering a predatory loan without knowing the "true interest rate of 44%".[7] Accordingly, the Court turns to the substance of the transaction to find usury.

**C. The Substance of the Agreement**
New York State Courts encourage courts to consider three factors to determine if an agreement is a loan or a merchant agreement: (1) whether there is a reconciliation provision; (2) whether the agreement has an indefinite term; and (3) whether the plaintiff has any recourse should the merchant declare bankruptcy. *Power Up Lending*, 2019 WL 1473090, at *5, *K9 Bytes, Inc. v. Arch Capital Funding*, 56 Misc. 3d 807, 817 (N.Y. Sup. Ct. 2017) (citing *IBIS Capital Group, LLC v. Four Paws Orlando LLC*, 2017 WL 1065071 (N.Y. Sup. Ct. 2017) ("*Four Paws Orlando*")). An MCA transaction is not a loan where the agreement provided that the buyer purchased a fixed amount of the seller's future sales proceeds which were deliverable to the buyer from a percentage of the seller's daily sales proceeds. *Id.* at *5-6. Instead, this constitutes an "agreement to purchase future receivables for a lump sum discounted purchase price payable in advance by the plaintiff in exchange for a contingent return." *Id.*

The primary indicia of a loan are the debtor's absolute obligation to repay the principal sum without risk to the creditor or the debtor's business failure. *Zoo Holdings, LLC v. Clinton*, 2006 N.Y. Misc. LEXIS 225, *10 (N.Y. Co. Sup. Ct. 2006) (citing *Rubenstein v. Small*, 273 A.D. 102, 104 (1st Dep't 1947).

Here, there is no dispute that the Agreement contains a reconciliation provision and provides a fixed share of revenues until the purchased amount has been remitted, regardless of the passage of time. The parties dispute, however, whether Defendants bore any risk of a potential OTC bankruptcy.

**D. There was no Unconditional Guarantee to Repay the Purchase Amount**
Plaintiffs argue Defendants' bore no risks because the Agreement and Guaranty created an "unconditional" guarantee to pay the Purchase Amount. *See* Pl.'s. Opp. at 10. However, the express terms of the Agreement and Guaranty say otherwise.

The buyer bears a risk if the contingency—the seller's success (or lack thereof) collecting future receivables—determines the rate and completeness of repayment. *Four Paws*, 2017 N.Y. Misc. LEXIS 884, *6-11. MCA transactions cannot be considered loans where the MCA funders' purchase price was placed at hazard and they had no absolute right of repayment if the businesses failed. In *Four Paws Orlando*, a New York court ruled that an agreement for the purchase of future receivables and sales proceeds was not a loan transaction and not subject to usury laws. *Id.* 2017 N.Y. Misc. LEXIS

884, *4 (internal quotations omitted). The court found that the "primary indicia of usury is repayment of the principal sum advanced absolutely" and "in the underlying agreement ... the advance will only assuredly [be] repaid if the defendant defaults. Moreover, plaintiff surrendered control of repayment." *Id*; *see also Merchant Cash & Capital, LLC v. Liberation Land Co., LLC,* 2016 N.Y. Misc. LEXIS 4854, *8 (Sup. Ct. Nassau Co. Dec. 12, 2016).

**\*6** Similarly, in *Liberation Land*, the agreement at issue involved a purchase of future receivables in return for an upfront payment. *Liberation Land*, 2016 N.Y. Misc. LEXIS 4854, at *5-6. The repayment was based upon a percentage of daily receipts, and the repayment period was indeterminate. *Id.* The court ruled the agreement was not a loan because the defendants bore a risk. The court reasoned that "[u]nder the terms of the subject Agreement, if Seller/Defendant produces no daily revenue, no payments are required, and there is no absolute obligation of repayment." *Id.* at *8. The court also noted that converting the agreement to a loan would require "unwarranted speculation" and contradict the explicit terms of the agreement. *Id.* at *6.

Here, according to the Agreement, Capital Stack bears the risk of OTC's failure (i.e., discontinuance of receipt of future receivables) and there is no absolute payment obligation. As with the MCA agreements in *Four Paws Orlando* and *Liberation Land*, Capital Stack has no recourse against OTC in the event of OTC's bankruptcy. *See Four Paws Orlando*, 2017 N.Y. Misc. LEXIS 884, at *7; *Liberation Land Co., LLC,* 2016 N.Y. Misc. LEXIS 4854, *8. The Agreement expressly provides that "if the full Purchased Amount is never remitted because Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Seller has not breached this Agreement, Seller would not owe anything to Buyer and would not be in breach of or default under this Agreement."⁸ Agreement ¶ 4. Instead, default occurs only where OTC breaches the Agreement, such as by obtaining a new credit card processor or using multiple depository accounts. *Id.* ¶ 15. Accordingly, neither OTC nor Womack would owe Capital Stack anything if OTC ceased operations in the ordinary course of business. Under the express terms of the Agreement, neither OTC nor Womack would be responsible for paying the Purchased Amount if OTC ceased operations in the ordinary course of business. Therefore, Plaintiffs did not have an unconditional requirement to repay the Purchase Amount, and Defendants bore a risk of loss.

Notwithstanding the Agreement, Plaintiffs argue that Womack's Confession of Judgment and Guaranty relieves

Defendants of any risk. *See* Opp. at 12. The New York Appellate Division, First Department recently affirmed a decision dismissing a complaint alleging that a confession of judgment to enforce a merchant agreement was usurious and void. *See Champion Auto Sales, LLC v. Pearl Beta Funding LLC,* 159 A.D.3d 507 (1st Dep't 2018) *aff'g* 2017 N.Y. Misc. LEXIS 5355 (Sup. Ct N.Y. Co. June 15, 2017). In *Champion*, the court determined that the agreement was not a loan because, as here, the defendant purchased a percentage of the plaintiff's future receivables for a specified advance minus fees. *Id.,* 2017 N.Y. Misc. LEXIS 5355, at* 1-2.

Here, Womack's Guaranty merely guaranteed "prompt and complete performance of all of Seller's obligations under the Purchase Agreement." Guaranty, ¶ 2, Ex. 2, Boxer Decl. Thus, Womack's obligations under the Guaranty were no broader than OTC's obligations under the Agreement, and Womack did not agree to pay the Purchase Amount if OTC was unable to pay because it ceased operations in the ordinary course of business. The Guaranty did not alter Capital Stack's risk of non-payment if OTC's business failed.

**\*7** Similarly, Womack's confession of judgment does not convert the Agreement into a loan either. Parties routinely enter into confessions of judgment in connection with agreements for the sale of future account receivables and courts reject arguments claiming these agreements are usurious. *See,* e.g. *Champion,* 159 A.D.3d 507. Like the Guaranty, the confession of judgment is triggered only if OTC breaches the Agreement; not if OTC is unable to pay the Purchased Amount. Therefore, neither the Guaranty nor the confession of judgment alleviated Defendants' risks and, thus, the Agreement was not a loan. *See Platinum Rapid Funding Group Ltd. v. VIP Limousine Servs., Inc.,* 2016 N.Y. Misc. LEXIS 4131, at *9 (Sup. Ct. Nassau Co. Oct. 27, 2016).

### E. *Dura lex, sed lex* - The Law Is Harsh, But It Is The Law

At least twenty-eight other recent decisions by State and Federal courts in New York found that similar MCA transactions were not loans subject to New York's usury laws.⁹ Plaintiffs fail to cite any persuasive authority ruling in their favor. Indeed, Plaintiffs acknowledge the overwhelming New York authority opposing their contentions. Yet, Plaintiffs suggest the Court overlook these decisions and essentially re-write New York law. *See* Opp. at 12. Plaintiffs' counsel admits that "New York has a judicially entrenched favor against finding ... [MCA

agreements] usurious," but in their 'humble opinion, New York's rules are antiquated and fail to understand the level of trickery and deceit" in the industry. *Id.* The Constitution does not prevent Plaintiffs and their counsel from holding this opinion and sharing it with the Court. However, the Constitution does prevent the Court from ignoring established law. To effect change, the proper place for Plaintiffs to present such opinions is before the state legislature, not this court.[3] Presently, courts have established that an MCA transaction is not a loan where, as here, the buyer: 1) purchases a fixed amount of the seller's future sales proceeds; 2) the proceeds are deliverable from a percentage of the seller's daily sales proceeds; and, 3) the agreement provides no liability if the seller ceases operations in the ordinary course of business. *See,* e.g. *Colonial Funding Network, Inc. v. Epazz, Inc.,* 252 F. Supp. 3d 274, 281-83 (S.D.N.Y. 2017); *Four Paws,* 2017 N.Y. Misc. LEXIS 884, at *5-7.

**\*8** Accordingly, the transaction at issue here was a purchase of future receivables, not a loan, and Plaintiffs' first cause of action for usury and void contract fails as a matter of law.

## II. Failure to Disclose Claim

Plaintiffs' second cause of action alleges Defendants made various misrepresentations and failed to disclose material information. Specifically, Plaintiffs allege that Capital Stack failed to disclose that (1) Capital Stack is "intertwined" with the Rubin Law Firm; (2) Capital Stack's sole principal is David; (3) David changed his sir name to Rubin from "Rubinov" and was previously the subject of an SEC investigation; and (4) Defendants' corporate structures are designed to conceal that the Agreement is a loan. SAC. ¶¶ 39-51. These claims fail as well.

To properly claim fraud under New York law, "a plaintiff must show a material representation or omission of fact, made with knowledge of its falsity, with scienter or an intent to defraud, upon which the plaintiff reasonably relied, and that such reliance caused damage to the plaintiff." *Alpha Capital Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, No. 1:17-cv-1235-GHW, 2019 U.S. Dist. LEXIS 55977, at *35 (S.D.N.Y. Mar. 30, 2019) (internal quotations omitted). "A fraud cause of action may be predicated on acts of concealment where the defendant had a duty to disclose material information." *Kaufman v. Cohen*, 307 A.D.2d 113, 119-20 (1st Dep't 2003). Such a duty can arise where there is a fiduciary relationship. *Id.*

"The arm's length nature of [a] transaction negates any alleged duty to disclose based upon a fiduciary relationship." *Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 327 (1st Dep't 1996). Even without a fiduciary relationship, however, a duty to disclose a material fact to a negotiation will be triggered where " 'one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.' " *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 551 (S.D.N.Y. 2007) (quoting *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 739 (2d Cir.1984).

Additionally, the plaintiff must allege that the undisclosed material fact was "peculiarly within the knowledge" of the other party and "that the information was not such that could have been discovered ... through the exercise of ordinary intelligence." *Jana L. v. W 129th St. Realty Corp.*, 22 A.D.3d 274,278 (1st Dep't 2005) (quotation and punctuation omitted).

### A. Defendants Had No Duty to Disclose

Here, Plaintiffs' claim fails because the SAC does not adequately allege that the Defendants had a duty to disclose the allegedly false material. Plaintiffs do not allege that they had any relationship giving rise to a duty to disclose. In the absence of such a relationship, Plaintiffs cannot assert a duty to disclose claim against Defendants. *See,* e.g. *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 582 (2d Cir. 2005) (noting that duty to disclose only arises in "three circumstances," where there is a "fiduciary relationship," one party has superior knowledge not readily available to the other and knows the other is acting based on mistaken knowledge, or the party has made a partial or ambiguous statement). Plaintiffs do not allege their relationship with Capital Stack stretched beyond arms' length. The SAC demonstrates the relationship was commercial: solely related to the Agreement and Guaranty. This does not create a fiduciary or other relationship giving rise to a Capital Stack duty to disclose. *See Henneberry,* 532 F. Supp. 2d at 550 (no fiduciary duty in arms' length transaction absent "extraordinary circumstances"). Accordingly, Plaintiffs fail to establish that Defendants had a duty to disclose.

### B. Undisclosed Material was Discoverable

**\*9** Furthermore, even if there were a duty to disclose, Plaintiffs' claim fails because the undisclosed material was reasonably discoverable. For example, the SAC alleges that Defendants failed to disclose that Capital Stack and the Rubin Law Firm were "intertwined." SAC ¶ 40. However, Plaintiffs acknowledge that "all of Rubin's law office attorneys are listed on the promotional materials for Defendant [Capital Stack] as if the entities are one and the same and operating in unity" and that Anna "is general counsel of Capital Stack" and the "principal and founder of the Rubin Law Firm..." *Id.* ¶¶ 40-43. Similarly, David is prominently listed on the e-Prodigy website as the CEO and founder of e-Prodigy and as the President and CEO of Capital Stack prior to forming e-Prodigy.[10] David is also listed as the CEO on Capital Stack's website.[11] Thus, the SAC concedes that the allegedly undisclosed information is disclosed in Defendants' promotional materials. The SAC also fails to allege that the Plaintiffs could not discover the undisclosed information through ordinary due diligence. Therefore, there is no basis for a failure to disclose claim based on this information. *See,* e.g. *Grumman Allied Indus. v. Rohr Indus., Inc.,* 748 F.2d 729, 739 (2d Cir. 1984)* ("knowledge is not superior where the relevant information was either a matter of public record, was not pursued by plaintiffs, or was disclosed at least in part") (quotation omitted). Moreover, though Plaintiffs allege to be "unsuspecting and unsophisticated people" of Bixby, Oklahoma deceived by "slick and fast-talking" New Yorkers, Plaintiffs were business people nonetheless. *See* e.g., SAC. ¶¶ 1, 6, 34, 77.[12] Plaintiffs reviewed the Agreement and the Guaranty before signing them, so they cannot allege these terms were not disclosed.

### C. David's Identity was Immaterial

Finally, the undisclosed information was immaterial. Plaintiffs assert that if they knew David Rubin's "true identity" and "nefarious past", they would not have entered the Agreement. Like the other allegedly undisclosed information, Rubin's past and name change were discoverable. Plaintiffs cite to no case law suggesting that Rubin had a duty to disclose his alleged securities law violations or his name change. *See In re Enron Creditors Recovery Corp.,* 376 B.R. 442, 471 (Bankr. S.D.N.Y. 2007) (holding that plaintiff was a sophisticated business person and, if she had any concerns as to the identity of a party to a transaction she could have insisted on more specificity in the agreement and she had an equal opportunity to discover the party's identity).

Therefore, Plaintiffs' breach of duty to disclose and fraud claims in Count II are dismissed.

### III. Fraudulent Misrepresentation – Counts III and IV

In Count III, the SAC alleges that Capital Stack "knowingly and fraudulently allow[ed] the Plaintiffs to enter into the usurious agreement," and that unidentified "representatives of Fig Capital and Capital Stack" allegedly misrepresented that the Agreement was a "loan at 8% interest" with "reasonable fees," that Plaintiffs had to hurry to accept it, and that "it was a great offer". SAC. ¶¶ 57, 61. Plaintiffs also allege fraudulent misrepresentation in Count IV, stating that Capital Stack's "lenders and accounting practices were conducted in a negligent manner inconsistent with the industry standards." *Id.* ¶ 63. Both Counts fail to state a claim.

Essentially, both claims contend that Defendants misled Plaintiffs into believing that the Agreement was a loan with 8% interest. As previously discussed, the Agreement constituted a purchase of future account receivables. The terms Plaintiffs claim Defendants misrepresented were disclosed in the written agreement, and thus cannot be the basis for a misrepresentation claim. *See Mandarin v. Wildenstein,* 16 N.Y.3d 173, 178 (2011) (for fraudulent misrepresentation claims, plaintiff must allege a "misrepresentation or a material omission of fact which was false and known to be false") (quotation omitted); *see also JPMorgan Chase Bank, N.A. v. Controladora Comercial Mexicana S.A.B. de C.V.,* 2010 N.Y. Misc. LEXIS 5656 at *22 (Sup. Ct. N.Y. Co. Mar. 16, 2010) (rejecting fraudulent misrepresentation claim where complained of terms were disclosed in agreement and thus "any failure to scrutinize the contractual provisions" was plaintiff's fault) (quotation omitted).

**\*10** Plaintiffs assert that Defendants assured them telephonically that the Agreement was a loan. SAC ¶ 50, Pl's. Opp. p. 2. However, even if Defendants made these oral representations, the Agreement specifies that it "embodies the entire agreement" between the parties and "supersedes all prior agreements, and understandings relating to the subject matter hereof." Agreement § 23. Even without those deficiencies, the third cause of action fails to meet Rule 9(b) pleading requirements because it does not identify the purported speaker or where and when the statements were allegedly made. *See,* e.g. *Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir. 2004) (to meet Rule 9(b) pleading requirements, plaintiff must (1) specify statements, (2) identify the speaker, (3) state where and when statements were made, and (4) explain why statements were fraudulent). Therefore, Plaintiffs'

third cause of action is dismissed.

Plaintiffs' claim that Capital Stack's deficient accounting standards constitutes fraudulent misrepresentation fails as well. The SAC does not allege that Capital Stack made any representations about the quality of its accounting standards or had any duty to disclose such information. Furthermore, Plaintiffs fail to meet Rule 9(b)'s pleading requirements since SAC does not identify any speakers misrepresenting the accounting standards, where and when such statements were made, or how or why the statements were fraudulent. *See Rombach,* 355 F.3d at 170. Therefore, Plaintiffs' fourth cause of action is dismissed.

**IV. Breach of Fiduciary Duty, Covenant of Good Faith, and Fair Dealing**

**A. Fiduciary Duty**

In Count Five, Plaintiffs allege breach of fiduciary duty arising out of Defendants' total "monopoly and advantage" regarding the structure, formation and operation of the agreement. SAC ¶ 69. Specifically, Plaintiffs claim that Defendants exploited them for their own personal gain and therefore breached the fiduciary duty they owed to Plaintiffs. *Id.* ¶ 66. The Court disagrees.

Nothing in the SAC suggests Defendants were Plaintiffs' fiduciaries. "Absent extraordinary circumstances," "parties dealing at arm's length [sic] in a commercial transaction lack the requisite level of trust or confidence between them necessary to give rise to a fiduciary obligation." *Henneberry,* 532 F. Supp. 2d at 550. Plaintiffs' argument that a fiduciary relationship is created whenever one party drafts a contract fails as a matter of law.

Plaintiffs' assertion that Capital Stack had more information than Plaintiffs regarding the structure, formation and operation of the Agreement is also insufficient to allege a fiduciary relationship. Despite Plaintiffs' self-portrayals of naiveté, they were business people who read and presumably understood the documents they signed. Plaintiffs do not allege that the Agreement or Guaranty omit terms or provisions Plaintiffs' expected to see. *See Grumman Allied Indus.,* 748 F.2d at 739. The Court cannot reasonably infer a fiduciary relationship where there are no factual allegations indicating the parties intended for their relationship to be more than arms' length. *See WIT Holding Corp. v. Klein,* 282 A.D.2d 527, 529 (2d Dep't 2001) (dismissing claim for breach of fiduciary duty where parties "were involved in an arm's-length business transaction"); *Aaron Ferer & Sons,* 731 F.2d at 122 (dismissing claim for fiduciary duty where there was "no evidence" that either party "intended that their relationship be something more than just the debtor-creditor relationship"); *Henneberry,* 532 F. Supp. 2d at 554 ("a fiduciary obligation will not be imposed on a party merely because it possesses relative expertise as compared to the other") (quotation omitted).

Thus, Plaintiffs' fiduciary duty claim fails because (1) they did not allege to have any communications or contact with Anna, David, e-Prodigy Technology or the Rubin Law Firm giving rise to a duty and (2) their relationship with Capital Stack was limited to an arms' length commercial transaction that did not create a fiduciary relationship.

**B. Covenant of Good Faith and Fair Dealing**

**\*11** Plaintiffs' breach of the covenant of good faith and fair dealing claim fails as well. Courts have held that a party does not breach the covenant of good faith and fair dealing when, as here, it "act[ed] in [its] own self-interest consistent with [its] rights under [the] contract...." *BH Sutton Mezz LLC v. Sutton 58 Assocs. LLC (In re BH Sutton Mezz LLC),* Nos. 16-10455 (SHL), 16-01187 (SHL), 2016 Bankr. LEXIS 4113, at \*102 (Bankr. S.D.N.Y. Dec. 1, 2016) (quoting *Ray Legal Consulting Grp. v. Dijoseph,* 37 F. Supp. 3d 704, 726 (S.D.N.Y. 2014); *DeBlasio v. Merrill Lynch & Co., Inc.,* 2009 U.S. Dist. LEXIS 64848, at \*116 (S.D.N.Y. July 27, 2009) ("Defendants did not violate the implied covenant of good faith and fair dealing by acting in [their] own self-interest consistent with [their] rights under a contract.") (internal quotation marks omitted); *Suthers v. Amgen Inc.,* 441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006) ("Plaintiffs have no support for the broad proposition that an entity violates the implied covenant of good faith and fair dealing by acting in its own self-interest consistent with its rights under a contract. Indeed, courts have refused attempts to impose liability on a party that engaged in conduct permitted by a contract, even when such conduct is allegedly unreasonable.")).

As explained above, Plaintiffs do not allege Defendants performed any actions that were not permitted by the Agreement. Therefore, Plaintiffs' breach of the covenant

of good faith and fair dealing claim is dismissed.

## V. Declaratory Judgment

In Count VI, Plaintiffs seek a declaratory judgment that the Agreement was a loan with a usurious interest rate. SAC ¶¶ 72-74. However, the Court finds this claim to be duplicative of Plaintiffs' first cause of action.. *See Safi Classic S.A. de CV v. Hurowitz*, 444 F. Supp. 2d 231, 249-50 (S.D.N.Y. 2006) (declaratory judgment claim is duplicative where it "seeks no relief that is not implicitly sought in the other causes of action"). Even if not duplicative, for the reasons stated earlier, the agreement is not a loan. Therefore, Count VI is dismissed.

## VI. Deceptive Acts and Practices

Plaintiffs also contend that Defendants violated New York General Obligations Law § 349(a), which prohibits certain deceptive acts or practices in commercial transactions. To state a claim under section 349, a plaintiff must show: (1) that the act, practice, or advertisement was consumer-oriented; (2) that the act, practice, or advertisement was misleading in a material respect; and (3) that the plaintiff was injured as a result of the deceptive act, practice, or advertisement. *Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC* ("*RD Legal Funding*"), 332 F. Supp. 3d 729, 781-82 (S.D.N.Y. 2018); *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, NA*, 85 N.Y.2d 20, 25 (1995).

Under the first prong, "consumer oriented" conduct is that which "has a broad impact on consumers at large." *Id.* (citing *Bennett v. State Farm Fire and Casualty Co.*, 78 N.Y.S.3d 169, 161 A.D.3d 926, 2018 N.Y. App. Div. LEXIS 3482, 2018 WL 2225321, at *2 (N.Y. App Div. May 16, 2018). A "single shot transaction" tailored to a specific consumer is insufficient to show a "broad impact on consumers." *Hall*, 996 N.Y.S.2d at 315 (quoting *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 953 N.Y.S.2d 96, 102 (NY. App. Div. 2012)). Rather, the conduct must amount to a "standard practice that was [or is] routinely applied to all [consumers]" who engaged with the defendant. *Id.* at 102.

Here, the SAC properly alleges that Defendants' conduct was consumer oriented in that Defendants "solicited [business] over the internet and via phone aimed at unsophisticated consumers." SAC ¶ 80; *See also Oswego*

*Laborers' Local 214 Pension Fund*, 623 N.Y.S.2d at 745 (holding conduct to be "consumer-oriented" where defendant Bank interacted with plaintiffs' representative the same as any other customer opening a savings account). According to the SAC, Defendants represent to consumers that its MCA agreements are not loans, incorrectly label them as "purchase of accounts receivables", and do not disclose the agreement's usurious interest rates. SAC ¶ 80. Accepting these allegations as true, the SAC properly alleges that Defendants' conduct was "consumer-oriented" since it was not limited to a single consumer but rather was how Defendants interacted with all consumers. *See Genesco Entm't v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) (finding that conduct was "consumer-oriented" because it was "not unique" to the plaintiffs, was not "private in nature" and not a "single shot transaction").

**\*12** However, Plaintiffs' SAC fails to meet the statute's additional requirements. Under the second prong, the New York Court of Appeals has defined the term "materially misleading" conduct using an objective standard under which "the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.' " *RD Legal Funding*"), 332 F. Supp. 3d 729, 782 (quoting *Orlander v. Staples Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)); *see also Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007). If the allegedly deceptive act was "fully disclosed," there can be no § 349(a) claim. *Id*; *see also Broder v. MBNA Corp.*, 281 A.D.2d 369, 371 (1st Dep't 2001); *Watts v. Jackson Hewitt Tax Service, Inc.*, 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008).

Here, the transaction at issue did not involve deception. As demonstrated above, the Agreement specifically stated it was not a loan and failed to operate as such. Furthermore, the amount of time to pay the Purchased Amount can vary, thus rendering impossible any alleged calculation of an "interest rate." Moreover, the Agreement provides that the Purchase Price is $150,000 and the Purchased Amount is $216,000 and lists the origination fee and other fees which might be charged. *See* Agreement at ¶ 1; Appendix A. Plaintiffs do not allege they were charged an undisclosed amount. Therefore, since the Agreement disclosed all the material terms of the transaction, Defendants are not liable under NY GOL § 349. *See Broder*, 281 A.D.2d at 371; *Walts*, 579 F. Supp. 2d at 346. Thus, Count VIII is dismissed.

**ELIZABETH WOMACK & OKLAHOMA SPECIALIZED..., Slip Copy (2019)**

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' SAC is GRANTED. The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

**All Citations**

Slip Copy, 2019 WL 4142740

Footnotes

1    A copy of the Agreement was attached to the first complaint filed by Plaintiffs on May 11, 2018. *See* ECF No. 1-1. Plaintiffs did not attach the Agreement to the Amended Complaint or the Second Amended Complaint. A copy of the Agreement is attached as Exhibit I to the Declaration of Jeffrey S. Boxer dated Oct. 29, 2018 ("Boxer Decl.")

2    The daily payment amount was calculated as Average Monthly Sales multiplied by the Specified Percentage; the product divided by Average Business Days in a Calendar Month. *Id.*

3    The Agreement reads: "Seller May Request Changes to the Daily Amount: The initial Daily Amount is intended to represent the Specified Percentage of Seller's daily Future Receipts. For as long as no Event of Default has occurred, once each calendar month, Seller may request that Buyer adjust the Daily Amount to more closely reflect the Seller's actual Future Receipts times the Specified Percentage. Seller agrees to provide Buyer any information requested by Buyer to assist in this reconciliation.... After each adjustment made pursuant to this paragraph, the new dollar amount shall be deemed the Daily Amount until any subsequent adjustment." Agreement, ¶ 2.

4    The Agreement reads, "Sale of Future Receipts (THIS IS NOT A LOAN): Seller is selling a portion of a future revenue stream to Buyer at a discount, not borrowing money from Buyer. There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Buyer. If Future Receipts are remitted more slowly than Buyer may have anticipated or projected because Seller's business has slowed down, or if the full Purchased Amount is never remitted because Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Seller has not breached this Agreement, Seller this Agreement. Buyer is buying the Purchased Amount of Future Receipts knowing the risks that Seller's business may slow down or fail, and Buyer assumes these risks based on Seller's representations, warranties and covenants in this Agreement that are designed to give Buyer a reasonable and fair opportunity to receive the benefit of its bargain. By this Agreement, Seller transfers to Buyer full and complete ownership of the Purchased Amount of Future Receipts and Seller retains no legal or equitable interest therein. Seller agrees that it will treat Purchase Price and Purchased Amount in a manner consistent with a sale in its accounting records and tax returns...." Agreement, ¶ 4.

5    Specifically, Defendants argue that on or about May 16, 2018, Plaintiffs attempted to serve Defendants with the Complaint accompanied by invalid summonses that were signed by the clerk of court for the United States Court for the Eastern District of New York and did not include a seal from any court. *See* Declaration of Anna Rubin dated Oct. 29, 2018. ECF No. 41. ("Rubin Decl.") ¶ 2, Ex. 1. In June 2018 Plaintiffs caused the Court to issue proper summonses. *See* ECF Nos. 11, 12, 13, 15, 17. The summonses were delivered to Anna at Capital Stack's office on or about June 14, 2018, and Anna rejected the summons for "e-Prodigy Technology" because there is no such company. Rubin Decl. ¶ 4.

6    Plaintiffs withdrew the Intentional Infliction of Emotional Distress claim (count seven) in their moving papers.

7    Plaintiffs also encourage the Court to calculate the "*operative interest rate,*" to find that it is actually 82%, 57% over New York State's usury rate of 25% inasmuch as the money was borrowed on February 26, 2018 and the Judgment calculated on March 12, 2018. Importantly, it was not filed until June of 2018, one month after commencement of this action and entered with the Court in August of 2018. (Exs. "C" and "D")

8    The Agreement specifically provides: "Seller is selling a portion of a future revenue stream to Buyer at a discount, not borrowing money from Buyer. There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Buyer. If Future Receipts are remitted more slowly than Buyer may have anticipated or projected because Seller's business has slowed down, or if the full Purchased Amount is never remitted because Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Seller has not breached this Agreement, Seller would not owe anything to Buyer and would not be in breach of or default under this Agreement." Agreement, ¶ 4, Ex. 1

ELIZABETH WOMACK & OKLAHOMA SPECIALIZED..., Slip Copy (2019)

9    *See Wilkson Floor Covering, Inc. v. Cap Call LLC,* 2018 NY Slip Op 30943(U) (Sup. Ct. N.Y. Co. May 16, 2018); *Colonial Funding Network, Inc. v. Epazz, Inc.,* 2017 U.S. Dist. LEXIS 70747, *9-14 (S.D.N.Y. May 9, 2017); *K9 Bytes, Inc. v. Arch Capital Funding, LLC,* 2017 N.Y. Misc. LEXIS 1903, *12-15 (Sup. Ct. Westchester Co. May 4, 2017); *IBIS Capital Group, LLC v. Frontier Auto Plans, Inc.,* 2017 N.Y. Misc. LEXIS 1684, *1 (Sup. Ct. Apr. 25, 2017); *Four Paws Orlando LLC,* 2017 N.Y. Misc. LEXIS 884, *6-11; *Merchant Cash & Capital, LLC v. Sogomonyan,* 2017 N.Y. Misc. LEXIS 1983, *12-13 (Sup. Ct. Nassau Co. Mar. 2, 2017); *Chartock v. National Bank of California,* 2017 N.Y. Misc. LEXIS 673, *4 (Sup. Ct. Queens Co. Jan.17, 2017); *Merchant Cash & Capital, LLC v. Frederick & Cole, LLC,* 2016 N.Y. Misc. LEXIS 5084, *13-14 (Sup.Ct. N.Y. Co. Dec. 21, 2016); *Merchant Cash & Capital, LLC v. Fire Suppression Servs., inc.,* 2016 N.Y. Misc. LEXIS 4855, *2-3 (Sup. Ct. Nassau Co. Dec.16, 2016); *Retail Capital, LLC v. Spice intentions Inc.,* 2016 N.Y. Misc. LEXIS 4883, *6-7 (Sup. Ct. N.Y.Co. Dec. 9, 2016); *Liberation Land Co., LLC,* 2016 N.Y. Misc. LEXIS 4854, *5-8; *Merchant Cash & Capital, LLC v. South Jersey Speed LLC,* 2016 N.Y. Misc. LEXIS 4852, *3-4 (Sup. Ct. Nassau Co. Dec. 13, 2016); *Merchant Cash & Capital, LLC v. Transfer Intl. Inc,* 2016 N.Y. Misc. LEXIS 4515, *7-8 (Sup.Ct. Nassau Co. Nov. 2, 20 I 6); *Merchant Cash & Capital, LLC v. Randa's Bakely, Inc.,* 20 I 6 N.Y. Misc. LEXIS 3342, *7-9 (Sup. Ct. Nassau Co. Sept. 20, 2016); *Merchant Cash & Capital, LLC v. Yehowa Med Servs., Inc.,* 2016 N.Y. Misc. LEXIS 3065, *7-8 (Sup. Ct. Nassau Co. July 29, 2016); *Merchant Cash & Capital, LLC v. G&E Asian Am. Enter., Inc.,* 2016 N.Y. Misc. LEXIS 3067, *7-9 (N.Y. Sup. Ct. July 29, 2016); *Platinum Rapid Fzmding Group Ltd. v. VIP Limousine Servs., Inc.,* 2016 N.Y. Misc. LEXIS 3068, *7-8 (Sup. Ct. Nassau Co. June 8, 2016); Professional *Merchant Advance Capital, LLC v. Your Trading Room, LLC,* 2012 N.Y. Misc. LEXIS 6757, *12-14 (Sup.Ct. Suffolk Co. Nov. 28, 2012); *Merchants Capital Access, LLC v. South Shore Motorsports, LLC,* 2011 N.Y. Misc. LEXIS 4202, *27 (Sup. Ct. Nassau Co. Aug. 19, 2011); *Merchants Advance, LLC v. Tera K, LLC,* 2008 N.Y. Misc. LEXIS 10889, *4 (Sup. Ct. N.Y. Co. Dec. 16, 2008); *Merchant Cash & Capital, LLC v. Edgewood G,p., LLC,* 2015 U.S. Dist. LEXIS 94162, *10-12 (S.D.N.Y. July 2, 2015) aff'd 2015 U.S. Dist. LEXIS 94018, *1-2 (S.D.N.Y. July 20, 2015); *Merchant Cash & Capital, LLC v. Hobby Horse Welding, Inc.,* 2016 N.Y. Misc. LEXIS 4894, *3 (Sup. Ct. Nassau Co. Dec. 21, 2016); *Merchant Funding Services, LLC v. Micromanos Colp.,* Sup. Ct. Orange Co. Index No. EF000598/2017 (ECF. No. 23; May 4, 2017) (attached as Ex. 7 to Boxer Decl.); *Merchant Cash & Capital, LLC v. Ethnicity, Inc.,* 2016 N.Y. Misc. LEXIS 4856 (Sup. Ct. Nassau Co. Dec. 8, 2016); *Merchant Cash & Capital, LLC v. Cramer E. Constr. LLC,* 2016 N.Y. Misc. LEXIS 4647 (Sup. Ct. Nassau Co. Nov. 4, 2016); *Retail Capital. LLC v. Daniel Leahy,* 2016 N.Y. Misc. LEXIS 4040 (Sup. Ct. Nassau Co. Oct. 13, 2016); *First Funds, LLC v. Yoshi Trading Co.,* Sup. Ct. N.Y. Co. Index No. 650030/2011 (ECF. No. 14, Sept. 28, 2011) (attached as Ex. 8 to Boxer Decl.).

10    *See* https://e-prodigy.com/.

11    http://capitalstackllc.com/company

12    Indeed, court records demonstrate that the Plaintiffs and Danny Womack entered into and defaulted on multiple merchant cash agreements with at least three other MCA companies besides Capital Stack. For instance, on August 25, 2017, Mantis Funding LLC filed a "Notice of Filing a Foreign Judgment" against Danny Womack and Oklahoma Express Heavy Haul LLC in the District Court of Tulsa County, Oklahoma, attaching a judgment obtained pursuant to an Affidavit of Confession of Judgment in connection with a "Merchant Agreement." *See* Boxer Decl. Ex. 3. Similarly, on July 20, 2017, Global Merchant Cash, Inc. filed a petition in the District Court of Tulsa County, Oklahoma against Oklahoma Express Heavy Haul, LLC and Danny Womack to enforce a "Merchant Agreement" and subsequently obtained a judgment in its favor, and on September 6, 2018, the District Court of Muskogee County, Oklahoma, granted a default judgment in *Western Surety Company v. Danny Womack, Elizabeth Womack, and 165 Auto Auction of Muskogee Inc. d/b/a I-40 Auto Auction of Muldrow. See* Boxer Decl. Exs. 4-6.

---

**End of Document**                                           © 2019 Thomson Reuters. No claim to original U.S. Government Works.

No *Shepard's* Signal™
As of: May 10, 2018 7:19 PM Z

## *Platinum Rapid Funding Group Ltd. v Uncle Jimmy's*

Supreme Court of New York, Nassau County

February 27, 2018, Decided; March 2, 2018, Entered

608077/17

Reporter
2018 N.Y. Misc. LEXIS 811 *; 2018 NY Slip Op 30396(U) **

[**1] PLATINUM RAPID FUNDING GROUP LTD., Plaintiff -against- UNCLE JIMMY'S BRAND PRODUCTS, LLC d/b/a UNCLE JIMMY'S BRAND PRODUCTS and JAMES F. URBANSKI, Defendants. Index No. 608077/17

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

Merchant

**Judges:** [*1] Present: HON. SHARON M.J. GIANELLI, J.S.C.

**Opinion by:** SHARON M.J. GIANELLI

## Opinion

Motion by Plaintiff (Seq. No. 1) for an Order of this Court, pursuant to *CPLR §3211*, dismissing Defendants' counterclaims and affirmative defenses, and motion by Plaintiff (Seq. No. 2) for an Order of this Court, pursuant to *CPLR §3212*, granting summary judgment against the Defendants, are determined as hereinafter provided.

### *Underlying Facts*

This action arises out of a Merchant Cash Advance Agreement (Agreement), dated June 7, 2017 (*see* Plaintiff's Exhibit F) whereby Plaintiff, PLATINUM RAPID FUNDING GROUP LTD. (Platinum) purchased from corporate Defendant, UNCLE JIMMY'S BRAND PRODUCTS, LLC d/b/a UNCLE JIMMY'S BRAND PRODUCTS (Uncle Jimmy's), a percentage of the

proceeds of each future sale until a certain sum had been paid. For the purchase price of $40,000.00, Platinum purchased $53,200 of Uncle Jimmy's future [**2] **receivables**. The Agreement was personally guaranteed by individual Defendant JAMES F. URBANSKI.

Platinum alleges that, on August 8, 2017, Uncle Jimmy's breached its obligation under the Agreement while continuing its normal business operations. Platinum further alleges that Uncle Jimmy's made payments totaling $10,450.11 under the Agreement, [*2] leaving a balance of $42,749.89. Platinum filed the Summons and Complaint on August 11, 2017 (*see* Plaintiff's Exhibit B): The Defendants filed an Answer with counterclaims on September 20, 2017, wherein they admit to executing the agreement, receiving $40,000 from Platinum and paying $10,450.11 pursuant to the Agreement, but allege that the Agreement is a criminally *usurious* *loan* (*see* Plaintiff's Exhibit C).

### *Analysis*

A party moving for summary judgment must make a *prima facie* showing of entitlement to judgment as a matter of law, offering sufficient evidence to demonstrate the absence of any material issues of fact (*see* *Winegrad v. New York Univ. Med. Ctr., 64 N.Y.2d 851, 476 N.E.2d 642, 487 N.Y.S.2d 316 [1985], Zuckerman v. City of New York, 49 N.Y.2d 557, 404 N.E.2d 718, 427 N.Y.S.2d 595 [1980]*). Once such a *prima facie* showing has been made, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to raise material issues of fact which require a trial of the action (*see* *Alvarez v. Prospect Hosp., 68 N.Y.2d 320, 501 N.E.2d 572, 508 N.Y.S.2d 923 [1986], Zuckerman v. City of New York, supra*).

Here, the issue is whether the Agreement qualifies as a *loan*, which would be subject to the *usury* statute.

2018 N.Y. Misc. LEXIS 811, *2; 2018 NY Slip Op 30396(U), **2

Defendants contend that the Agreement is a criminally *usurious* *loan* disguised as a purchase and sale agreement, and is therefore void as a matter of law. [**3] Defendants calculated an effective interest rate of [*3] 72.12%, a rate that exceeds the legal rate of interest of 25% per annum for a corporation (*see* *Penal Law § 190.40*). Plaintiff argues that the terms of the contract make clear that the agreement is not a *loan* and therefore not subject to *usury* laws.

The recent case of *IBIS Capital Group, LLC v. Four Paws Orlando LLC, 2017 N.Y. Misc. LEXIS 884, 2017 WL 1065071 (Sup. Co. Nassau Co. March 10, 2017)*, is instructive. The Court in *IBIS* stated "[u]nless a principal sum advanced is repayable absolutely, the transaction is not a *loan*. Where payment or enforcement rests on a contingency, the contract is valid even though it provides for a return in excess of the legal rate of interest" (*2017 N.Y. Misc. LEXIS 884 at *2*).

The Court in *IBIS* found that "IBIS could never have possessed *usurious* intent because it was impossible for the parties to know when, if ever, IBIS might collect the full purchased amount, or whether IBIS would even be entitled to collect the full purchased amount" (*2017 N.Y. Misc. LEXIS 884 at *10*). The Court further noted that the proposed "interest rate" put forth by the defendant improperly attempts to treat variables in the agreement that were subject to change as though they were fixed terms (*id.*).

Another recent case, *K9 Bytes, Inc. v. Arch Capital Funding, LLC, 56 Misc. 3d 807, 57 N.Y.S.3d 625 (Sup. Co. Westchester Co. 2017)*, is likewise useful, reviewing *IBIS* in depth and providing factors that a court should consider to determine if repayment under an agreement is absolute or contingent. [*4]

[**4] First, it was noted in *K9 Bytes* that courts consistently find that a transaction is not a *loan* if a reconciliation provision exists, which allows the merchant to seek an adjustment of the payments based on the cash flow (*id. at pp. 816-7*). Here, such a provision exists in the second paragraph of the Agreement, which states, in part:

> FUNDER will debit the Specific Daily Amount each business day and upon receipt of the Merchants monthly bank statements to reconcile the Merchant's account by either crediting or debiting the difference from or back to the 'Merchant's bank account so that the amount debited per month equals the specified percentage. (*see:* ¶2 of the Agreement)

Next, the Court in *K9 Bytes* explains that a transaction can only be a *loan* if it contains a finite term, as indefinite terms are consistent with the contingent nature of other types of transactions (*id.*). Here, the Agreement states on numerous occasions that no finite term exists. For example, the first page of the Merchant Agreement specifies that Uncle Jimmy's shall remit a certain percentage of each transaction, "until the amount specified below (the Purchased Amount) has been delivered by Merchant to FUNDER." Further, in Section 1.2, the Agreement [*5] states that "[t]here is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by FUNDER."

Finally, a transaction is a *loan* if there is recourse should the merchant's business fail (*id. at p. 818*). Section 1.2 of the Agreement states "Merchant going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement. Funder is entering into this Agreement knowing the risks that Merchant's business may slow down or fail, and Funder assumes these risks based on Merchant's representations warranties and covenants in this Agreement, which are designed to give Funder a reasonable and fair opportunity to receive the benefit of its bargain."

[**5] Regarding the distinctions between *loans* that are subject to *usury* laws and other transactions that are not, the Agreement contains clear language demonstrating that: (1) adjustments of the amount paid are to be made based on Uncle Jimmy's cash flow; (2) the term of the agreement was indefinite and contingent on Uncle Jimmy's cash flow; and (3) Platinum assumed the risks of Uncle Jimmy's business failure, in which case Platinum would receive no further payment. As such, the Agreement cannot be [*6] construed as a *loan* and is therefore not subject to *usury* laws.

The Defendants' attempt to impute conclusions of law onto. Plaintiff via a Notice to Admit, for which no proof of service exists and for which the parties agreed via stipulation to give until January 30, 2018 for responses, is without merit. The Defendants' arguments all rest on the premise that the Agreement was a *usurious* *loan*, which is not the case.

Accordingly, it is hereby

**ORDERED**, that the Plaintiff's motion, pursuant to *CPLR 3212*, for summary judgment (Mot. Seq. 2) is

2018 N.Y. Misc. LEXIS 811, *6; 2018 NY Slip Op 30396(U), **5

**GRANTED**. As such, the Plaintiff's motion to dismiss Defendants' counterclaims and affirmative defenses (Mot. Seq. 1) is dismissed as moot; and it is further

**ORDERED**, that the Nassau County Clerk is directed to enter a judgment against Defendants Uncle Jimmy's Brand Products, LLC d/b/a Uncle Jimmy's Brand Products and James F. Urbanski, jointly and severally, for the sum of forty-two thousand, seven hundred forty-nine dollars and eighty-nine cents ($42,749.89) with interest there on from August 7, 2017; and it is further

 [**6] **ORDERED**, that all proceedings under Index No. 608077/17 are terminated; and it is further

**ORDERED**, that Plaintiff shall serve a copy of this Order [*7] upon Defendants by certified mail, with a return receipt.

All requests not specifically addressed herein are **DENIED**.

This constitutes the Decision and Order of the Court.

DATE: February 27, 2018

Mineola, New York

/s/ Sharon M.J. Gianelli

**HON. SHARON M.J. GIANELLI**

Justice of the Supreme Court

---

**End of Document**

shanna kaminski

No *Shepard's* Signal™
As of: May 10, 2018 7:12 PM Z

# *LG Funding, LLC v City N. Grill Corp.*

Supreme Court of New York, Nassau County

February 26, 2018, Decided

606786/2017

## Reporter

2018 N.Y. Misc. LEXIS 728 *; 2018 NY Slip Op 30372(U) **

[**1] LG FUNDING, LLC, Plaintiff, -against- CITY NORTH GRILL CORP. D/B/A RIVERDALE GRILL HOUSE AND IGOR BIRZH, Defendants. Index No.: 606786/2017

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

Counterclaim, affirmative defense, receivable, Funding

**Judges:** [*1] LEONARD D. STEINMAN, J.S.C.

**Opinion by:** LEONARD D. STEINMAN

## Opinion

## DECISION AND ORDER

## LEONARD D. STEINMAN, J.

In this action, plaintiff LG Funding, LLC, seeks to recover from defendants for an alleged breach of a February 8, 2017 Merchant Agreement between LG Funding and defendant City North Grill Corp. ("City North"). Pursuant to the terms of the agreement, City North sold and plaintiff purchased certain City North accounts receivable for a sum of $45,690. In exchange for the purchase, City North agreed to pay plaintiff 15% of its daily revenue until plaintiff received $64,879.80. Pursuant to the agreement, if a default were to occur, the $64,879.80 was due to plaintiff immediately. The individual defendant, Igor Birzh, guaranteed performance of City North.

Plaintiff contends that it performed under the contract but that City North breached its agreement by failing to pay amounts due. Plaintiff seeks $50,879 owed on the [**2] *receivables*, $150 for insufficient funds fees pursuant to the contract, and $2,500 for a default fee under the contract.

Plaintiff commenced this action with the filing of the Summons and Verified Complaint on July 12, 2017. Defendants appeared in the action and asserted various affirmative [*2] defenses and counterclaims. Defendants contend that the Merchant Agreement at issue is a *usurious loan*. Plaintiff seeks to dismiss the seventh affirmative defense and each counterclaim (one through six), all of which rely on the *usurious loan* argument, except as set forth below.

Pursuant to *CPLR § 3211(a)(7)*, the court "[w]hen assessing a motion to dismiss a complaint or counterclaim .... for failure to state a cause of action, the court must afford the pleading a liberal construction, accept as true all facts as alleged in the pleading, accord the pleader the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory." *V Groppa Pools, Inc. v. Massello, 106 A.D.3d 722, 964 N.Y.S.2d 563 (2d Dept. 2013); see also Dorce v. Gluck, 140 A.D.3d 1111, 34 N.Y.S.3d 501 (2d Dept. 2016).*

Notably, on a motion to dismiss, a party is not obligated to demonstrate evidentiary facts to support the allegations contained in the pleadings. *See Aurora **Loan** Servs, LLC. v. Cambridge Home Capital, LLC, 12 Misc.3d 1152[A], 819 N.Y.S.2d 208, 2006 NY Slip Op 50869[U] (Supreme Ct. Nassau Co. 2006).* And "[w]hether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss." *EBC I, Inc. v. Goldman Sachs & Co., 5 N.Y.3d 11, 19, 832 N.E.2d 26, 799 N.Y.S.2d 170 (2005); International Oil Field Supply Services Corp. v. Fadeyi, 35 A.D.3d 372, 825 N.Y.S.2d 730 (2d Dept. 2006).* "[A] court may consider any factual submissions made in opposition to a motion to dismiss in order to

2018 N.Y. Misc. LEXIS 728, *2; 2018 NY Slip Op 30372(U), **2

remedy pleading defects." *See Quinones v. Schaap, 91 A.D.3d 739, 937 N.Y.S.2d 262 (2d Dept. 2012)*; see also *CPLR 3211(c)*. "[T]he criterion is whether the proponent of the pleading has a cause of action, **[*3]** not whether he has stated one." *Leon v. Martinez, 84 N.Y.2d 83, 638 N.E.2d 511, 614 N.Y.S.2d 972 (1994)*.

Pursuant to the Penal Law, a party raising a claim of criminal *usury* must demonstrate that the lender "knowingly charges, takes or receives any money or other property as interest on the *loan* or forbearance of any money or other property, at a rate **[**3]** exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period." *Penal Law § 190.40*. "There is a strong presumption against the finding of *usury*." *Giventer v. Arnow, 37 N.Y.2d 305, 333 N.E.2d 366, 372 N.Y.S.2d 63 (1975)*. A "heavy burden rests upon the party seeking to impeach a transaction based upon *usury*. Thus, *usury* must be proved by clear and convincing evidence as to all its elements and *usury* will not be presumed." *Hochman v. LaRea, 14 A.D.3d 653, 789 N.Y.S.2d 300 (2d Dept. 2005)*, *see also Freitas v. Geddes Sav. Loan Assn., 63 N.Y.2d 254, 261, 471 N.E.2d 437, 481 N.Y.S.2d 665 (1984)*.

Plaintiff asserts first that the Merchant Agreement does not contain *usurious* terms but in all events it is not a *loan* but instead the purchase of accounts receivable and therefore would not be covered by the statute. Defendants contends that the transaction is a *loan* agreement and points to the Addendum page which defendants read to require it to pay $2,000 per week until the *loan* is paid. Defendants calculate that the interest rate could be 56% percent. However, a careful review of the agreement reflects that the most defendants **[*4]** could be responsible each week to pay is 15% of the weekly revenue — capped at $2,000. There is no term in the agreement that would require 56% interest as defendants would suggest. Therefore, even assuming this court were to determine that said agreement is a *loan*, which it does not, there is no evidence that the amount of interest charged is *usurious*.

In all events, there is no basis to deem the transaction a *loan* but instead, as courts in this county have repeatedly held, the transaction is an agreement to purchase *receivables* and not a *loan*. *See LG Funding, LLC v. Christenbury Eye Center, P.A., 2017 N.Y. Misc. LEXIS 4891, 2017 WL 6550160 (Sup. Ct. Nassau Co. 2017)*; *see also LG Funding, LLC v. Balsamo, 2017 N.Y. Misc. LEXIS 5116, 2017 WL 6806304 (Sup. Ct. Nassau Co. 2017)*; *Merchant Cash & Capital, LLC v. Yehowa*

*Med. Servs., Inc., 2016 N.Y. Misc. LEXIS 3065, 2016 WL 4458806 (Sup. Ct. Nassau Co. 2016)* ("Under the terms of the subject Agreement, if Seller/Defendant produces no daily revenue, no payments are required, and there is no absolute obligation of repayment.")

Based upon the determinations above, the Seventh Affirmative Defense and the First Counterclaim, Second Counterclaim, Third Counterclaim, Fifth Counterclaim and Sixth Counterclaim are dismissed.

**[**4]** The remaining counterclaim (Fourth Counterclaim) seeks a declaration that defendant Igor Birzh did not have the authority to bind City North and therefore City North is not bound by the agreement. This counterclaim is similar to the Second through Fourth Affirmative Defenses, **[*5]** which also challenge Birzh's authority to enter into the agreement and whether the agreement is binding on City North. Plaintiff has not sought to dismiss these affirmative defenses. Because City North may litigate the issue of whether it is bound by the agreement as a result of its affirmative defenses and because its obligations will not be in doubt after the merits of the affirmative defenses are determined --it will either be obligated to pay all of the sums under the contract or nothing --the Fourth Counterclaim is dismissed as mere surplusage.

Any relief requested not specifically addressed herein is denied.

This constitutes the Decision and Order of this court.

Dated: February 26, 2018

Mineola, New York

**ENTER:**

/s/ Leonard D. Steinman

**LEONARD D. STEINMAN, J.S.C.**

_____

End of Document

**①** Cited
As of: May 10, 2018 6:54 PM Z

# *LG Funding, LLC v Christenbury Eye Ctr., P.A.*

Supreme Court of New York, Nassau County

December 7, 2017, Decided; December 14, 2017, Entered

606785/17

**Reporter**
2017 N.Y. Misc. LEXIS 4891 *; 2017 NY Slip Op 32609(U) **

[**1] LG FUNDING, LLC, Plaintiff, -against- CHRISTENBURY EYE CENTER, P.A., and JONATHAN CHRISTENBURY a/k/a JONATHAN DAVID CHRISTENBURY, Defendants. INDEX # 606785/17

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

weekly, *Receivables*, contingency, Merchant, legal rate of interest, terms of the agreement, *usurious loan*, no revenue, Defendants', forbearance, collected, provides, *usurious*, default, equaled, lender, rests

**Judges:** [*1] PRESENT: HON. JACK L. LIBERT, J.S.C.

**Opinion by:** JACK L. LIBERT

## Opinion

Defendants move for an order dismissing the complaint on the ground that the transaction at bar constituted a *usurious loan*.

On February 1, 2017, plaintiff and defendant, Christenbury Eye Center, P.A. ("Eye Center") entered into an agreement entitled "Merchant Agreement" (the "Agreement"). Under the terms of the Agreement, Eye Center sold and plaintiff purchased Eye Center's accounts receivable and other sources of revenue (collectively "**Receivables**") for the sum of $100,890.00. Eye Center represented that the **Receivables**, if fully collected equaled the sum of $142,254.90 ("Purchase Price"). The Purchase Price was to be made in weekly installments each in an amount equal to 15% of the Eye

Center's weekly revenues. There was no minimum weekly amount; so if there was no revenue, no payment was required. In the event of a default the full uncollected Purchase Price accelerated, becoming immediately due and payable. Defendant Christenbury personally guaranteed all of Eye Center's obligations under the terms of the Agreement. Plaintiff alleges that defendants defaulted in performance under the Agreement by failing to remit the 15% of the weekly [*2] revenues and breaching other covenants and warranties.

[**2] A defendant raising the defense of criminal *usury* must prove that the lender: 1) knowingly charged, took or received; 2) annual interest exceeding 25%; 3) on a *loan* or forbearance (*Penal Law Section 190.40*). The fundamental element of *usury* is the existence of a *loan* or forbearance of money. Where there is no *loan* there can be no *usury* (*Seidel v. 18 E. 17th St. Owners, Inc., 79 NY2d 735, 744, 598 N.E.2d 7, 586 N.Y.S.2d 240 [1992]*; *Feinberg v. Old Vestal Rd. Assoc. Inc., 157 AD2d 1002, 550 N.Y.S.2d 482 [3rd Dept. 1990]*). In determining whether a transaction is *usurious*, the law looks not to its form, but its substance, or real character (see *Min Capital Corp. Retirement Trust v. Pavlin, 88 AD3d 666, 930 N.Y.S.2d 475 [2d Dept 2011]*; *O'Donovan v. Galinski, 62 AD3d 769, 878 N.Y.S.2d 443 [2d Dept. 2009]*). "There is a strong presumption against the finding of *usury*" (*Giventer v Arnow, 37 NY2d 305, 309, 333 N.E.2d 366, 372 N.Y.S.2d 63 [1975]*) and a "heavy burden rests upon the party seeking to impeach a transaction based upon *usury*. Thus, *usury* must be proved by clear and convincing evidence as to all its elements and *usury* will not be presumed" (*Hochman v. LaRea, 14 AD3d 653, 789 N.Y.S.2d 300 [2d Dept 2005]*; *Freitas v Geddes Say. & Loan Assn, 63 NY2d 254, 471 NE2d 437, 481 NYS2d 665 [1984]*; *Lehman v. Roseanne Investors Corp., 106 A.D.2d 617, 483 N.Y.S.2d 106 [2d Dept 1984]*).

Unless a principal sum advanced is repayable absolutely, the transaction is not a *loan* (*Rubenstein v*

2017 N.Y. Misc. LEXIS 4891, *2; 2017 NY Slip Op 32609(U), **2

*Small, 273 AD 102, 75 N.Y.S.2d 483 [1st Dept 1947])*. Where payment or enforcement rests on a contingency, the contract is valid even though it provides for a return in excess of the legal rate of interest (*Kelly, Grossman & Flanagan, LLP v Quick Cash, Inc., 35 Misc 3d 1205[A], 950 N.Y.S.2d 723, 2012 NY Slip Op 50560[U] [Sup Ct Suffolk County 2012]*; *Professional Merchant Advance Capital, LLC v Your Trading Room, LLC, 2012 N.Y. Misc. LEXIS 6757, 2012 WL 12284924, at *5 [Sup Ct, Suffolk County 2012]*; *see also Lehman v Roseanne Investors Corp., 106 AD2d at 617*, supra ["**loan** is not **usurious** merely because there is a possibility that the lender will receive more than the legal rate of interest"). **[*3]**

Defendants' point to a page of the Agreement entitled "Addendum." According to defendants the terms of the Addendum make the transaction a **loan**. Defendants claim that the Addendum could be read to require Eye Center to pay $6,000.00 per week until the $142,254.90 was paid off irrespective of the weekly revenue amount. By calculating payment of the difference between the Purchase Price and the potential collection of the amount of the **Receivables** over the 24 months it would take for payment of the Purchase Price, defendants impute an interest rate of 89% per annum. Defendants argue that the Agreement constitutes a **usurious loan** rather than a purchase and sale of assets and assert the defense of criminal **usury**.

The court disagrees. The main portion of the Agreement provides that defendants were to pay a specified percentage (or 15%) of weekly revenues. The Addendum modifies the payment provision stating that if the 15% equals more than $6,000.00 in any given week, then the Eye Center need not pay any sum **[**3]** *in excess* of $6,000.00. The Addendum is clear and unambiguous contrary to defendants attempt to characterize the phrase containing the words "specified amount" as uncertain in meaning, **[*4]** because that phrase is not a defined term.

The Agreement does not require *any* minimum payment to be made by the merchant. Payments are made from revenues, if any. Plaintiff assumed the risk that defendant would have no revenues. Plaintiff's ability to receive payment was contingent upon the success or failure of defendants' business. The transaction set forth by the Agreement was not a **loan**. Payments were based on a contingency. **Usury** laws do not apply.

ORDERED, the motion is **denied**. The parties shall appear for a Preliminary Conference on January 4,

2018, Lower Level, Supreme Court, Nassau County, 100 Supreme Court Drive, Mineola, NY 11501.

**ENTER**

DATED: December 7, 2017

/s/ Jack L. Libert

**HON. JACK L. LIBERT**

**J.S.C.**

_____

**End of Document**

No *Shepard's* Signal™
As of: May 10, 2018 4:57 PM Z

# *LG Funding, LLC v Snowstar, Inc.*

Supreme Court of New York, Nassau County

December 7, 2017, Decided; December 12, 2017, Entered

606811/17

**Reporter**
2017 N.Y. Misc. LEXIS 5190 *; 2017 NY Slip Op 32741(U) **

[**1] LG FUNDING, LLC, Plaintiff, - against - SNOWSTAR, INC. d/b/a BJ ADAMS AND COMPANY, INC., MICHAEL ADAMS a/k/a MICHAEL BRYSON ADAMS and BARBARA ADAMS a/k/a BARBARA ANN ADAMS, Defendants. Index No.: 606811/17

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

Merchant, *receivables*, summary judgment, documentary evidence, issue of fact, matter of law, Affirmation, repayment, parties, issues, conclusively, defendants', *usurious*, Funding, accounts receivable, allegations, attorney's, contingent, terms

**Judges:** [*1] PRESENT: HON. DENISE L. SHER, Acting Supreme Court Justice.

**Opinion by:** DENISE L. SHER

## Opinion

Upon the foregoing papers, it is ordered that the motion is decided as follows:

Plaintiff moves, pursuant to *CPLR §§ 3211(a)(1)* and *(7)*, for an order dismissing defendants' affirmative defense and counterclaim; and moves, pursuant to *CPLR § 3212*, for an order granting it summary judgment. Defendants oppose the motion.

This breach of contract action was commenced with the filing and service of a Summons and Verified Complaint on or about July 12, 2017. *See* Plaintiff's Affirmation in Support Exhibit D. Issue was joined on or about August 14, 2017. *See* Plaintiff's Affirmation in Support Exhibit

[**2] J.

Joseph Lerman ("Lerman"), Managing Member of plaintiff corporation, submits, in pertinent part, that "[o]n December 28, 2016, LG and Snowstar entered into a written Merchant Agreement, ..., whereby Snowstar sold LG $214,263.80 ('Purchased Amount') of Snowstar's accounts, contract rights, and other obligations arising from or relating to the payment of monies from Snowstar's customers and other third party payors ('*Receivables*') for the sum of $150,890.00 ('Purchase Price'), to be paid to LG from 15% of Snowstar's daily revenue, with the payments to LG to [*2] be capped at $4,865.00 per week. Snowstar agreed that in the event of its default under the contact, the full uncollected Purchased Amount plus all fees due under the Merchant Agreement would become immediately due and payable in full to LG. Michael and Barbara executed guarantees of performance of all the representations, warranties, and covenants made by Snowstar in the Merchant Agreement.... On December 29, 2016, LG paid Snowstar the Purchase Price.... Snowstar breached the Merchant Agreement by defaulting on its representations and warranties to LG under the Merchant Agreement by failing to direct Snowstar's payments to LG, by blocking LG's access to a designated bank account ('Designated Account') from which Snowstar agreed to permit LG to withdraw *Receivables*, by failing to deposit *Receivables* into the Designated Account, by disposing of Snowstar's assets without LG's prior express written consent, and/or by depositing *Receivables* into a bank account other than the Designated Account. LG held Snowstar in breach of the Merchant Agreement on April 13, 2017.... Snowstar owes LG $146,153.80 of the Purchased Amount. Snowstar owes LG $2,500 for a default fee. In Appendix A to the Merchant [*3] Agreement, Snowstar agreed to pay LG this amount if Snowstar would default under the agreement.... Snowstar owes LG $50.00 for Not [**3] Sufficient Funds ('NSF') fees. In Appendix A to the Merchant Agreement, Snowstar agreed to pay LG a $50 NSF fee for each instance in which a withdrawal by LG

2017 N.Y. Misc. LEXIS 5190, *3; 2017 NY Slip Op 32741(U), **3

from the Designated Account would be rejected.... In total, Snowstar owes LG $148,703.80 under the Merchant Agreement. LG requests $37,175.95 for its reasonable attorney's fees. The Merchant Agreement contains a provision that I am advised requires Snowstar to pay LG's reasonable attorney's fees if LG prevails in this action." *See* Plaintiff's Lerman Affirmation in Support Exhibits A-C; Plaintiff's Rosen Affirmation in Support.

Counsel for plaintiff argues that defendants' affirmative defenses and counterclaims should be dismissed because the Merchant Cash Advance that is the subject of this action is a legal transaction for the purchase of *receivables* that is not a *loan* and is not *usurious*. Counsel asserts that, "[a] merchant cash advance ('MCA') is a specialized form of factoring in which a merchant sells its future *receivables* for a discounted amount is *(sic)* paid up front. The advantage to an MCA **[*4]** transaction is that it typically provides merchants with access to funds much faster than applying for a traditional *loan* li-om a lending institution. An MCA agreement should be upheld as a transaction for the sale of account *receivables* and not as a *loan* subject to *usury* laws where the money advanced to the merchant is not repayable in the absolute."

Counsel for plaintiff adds that, "[h]ere, the MCA agreement is complete, clear, and unambiguous on its face and is entitled to enforcement according to the plain meaning of its terms. The language of the MCA agreement evidences a clear intent by the parties to enter into a transaction for the purchase of *receivables* and not a *loan*. The MCA agreement itself states that the transaction is not intended to be a *loan*. There is no indication that Defendants believed that the MCA agreement was a *loan* or that they were paying interest thereunder. The conduct of the **[**4]** parties entering into the MCA agreement further shows that the parties intended to enter into a transaction for the purchase of *receivables* because Plaintiff fully performed under the *(sic)* by paying for the *receivables* and the obligor Defendant partially performed by delivering Plaintiff **[*5]** part but not all of the *receivables*. There is no indication that Defendants objected to the terms of the MCA agreement. In short, there is nothing to rebut the presumption that the MCA agreement is enforceable. The MCA agreement is missing several material terms that typically define a *loan* of money. There is no promissory note. There is no maturity date. The amount owed never increases with time. There are no scheduled payments or a fixed repayment term. The guarantee is no broader than the obligations under the

MCA agreement, and the guarantor's payment requirements are no greater than that of the merchant's. The money advanced by Plaintiff is not repayable in the absolute. Defendants' payments under the MCA agreement were wholly contingent on the performance of their own business. Plaintiff assumed the risk that there would be no *receivables* and therefore no payment. Attempting to calculate a corresponding interest rate for the transaction would require unwarranted speculation.... The express language of the MCA agreement, the attendant circumstances, and the business relationship between the parties establishes that the parties intended the MCA agreement to constitute a purchase **[*6]** of *receivables* and not a *loan*." *See* Plaintiff's Lerman Affirmation in Support Exhibits A and K-O.

In opposition to the motion, counsel for defendants argues that plaintiff's motion to dismiss the affirmative defenses and counterclaims should be denied because plaintiff failed to establish that the Merchant Cash Advance was not a *loan* and not *usurious*. Counsel asserts, in pertinent part, that, "[t]o determine whether a transaction is an actual sale versus a *loan* coupled with a security interest, the Court must look at the substance of the relationship between [the parties], and not simply the labels attached to the transaction.' [citation omitted].... Where a **[**5]** lender purchases accounts *receivables*, the lender rather than the borrower bears the risk of non-performance. Where the lender only holds a security interest in a *loan*, the borrower remains liable for the debt and bears the risk of non-payment.... Here, Plaintiff never undertook any action under the agreement to assume any risk.... Plaintiff attempts to mischaracterize the terms of the underlying agreement as a 'Merchant Agreement' in order to avoid complying with New York lending and *usury* laws.... Thus, although the form of this **[*7]** Agreement does not exactly resemble a *loan*, the **unconditional and absolute promise to repay** the cash advances is a key attribute that makes this Agreement a *loan* rather than a purchase of future accounts *receivables*."

Counsel for defendants further argues that, "[p]laintiff's motion should also be denied because (1) there are triable issues of material fact regarding the alleged breach of contract; (2) there are disputable material facts denying Plaintiff's right to attorney's fees; and (3) there are disputable material facts concerning the validity of the individual guarantees. Here, there can be no breach of contract if the underlying agreement of a criminally *usurious loan* in the guise of an agreement for the purchase of accounts *receivables*. As asserted

2017 N.Y. Misc. LEXIS 5190, *7; 2017 NY Slip Op 32741(U), **5

previously, here, Plaintiff attempts to mischaracterize the terms of the underlying agreement as a 'Merchant Agreement' in order to avoid complying with New York lending and *usury* laws. When determining whether a transaction constitutes a *usurious loan* it must be 'considered in its totality and judged by its real character, rather than by the name, color, or form which the parties have seen fit to give it.' [citation omitted]. It [*8] is well settled that the maximum annual interest rate that may be charged for a *loan* or forbearance of any money, goods, or things, is 16% and any interest rate charged in excess of this, is a civil *usury*. [citation omitted]. In contrast, under *New York Penal Law § 190.40*, '[a] person is guilty of criminal *usury* in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other [**6] property as interest on the *loan* or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.' [citation omitted]. Generally, corporations are barred from asserting the *usury* defenses, however, where *GOL § 5-521(3)* does not apply, a corporation can raise the defense of criminal *usury*. [citation omitted]. In addition, where a guarantor cannot use a *usury* defense because the corporation is precluded from using a civil *usury* defense, if the interest rate is so egregious, the guarantor and corporate entity can avoid itself of the defense of the criminal *usury*. [citation omitted].... For those reasons, there is, at the least, a factual dispute regarding whether the underlying agreement here [*9] was truly a sale of accounts *receivables* or in fact a criminally *usurious* loan."

*CPLR § 3211(a)(1)* states that "[a] party may move for judgment dismissing one or more causes of action asserted against him on the ground that...a defense is founded upon documentary evidence." To obtain dismissal of a complaint pursuant to *CPLR § 3211(a)(1)*, a defendant must submit documentary evidence which "utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law." *Goshen v. Mutual Life Ins. Co. of N.Y., 98 N.Y.2d 314, 774 N.E.2d 1190, 746 N.Y.2d 858 (2002)* citing *Leon v. Martinez, 84 N.Y.2d 83, 638 N.E.2d 511, 614 N.Y.S.2d 972 (1994)*. An application predicated upon this section of law will be granted only upon a showing that the "documentary evidence resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim." *Fontanetta v. John Doe 1, 73 A.D.3d 78, 898 N.Y.S.2d 569 (2d Dept. 2010)* quoting *Scadura v. Robillard, 256 A.D.2d 567, 683 N.Y.S.2d 108 (2d Dept. 1998)*. "[T]o be considered documentary evidence, it

must be unambiguous and of undisputed authenticity." *Fotanetta v. John Doe 1, supra,* citing SIEGEL, PRACTICE COMMENTARIES, MCKINNEY'S CONS LAWS OF NY, BOOK 7B, *CPLR 3211*:10 pp. 21-22. "[T]hat is, it must be 'essentially unassailable.'" *Torah v. Dell Equity, LLC, 90 A.D.3d 746, 935 N.Y.S.2d 33 (2d Dept. 2011)* [**7] *quoting Suchmacher v. Manana Grocery, 73 A.D.3d 1017, 900 N.Y.S.2d 686 (2d Dept. 2010)*.

A complaint may be dismissed pursuant to *CPLR § 3211(a)(1)*, based on documentary evidence, only if the factual allegations are definitively contradicted by the evidence or a defense is conclusively established. *See Yew Prospect v. Szulman, 305 A.D.2d 588, 759 N.Y.S.2d 357 (2d Dept. 2003)*. A motion to dismiss [*10] based on documentary evidence may be granted only where such documentary evidence utterly refutes the plaintiffs' factual allegations, resolves all factual issues as a matter of law and conclusively disposes of the claims at issue. *See Yue Fung USA Enters., Inc. v. Novelty Crystal Corp., 105 A.D.3d 840, 963 N.Y.S.2d 678 (2d Dept. 2013)*. In sum, the analysis is two-pronged - the evidence must be documentary and it must resolve all the outstanding factual issues at bar.

"In reviewing a motion to dismiss pursuant to *CPLR § 3211(a)(7)*, "'the court will accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory.'" *Mills v. Gardner, Tompkins, Terrace, Inc., 106 A.D.3d 885, 965 N.Y.S.2d 580 (2d Dept. 2013)* quoting *Matter of Walton v. New York Slate Dept. of Correctional Servs., 13 N.Y.3d 475, 921 N.E.2d 145, 893 N.Y.S.2d 453 (2009)* quoting *Nonnon v. City of New York, 9 N.Y.3d 825, 874 N.E.2d 720, 842 N.Y.S.2d 756 (2007)*; *ABN AMRO Bank, N.V v. MBIA Inc., 17 N.Y.3d 208, 952 N.E.2d 463, 928 N.Y.S.2d 647 (2011)*. The task of the Court on such a motion is to determine whether, accepting the factual averment of the complaint as true, plaintiff can succeed on any reasonable view of facts stated. *See Campaign for Fiscal Equity v. State of New York, 86 N.Y.2d 307, 655 N.E.2d 661, 631 N.Y.S.2d 565 (1995)*. In analyzing them, the Court must determine whether the facts as alleged fit within any cognizable legal theory *(see Sokoloff v. Harriman Estates Dev. Corp., 96 N.Y.2d 409, 754 N.E.2d 184, 729 N.Y.S.2d 425 (2001))*, not whether plaintiff can ultimately establish the truth of the allegations. [**8] *See 219 Broadway Corp. v. Alexander's, Inc., 46 N.Y.2d 506, 387 N.E.2d 1205, 414 N.Y.S.2d 889 (1979)*. The test to be applied is whether the complaint gives sufficient notice of the transactions

2017 N.Y. Misc. LEXIS 5190, *10; 2017 NY Slip Op 32741(U), **8

or occurrences intended [*11] to be proved and whether the requisite elements of any cause of action known to our law can be discerned from the factual averments. *See Treeline 990 Stewart Partners, LLC v. RAIT Atria, LLC, 107 A.D.3d 788, 967 N.Y.S.2d 119 (2d Dept. 2013)*. However, bare legal conclusions are not presumed to be true. *See Goel v. Ramachandran, 111 A.D.3d 783, 975 N.Y.S.2d 428 (2d Dept. 2013); Felix v. Thomas R. Stachecki Gen. Contr., LLC, 107 A.D.3d 664, 966 N.Y.S.2d 494 (2d Dept. 2013)*.

It is well settled that the proponent of a motion for summary judgment must make a *prima facie* showing of entitlement to judgment as a matter of law by providing sufficient evidence to demonstrate the absence of material issues of fact. *See Sillman v. Twentieth Century-Fox Film Corp., 3 N.Y.2d 395, 144 N.E.2d 387, 165 N.Y.S.2d 498 (1957); Alvarez v. Prospect Hospital, 68 N.Y.2d 320, 501 N.E.2d 572, 508 N.Y.S.2d 923 (1986); Zuckerman v. City of New York, 49 N.Y.2d 557, 404 N.E.2d 718, 427 N.Y.S.2d 595 (1980); Bhatti v. Roche, 140 A.D.2d 660, 528 N.Y.S.2d 1020 (2d Dept. 1988)*. To obtain summary judgment, the moving party must establish its claim or defense by tendering sufficient evidentiary proof, in admissible form, sufficient to warrant the court, as a matter of law, to direct judgment in the movant's favor. *See Friends of Animals, Inc. v. Associated Fur Mfrs., Inc., 46 N.Y.2d 1065, 390 N.E.2d 298, 416 N.Y.S.2d 790 (1979)*. Such evidence may include deposition transcripts, as well as other proof annexed to an attorney's affirmation. *See CPLR § 3212 (b); Olan v. Farrell Lines Inc., 64 N.Y.2d 1092, 479 N.E.2d 229, 489 N.Y.S.2d 884 (1985)*.

If a sufficient *prima facie* showing is demonstrated, the burden then shifts to the non-moving party to come forward with competent evidence to demonstrate the existence of a material issue of fact, the existence of which necessarily precludes the granting of summary judgment and necessitates a trial. *See Zuckerman v. City of New York, supra*. When considering a [**9] motion for summary judgment, the function of the court [*12] is not to resolve issues but rather to determine if any such material issues of fact exist. *See Sillman v. Twentieth Century-Fox Film Corp., supra*. Mere conclusions or unsubstantiated allegations are insufficient to raise a triable issue. *See Gilbert Frank Corp. v. Federal Ins. Co., 70 N.Y.2d 966, 520 N.E.2d 512, 525 N.Y.S. 2d 793 (1988)*.

Further, to grant summary judgment, it must clearly appear that no material triable issue of fact is presented. The burden on the court in deciding this type of motion

is not to resolve issues of fact or determine matters of credibility, but merely to determine whether such issues exist. *See Barr v. Albany County, 50 N.Y.2d 247, 406 N.E.2d 481, 428 N.Y.S.2d 665 (1980); Daliendo v. Johnson, 147 A.D.2d 312, 543 N.Y.S.2d 987 (2d Dept. 1989)*.

"The elements of a cause of action to recover damages for breach of contract are (1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages." *Kausal v. Educational Prods. Info., 105 A.D.3d 909, 964 N.Y.S.2d 550 (2d Dept. 2013); Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 83 A.D.3d 804, 921 N.Y.S.2d 260 (2d Dept. 2011); JP Morgan Chase v. J.H. Elec. of N.Y., Inc., 69 A.D.3d 802, 893 N.Y.S.2d 237 (2d Dept. 2010); Furia v. Furia, 116 A.D.2d 694, 498 N.Y.S.2d 12 (2d Dept. 1986)*.

"In New York, there is a presumption that a transaction is **not usurious**. As a result, claims of *usury* must be proven by clear and convincing evidence, a much higher standard than the usual preponderance. [citation omitted]. In determining whether a transaction is a *loan* or not, the Court must examine whether or not defendant is absolutely entitled to repayment under all circumstances. 'For a true *loan* it is essential to provide for repayment absolutely and at all [*13] events or that the principal in some way be secured as distinguished from being put in hazard.' [citation omitted]. Many trial courts have examined similar [merchant] agreements in the last several [**10] years, and have largely determined that most of them are not *loans*, but purchases of **receivables**. [citations omitted]." *K9 Bytes, Inc. v. Arch Capital Funding, LLC, 56 Misc. 3d 807, 57 N.Y.S.3d 625 (Supreme Court Westchester County 2017)* citing *Giventer v. Arnow, 37 N.Y.2d 305, 333 N.E.2d 366, 372 N.Y.S.2d 63 (1975)* and *quoting Rubenstein v. Small, 273 A.D. 102, 75 N.Y.S.2d 483 (1st Dept. 1947)*.

The Court in *K9 Bytes, Inc. v. Arch Capital Funding, LLC, supra*, found that there are certain factors that a court should look for to see if repayment is absolute or contingent. "The first, and the one cited by each and every court that found that the transaction was not a *loan*, is whether or not there is a reconciliation provision in the agreement. The reconciliation provisions allow the merchant to seek an adjustment of the amounts being taken out of its account based on its cash flow (or lack thereof).... If there is no reconciliation provision, the agreement may be considered a *loan*.... The next provision that is deemed quintessential is whether the

2017 N.Y. Misc. LEXIS 5190, *13; 2017 NY Slip Op 32741(U), **10

agreement has a finite term or not. If the term is indefinite, then it is consistent with the contingent nature of each and every collection of future sales proceeds under the contract.' [citation omitted]. This is because defendants' 'collection [*14] of sales proceeds is contingent upon [plaintiffs'] actually generating sales and those sales actually resulting in the collection of revenue.'" *K9 Bytes, Inc. v. Arch Capital Funding, LLC, supra,* quoting *IBIS Capital Group, LLC v. Four Paws Orlando, LLC, 2017 N.Y. Misc. LEXIS 884, 2017 WL 1065071 (Supreme Court, Nassau County, March 10, 2017).*

Having weighed these factors, the Court finds that the Merchant Agreement in the instant action cannot be considered a **loan** as a matter of law. Under no circumstances could plaintiff be assured of repayment, because the subject Merchant Agreement is contingent on defendants' success and the term is indefinite. *See* Plaintiff's Affirmation in Support Exhibit A; *K9 Bytes, Inc. v. Arch Capital Funding, LLC, supra; [**11] IBIS Capital Group, LLC v. Four Paws Orlando, LLC, supra.*

Therefore, based upon the evidence and legal arguments made in the papers before it, the Court finds that plaintiff has made a *prima facie* showing of entitlement to judgment as a matter of law by providing sufficient evidence to demonstrate the absence of material issues of fact with respect to its claims.

Since plaintiff demonstrated *prima facie* entitlement to summary judgment, the burden shifts to defendants to demonstrate an issue of fact which precludes summary judgment. *See Zuckerman v. City of New York, supra.*

The Court finds that defendants failed to demonstrate an issue of fact which precludes summary judgment.

Accordingly, based upon the above, plaintiff's [*15] motion, pursuant to *CPLR §§ 3211(a)(1)* and *(7),* for an order dismissing defendants' affirmative defense and counterclaim; and, pursuant to *CPLR § 3212,* for an order granting it summary judgment, is hereby **GRANTED**. And it is further

**ORDERED** that plaintiff is directed to submit to the clerk a judgment against defendants, jointly and severally, in the sum of $148,703.80, with interest thereon from April 13, 2017, reasonable attorney's fees in the sum of $37,175.95, plus costs and disbursements of this action.

This constitutes the Decision and Order of this Court.

**ENTER:**

/s/ Denise L. Sher

**DENISE L. SHER, A.J.S.C.**

Dated: Mineola, New York

December 7, 2017

shanna kaminski

No *Shepard's* Signal™
As of: May 10, 2018 7:29 PM Z

# *LG Funding, LLC v Grace Plastics, Inc.*

Supreme Court of New York, Nassau County

December 11, 2017, Decided

606948-17

**Reporter**
2017 N.Y. Misc. LEXIS 5195 *; 2017 NY Slip Op 32750(U) **

[**1] LG FUNDING, LLC, Plaintiff, - against - GRACE PLASTICS, INC. and HAROLD JOHNSON a/k/a HAROLD J. JOHNSON, Defendants. Index No.: 606948-17

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

Merchant, *receivables*, parties, affirmative defense, summary judgment, defendants', guarantor, counterclaims, obligations, warranties, covenants, guaranty, attorney's fees, issue of fact, directing, damages, terms

**Judges:** [*1] PRESENT: HON. JEROME C. MURPHY, Justice.

**Opinion by:** JEROME C. MURPHY

## Opinion

### DECISION AND ORDER

PRELIMINARY STATEMENT

Plaintiff brings this application for an Order, pursuant to *CPLR § 3211(a)(1)* and *(7)*, dismissing defendants' affirmative defenses and counterclaims, and pursuant to *CPLR § 3212*, granting summary judgment and directing the entry of a judgment against defendants, jointly and severally, in the sum of $58,448.90 with interest thereon from June 8, 2017, plaintiff's reasonable attorney's fees in the aim of $14,612.23, and the costs and disbursements of this action, together with any such other and further relief as the Court deems just.

Defendant has submitted opposition to this application.

[**2] BACKGROUND

As best as can be determined from the papers submitted herein, the facts are as follows:

On December18, 2015, plaintiff, LG Funding, LLC ("LG") and defendant Grace Plastics, Inc. ("Grace") entered into a written Merchant Agreement pursuant to which Grace sold LG $79,503.90 ("Purchased Amount") of Grace's accounts, contrat rights, and other obligations arising from or relating to the payment of monies from Grace's customers and other third party payors ("*Receivables*") for the sum of $60,690.00 ("Purchase Price") to be paid to LG [**2] for 15% Grace's daily revenue with the payments to LG to be capped at $9,000.00 per month. Grace agreed that in the event of its default under the agreement, the full uncollected Purchased Amount plus all fees due under the Merchant Agreement would become immediately due and payable in full to LG.

Defendant Harold Johnson a/k/a Harold J. Johnson ("Johnson") executed a guarantee of performance of all the representations, warranties, and covenants made by Grace in the Merchant Agreement. In pertinent part, the Guaranty stated in pertinent part as follows:
* * *

Personal Guaranty of Performance: The undersigned Guarantor(s) hereby guarantees to LG, Merchant's performance of all of the representations, warranties, covenants made by Merchant [LG] in this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due (i) at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement, and (ii) at the time Merchant admits its

2017 N.Y. Misc. LEXIS 5195, *2; 2017 NY Slip Op 32750(U), **2

inability to pay its debts, or makes a general assignment for the benefits of [*3] creditors, or any proceeding shall be instituted by or against Merchant seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts.
* * *

On December 21, 2015, LG paid Grace the Purchase Price. On June 8, 2017, LG held Grace in breach of the Merchant Agreement.

[**3] On July 17, 2017, LG commenced this suit asserting four causes of action; to wit, (1) breach of contract; (2) reasonable attorneys' fees by Grace for breach of contract; (3) enforcement of guarantee; and (4) reasonable attorneys' fees by Johnson based upon the guarantee. In bringing this complaint, LG claims that Grace breached the Merchant Agreement by, *inter alia*:

- defaulting on its representations and warranties to LG under the Merchant Agreement and by failing to direct Grace's payments to LG;

- by blocking LG's access to a designated bank account ("Designated Account") from which Grace agreed to permit LG to withdraw **Receivables**;

- by failing to deposit **Receivables** into the Designated Account;

- by disposing of Grace's assets without LG's prior express written consent; and/or

- by depositing **Receivables** into a bank account other than the Designated Account. [*4]

On September 5, 2017, the defendants filed their answer asserting 19 affirmative defenses and three counterclaims. The affirmative defenses are as follows: (1) failure to state a claim upon which relief can be granted; (2) unclean hands; (3) Agreement is illegal and violates New York State and/or Ohio's **usury** and criminal laws; (4) Agreement is void as it violates public policy of the State of New York and/or Ohio; (5) Agreement is void and illegal due to the fact that the plaintiff is not a licensed lender under the law of the State of New York and/or Ohio; (6) unjust enrichment; (7) causes of action pleaded by plaintiff fails to accord properly with the UCC; (8) unconscionability; (9) defendants' alleged actions or omissions were not the proximate cause of any alleged injury, loss and/or damages incurred by plaintiff; (10) statute of frauds; (11) statute of limitations; (12) failure to mitigate damages;

(13) failure to satisfy a condition precedent; (14) fraud; (15) lack of consideration; (16) failure of consideration; (17) improper notice of breach; and, (18) breach of [**4] implied covenant of good faith and fair dealing. In their 19th affirmative defense, the defendants reserve the [*5] right to amend their Answer to assert additional affirmative defenses and to supplement, alter or change their Answer and affirmative defenses.

The defendants' three counterclaims are as follows: (1) fraud; (2) unjust enrichment; and (3) declaratory judgment that the Agreement is a *loan* in violation of New York State's **usury** laws and therefore unenforceable and/or void ab initio.

Upon the instant application, the plaintiff seeks an order pursuant to *CPLR § 3211(a)(1)* and *(7)*, dismissing defendants' affirmative defense and counterclaims, and pursuant to *CPLR § 3212*, granting summary judgment and directing the entry of a judgment against defendants, jointly and severally, in the sum of $58,448.90 with interest thereon from June 8, 2017, and plaintiff's reasonable attorney's fees in the sum of $14,612.23, and the costs and disbursements of this action.

DISCUSSION

The law is clear. On a motion to dismiss pursuant to *CPLR 3211(a)(7)*, the complaint is to be afforded a liberal construction, the facts alleged are presumed to be true, the plaintiff is afforded the benefit of every favorable inference, and the Court is to determine only whether the facts as alleged fit within any cognizable legal theory (*CPLR 3026*; *Thompson Bros. Pile Corp. v. Rosenblum, 121 AD3d 672, 993 N.Y.S.2d 353 [2nd Dept. 2014]*). "Whether the complaint will later [*6] survive a motion for summary judgment, or whether the plaintiff will ultimately be able to prove its claims, of course, plays no part in the determination of a prediscovery *CPLR 3211* motion to dismiss" (*Shaya B. Pac., LLC v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, 38 AD3d 34, 38, 827 N.Y.S.2d 231 [2nd Dept. 2006]*; *EBC I, Inc. v. Goldman, Sachs & Co., 5 NY3d 11, 19, 832 N.E.2d 26, 799 N.Y.S.2d 170 [2005]*). A motion to dismiss a complaint pursuant to *CPLR 3211(a)(1)* may be granted only where the documentary evidence utterly refutes the [**5] complaint's factual allegations, conclusively establishing a defense as a matter of law (*Goshen v. Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326, 774 N.E.2d 1190, 746 N.Y.S.2d 858 [2002]*; *Cavaliere v. 1515 Broadway Fee Owner, LLC, 150 AD3d 1190, 1191, 57 N.Y.S.3d 171 [2nd Dept.*

2017 N.Y. Misc. LEXIS 5195, *6; 2017 NY Slip Op 32750(U), **5

*2017])*.

This Court begins by noting that there is no dispute herein that the subject Merchant Cash Agreement was an agreement. That is, it was a contract. While the defendants submit herein that the MCA was in fact a *loan* agreement (rather than a purchase and sale agreement of defendants' *receivables*), there is no dispute that the MCA is entitled to enforcement according to the plain meaning of its terms. Indeed, the fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent (*Slatt v. Slatt, 64 NY2d 966, 967, 477 N.E.2d 1099, 488 N.Y.S.2d 645 [1985], rearg. denied 65 N.Y.2d 785, 482 N.E.2d 568, 492 N.Y.S.2d 1026 [1985]*). "The best evidence of what parties to a written agreement intend is what they say in their writing" (*Slamow v. Del Col, 79 NY2d 1016, 1018, 594 N.E.2d 918, 584 N.Y.S.2d 424 [1992]*). Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms [*7] (*see e.g., R/S Assoc. v. New York Job Dev. Auth., 98 NY2d 29, 32, 771 N.E.2d 240, 744 N.Y.S.2d 358 [2002], rearg. denied 98 N.Y.2d 693, 775 N.E.2d 1291, 747 N.Y.S.2d 411 [2002]; W.W.W. Assocs. v. Giancontieri, 77 N.Y.2d 157, 162, 566 N.E.2d 639, 565 N.Y.S.2d 440 [1990]*).

To that extent, and based upon a plain and simple reading of the MCA, this Court finds that the language of the MCA evidences a clear intent by the parties to enter into a transaction for the purchase of *receivables* and not a *loan*. Indeed, the Merchant Agreement itself states that the transaction is not intended to be a *loan*. Nor is there any indication on this record that the defendants believed that the Merchant Agreement was a *loan* or that they were paying interest thereunder.

In addition, this Court finds no evidence on this record that at any point did the defendants [**6] object to the terms of the Merchant Agreement. To the contrary, the conduct of the parties after entering into the Merchant Agreement evidences an intent by the parties to enter into a transaction for the purchase of *receivables* because not only did the plaintiff perform under the agreement by paying for the *receivables*, but the merchant (defendant) also partially performed under the Agreement by delivering to the plaintiff part (but not all) of the *receivables*.

Inasmuch as the defendants contend that said agreement is really a *loan*, this Court does not find this argument to be persuasive. [*8] Indeed, this Court cannot overlook the fact that if the parties truly intended this to be a *loan* transaction rather than a purchase and sale of *receivables*, the parties' failure to document several key and material terms that typically define a *loan*, renders it unenforceable as such. For instance, there is no promissory note. There is no maturity date. There are no scheduled payments or a fixed repayment term. The money advanced by the plaintiff is not repayable in the absolute. The merchants' payments under the MCA are wholly contingent upon the performance of its own business — indeed, it is apparent that the plaintiff assumed the risk that there would be no *receivables* and therefore no payment.

In the end, this Court finds that the express language of the Merchant Agreement, the attendant circumstances, and the business relationship between the parties, all establish that the parties intended the Merchant Agreement to constitute a purchase of *receivables* and not a *loan*.

Having determined that the subject transaction was a purchase and sale agreement rather than a *loan*, this Court herewith grants the plaintiff's instant application to dismiss the defendants' affirmative defenses and [*9] counterclaims each of which is predicated on the defendants' contention that this transaction was a *loan*.

In addition, this Court also grants the plaintiff's application for summary judgment, *inter [**7] alia*, directing the entry of a judgment against the defendants, jointly and severally in the sum of $58,448.90 with interest thereon from June 9, 2017;

The law is settled. Summary judgment is the "procedural equivalent of a trial" (*Falk v. Goodman, 7 NY2d 87, 91, 163 N.E.2d 871, 195 N.Y.S.2d 645 [1959]*), and, as such, it is a "drastic remedy" which should not be granted where there is any doubt as to the existence of a triable and "bona fide" issue of fact (*Rotuba Extruders v. Ceppos, 46 NY2d 223, 231, 385 N.E.2d 1068, 413 N.Y.S.2d 141 [1978]*). Ultimately, the purpose of the motion is to sift out evidentiary facts and determine from them whether an issue of fact exists (*Matter of Suffolk County Dept. of Social Servs. v. James M., 83 NY2d 178, 630 N.E.2d 636, 608 N.Y.S.2d 940 [1994]*). As such, "[i]n determining a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party" (*Stukas v. Streiter, 83 AD3d 18, 22, 918 N.Y.S.2d 176 [2nd Dept. 2011]; Pearson v. Dix McBride, LLC, 63 AD3d 895, 883 N.Y.S.2d 53 [2nd Dept. 2009]*).

"The essential elements of a cause of action to recover

2017 N.Y. Misc. LEXIS 5195, *9; 2017 NY Slip Op 32750(U), **7

damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant s breach of its contractual obligations, and damages resulting from the breach" (*Investment Retrievers, Inc. v. Fox, 150 AD3d 1090, 52 N.Y.S.3d 662 [2nd Dept. 2017]; see also, Gawrych v. Astoria Fed. Sav. & Loan, 148 AD3d 681, 48 N.Y.S.3d 450 [2nd Dept. 2017]; Meyer v. North Shore—Long Is. Jewish Health Sys., Inc., 137 AD3d 878, 879, 27 N.Y.S.3d 77 [2 Dept. 2016]; Carione v. Hickey, 133 AD3d 811, 20 N.Y.S.3d 157 [2nd Dept. 2015]).* As stated above, **[*10]** there is no issue of fact that the parties entered into a contract for the plaintiff to pay an up front sum to purchase the defendant's **receivables**, that the plaintiff performed its obligations by paying for the **receivables**, and that the defendant breached this agreement by failing to turn over the **receivables** to the plaintiff and otherwise breached the covenants and warranties made in the contract.

Similarly, the law surrounding the plaintiff's claim for a breach of a guaranty is clear. **[**8]** Execution of an unqualified guaranty, such as in the care at bar, supra, makes the guarantor personally liable for the obligations of an obligor under a contract to the same extent as the obligor (*Desiderio v. Devani, 24 AD3d 495, 497, 806 N.Y.S.2d 240 [2nd Dept. 2005]).* A *prima facie* entitlement to judgment as a matter of law on claims to recover damages by reason of a breach under the terms of a written guaranty is made upon proof of the existence of a primary obligation under a contract, the guarantee of such obligations by a guarantor and a default on the part of the obligor and the guarantor (*Valley Natl. Bank v. INI Holding, LLC, 95 AD3d 1108, 945 N.Y.S.2d 97 [2nd Dept. 2012]).* A waiver of defenses in a guarantee is enforceable as it does not violate public policy (*RMP Capital, Corp. v. Victor Jet LLC, 2013 NY Slip Op. 30875[U] [Sup. Ct. Suffolk 2013]*).

Here, there is no issue of fact of a primary obligation under the contract, the guarantee **[*11]** by the guarantor of performance of all the representations, warranties and covenants made by the obligor in the contract, and the breach of the contract and the guarantees. In addition, the guarantor agreed to waive defenses, presenting an insurmountable obstacle to overcome plaintiff's claims. Therefore, it is plain to this Court that the plaintiff is entitled to summary judgment on its breach of guaranty claims.

Similarly, this Court recognizes that "[u]nder the general rule, attorney's fees are incidents of litigation and a

prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule" (*Hooper Assoc. v. AGS Computers, Inc., 74 NY2d 487, 491, 548 N.E.2d 903, 549 N.Y.S.2d 365 [1989]* [internal citations omitted]). Here, the parties' contract specifically provided for reasonable attorney's fees. Therefore, that part of plaintiff's motion which seeks summary judgment on its reasonable attorneys' fees is also granted.

Notably, in opposition, the defendants have failed to produce any evidentiary proof, let alone **[**9]** in admissible form, sufficient to establish the existence of a material issue of fact requiring a trial.

Therefore, the plaintiff's application, for an Order, pursuant to *CPLR § 3211(a)(1)* and *(7)*, dismissing defendants' **[*12]** affirmative defenses and counterclaims, and pursuant to *CPLR § 3212*, granting summary judgment and directing the entry of a judgment against defendants, jointly and severally, is granted in its entirety.

The issue of the amount of plaintiff's judgment and the reasonable attorney's fees is respectfully referred to the Calendar Control Part (CCP) for hearing.

Subject to the approval of the Justice there presiding, and provided that a note of issue has been filed at least ten days prior thereto, this matter shall appear on the calendar of CCP for February 27, 2018 at 9:30 a.m.

A copy of this Order shall be served on the calendar clerk and accompany the note of issue when filed. The failure to file a note of issue or appear as directed may be deemed an abandonment of the claims giving rise to the hearing.

The directive with respect to a hearing is subject to the right of the Justice presiding in CCP to refer the matter to a Justice, Judicial Hearing Officer or a Court Attorney/Referee as he or she deems appropriate.

To the extent that requested relief has not been granted, it is expressly denied.

This constitutes the Decision and Order of the Court.

Dated: Mineola, New York

December 11, 2017

**ENTER:**

/s/ Jerome **[*13]** C. Murphy

2017 N.Y. Misc. LEXIS 5195, *13; 2017 NY Slip Op 32750(U), **9

**JEROME C. MURPHY**

**J.S.C.**

---

End of Document

No *Shepard's* Signal™
As of: May 10, 2018 7:01 PM Z

## *LG Funding, LLC v Branson Getaways, Inc.*

Supreme Court of New York, Nassau County

November 13, 2017, Decided

603695/17

**Reporter**
2017 N.Y. Misc. LEXIS 4381 *; 2017 NY Slip Op 32387(U) **

[**1]  LG FUNDING, LLC, Plaintiff, -against- BRANSON GETAWAYS, INC., d/b/a BRANSON GETAWAYS, JOHN WALLEN a/k/a JOHN LAWRENCE WALLEN II, and MICHELE WALLEN, Defendants. Index No. 603695/17

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

Merchant, *receivables*, pages, default

**Judges:** [*1] Present: Hon. Sharon M.J. Gianelli, J.S.C.

**Opinion by:** Sharon M.J. Gianelli

## Opinion

Motion by the attorney for the Defendants Branson Getaways, Inc. d/b/a Branson Getaways and John Lawrence Wallen II for an order pursuant to *CPLR § 5015(a)* vacating the default judgment is DENIED.

The facts are set forth in this Court's short form order dated July 19, 2017, entered by the Office of Nassau County Clerk on July 25, 2017.

Plaintiff LG Funding, LLC [LG] entered into a Merchant Agreement [Agreement] dated January 27, 2017, whereby Branson Getaways Inc. [Branson] sold LG $68,431.50 [the purchase amount] of Branson's accounts, contracts, and other obligations arising from or relating to the payment of monies from Branson's customers and other third party payors for the sum of $50,690.00 to be paid to LG from 15% of Branson's daily revenue. In the event of default, the full uncollected

Purchased Amount, plus all fees due under the Agreement would be due and payable in full to LG. Defendant John Wallen [Wallen] executed a Guarantee of the terms and conditions by Branson in the Agreement. On February 2, 2017, LG paid Branson the Purchase Price [$50,690.00]. The complaint alleges that Branson defaulted on the Agreement by failing to [*2] direct Branson's payments to LG, by blocking LG's access to a designated bank account [Designated Account] from which Branson agreed to permit LG to withdraw *receivables*, and by failing to deposit *receivables* into the Designated Account. LG declared Branson in breach of the Agreement on March 20, 2017.

[**2]  The verified complaint pleads the existence of the parties' contract, plaintiff's performance by paying the purchase price, the obligor's breath by failing to pay the specified percentage of the receivable to the Plaintiff and resulting damages. The Plaintiff established a *prima facie* entitlement to summary judgment.

Relief under *CPLR § 5015(a)* is available where the defendant can demonstrate a reasonable excuse for the failure to appear, and a showing of a meritorious defense. *See: DiLorenzo v. Dutton Lbr. Co., 67 N.Y.2d 138, 492 N.E.2d 116, 501 N.Y.S.2d 8; Szilaski v. Aphrodite Construction, 247 A.D.2d 532, 669 N.Y.S.2d 297.*

The Defendants have made a reasonable excuse for the failure to appear.

The Court will next consider whether the Defendants have raised a meritorious defense.

In support of the motion to vacate the default judgment the attorney for Defendants argue that Wallen never signed six (6) of the pages of the Agreement. Defendant asserts that signatures on pages 12, 14, 15, 16,17, and 18 of the Agreement are not that of Wallen [*3] and must have been forged by someone else. Further,

2017 N.Y. Misc. LEXIS 4381, *3; 2017 NY Slip Op 32387(U), **2

Defendant asserts Wallen never signed the Guaranty.

"It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree." *Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 403 (2d Cir. 2004)* [**3] . The rule is given in the Second Restatement of Contracts as follows: "(1) Where an offeree fails to reply to an offer, his silence and inaction operate as an acceptance... (a) Where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation." *Restatement (Second) of Contracts § 69* (1981). A comment explains that "The resulting duty is not merely a duty to pay fair value, but a duty to... perform according to the terms of the offer." *Id. cmt. b*.

Defendants had the opportunity to review all pages of the Agreement. This is evidenced by the fact that its fax timestamp was printed on top of every page of the Agreement. Each page of the Agreement listed the page number and total number of pages. There is a notice [*4] immediately preceding the signatures section of the Agreement advising the reader that the remaining pages are incorporated by reference, and Defendants admit that the signature on the first page is genuine. Wallen is bound by all pages of the document because he admits signing the first page, which incorporates the other pages by reference. Wallen is bound by the guarantee because he admits signing the tenth [10th] page of the Agreement acknowledging the guarantee. Defendants were aware of the terms of the contract and accepted its benefits by taking $50,690.00 from the Plaintiff and then repaying Plaintiff from the *receivables*. Defendants' forgery claim facts to demonstrate a meritorious, *See: Nirvana Int'l Inc. v. ADT Sec. Service, 881 F.Supp.2d 556 [S.D.N.Y. 2012]*.

Without citing any legal authority or provision in the Guaranty, the attorney for Wallen makes the conclusory statement that since the Guaranty is silent as to the method of [**4] service permitted, the Court lacks jurisdiction over the individual defendants. The first sentence of the Guaranty sates "The undersigned [Wallen] hereby guarantees to LG Merchant's performance of all of the representations, warrantees, covenants made by Merchant in this Agreement..." Therefore, Wallen is bound by any [*5] service provisions set forth in the Agreement.

The merchant cash advance [MCA] that is the subject of this action is a legal transaction for the purchase of *receivables* that is not a *loan* and is not *usurious*. An MCA is a specialized form of factoring in which a merchant sells its future *receivables* for a discounted amount paid upfront. The advantage to an MCA transaction is that it typically provides merchants such as Wallen access to funds much faster than applying for a traditional *loan* from a lending institution. The MCA agreement is complete, clear and unambiguous on its face and is entitled to enforcement according to the plain meaning of its terms.

Many trial courts have examined similar agreements in the last several years, and have largely determined that most are not *loans*, but purchases of *receivables*. *See: Merchant Cash & Capital, LLC v. Yehowa Med. Servs., Inc., 2016 N.Y. Misc. LEXIS 3065, 2016 WL 4458806 at *5 (Sup. Ct. Nassau Co. July 29, 2016)* [*6] ("Under the terms of the subject Agreement, if Seller/Defendant produces no daily revenue, no payments are required, and there is no absolute obligation of repayment. While the terms of payment provided for in the Agreement may be onerous, they do not involve a *loan* or forbearance of money, and are unaffected by civil or criminal *usury*."); [**5] *Professional Merchant Advance Capital, LLC v. Your Trading Room, LLC, 2012 N.Y. Misc. LEXIS 6757, 2012 WL 12284924 (Sup. Ct. Suff. Co. Nov. 28, 2012)* ("Upon review of the record adduced on this motion, the court finds that Waryn failed to establish that the subject agreement to purchase credit card *receivables* was a *loan* and not an agreement to purchase future *receivables* for a lump sum discounted purchase price payable in advance by the plaintiff in exchange for a contingent return.").

The facts in the within action can be distinguished from those cited by Defendants' attorney in *Merchant Funding Services LCC v. Volunteer Pharmacy, Inc., 55 Misc.3d 316, 44 N.Y.S.3d 876*. Unlike in Merchants Funding Services (*Id*), the Agreement in the within action does not fall under the exception of being disguised *loan* because the payment to Plaintiff is based on the *receivables* earned by the merchant. If the merchant would not make any money, then Plaintiff would not be entitled to any money. And if the merchant would only make a small amount of money, then Plaintiff would only be entitled to a small amount of money based on the specified percentage set forth in the Merchant Agreement. Here, Branson had *receivables* of $41,43.94 from February 2, 2017 to February 9, 2017, and Plaintiff was entitled to $6,215.99 based on the specified percentage of fifteen percent [15%] [*7]

2017 N.Y. Misc. LEXIS 4381, *7; 2017 NY Slip Op 32387(U), **5

but only took $1,940.00 on February 9, 2017. Branson subsequently had **_receivables_** of $31,066.28 from February 10, 2017 to February 16, 2017, and Plaintiff was entitled to $4,659.94 but again took only $1,940.00 on February 16, 2017.

The claimed defense of **_usury_** is without merit. Defendants have not established a meritorious defense to this action. The motion to vacate the default judgment and permit Defendants to litigate the claims is in all respects DENIED. *See:* **[**6]** *Merch. Cash & Capital LLC v. Edgewood Group, LLC, 2015 U.S. Dist. LEXIS 94018; 2015 WL 4451057 [S.D.N.Y. 2015]* also *Merchant Cash & Capital, LLC v. G&E Asian Am. Enter., Inc., 2016 N.Y. Slip Op. 31592[U]; 2016 N.Y. Misc. LEXIS 3067*.

This matter is referred to the Calendar Control Part (CCP) for a hearing on the issue of attorney's fees to the Plaintiff, to be held on December 6, 2017. The Plaintiff shall file and serve a Note of Issue, together with a copy of this Order, on all parties and shall serve copies of same, together with receipt of payment, upon the Calendar Clerk of this Court within ten (10) days of the date of this Order. The directive with respect to a hearing is subject to the right of the Justice presiding in CCP to refer the matter to a Justice, Judicial Hearing Officer, or a Court Attorney/Referee, as he or she deems appropriate.

This Decision is the Order of the Court.

ENTER: November 13, 2017

Mineola, New York **[*8]**

/s/ Sharon M.J. Gianelli

**Hon. Sharon M.J. Gianelli,**

Justice of the Supreme Court

**End of Document**

✦ Positive
As of: May 10, 2018 4:38 PM Z

# *Rapid Capital Fin., LLC v Natures Mkt. Corp.*

Supreme Court of New York, Westchester County

October 11, 2017, Decided

54646/2017

## Reporter

57 Misc. 3d 979 *; 66 N.Y.S.3d 797 **; 2017 N.Y. Misc. LEXIS 3978 ***; 2017 NY Slip Op 27340 ****

[****1] Rapid Capital Finance, LLC, Plaintiff, against Natures Market Corp and Gobran Nagi, Defendants.

**Notice:** THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING RELEASE OF THE FINAL PUBLISHED VERSION.
THIS OPINION IS UNCORRECTED AND SUBJECT TO REVISION BEFORE PUBLICATION IN THE PRINTED OFFICIAL REPORTS.

**Prior History:** *Rapid Capital Fin. v. Natures Mkt. Corp., 2017 NYLJ LEXIS 3036 (Oct. 11, 2017)*

## Core Terms

merchant, *receivables*, reconciliation, repayment, purchase agreement, counterclaim, defendants', debited, monthly

**Judges:** [***1] HON. TERRY JANE RUDERMAN, J.S.C

**Opinion by:** TERRY JANE RUDERMAN

## Opinion

EDITOR'S NOTE: This document reflects the format of the Official New York Appellate Division Reports.

[**798] [*980] Terry J. Ruderman, J.

The following papers were considered in connection with plaintiff's motion pursuant to *CPLR 3211* to dismiss certain affirmative defenses and the counterclaim asserted by defendants, and pursuant to *CPLR 3024(b)* to strike scandalous and irrelevant allegations from defendants' answer and counterclaim:

Plaintiff Rapid Capital Finance, LLC is a Florida LLC. On

November 30, 2016, plaintiff and defendants entered into an agreement denominated a Merchant Agreement, which provided for plaintiff's purchase from defendant Natures Market Corp. of future *receivables* with a face value of $38,100, for the purchase price of $30,000. In exchange for plaintiff's payment of the purchase price, Natures Market would turn over to plaintiff future *receivables*, through daily debits of $152.00 from Natures Market's bank account, which, according to the agreement, amounted to 9.1% of Natures Market's average daily sales. The agreement defines events of default, and provides that if a defined default occurs, the full uncollected purchase amount would be immediately due and payable to plaintiff, along with costs and attorneys fees. Individual defendant Gobran Nagi [***2] personally guaranteed the obligation.

Plaintiff's complaint alleges that defendants defaulted by blocking collection of further *receivables*, leaving a balance due of $30,288, along with interest, costs, and attorney's fees. It sues for breach of contract and guarantee, unjust enrichment, and attorney's fees. Defendants' answer asserts as a defense that the Merchant Agreement is unenforceable because it is actually a *loan* agreement rather than an agreement to purchase *receivables*, and as such, it is criminally *usurious* because calculations based on the agreement's repayment provisions establishes that the agreement actually imposes an annual interest rate of 127%. The counterclaim, on the same grounds, seeks a declaratory judgment so stating.

Plaintiff now moves pursuant to *CPLR 3211* to dismiss the affirmative defenses claiming *usury* and the counterclaim to the [**799] same effect, and pursuant to *CPLR 3024(b)* to strike allegedly scandalous and irrelevant allegations from defendants' answer.

*Analysis*

Initially, the branch of plaintiff's motion seeking to strike

57 Misc. 3d 979, *980; 66 N.Y.S.3d 797, **799; 2017 N.Y. Misc. LEXIS 3978, ***2; 2017 NY Slip Op 27340, ****1

scandalous and irrelevant allegations from defendants' answer pursuant to _CPLR 3024(b)_ is denied. The contention that the master agreement is a **_loan_** disguised as a purchase [***3] agreement is, and, as a **_loan_**, is **_usurious_**, is a legitimate legal position; it is neither scandalous nor irrelevant.

[*981] In moving to dismiss, _CPLR 3211(a)(1)_ and _(a)(7)_ may be used to seek dismissal of the counterclaim, while a party may move to dismiss a defense pursuant to _CPLR 3211(b)_ "on the ground that a defense is not stated or has no merit." "In reviewing a motion to dismiss an affirmative defense, the court must liberally construe the pleadings in favor of the party asserting the defense and give that party the benefit of every reasonable inference" (_Bank of NY v Penalver, 125 AD3d 796, 797, 1 N.Y.S.3d 825 [2d Dept 2015]_ [internal quotation marks and citations omitted]). "If there is any doubt as to the availability of a defense, it should not be dismissed" (_id._). Dismissal may be warranted under _CPLR 3211(a)(1)_ "if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (_Leon v Martinez, 84 NY2d 83, 88, 638 N.E.2d 511, 614 N.Y.S.2d 972 [1994]_). The question is whether the terms of the Merchant Agreement conclusively establishes the invalidity of the claim that the transaction was actually a **_loan_**, on terms that were criminally **_usurious_**.

Plaintiff relies, for its conclusive documentary evidence, on the merchant agreement itself, arguing that by its terms the agreement establishes as a matter of law that the transaction [***4] was not a **_loan_**, and therefore is not subject to the _usury loans_. "**_Usury_** laws apply only to **_loans_** or forbearances, not investments. If the transaction is not a **_loan_**, there can be no **_usury_**, however unconscionable the contract may be" (_Seidel v 18 East 17th St. Owners, Inc., 79 NY2d 735, 744, 598 N.E.2d 7, 586 N.Y.S.2d 240 [1992]_ [internal citations and quotation marks omitted]).

It is not dispositive that the agreement is not called a **_loan_**, and that it affirmatively states that it is not a **_loan_**. In _Qualis Care, L.P. v Everglades Regional Med. Ctr., Inc., (232 AD2d 323, 324, 648 N.Y.S.2d 580 [1st Dept 1996])_, the Court held that there was a question of fact as to whether an "agreement to 'purchase' defendant's accounts receivable was in fact a **_loan_**, disguised as a purchase." By calling a transaction a merchant agreement, a plaintiff "does not shield it from a judicial determination that such agreement contemplates a criminally **_usurious_**" transaction (_see Pearl Capital Rivis Ventures, LLC v RDN Constr., Inc., 54 Misc 3d 470, 41_ _N.Y.S.3d 397 [Sup Ct, Westchester County 2016]_). Since it is legally possible that a purported agreement to purchase **_receivables_** may in fact be a **_loan_**, the absence of a promissory note does not preclude the possibility that a merchant agreement is a **_loan_**.

[*982] "Purchases and sales of future **_receivables_** and sales proceeds are common commercial transactions expressly contemplated by the Uniform Commercial Code" (_IBIS Capital Group, LLC v Four Paws Orlando LLC, 2017 NY Slip Op 30477[U], 2017 NY Misc. LEXIS 884 [Sup Ct, Nassau County 2017]_). A number of trial-level decisions have considered and rejected arguments that [***5] agreements to purchase **_receivables_** were **_loans_** (_see e.g. IBIS Capital Group, [**800] LLC v Four Paws Orlando LLC, 2017 NY Slip Op 30477[U] [Sup Ct, Nassau County, 2017]; Merchant Cash & Capital, LLC v Yehowa Med. Servs., Inc., 2016 NY Slip Op 31590[U], at *5 [Sup Ct, Nassau County, 2016]; Merchant Cash & Capital, LLC v Ethnicity Inc., 2016 NY Slip Op. 32593[U] at *3-4, 2016 WL 7655827 at 2, 2016 NY Misc LEXIS 4856 at *3-4 [Sup Ct, [****2] Nassau County 2016]; Professional Merchant Advance Capital, LLC v Your Trading Room, LLC, 2012 NY Slip Op 33785[U], at *6 [Sup Ct, Suffolk County, 2012]_).

Other decisions have held those merchants' arguments to be valid, or at least possibly viable (_see e.g. Merchant Funding Servs., LLC v Volunteer Pharm., Inc., 55 Misc 3d 316, 44 N.Y.S.3d 876 [Sup Ct, Westchester County 2016]_). In _Professional Merch. Advance Capital, LLC v C Care Servs., LLC (2015 US Dist LEXIS 92035, *11, 2015 WL 4392081 [SD NY 2015])_, the Court "reserve[d] ruling on damages pending a supplemental submission from Plaintiff as to whether the Agreement — though nominally structured as a sale of accounts receivable — in fact violate[d] New York's criminal **_usury_** law." It noted that "[l]ooking beyond the form of [the] transaction and examin[ing] its substance, it could be argued that the Agreement, which obligates Defendants to make a minimum weekly payment irrespective of C Care's accounts receivable and subjects Plaintiff to no downside whatsoever aside from the risk that the borrower will fail to make the required payments, is in fact a **_loan_**." (_id. at *13_).

A useful and thorough analysis was recently provided by Justice Linda Jamison in _K9 Bytes, Inc. v Arch Capital Funding, LLC (56 Misc 3d 807, 816, 57 N.Y.S.3d 625 [Sup Ct, Westchester County 2017])_. That discussion explains that "[i]n determining whether a transaction is a **_loan_** or not, the court must examine whether or not defendant is absolutely entitled to repayment under all

57 Misc. 3d 979, *982; 66 N.Y.S.3d 797, **800; 2017 N.Y. Misc. LEXIS 3978, ***5; 2017 NY Slip Op 27340, ****2

circumstances. 'For a true *loan* it is essential to **[*983]** provide for repayment absolutely and at all events or that **[***6]** the principal in some way be secured as distinguished from being put in hazard'" (*K9 Bytes, 56 Misc 3d at 816*, quoting *Rubenstein v Small, 273 App Div 102, 104, 75 N.Y.S.2d 483 [1st Dept 1947]*.)

"[T]here are certain factors that a court should look for to see if repayment is absolute or contingent. The first, and the one cited by each and every court that found that the transaction was not a *loan*, is whether or not there is a reconciliation provision in the agreement. The reconciliation provisions allow the merchant to seek an adjustment of the amounts being taken out of its account based on its cash flow (or lack thereof). If a merchant is doing poorly, the merchant will pay less, and will receive a refund of anything taken by the company exceeding the specified percentage (which often can also be adjusted downward). If the merchant is doing well, it will pay more than the daily amount to reach the specified percentage" (*id.*).

Here, the parties' agreement contains such a reconciliation provision, which provides that

"RCF will debit the Specific Amount each period and upon receipt of the merchant's monthly bank statements to reconcile the merchant's account by either crediting or debiting the difference from or back to the merchant's bank account so that the amount debited per month **[***7]** equals the Specified Percentage. It is solely the merchant's responsibility to send all of their bank statements and a missed **[**801]** month forfeits all future reconciliations" (Plaintiff's Exhibit A p. 1)

Defendant argues that although the parties' agreement includes the foregoing reconciliation provision, that provision may not be relied on to establish that repayment is contingent rather than absolute, because defendant had no control or ability to enforce plaintiff's compliance with the reconciliation procedure. That is, unlike in *K9 Bytes*, the reconciliation provision here did not "allow the *merchant to seek* an adjustment of the amounts being taken out of its account based on its cash flow (or lack thereof) [i]f [it] is doing poorly" (*see id.* [emphasis added]). Indeed, defendant suggests, a request by defendant for reconciliation would violate the material adverse change covenant, which would constitute a default.

**[*984]** Defendants' argument must fail. While the reconciliation provision here may not have specifically provided a mechanism for defendant to affirmatively seek an adjustment, it imposes on plaintiff an obligation to reconcile defendant's account so that the amount debited per month **[***8]** would equal the specified percentage; the only proviso on that obligation is that it only continues as long as defendant continues to supply its monthly bank statements as contemplated in the agreement. Therefore, if the merchant's receipts decreased, after the monthly reconciliation defendant would be entitled to a downward adjustment, so that the amount plaintiff ultimately debited would be limited to 9.1% of the merchant's receipts.

Defendants protest that other provisions of the agreement ensured that plaintiff would never adjust down its monthly debited sum, in that the agreement gives plaintiff the ability to investigate the merchant's finances in the event its monthly receipts are low. However, these protective mechanisms do not negate the reconciliation mechanism; they merely protect plaintiff from the types of trickery illustrated by examples offered in defendants' submissions, such as the possibility that the merchant could hide its receipts by depositing them elsewhere.

Another consideration in distinguishing between *loans* and purchases of *receivables* is that a *loan* has a finite term, with a definite point at which repayment is required, whereas the period over which repayment **[***9]** will be made for a *receivables* purchase agreement is indeterminate (*see K9 Bytes, Inc. v Arch Capital Funding, LLC, 56 Misc 3d at 817*). Under a *receivables* purchase, the time in which the collection of a percentage of the merchant's sales proceeds will be complete is contingent upon the merchant generating sales and those sales resulting in the collection of revenue (*id.*, citing *IBIS Capital Group, LLC v. Four Paws Orlando LLC, 2017 NY Slip Op 3047 [U] [Sup Ct Nassau County 2017]*).

Defendants also point to their execution of a security agreement giving plaintiff a security interest in all Natures Market's accounts, to argue that the transaction must be a *loan* since "[f]or a true *loan* it is essential to provide for repayment absolutely and at all events *or that the principal in some way be secured* as distinguished from being put in hazard" (*K9 Bytes, Inc. v Arch Capital Funding, LLC, 56 Misc 3d at 816*, quoting *Rubenstein v Small, 273 App Div 102, 104, 75 N.Y.S.2d 483 [1st Dept 1947]* [internal quotation marks omitted] [emphasis added]). **[*985]** However, this protection of plaintiff's ultimate ability to collect its full entitlement is insufficient, alone, to establish that this nominal purchase agreement is, instead, actually a *loan*.

57 Misc. 3d 979, *985; 66 N.Y.S.3d 797, **801; 2017 N.Y. Misc. LEXIS 3978, ***9; 2017 NY Slip Op 27340, ****2

Because review of the terms of the agreement establishes as a matter of law [**802] that it is a purchase agreement rather than a *loan*, defendants' *usury* defense has no merit, and must be dismissed pursuant to *CPLR 3211(b)*. The counterclaim seeking a declaratory judgment [***10] on the same ground must be dismissed for the same reason.

Based upon the foregoing, it is hereby,

ORDERED that plaintiff's motion is granted to the extent that the defense and counterclaim based on the claim of *usury* are dismissed, and it is further

ORDERED that the parties are directed to appear on Monday, November 13, 2017, at 9:30 a.m., in the Preliminary Conference Part, Westchester County Supreme Court, 111 Dr. Martin Luther King Boulevard, White Plains, New York.

This constitutes the Decision and Order of the Court.

Dated: October 11, 2017

White Plains, New York

HON. TERRY JANE RUDERMAN, J.S.C

**End of Document**

✦ Positive
As of: May 10, 2018 7:20 PM Z

## *Champion Auto Sales, LLC v. Pearl Beta Funding, LLC*

Supreme Court of New York, New York County

June 15, 2017, Decided

Index No. 158692/2016

**Reporter**

2017 N.Y. Misc. LEXIS 5355 *

CHAMPION AUTO SALES, LLC AND CHAMPION MOTORSPORTS LI AND CHAMPION AUTO SALES LLC DBA CHAMPION MOTORSPORTS LI AND MICHAEL GONZALEZ v. PEARL BETA FUNDING, LLC

**Notice:** NOT APPROVED BY REPORTER OF DECISIONS FOR REPORTING IN STATE REPORTS.

**Subsequent History:** Affirmed by *Champion Auto Sales, LLC v. Pearl Beta Funding, LLC, 2018 N.Y. App. Div. LEXIS 1648 (N.Y. App. Div. 1st Dep't, Mar. 15, 2018)*

## Core Terms

confession of judgment, documentary evidence, motion to dismiss, matter of law, *usurious*, vacate, costs

**Judges:** [*1] Erika M. Edwards, J.S.C.

**Opinion by:** Erika M. Edwards

## Opinion

**Upon the foregoing papers, it is ordered that this motion is**

GRANTED with prejudice and without costs.

Plaintiffs Champion Auto Sales, LLC, Champion Motorsports LI and Champion Auto Sales LLC dba Champion Motorsports LI (collectively "Champion") and Michael Gonzalez ("Gonzalez") brought this plenary action against Defendant Pearl Beta Funding, LLC, ("Defendant") to vacate a Suffolk County confession of judgment to enforce a Merchant Agreement ("Agreement") made by Champion and guaranteed by Gonzalez. Defendant purchased a percentage of Champion's future **receivables** for an advance of $57,063, minus fees, to be paid back at $680/day.

Plaintiffs allege that the terms of the Agreement are **usurious**, void against Gonzalez and they request other relief.

Defendant moves to dismiss the complaint based on documentary evidence and argues in substance that the Agreement is not **usurious** as a matter of law because it is not a **loan** and **usury** only applies to **loans**; that many courts have upheld this type of agreement and determined that it is not a **loan**; that corporations and their guarantors cannot assert **usury** claims; that the confession of judgment is valid; that [*2] this court does not have the authority to vacate a confession of judgment entered in Suffolk County; and that Defendant is entitled to attorney's fees.

Dismissal is warranted only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law (*CPLR 3211[a][1]; Leon v Martinez, 84 NY2d 83, 88, 638 N.E.2d 511, 614 N.Y.S.2d 972 [1994]*). Dismissal is proper where the documents relied upon definitively disposed of a plaintiff's claim (*Bronxville Knolls v Webster Town Ctr. Pshp., 221 A.D.2d 248, 634 NYS2d 62, 63 [1995]*).

Based on the documentary evidence presented and the relevant caselaw, the court agrees with Defendant's arguments and grants Defendant's motion to dismiss Plaintiffs' complaint. As such, it is hereby

**ORDERED** that Defendant Pearl Beta Funding, LLC's motion to dismiss Plaintiffs' complaint is granted with prejudice and without costs; the complaint is dismissed against Defendant and the Clerk is directed to enter judgment in favor of Defendant as against Plaintiffs.

Date: 6/15/2017

/s/ Erika M. Edwards, **J.S.C.**

**End of Document**

**❶** Cited
As of: May 10, 2018 7:18 PM Z

# _Merchant Cash & Capital, LLC v Avtar Trucking, Inc._

Supreme Court of New York, Nassau County

May 22, 2017, Decided

608476-2016

**Reporter**
2017 N.Y. Misc. LEXIS 2038 *; 2017 NY Slip Op 31123(U) **

[**1] MERCHANT CASH & CAPITAL, LLC d/b/a BIZFI FUNDING, Plaintiffs, -against- AVTAR TRUCKING, INC. d/b/a AVTAR TRUCKING and RAVINDER SINGH, Defendants. INDEX NO. 608476-2016

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

defendants', counterclaim, Affirmation, interposed, affirmative defense

**Judges:** [*1] HONNORABLE GEORGE R. PECK, J.S.C.

**Opinion by:** GEORGE R. PECK

## Opinion

Upon the foregoing papers, it is hereby Ordered that [1] the application interposed by plaintiff, Merchant Cash & Capital, LLC d/b/a Bizfi Funding [hereinafter Merchant], which seeks an order pursuant to _CPLR §§3211(a)(7), 3211(b)_ and _3024(b)_ striking the scandalous and irrelevant material set forth in the defendants' answer and dismissing the counterclaim alleged therein, is hereby GRANTED as set forth below (Sequence #002); [2] Merchant's application which seeks an order pursuant to _CPLR §3126(3)_ striking the defendants' answer, is hereby GRANTED as provided below (Sequence #004), and; [3] the cross motion interposed by the defendants, Avtar Trucking, Inc. d/b/a Avtar Trucking [hereinafter Avtar] and Ravinder Singh, seeking an order granting a judgment by default on the counterclaim, is hereby DENIED as moot (Sequence #003).

On September 12, 2016, Merchant and Avtar entered into an agreement whereby Avtar sold $26,035 of its future sales and _**receivables**_ to Merchant for the sum of $20,500 [hereinafter the Agreement] (_see_ Murray Affirmation in Support at Exh. A). In accordance therewith, Merchant would receive daily payments of $154.97 until the full amount of $26,035 was satisfied [*2] with such payments to be deposited into a specific bank account authorized by Merchant (_see_ Singh Affidavit at Exh. B). The Agreement included a personal guarantee from Ravinder Singh, President of Avtar, and further provided that "[Merchant, Avtar and Singh] acknowledge and agree that if [**2] [Avtar] has not violated the terms of this Agreement, the fact that it goes bankrupt or out of business shall not (a) be considered a Breach, or (b) obligate [Singh] to pay the Purchase Amount to [Merchant]" (_see_ Murray Affirmation at Exh. A; Singh Affidavit at ¶1).

On or about November 2, 2016, Merchant commenced the underlying action seeking damages resulting from Avtar's breach of the Agreement by closing the designated bank account into which the daily payments were to be deposited, as well as from Ravinder Singh's breach of the personal guaranty (_see_ Murray Affirmation in Support at Exh. A at ¶¶7, 8, 10-23). On or about December 7, 2016, the defendants interposed an answer containing an affirmative defense and counterclaim, both of which are predicated upon _**usury**_ (_id._ at Exh. B at ¶¶1-95). The parties' applications referenced above thereafter ensued.

In moving herein, Merchant contends that the [*3] defendants' counterclaim and affirmative defense must be dismissed inasmuch as _**usury**_, in essence, is not a claim to be asserted but rather an affirmative defense which is legally unavailable to both Avtar and Singh (_see_ Plaintiff's Memorandum of Law at pp. 3-4, 9). Merchant further asserts that those paragraphs in the defendants' answer denominated 1 through 95 must be stricken as the allegations set forth therein are

2017 N.Y. Misc. LEXIS 2038, *3; 2017 NY Slip Op 31123(U), **2

confusing, irrelevant and scandalous (*id.* at pp. 4-9).

The defendants oppose Merchant's dismissal, application arguing that the Agreement was a *usurious loan* and simultaneously cross move for a judgment by default on the counterclaim contending that the plaintiff has failed to interpose a Reply thereto (*see* Defendants' Memorandum of Law at pp. 2-16).

"[U]sury is an affirmative defense, and a heavy burden rests upon the party seeking to impeach a transaction based" thereon (*Hochman v LaRea, 14 AD3d 653, 654, 789 N.Y.S.2d 300 [2d Dept 2005]*). "To successfully raise the defense of *usury*, a debtor must allege and prove by clear and convincing evidence that a *loan* or forbearance of money, requiring interest in violation of a *usury* statute, was charged by the holder or payee with the intent to take interest in excess of the legal rate" (*Blue Wolf Capital Fund II, L.P. v American Stevedoring, 105 AD3d 178, 183, 961 N.Y.S.2d 86 [1st Dept 2013]*). Thus, in the absence of [*4] a *loan*, there can be no *usury* (*Seidel v 18 E. 17th St. Owners, 79 NY2d 735, 744, 598 N.E.2d 7, 586 N.Y.S.2d 240 [1992]; Donatelli v Siskind, 170 AD2d 433, 434, 565 N.Y.S.2d 224 [2d Dept 1991]*). To constitute a *loan*, the transaction [**3] in issue must "provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard" (*Rubenstein v Small, 273 AD 102, 104, 75 N.Y.S.2d 483 [1st Dept 1947]*).

Here, the terms of the Agreement do not in any regard provide for repayment and rather expressly require Merchant to assume the risk of nonpayment in the event of either business failure or bankruptcy on the part of Avtar (*id.*). Given the foregoing, the Court finds that the Agreement is not a *loan* and *usury* is accordingly inapplicable thereby warranting dismissal of the defendants' affirmative defense, as well as the improperly cast and meritless counterclaim (*id.; Seidel v 18 E. 17th St. Owners, supra at 744; Donatelli v Siskind, supra at 434; CPLR §3211(a)(7); CPLR §3211 [b]*). Moreover, even assuming the Agreement was a *loan*, neither Avtar, as a corporation, nor Singh, as its individual guarantor, may assert the defense of *usury* (*Tower Funding v Berry Realty, 302 AD2d 513, 514, 755 N.Y.S.2d 413 [2d Dept 2003]; Schneider v Phelps, 41 NY2d 238, 242, 359 N.E.2d 1361, 391 N.Y.S.2d 568 [1977]*).

As to Merchant's application interposed pursUant to *CPLR §3126(3)*, the record establishes that on March 20, 2017, counsel for the parties appeared at a preliminary conference at which time defendants' attorney refused to submit to any depositions (*see* Murray Affirmation at ¶¶6-9, 12; Exh. 5). As a result, this Court granted Merchant leave to move [*5] for an order striking the defendants' answer (*see* Murray Affirmation at ¶9; Exh. 5). In opposition, the defendants counter that the plaintiff's application is inappropriate as all discovery is automatically stayed pursuant to *CPLR §3214[b]* (*see* Yosef Affirmation in Opposition at pp. 1-2).

"A court may strike an answer as a sanction if a defendant 'refuses to obey an order for disclosure or wilfully fails to disclose information which the court finds ought to have been disclosed" (*Hoi Wah Lai v Mack, 89 AD3d 990, 991, 933 N.Y.S.2d 712 [2d Dept 2011]* quoting *CPLR §3126; Shah v Oral Cancer Prevention Intl., Inc., 138 AD3d 722, 724, 30 N.Y.S.3d 154 [2d Dept 2016]*). However, "[p]ublic policy strongly favors the resolution of actions on the merits whenever possible" (*Arpino v F.J.F. & Sons Elec. Co., Inc., 102 AD3d 201, 210, 959 N.Y.S.2d 74 [2d Dept 2012]*), and "[t]he drastic remedy of striking a pleading is not appropriate absent a clear showing that the failure to comply with discovery demands is willful and contumacious" (*Shah v Oral Cancer Prevention Intl., Inc., supra at 724; Singer v Riskin, 137 AD3d 999, 1001, 27 N.Y.S.3d 209 [2d Dept 2016]*).

[**4] "The scope of discovery in a civil action is governed by *CPLR 3101 (a)*, which provides, in relevant part, that '[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof'" (*Friel v Papa, 87 AD3d 1108, 1110, 930 N.Y.S.2d 39 [2d Dept 2011]*). Accordingly, Merchant is well within its right to depose the defendants (*id.*). Moreover, the Preliminary Conference Order clearly states that "Pursuant to *CPLR 3214(b)*, service of a notice of motion under *rule 3211, 3212* or *3213* shall **NOT** stay disclosure pending the determination [*6] of that motion."

Based upon the foregoing, it is hereby

ORDERED, that Merchant's application is hereby GRANTED and the defendants' counterclaim and affirmative defense, both of which are premised upon *usury*, are dismissed pursuant to *CPLR §§3211(a)(7)* and *3211(b)* (Sequence #002); and it is further

ORDERED, that the application interposed by Merchant, which seeks an order pursuant to *CPLR §3126(3)* striking the defendants' answer, is hereby GRANTED unless the defendants appear for a deposition within

2017 N.Y. Misc. LEXIS 2038, *6; 2017 NY Slip Op 31123(U), **4

thirty (30) days of the date of this Order. In the event of the defendants' failure to appear as ordered, upon receipt by the Court of an affirmation from Merchant's counsel attesting thereto, counsel is directed to settle judgment on notice (Sequence #004); and it is further

**ORDERED**, that the cross motion interposed by Avtar and Ravinder Singh, which seeks an order pursuant to _CPLR §3215_ granting a judgment by default on the counterclaim, is hereby DENIED as moot (Sequence #003).

This shall constitute the decision and order of this court. All matters not specifically addressed are herein denied.

Dated: May 22, 2017

Mineola, NY

ENTER:

/s/ George R. Peck

HONORABLE GEORGE R. PECK, J.S.C.

---

**End of Document**

✦ Positive
As of: May 10, 2018 5:07 PM Z

# *K9 Bytes, Inc. v Arch Capital Funding, LLC*

Supreme Court of New York, Westchester County

May 4, 2017, Decided

54755/16

**Reporter**
56 Misc. 3d 807 *; 57 N.Y.S.3d 625 **; 2017 N.Y. Misc. LEXIS 1903 ***; 2017 NY Slip Op 27166 ****

[****1] K9 Bytes, Inc., EPAZZ, INC., STRANTIN, INC., MS HEALTH INC., and SHAUN PASSLEY, Plaintiffs, against Arch Capital Funding, LLC, CAP CALL, LLC, JOHN DOES 1-10, and JANE DOES 1-10, Defendants.

**Notice:** THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING RELEASE OF THE FINAL PUBLISHED VERSION.
THIS OPINION IS UNCORRECTED AND SUBJECT TO REVISION BEFORE PUBLICATION IN THE PRINTED OFFICIAL REPORTS.

**Prior History:** *K9 Bytes, Inc. v. Arch Capital Funding, LLC, 2017 N.Y. Misc. LEXIS 1743 (N.Y. Sup. Ct., May 4, 2017)*

## Core Terms

merchant, cause of action, *loans*, damages, misrepresentations, reconciliation, plaintiffs', *receivables*, pattern of racketeering activity, collection, contingent, provides, prima facie tort, unconscionability, repayment, Services, making *loans*, individuals, confession, vacate

**Counsel:** [***1] For Plaintiffs: Jonathan M. Proman, Esq., New York, NY.

For Arch: Guiliano McDonnell et al., Mineola, NY.

For Cap Call: Proskauer Rose LLP, New York, NY.

**Judges:** HON. LINDA S. JAMIESON, Justice of the Supreme Court.

**Opinion by:** LINDA S. JAMIESON

## Opinion

[**628] [*810] Linda S. Jamieson, J.

There are two motions to dismiss before the Court, one filed by each defendant. Although the defendants are similarly-situated, in that each is a company that provides working capital to businesses, using contracts that expressly state that they are "Merchant Agreements" and not *loans*, the forms that each company uses are different in one main respect, as will be discussed below.

*Background*

A brief summary of the relevant facts is necessary. Certain of the plaintiffs entered into three different agreements with Arch Capital Funding, LLC ("Arch") during 2015 and 2016. Pursuant to these agreements, Arch gave plaintiffs $166,000, and plaintiffs gave Arch future *receivables* worth $241,334. Each of these three agreements provided that Arch could take no more than 13-15% of that day's *receivables*, or a set daily amount. The agreements state that payments made to Arch "shall be conditioned upon Merchant's sale of products and services and the payment therefore [***2] by Merchant's customers." The agreements had no termination date, but provided for an automatically renewable one-year term (the "evergreen provision").

The agreements all provide that Arch shall, upon plaintiffs' request, "reconcile the Merchant's account by either crediting or debiting the difference between the amount debited and the Specified Percentage, from or back to the Merchant's bank account so that the amount debited each month equals the Specified Percentage." This is the "reconciliation provision." The agreements also allow plaintiffs to request that the estimated daily amount be changed.

[*811] Plaintiff Epazz, Inc. ("Epazz") and defendant

Case 8:19-ap-01050-SC    Doc 28    Filed 09/06/19    Entered 09/06/19 15:30:33    Desc
Main Document      Page 69 of 152

Page 2 of 6

56 Misc. 3d 807, *811; 57 N.Y.S.3d 625, **628; 2017 N.Y. Misc. LEXIS 1903, ***2; 2017 NY Slip Op 27166, ****1

Cap Call, LLC ("Cap Call") entered into an agreement[1] dated February 2016 in which Cap Call gave Epazz $120,000 in exchange for future *receivables* of $179,880. The agreement provides, similarly to the Arch agreements, for Cap Call to take no more than 15% of the daily receipts, or a fixed daily amount of $1,635. The agreement provides that the receipts **[\*\*629]** shall be "from settlement amounts which would otherwise be due to Merchant from electronic check transaction or other payment processing transactions." The agreement also had an evergreen provision, **[\*\*\*3]** just as the Arch agreements did. Although Cap Call argues that its agreement **[\*\*\*\*2]** contains a reconciliation provision, a review of the language that it points to does not support this. As Cap Call states in its memorandum of law, the provision only provides that Cap Call can "view Epazz's bank account 'in order to calculate the amount of [Epazz's] daily payment.'" Unlike the Arch agreements, it does not state that Epazz can seek to have the amount changed. Nor does it state that any overage or underpayment will be repaid to plaintiffs or taken from plaintiffs.

Plaintiffs breached the agreements on or about March 1, 2016, and commenced this action soon after.

*Analysis*

The amended complaint contains twelve causes of action. Three concern *usury*, and four concern *RICO, 18 U.S.C. § 1962*. In sum, the claims are: (1) to vacate the judgments by confession because of *usury* "and other wrongful conduct;" (2) to obtain a judgment against defendants because of *usury*, and to vacate the agreements; (3) to obtain a judgment based on the overcharge of interest; (4) damages for the violation of the *Licensed Lender Law, NY Banking Law § 340*; (5) damages arising under *RICO, subsection (a)*; (6) damages arising under *RICO, subsection (b)*; (7) damages arising under *RICO, subsection (c)*; **[\*\*\*4]** (8) damages arising under *RICO, subsection (d)*; (9) to obtain a judgment rescinding the agreements; (10) damages for fraudulent inducement; (11) damages for unconscionability; and (12) damages for prima facie tort.

Arch argues that certain of the claims — the first, second, ninth and eleventh — all must be dismissed out of hand because **[\*812]** they are not actionable claims

under New York law. Beginning with the first, to vacate the confessions of judgment because of *usury*, the Court cannot agree with Arch that there is no such cause of action. Rather, all of the cases cited by Arch allow for such relief upon a plenary action — which plaintiffs have commenced. *See, e.g., Malhado v. Cordani, 153 AD2d 673, 544 N.Y.S.2d 674, 675 (2d Dept. 1989)* ("A person seeking to vacate a confession of judgment and judgment entered thereon must commence a plenary action for that relief."); *L.R. Dean, Inc. v. Int'l Energy Res., Inc., 213 AD2d 455, 456, 623 N.Y.S.2d 624, 625 (2d Dept. 1995)* ("The general rule is that a party seeking to set aside an affidavit of confession of judgment and to vacate a judgment entered thereon must commence a plenary action for that relief."). The first cause of action cannot thus be dismissed on this basis. However, this claim is addressed in detail below.

Next, the ninth cause of action seeks recission based on misrepresentations or unilateral mistake. Putting **[\*\*\*5]** aside whether recission can be pled as a claim or not, there are no facts alleged that would support a claim based on misrepresentations or unilateral mistake. Plaintiffs claim that defendants misled them by representing that they were entering into "*loans* governed by **[\*\*\*\*3]** *usury* laws," but instead caused them "to enter into 'merchant agreements.'"[2] They state that they would not have knowingly entered into merchant agreements, because what they really wanted were *loans*. Indeed, plaintiffs **[\*\*630]** allege that "the word 'purchase' or 'sale' would have caused Passley to decline a transaction with [defendants] because a *loan* — the product Passley wanted to obtain — is not a purchase or sale."

A review of the contracts in this action shows that not only do they all clearly state that they involve purchases or sales, but they all expressly state that they are **not** *loans*. Even if someone were confused by the contracts, or did not understand the obligation or the process, by reading the documents, one would grasp immediately that they certainly were not straightforward *loans*. The very first heading on the page was "Merchant Agreement," and the second heading says "Purchase and Sale of Future *Receivables*." **[\*\*\*6]** (This is the third heading on the Cap Call agreement,

---

[1] The agreement is nearly illegible. Cap Call should have at least attached a blank exact duplicate so that the Court could have read it more easily.

[2] Plaintiffs fail to identify specifically how every one of these alleged misrepresentations can be attributed to each defendant. Instead, plaintiffs allege, without any detail, that the person making the alleged misrepresentation is somehow "affiliated" with a defendant.

56 Misc. 3d 807, *812; 57 N.Y.S.3d 625, **630; 2017 N.Y. Misc. LEXIS 1903, ***6; 2017 NY Slip Op 27166, ****3

with the second reading "Merchant Information.")

[*813] For plaintiffs to state that they would not have entered into a purchase or sale if they had known that that is what they were doing is utterly undermined by the documents themselves. As the Second Department has held, in _Karsanow v. Kuehlewein, 232 AD2d 458, 459, 648 N.Y.S.2d 465, 466 (2d Dept. 1996)_, "the subject provision was clearly set out in the . . . agreements, and where a party has the means available to him of knowing by the exercise of ordinary intelligence the truth or real quality of the subject of the representation, he must make use of those means or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." So too here, plaintiffs had the means to understand that the agreements set forth that they were not _loans_. As it has long been settled that a party is bound by that which it signs, the Court finds that the ninth cause of action, for recission based on misrepresentation or mistake, and the tenth cause of action, for fraudulent inducement based on misrepresentation, must be dismissed as a matter of law. _Pimpinello v. Swift & Co., 253 NY 159, 162-63, 170 N.E. 530 (1930)_ ("the signer of a deed or other instrument, expressive of a jural act, is conclusively bound [***7] thereby. That his mind never gave assent to the terms expressed is not material. If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligence; in either case the writing binds him.").

As for the eleventh cause of action, which seeks judgment voiding the merchant agreements because of unconscionability, defendants state, without contradiction, that unconscionability is not a claim, but a defense. The Court agrees. "The concept of unconscionability . . . does not create a new cause of action to recover damages . . . but, rather, provides a defense for a party opposing enforcement of a contract or a cause of action for rescission of a contract. Thus, the plaintiffs' causes of action founded upon unconscionability do not set forth cognizable claims and should have been dismissed." _Bevilacque v. Ford Motor Co., 125 AD2d 516, 519, 509 N.Y.S.2d 595, 599 (2d Dept. 1986). See also Lewis v. Hertz Corp., 181 AD2d 493, 495, 581 N.Y.S.2d 305, 307 (2d Dept. 1992)_. The eleventh cause of action is thus dismissed.

The twelfth cause of action seeks damages for prima facie tort as an "alternative" cause of action. [*814] "Prima facie tort affords a remedy for the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts [***8] which would otherwise be lawful. The requisite elements of a cause of action for prima facie tort are (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or [**631] series of acts which would otherwise be lawful." _Freihofer v. Hearst Corp., 65 NY2d 135, 142-43, 480 N.E.2d 349, 490 N.Y.S.2d 735 (1985)_. Indeed, "there is no recovery in prima facie tort unless malevolence is the **sole** motive for defendant's otherwise lawful act or, in Justice Holmes' characteristically colorful language, unless defendant acts from 'disinterested malevolence'." _Burns Jackson Miller Summit & Spitzer v. Lindner, 59 NY2d 314, 333, 451 N.E.2d 459, 464 N.Y.S.2d 712 (1983)_ (emphasis added).

Here, it is quite clear, from reviewing all of plaintiffs' papers, that defendants' sole motivation was profit (or greed, as plaintiffs would have it.). According to plaintiffs' papers, defendants did not care one whit about plaintiffs, other than to view them as "cash cows." There is no "disinterested malevolence," the basis for a claim of prima facie tort and, accordingly, the twelfth cause of action is dismissed.

The fourth cause of action seeks damages based on defendants' alleged violation of Licensed Lender Law § 340.[3] A [****4] review of this statute shows that it only applies to _loans_ made to individuals. Even assuming that the transactions [*815] here were [***9] _loans_, none were made to individuals. Plaintiffs' reliance on the section of the statute that states that it covers _loans_ "in a principal amount of fifty thousand dollars or less for business and commercial _loans_" ignores the second paragraph, which limits the applicability to companies

---

[3] This section provides, in relevant part, that "No person or other entity shall engage in the business of making _loans_ in the principal amount of twenty-five thousand dollars or less for any _loan_ to an individual . . . and in a principal amount of fifty thousand dollars or less for business and commercial _loans_, and charge . . . a greater rate of interest than the lender would be permitted by law to charge if he were not a licensee. . . .

For the purposes of this section, a person or entity shall be considered as engaging in the business of making _loans_ in New York . . . if it solicits _loans_ in the amounts prescribed by this section within this state and, in connection with such solicitation, **makes _loans_ to individuals then resident in this state**, except that no person or entity shall be considered as engaging in the business of making _loans_ in this state on the basis of isolated, incidental or occasional transactions which otherwise meet the requirements of this section." (Emphasis added).

56 Misc. 3d 807, *815; 57 N.Y.S.3d 625, **631; 2017 N.Y. Misc. LEXIS 1903, ***9; 2017 NY Slip Op 27166, ****4

that engage in the business of making *loans* to individuals. As plaintiffs have failed to allege that defendants are in the business of making *loans* to individuals, this cause of action must be dismissed.

Turning next to the *usury* claims, the second cause of action seeks judgment against defendants based on *usury*. It has long been settled in this state that criminal *usury* may only be asserted as a defense by a corporation, and never as a means to seek affirmative relief.[4]

> While the statute expressly prohibits only the interposition of *usury* as a defense, this court has employed the principle that a party may not accomplish by indirection what is directly forbidden to it and has accorded the rule a broader scope. Thus, it is well established that the statute generally proscribes a corporation from using the *usury* laws either as a defense to payment of [***10] an obligation or, affirmatively, to set aside an agreement and recover the *usurious* premium. The statutory exception for interest exceeding 25 percent per annum is strictly an affirmative defense to an action seeking repayment of a *loan* and may not, as attempted here, be employed as a means **[**632]** to effect recovery by the corporate borrower.

*Intima-Eighteen, Inc. v. A.H. Schreiber Co., 172 AD2d 456, 457-58, 568 N.Y.S.2d 802, 804 (1st Dept. 1991)*. The Court must thus dismiss the second cause of action.

The third cause of action, which seeks judgment "based on an [****5] overcharge of interest" and to void the agreements, is nothing more than another way of pleading *usury* as a form of affirmative relief. Plaintiffs actually acknowledge this, stating that "a *usury* claim falls within the meaning of overcharge of interest." Thus, this claim must also be dismissed.

The first cause of action, and the RICO claims, turn on whether or not the agreements are *usurious*. In order to [*816] determine that, the Court must first determine whether the contracts are *loans* or not. "*Usury* laws apply only to *loans* or forbearances, not investments. If the transaction is not a *loan*, there can be no *usury*,

however unconscionable the contract may be." *Seidel v. 18 E. 17th St. Owners, Inc., 79 NY2d 735, 744, 598 N.E.2d 7, 586 N.Y.S.2d 240 (1992)*.

In New York, there is a presumption that a transaction is not *usurious*. As a result, [***11] claims of *usury* must be proven by clear and convincing evidence, a much higher standard than the usual preponderance. *Giventer v. Arnow, 37 NY2d 305, 309, 333 N.E.2d 366, 372 N.Y.S.2d 63 (1975)*. In determining whether a transaction is a *loan* or not, the Court must examine whether or not defendant is absolutely entitled to repayment under all circumstances. "For a true *loan* it is essential to provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard. " *Rubenstein v. Small, 273 App. Div. 102, 104, 75 N.Y.S.2d 483 (1st Dept. 1947)*.

Many trial courts have examined similar agreements in the last several years, and have largely determined that most of them are not *loans*, but purchases of *receivables*. See, e.g., *Merchant Cash and Capital, LLC v. Yehowa Medical Services, Inc., 2016 N.Y. Misc. LEXIS 3065, 2016 WL 4478805 at *5 (Sup. Ct. Nassau Co. July 29, 2016)* ("Under the terms of the subject Agreement, if Seller/Defendant produces no daily revenue, no payments are required, and there is no absolute obligation of repayment. While the terms of payment provided for in the Agreement may be onerous, they do not involve a *loan* or forbearance of money, and are unaffected by civil or criminal *usury* status."); *Professional Merchant Advance Capital, LLC v. Your Trading Room, LLC, 2012 N.Y. Misc. LEXIS 6757, 2012 WL 12284924 (Sup. Ct. Suff. Co. Nov. 28, 2012)* ("Upon review of the record adduced on this motion, the court finds that Waryn failed to establish that the subject agreement to purchase credit card *receivables* was a *loan* and not an agreement to purchase future [***12] *receivables* for a lump sum discounted purchase price payable in advance by the plaintiff in exchange for a contingent return.").

The very recent case of *IBIS Capital Group, LLC v. Four Paws Orlando LLC, 2017 N.Y. Misc. LEXIS 884, 2017 WL 1065071 (Sup. Ct. Nassau Co. March 10, 2017)*, reviewed many of these cases. Reading through all of them, it is clear that there are certain factors that a court should look for to see if repayment is absolute or contingent. The first, and the one cited by each and every court that found [****6] that the transaction was not a *loan*, is whether or not there is a reconciliation provision in the agreement. [*817] The reconciliation

---

[4] The Court is puzzled by plaintiffs' assertion, at Section VII of their memorandum of law, that *usury* is an affirmative claim since it is black letter law in this state that corporations may not use it affirmatively.

Case 8:19-ap-01050-SC    Doc 28    Filed 09/06/19    Entered 09/06/19 15:30:33    Desc
Main Document    Page 72 of 152

Page 5 of 6
56 Misc. 3d 807, *817; 57 N.Y.S.3d 625, **632; 2017 N.Y. Misc. LEXIS 1903, ***12; 2017 NY Slip Op 27166, ****6

provisions allow the merchant to seek an adjustment of the amounts being taken out of its account based on its cash flow (or lack thereof). If a merchant is doing poorly, the merchant will pay less, and will receive a refund of **[**633]** anything taken by the company exceeding the specified percentage (which often can also be adjusted downward). If the merchant is doing well, it will pay more than the daily amount to reach the specified percentage. *See, e.g., Retail Capital, LLC v. Spice Intentions Inc., 2016 N.Y. Misc. LEXIS 4883, 2017 WL 123374 at *2 (Sup. Ct. Queens Co. Jan. 3, 2017)* (not a **loan** when "The agreement provided a reconciliation on demand provision whereby the parties [were each] permitted to demand the monthly reconciliation of funds from the other to ensure that neither entity collected **[***13]** more or less of the sales proceeds than they were contractually entitled to collect from the designated bank account.").

If there is no reconciliation provision, the agreement may be considered a **loan**. *See Professional Merchant Advance Capital, LLC v. C Care Services, LLC, 2015 U.S. Dist. LEXIS 92035, 2015 WL 4392081 at *4 (SDNY July 15, 2015)* (agreement obligated merchant "to make a minimum weekly payment *irrespective* of" the accounts receivable," such that it was a **loan**); *Merch. Funding Servs., LLC v. Volunteer Pharmacy Inc., 55 Misc 3d 316, 318, 44 N.Y.S.3d 876, 878 (Sup. Ct. West. Co. 2016)*. In this action, the Arch agreements all provide for reconciliation. The Cap Call agreement, in contrast, does not, as discussed above in the Background section.

The next provision that is deemed quintessential is whether the agreement has a finite term or not. If the term is indefinite, then it "is consistent with the contingent nature of each and every collection of future sales proceeds under the contract." *IBIS Capital Group, LLC v. Four Paws Orlando LLC, 2017 N.Y. Misc. LEXIS 884, 2017 WL 1065071 at *5 (Sup. Ct. Nassau Co. March 10, 2017)*. This is because defendants' "collection of sales proceeds is contingent upon [plaintiffs'] actually generating sales and those sales actually resulting in the collection of revenue." *Id.* Indeed, "neither party could have known when the Agreement might end because [plaintiffs'] collection of sales proceeds was wholly contingent upon the outside factor of customers actually . . . paying for products and services. The existence of this uncertainty **[***14]** in the length of the Agreement is an express recognition by the parties of the wholly contingent **[*818]** nature of this Agreement." *2017 N.Y. Misc. LEXIS 884, [WL] at 5-6. See also Merchant Cash and Capital, 2016 N.Y.*

*Misc. LEXIS 3065, 2016 WL 4478805 at *4* ("the period over which such payment would take place was indeterminate."); *Chartrock v. National Bank of California, Index No. 708688/2016 at 2, 2017 N.Y. Misc. LEXIS 673 (Sup. Ct. Queens Co. Jan. 17, 2017)* (same); *Platinum Rapid Funding Group Ltd. v. VIP Limousine Services, Inc., 2016 N.Y. Misc. LEXIS 3068 [*7](Sup. Ct. Nassau Co. June 8, 2016)*. All of the agreements here have this provision.

The final factor, cited in *Ibis*, is whether the defendant has any recourse should the merchant declare bankruptcy. The *Ibis* agreement provides that if the merchant declares bankruptcy, it will not be a breach, nor will it obligate the guarantors to pay. This is a much more forgiving provision, not present in any of the agreements in the instant action. It is virtually impossible to read the Cap Call agreement, but it does appear that Section 3.1 states that bankruptcy is a basis for declaring a default. The Arch agreement does not state that bankruptcy is a basis for a default, but it does state that should the merchant file for bankruptcy, the personal guaranty may be enforced, and Arch may file **[***15]** the confession of judgment. This factor thus weighs against defendants.

Having weighed all of the factors, the Court finds that the Arch agreements are sufficiently risky such that they cannot be considered **loans**, as a matter of law. Under no circumstances could Arch be assured of repayment, because its **[*634]** agreements are contingent on a merchant's success, and the term is indefinite. Accordingly, the Court dismisses the **usury** claims against Arch in their entirety. Not only does this dismiss the first cause of action as to Arch, but it also dismisses the fifth, sixth, seventh and eighth causes of action, the RICO claims, as to Arch. The Court notes that RICO claims have "a heightened pleading requirement because such assertion has been found to be an unusually potent weapon — the litigation equivalent of a thermonuclear device." *Besicorp Ltd. v. Kahn, 290 AD2d 147, 151, 736 N.Y.S.2d 708, 712 (3d Dept. 2002)*.

Each of these RICO claims requires that a defendant do one of two things: either (1) have collected an unlawful debt; or (2) engaged in a pattern of racketeering activity. *See 18 U.S.C.A. § 1962(a)* ("It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful **[*819]** debt . . . **[***16]** .").  Since the Court has already determined that Arch did not collect an unlawful debt, it can only be liable under RICO if it engaged in a pattern of

56 Misc. 3d 807, *819; 57 N.Y.S.3d 625, **634; 2017 N.Y. Misc. LEXIS 1903, ***16; 2017 NY Slip Op 27166, ****6

racketeering activity. According to plaintiffs, in order to constitute a pattern of racketeering activity, there must be activity of a continuing nature. Indeed, "In order to sustain a civil RICO claim, a party is required to allege that the multiple predicates constitute a pattern of racketeering activity. Further, to allege a pattern of racketeering activity, a party must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *NY Mortg. Servicing Corp. v. Dake, 179 AD2d 1007, 1007, 579 N.Y.S.2d 276, 277 (4th Dept. 1992)*.

Plaintiffs allege that this activity consisted of Arch and Cap Call, "through its [sic] representatives, engaged in more than two *loan* misrepresentations, whether through *loan*-only emails or verbally." The Court has already found that there were no actionable misrepresentations, as set forth above at pages 5-7. Nor are there any other allegations that can constitute a "pattern of racketeering." The Court thus dismisses all of the RICO claims as to Arch, and all of the RICO claims alleging a "pattern of racketeering activity" as to Cap Call. **[***17]**

However, the same finding of "non-*loan*" does not necessarily hold true for the Cap Call agreement. The Cap Call agreement appears to remove much of the risk from the calculation, by omitting the reconciliation provision from the agreement. The Court thus cannot find, as a matter of law, that the Cap Call transaction is not a *loan*. As a result, the Court cannot grant Cap Call's motion to dismiss the first cause of action.

To the extent that the fifth, sixth, seventh and eighth causes of action seek damages based on the alleged collection of an "unlawful debt," they are not dismissed because the Court has not determined that the transaction was not a *loan*. Should the Court ultimately determine that the Cap Call transaction was, in fact, a *loan* and was *usurious*, these claims may be valid.

The foregoing constitutes the decision and order of the Court.

Dated: May 4, 2017

White Plains, New York

HON. LINDA S. JAMIESON

Justice of the Supreme Court

---

**End of Document**

 Neutral

As of: May 10, 2018 7:24 PM Z

## _Merchant Cash & Capital, LLC v Wett Plumbing, LLC_

Supreme Court of New York, Nassau County

April 19, 2017, Decided

609467/16

#### Reporter

2017 N.Y. Misc. LEXIS 1990 *; 2017 NY Slip Op 50669(U) **; 55 Misc. 3d 1220(A); 57 N.Y.S.3d 675

[**1] Merchant Cash and Capital, LLC, Plaintiff, against Wett Plumbing, LLC, d/b/a Wett Plumbing and Walter DeRouen, Defendants.

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

PUBLISHED IN TABLE FORMAT IN THE NEW YORK SUPPLEMENT.

**Prior History:** _Merchant Cash & Capital, LLC v. WETT Plumbing, LLC, 2017 N.Y. Misc. LEXIS 1616 (N.Y. Sup. Ct., Apr. 19, 2017)_

## Core Terms

venue, affirmative defense, counterclaim, proceeds

## Headnotes/Syllabus

#### Headnotes

Trial—Place of Trial—Forum Selection Clause in Contract. _Usury_—Availability of Defense.

**Counsel:** [*1] For the Plaintiff: Giuliano, McDonnell & Perrone, Mineola, NY.

For the Defendant: Law Office of Amos Weinberg, Great Neck, NY.

**Judges:** Hon. Randy Sue Marber, J.S.C.

**Opinion by:** Randy Sue Marber

## Opinion

Randy Sue Marber, J.

Upon the foregoing papers, the motion (Mot. Seq. 01) by the Defendants seeking an Order [**2] changing venue and the motion (Mot. Seq. 02) by the Plaintiff, MERCHANT CASH AND CAPITAL, LLC (hereafter "MCC") seeking an Order dismissing the affirmative defenses and counterclaims asserted by the Defendants pursuant to _CPLR § 3211 (b)_ and striking scandalous and prejudicial content from the Defendants' Answer pursuant to _CPLR 3024 (b)_, are determined as hereinafter provided.

On May 6, 2016, the parties executed an Agreement which provided that the Plaintiff, MCC, as buyer, purchased from the seller, the Defendant, WETT PLUMBING, LLC (hereinafter "WETT"), twelve (12%) percent of the proceeds of future sales of WETT in the amount of $23,460 for a purchase price of $17,000 (_See_ the Agreement attached to the Defendants' Notice of Motion as Exhibit "D").

The Defendants now move (Mot. Seq. 01) to change venue, arguing that Nassau County, designated by the Plaintiff, is not proper. Counsel for the Defendants contends that New York County is the [*2] proper venue since the Plaintiff resides in New York County and the Defendant, WETT, is a foreign corporation. In opposition, counsel for the Plaintiff argues that the Agreement between the parties herein contains a fully enforceable venue selection clause which permits the Plaintiff to commence its action in Nassau County. Counsel for the Plaintiff cites to section 5.6 (b) which states, in pertinent part, that "all judicial proceedings... shall be brought in any state court of competent jurisdiction in the State of New York..." Further, counsel for the Plaintiff contends that the Defendants waived any claim that this action is brought in an inconvenient forum, referencing section 5.6 (c) of the Agreement.

It is well settled that a contractual forum selection clause

2017 N.Y. Misc. LEXIS 1990, *2; 2017 NY Slip Op 50669(U), **2

is *prima facie* valid and enforceable unless it is shown by the challenging party to be 'unreasonable, unjust, in contravention of public policy, invalid due to fraud or overreaching, or it is shown that a trial in the selected forum would be so gravely difficult that the challenging party would, for all practical purposes, be deprived of its day in court' (*See KMK Safety Consulting, LLC v. Jeffrey M. Brown Assoc., Inc., 72 AD3d 650, 897 N.Y.S.2d 649 [2d Dept. 2010]*, quoting *LSPA Enter., Inc. v. Jani—King of NY, Inc., 31 AD3d 394, 817 N.Y.S.2d 657 [2d Dept. 2006]*; see also *Casale v. Sheepshead Nursing & Rehabilitation Ctr., 131 AD3d 436, 13 N.Y.S.3d 904 [2d Dept. 2015]*; *Molino v. Sagamore, 105 AD3d 922, 963 N.Y.S.2d 355 [2d Dept. 2013]*).

Here, the Defendants have failed to show [*3] that enforcement of the venue selection clause would be unreasonable, unjust, or in contravention of public policy, or that the inclusion of the forum selection clause in the agreement was the result of fraud or overreaching. Moreover, the Defendants failed to demonstrate that litigation of this action in Nassau County, as opposed to New York County, would be so gravely difficult that, for all practical purposes, the Defendants would be deprived of their day in court. Lastly, no argument has been proffered by the Defendants that would suggest that the venue selection clause in the Agreement is not binding on the parties.

This Court will now address the Plaintiff's motion (Mot. Seq. 02), seeking an Order dismissing the affirmative defenses and counterclaim asserted by the Defendants pursuant to *CPLR § 3211 (b)* and striking scandalous and prejudicial content from the Defendants' Answer pursuant to *CPLR 3024 (b)*.

The Defendants have interposed several affirmative defenses and a counterclaim. While the Defendants' Answer is convoluted and not easily discernable, it appears that all of the defenses and [**3] the counterclaim asserted therein consist of only one (1) claim, that the interest rate is *usurious*.[1] The Defendants [*4] allege that the Agreement is unenforceable on the grounds that it is an illegal agreement for the lending of money in exchange of a secured interest in the *receivables* of the Defendant, WETT, at a *usurious* rate of interest. The Defendants contend that the payments due to the Plaintiff are based upon an interest rate that is in excess of that allowed by

New York State Law (*See* the Answer attached to the Defendants' Notice of Motion as Exhibit "B").

In opposition, counsel for the Plaintiff contends that the Agreement provides that WETT's payments of the purchased *receivables* and future sale proceeds were contingent upon WETT actually generating the purchased *receivables* and future sale proceeds. The Agreement does not provide for a fixed payment term as the Plaintiff was only entitled to a percentage of WETT's future sale proceeds and *receivables*. Counsel for the Plaintiff argues that the Agreement in no way contemplates a *loan* of any money and that MCC has no recourse in the event the sale proceeds are not generated.

The Defendants' contention that the Agreement is *usurious* is without merit. A corporation is prohibited from asserting a defense of civil *usury*. Additionally, an individual [*5] guarantor of a corporate obligation is also precluded from raising such a defense (*See Arbuzova v. Skalet, 92 AD3d 816, 938 N.Y.S.2d 811 [2d Dept. 2012]*). Based upon a review of the Agreement, the terms of the Agreement do not constitute a *loan* within the meaning of the *usury* laws (*See Kaufman v. Horowitz, 178 AD2d 632, 577 N.Y.S.2d 879 [2d Dept. 1991]*).

Accordingly, it is hereby

**ORDERED**, that the Defendants' motion (Mot. Seq. 01) seeking an Order changing venue, is **DENIED**.

**ORDERED**, that the Plaintiff's motion (Mot. Seq. 02) to dismiss the Defendants' affirmative defenses and counterclaim pursuant to *CPLR § 3211 (b)* and strike scandalous and prejudicial content from the Defendants' Answer pursuant to *CPLR 3024 (b)*, is **GRANTED**.

This constitutes the Decision and Order of the Court.

All applications not specifically addressed herein are **DENIED**.

DATED: April 19, 2017

Mineola, New York

Hon. Randy Sue Marber, J.S.C.

---

[1] Considering this Court's ruling on the Defendants' motion (Mot. Seq. 01) to change venue, the Defendants' first affirmative defense in their Answer is dismissed.

**End of Document**

 Positive
As of: May 10, 2018 5:30 PM Z

# *IBIS Capital Group, LLC v Four Paws Orlando LLC*

Supreme Court of New York, Nassau County

March 10, 2017, Decided; March 16, 2017, Entered

608586/16

## Reporter
2017 N.Y. Misc. LEXIS 884 *; 2017 NY Slip Op 30477(U) **

[**1]  IBIS CAPITAL GROUP, LLC, Plaintiff, -against- FOUR PAWS ORLANDO LLC d/b/a 4PA WSORLANDO COM, and JAMES F. PELLEY, Defendants. Index No.: 608586/16

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

**Subsequent History:** Related proceeding at *LG Funding, LLC v. Four Paws Orlando LLC, 2017 N.Y. Misc. LEXIS 4406 (N.Y. Sup. Ct., Nov. 9, 2017)*

## Core Terms

proceeds, future sale, Seller, parties, Defendants', Buyer, contingent, sales proceeds, Merchant, repayment, *usurious*, interest rate, *receivables*, collection, calculate, purchase and sale

**Judges:**  [*1] PRESENT: HON. ROBERT A. BRUNO, J.S.C.

**Opinion by:** ROBERT A. BRUNO

## Opinion

### DECISION & ORDER

Motion by the attorney for the plaintiff for an order pursuant to *CPLR 3211(a)(1)* dismissing the defendants' affirmative defenses of *usury* for failure to state a cause of action based upon documentary evidence, dismissing the counterclaim alleging the subject agreement is void for *usury*, and striking scandalous and irrelevant content from defendants' answer pursuant to *CPLR §3024(b)* is granted.

This is an action for breach of a purchase and sales agreement, dated March 18, 2016. Plaintiff, IBIS Capital Group, LLC (IBIS) purchased future sales proceeds and *receivables* from defendant Four Paws Orlando LLC d/b/a 4pawsorlando.com (Four Paws) pursuant to a contract dated March 18, 2016 (Agreement or Contract). Plaintiff alleges Four Paws breached the Agreement by unlawfully withholding the purchased future sales 'proceeds despite the fact that [**2] sales proceeds were actually generated and collected by Four Paws. IBIS also seeks damages from defendant James F. Pelley (Pelley) for breaching certain representations and warranties made in connection with the Agreement.

To succeed on a motion to dismiss based on documentary evidence pursuant to *CPLR 3211(a)(1)*, the documentary [*2] evidence must refute the defendant's factual allegations as a matter of law (*Gould v Decolator, 121 AD3d 845, 994 N.Y.S.2d 368*; *Goshen v Mutual Life Insurance Co. of N.Y., 98 N.Y.2d 314, 774 N.E.2d 1190, 746 N.Y.S.2d 858*; *Leon v Martinez, 84 NY2d 83, 88, 638 NE2d 511, 614 NYS2d 972*).

*Section 190.40 of New York's Penal Law* prohibits persons from knowingly charging interest on a note or *loan* at a rate which exceeds 25% per annum. The defense afforded by this statute imposes a heavy burden on the party raising the defense to establish that the lender knowingly charged, took or received annual interest exceeding 25% on a *loan* or forbearance (*see Ujueta v Euro-Quest Corp., 29 AD3d 895, 814 N.Y.S.2d 551*). The rudimentary element of *usury* is the existence of a *loan* or forbearance of money and where there is no *loan* there can be no *usury* (*Feinberg v Old Vestal Rd Assoc., Inc., 157 AD2d 1002, 550 N.Y.S.2d 482*). In determining whether a transaction is *usurious*, the law looks not to its form, but to its substance, or real character (*see Min Capital Corp. Retirement Trust v Pavlin, 88 AD3d 666, 930 N.Y.S.2d 475*; *O'Donovan v Galinski, 62 AD3d at 769*).

shanna kaminski

2017 N.Y. Misc. LEXIS 884, *2; 2017 NY Slip Op 30477(U), **2

Unless a principal sum advanced is repayable absolutely, the transaction is not a *loan* (*see Rubenstein v Small, 273 AD 102, 75 N.Y.S.2d 483*). Where payment or enforcement rests on a contingency, the contract is valid even though it provides for a return in excess of the legal rate of interest (*see Obermayer Rebmann Maxwell & Hippel LLP v West, 2015 U.S. Dist. LEXIS 172922 (W.D. Pa. Dec. 30, 2015) 2015 U.S. Dist. LEXIS 172922* citing *Kelly, Grossman & Flanagan, LLP v Quick Cash, Inc., 35 Misc 3d 1205[A], 950 NYS2d 723, 2012 NY Slip Op 50560[U] [Sup. Ct. Suffolk Cty. 2012]*).

The Agreement provided for the Purchase and Sale of Future *Receivables*:

[IBIS], (together with its successors and/or assigns, the "Buyer") hereby purchases from the merchant set forth above (the "Seller"), a percentage, as specified below **[\*3]** (the "Purchased Percentage"), of the proceeds of each future sale by Seller whether the proceeds are paid by cash, check, ACH, credit card, debit card, bank card, charge card and/or and other means (collectively "Future Sale Proceeds") until the Buyer has received the  **[\*\*3]** amount specified below (the "Purchased Amount") for the purchase price ("Purchase Price") set forth below.

In the contract the parties expressly stated their mutual intent to enter into a purchase and sale of future sales proceeds agreement governed by the Uniform Commercial Code. The parties set forth their intent in the Agreement:

Section 4.1 Sale of Future Sale Proceeds. The Seller and the Buyer acknowledge and agree that the Purchase Price paid by the Buyer in exchange for the Purchased Amount of Future Sale Proceeds in a sale of the Purchased Amount is not intended to be, nor shall it be construed as, a *loan* from the Buyer to the Seller. The Buyer is the owner of the Future Sale Proceeds purchased by the Buyer hereunder, and the Future Sale Proceeds purchased by the Buyer hereunder represents a bona fide sale by the Seller to a customer. . . .

Section 5.5(a) Seller acknowledges that the sale of the Purchased Amount of Seller's Future Sale **[\*4]** Proceeds is governed by the *Article 9 of the Uniform Commercial Code*, which provides, among other things, that a purchaser is authorized to file a financing statement against a seller of *receivables* in order [sic] give notice to third parties.

Accordingly, Seller hereby authorizes Buyer to File one or more financing statements evidencing the sale of the Purchased Amount of Future Sale Proceeds hereunder. . . .

New York Courts have held that a contract such as the within Agreement are not *loans* and are not subject to *usury* laws. In *Merchants Advance, LLC*, the court found an agreement for the purchase of future *receivables* and sales proceeds lacked "the necessary elements of a *loan*" transaction" and was not subject to *usury* laws (*Merchants Advance, LLC v Tera K LLC, T/A Tribeca Frank Carabetta, 2008 NY Misc LEXIS 10889, [Sup. Ct. N.Y. Cty. 2008]*). "A primary indicia of *usury* is repayment of the principal sum advanced absolutely. Yet in the underlying agreement in this lawsuit the advance will only assuredly by [sic] repaid if the defendant defaults. Moreover, plaintiff surrendered control of repayment." (*Id. at \*4*)). In determining that the agreement was a true purchase and sale, as opposed to a *usurious loan*, the court considered the structure of the transaction and the language used by the parties in the agreement. (*Id. at \*5*). The agreement in *Merchants Advance, [\*5] LLC* was substantively the same as the subject **[\*\*4]** Agreement. *In Transmedia Rest. Co. v 33 E. 61st St. Rest. Corp.*, the court dismissed counterclaims and affirmative defenses of criminal *usury* where the agreement was a purchase of future sales proceeds for an upfront discounted price (*Transmedia Rest. Co. v 33 E. 61st St. Rest. Corp., 184 Misc 2d 706, 712, 710 N.Y.S.2d 756 [Sup. Ct. N.Y. Cty. 2000]*). An agreement for the sale of future sales proceeds that are due and payable to the buyer contingent upon the seller's sales proceeds cannot constitute a *loan* because "[e]xcept in the case of a default or breach of the April Agreement, Transmedia bears the risk of not being repaid the advanced funds." (*Id. at 711*).

In *Professional Merchant Advance Capital, LLC v Your Trading Room, LLC*, the court reviewed a transaction that was also similar to the within Agreement (*Professional Merchant Advance Capital, LLC v Your Trading Room, LLC, 2012 NY Slip Op 33785[U] (\*12-13 [Sup. Ct. Suffolk Cty. 2012]*). The court analyzed the form of the transaction in addition to the language of the parties' agreement. (*2012 NY Slip Op 33785[U] at 13*). The agreement provided that the buyer had purchased a fixed amount of the seller's future sales proceeds which were deliverable to the buyer from 45% of seller's daily sales proceeds. (*2012 NY Slip Op 33785[U] at 4*). The court held that the defendants' *usury* defense was "unavailing" because the subject agreement was "an

2017 N.Y. Misc. LEXIS 884, *5; 2017 NY Slip Op 30477(U), **4

agreement to purchase future [*6] *receivables* for a lump sum discounted purchase price payable in advance by the plaintiff in exchange for a contingent return." (*2012 NY Slip Op 33785[U] at 14*).

In *Merchant Cash & Capital, LLC v Yehowa Med Servs., Inc., 2016 N.Y. Misc LEXIS 3065 [(Sup. Ct. Nassau Cty. 2016*]), the court reviewed *usury* arguments that are identical to defendants' arguments in this action, and held that defendants' contention that the agreements are civilly and criminally *usurious* is without merit. The court held that "[u]nder the terms of the subject Agreement, if Seller/Defendant produces no daily revenue, no payments are required, and there is no absolute obligation of repayment. While the terms of payment provided for in the Agreement may be onerous, they do not involve a *loan* or forbearance of money, and are unaffected by civil or criminal *usury* status" (*Merchant Cash, supra*).

Purchases and sales of future *receivables* and sales proceeds are common commercial transactions expressly contemplated by the Uniform Commercial Code *(Merchants Capital Access, LLC v Shore Motorsports, LLC, 2011 NY Slip Op 32300[U] [Sup. Ct. Nassau Cty. 2011]; Merch. Cash & Capital v Jang Hwan Ko, 2015 U.S. Dist. LEXIS 80151 [SDNY 2015]; Profl Merch. Advance Capital v McEachern, 2015 U.S. Dist. LEXIS 166429 [EDNY 2015]*). Defendants argue that there is a set and finite fixed daily payment provided for in the Agreement [**5] and that due to the purported fixed daily payment, they are able to calculate interest. The defendants are unable to cite to any section of the Agreement or addendum that indicates there is a fixed daily payment. [*7] Rather, there are more than four pages of the Agreement dedicated to providing the mechanisms for the parties to ensure the percentage of sales proceeds collected by IBIS remains true to Four Paws' actual sales proceeds over the course of the Agreement. Even if the Agreement were interpreted as having a fixed daily payment, with no adjustments or reconciliations, defendants' *usury* defense would still fail because the Agreement provided no liability in the event that the seller's business failed because it could not generate sufficient revenue to continue operating.

Defendants argue that there were no contingencies upon which delivery of IBIS' portion of the purchased sales proceeds would not be due. Defendants' argument does not rely upon the language of the contract but on unsubstantiated and conclusory assertions. The Agreement expressly sets forth contingencies under which none of the defendants would be obligated to

delivery anything to IBIS. The Agreement expressly contemplates that, if Four Paws cannot generate sufficient revenue to continue operating and must cease operating or file bankruptcy, neither defendant will be liable for anything to IBIS. "[IBIS], [Business Defendant], [*8] and Guarantor(s) acknowledge and agree that if Seller has not violated the terms of this Agreement, the fact that [Four Paws] goes bankrupt or out of business shall not (a) be considered a Breach, or (b) obligate Guarantor(s) to pay. . . ." The Agreement includes express provisions to ensure that IBIS will not receive any money other than IBIS' share of the purchased future sales proceeds that have actually come to fruition (Section 1.1). "In exchange for the purchase of the Purchased Percentage of the Seller's Future Sale Proceeds, the Seller hereby agrees (i) to deposit all Future Sales Proceeds into the Bank Account . . . and (iii) not to deposit any funds into the Bank Account other than Future Sale Proceeds, or if any such deposits are made to notify Seller as soon as practicable." In order to ensure that IBIS will not inadvertently receive any money other than the purchased future sales proceeds, the Agreement provides a reconciliation mechanism by which IBIS will return to Four Paws anything that does not represent future sales proceeds. Moreover, the Agreement's lack of a specific ending date is consistent with the contingent nature of each and every collection of future sales proceeds [*9] under the contract. Because IBIS' collection of sales proceeds is contingent upon Four Paws actually generating sales and those sales actually resulting in the collection of revenue, neither party could have known when the Agreement might end because IBIS' collection of sales proceeds was wholly contingent upon the outside factor of customers actually shopping at Four Paws and paying for [**6] products and services. The existence of this uncertainty in the length of the Agreement is an express recognition by the parties of the wholly contingent nature of this Agreement. The distinguishing hallmark of a *loan* is the lender's absolute right to repayment of the principal (see *MoneyForLawsuits V LP v Rowe, 2012 U.S. Dist. LEXIS 43558, 2012 WL 1068171 [E.D. MICH. 2012]*). This is a strict inflexible requirement (see *Zoo Holdings, LLC v Clinton, 11 Misc 3d 1051[A], 814 N.Y.S.2d 893, 2006 NY Slip Op 50167[U], at *4 [Sup. Ct. N.Y. Cty. 20006]*). "For a true *loan* it is essential to provide for repayment absolutely and at all events. . . ." (*2006 NY Slip Op 50167[U] at *5*, quoting *Rubenstein v Small, 273 AD 102, 104, 75 N.Y.S.2d 483 [1st Dept 1947]; see also Transmedia, supra at 711*] [the court held there can be no *usury* unless the principal sum advanced is repayable absolutely]). "Where payment or enforcement

2017 N.Y. Misc. LEXIS 884, *9; 2017 NY Slip Op 30477(U), **6

rests upon a contingency, the agreement is valid even though it provides for a return in excess of the legal rate of interest" (*Professional Merchant Advance Capital, LLC v Your Trading Room, LLC, 2012 NY Slip Op 33785[U], 2012 N.Y. Misc. LEXIS 6757 [Sup. Ct. Suffolk Cty. 2012]*).

Even if the court disregarded the existence of the other contingencies, **[*10]** IBIS could never have possessed *usurious* intent because it was impossible for the parties to know when, if ever, IBIS might collect the full purchased amount, or whether IBIS would even be entitled to collect the full purchased amount. Defendants' calculation asks the court to divide the estimated amount for the first two-week period by the total purchased amount and ignore the rest of the contract. Such an approach ignores the fact that both Four Paws and IBIS each had a right to have the estimated amount adjusted every two weeks to reflect the Business Defendant's changing collection of sales proceeds. It asks the court to treat variables that were subject to change many times over the course of the agreement as constants. Since IBIS' right to collect its portion of sales proceeds was variable, it is impossible for a party to have calculated the equivalent rate of interest without the result being expressed in terms of a variable. Defendants' argued interest rate calculations are nothing more than mere speculation based upon assumptions and hypotheses regarding what might have occurred under a very specific set of circumstances. The parties will never know if those circumstances **[*11]** would occur because the defendants allegedly breached the contract after having performed for only a short period of time. It was fundamentally impossible for the parties to have *usurious* intent because it was mathematically impossible for the parties to calculate the equivalent to an interest rate at the time they entered into the Agreement. The only time the parties could have possessed sufficient data to calculate the comparable equivalent to an interest rate, would have been too late for IBIS to have possessed *usurious* intent.

**[**7]** Defendants' *usury* defense and counterclaims are dismissed as a matter of law. Plaintiff did not possess the requisite intent to enter to a *usurious loan* agreement. The parties entered a Purchase and Sale transaction, rather than a *loan* (*see* Section 4.1 and Section 5.5[a] of the Agreement [*supra*]). (*See Freitas v Geddes S&L Assn., 63 NY2d 254, 262, 471 N.E.2d 437, 481 N.Y.S.2d 665; Feinberg v Old Vestal Rd. Assoc., Inc., 157 AD2d 1002, 550 N.Y.S.2d 482*).

Defendants' opposition papers only address the motion to dismiss the *usury* defense. There is no opposition to the application by "plaintiff to dismiss paragraphs 32-44 of the "Separate Defenses" section of the Answer. The defenses contained in paragraphs 32-44 of Defendants' Answer are dismissed as being scandalous, irrelevant, and nothing more than meritless and prejudicial claims **[*12]** that IBIS is a criminal and/or engaged in fraudulent conduct.

A Preliminary Conference (*see 22 NYCRR 202.12*) shall, be held at the Preliminary Conference Part, located at the Nassau County Supreme Court on the 23rd day of March, 2017 at 9:30 AM. This directive, with respect to the date of the Conference, is subject to the right of the Clerk to fix an alternate date should scheduling require. The attorneys for the plaintiff shall serve a copy of this order on the Preliminary Conference Clerk and the attorneys for, the defendant.

All matters not decided herein are denied.

This constitutes the Decision and Order of this Court.

Dated: March 10, 2017

Mineola, New York

ENTER:

/s/ Robert A. Bruno

Hon. Robert A. Bruno, J.S.C.

---

**End of Document**

 Positive

As of: May 10, 2018 5:49 PM Z

# *Merchant Cash & Capital, LLC v Sogomonyan*

Supreme Court of New York, Nassau County

March 2, 2017, Decided

601496/16

**Reporter**

2017 N.Y. Misc. LEXIS 1983 *; 2017 NY Slip Op 31111(U) **

[**1] MERCHANT CASH AND CAPITAL, LLC, Decision and Order, Plaintiff, -against- OLGA SOGOMONYAN d/b/a ST. OLGA TRANSPORTATION, and OLGA SOGOMONYAN, Defendants. INDEX NO.:601496/16.

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

Merchant, Buyer, proceeds, bank account, Defendants', credit card, future sale, affirmative defense, summary judgment, cause of action, *receivables*, collected, attorneys', guaranty, obligations, electronic, injunction, credit card receipt, purchase price, sales proceeds, business day, Indemnified, hereunder, processor, remedies, *usurious*, Amounts, debit

**Judges:** [*1] Present: HON. VITO M. DESTEFANO Justice.

**Opinion by:** VITO M. DESTEFANO

## Opinion

### Decision and Order

[**2] In an action to recover damages for, *inter alia*, breach of contract and breach of a guaranty, the Plaintiff moves for an order pursuant to: *CPLR 3211* dismissing the Defendants' affirmative defenses (Motion Seq. No. 1); and *CPLR 3212* granting it summary judgment against the Defendants (Motion Seq. No. 2). The Defendants move for an order "vacating the plaintiff's pendent lite lien and restraint on defendants' PayPal account; and restraining plaintiff from any further liens or restraints" pending the entry of judgment (Motion Seq. No. 3).

### Background

The Plaintiff, Merchant Cash and Capital, LLC ("Merchant") is engaged in the purchase and sale of future *receivables* and sale proceeds between commercial entities, often referred to as a "merchant cash advance." Defendant Olga Sogomonyan d/b/a St. Olga Transportation ("Company") is a sole proprietorship owned by individual Defendant Olga Sogomonyan (collectively referred to as "Defendants").

On December 15, 2015, Merchant and the Company entered into an agreement ("Agreement") whereby Merchant purchased $99,750 of the Company's future sales proceeds for a purchase price of $75,000 (Ex. [*2] "C" [Motion Seq. No. 1]). Pursuant to the Agreement, the Company agreed to pay Merchant $99,750 by ensuring that all of its sales proceeds and *receivables* were deposited into one designated deposit account and permitting Merchant to electronically debit from that account 11% percent of the Compaq's daily sales proceeds until such time as Merchant collected the contracted for amount of $99,750.

The Agreement contained the following unconditional personal guaranty by Olga Sogomonyan ("Guarantor"):

IN CONSIDERATION OF THE BUYER ENTERING INTO THIS AGREEMENT, AND TO INDUCE BUYER TO ENTER INTO THIS AGREEMENT, THE UNDERSIGNED PRINCIPAL(S) OF SELLER ("GUARANTOR(S)") HEREBY PERSONALLY GUARANTEE TO BUYER THAT: (1) ALL INFORMATION [**3] PROVIDED BY SELLER TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THIS

2017 N.Y. Misc. LEXIS 1983, *2; 2017 NY Slip Op 31111(U), **3

AGREEMENT IS TRUE, CORRECT AND COMPLETE, (2) SELLER SHALL NOT REPLACE THE CREDIT CARD PROCESSOR APPROVED BY BUYER OR ENGAGE AN ADDITIONAL CREDIT CARD PROCESSOR, IN EACH CASE, PRIOR TO THE TIME THAT BUYER HAS RECEIVED THE ENTIRE PURCHASED AMOUNT; AND (3) SELLER SHALL NOT BREACH, OR DO ANY OF THE ACTS PROHIBITED BY, SECTION 3.1 OF THIS AGREEMENT. This guarantee shall be the continuing, irrevocable, unconditional and joint and several obligations of the Guarantors [*3] and the Guarantors hereby waive demand of payment, notice of presentment, and any and all requirements of notice, defenses, offsets and counterclaims and any other act or omission of Buyer which changes the scope of the Guarantor's risk, and Guarantors further agree that Buyer may proceed directly against the Guarantors without first proceeding against Seller. Guarantor further guarantees the payment of and agrees to pay all indemnified amounts (as defined in section 5.7 of the Agreement). By signing below Guarantors agree to this Guarantee and each representation, warranty and covenant set forth is section 3 and 4.1 of this Agreement, which representations, warranties and covenants shall survive the termination of this Agreement as provided in Section 5.8 hereof (emphasis in original).

Other relevant provisions of the Agreement include:

Section 4.1 *Sale of Future Sale Proceeds. The Seller [Company] and the Buyer [Merchant] acknowledge and agree that the Purchase Price paid by the Buyer in exchange for the Purchased Amount of Future Sale Proceeds is a sale of the Purchased Amount and is not intended to be, nor shall it be construed as, a **loan** from the Buyer to the Seller*. The Buyer is the owner of the Future Sale Proceeds purchased [*4] by the Buyer hereunder, and the Future Sale Proceeds purchased by the Buyer hereunder represents a bona fide sale by the Seller to a customer . . . .

Section 4.3 *Collection of **Receivables***. As provided herein, the Purchased Percentage of each Future Sale Proceeds due to the Seller shall be paid to Buyer by the credit card processor approved by Buyer, or shall be collected by Buyer from electronic check or ACH payments initiated by Buyer or its agents from the Bank Account . . . .

Section 4.4 *Remedies.* In the event of (a) any breach or default in the performance by Seller of any covenant or agreement contained in this Agreement . . . , the Buyer [**4] shall be entitled to all remedies available hereunder, under *Article 9 of the Uniform Commercial Code* or other applicable law. In the event that Buyer cannot access the Bank Account because of a Breach, then, without limiting Buyer's other rights and remedies, Buyer will be entitled to collect from Seller an estimated daily payment that represents the "Purchased Percentage" of Seller's Future Sales Proceeds for each business day Buyer does not have access to the Bank Account . . . *Buyer, Seller and Guarantor(s) acknowledge and agree that if Seller has not violated the terms of this Agreement, the fact that [*5] it goes bankrupt or out of business shall not (a) be considered a Breach, or (b) obligate Guarantor(s) to pay the Purchased Amount to Seller* (emphasis added).
* * *

Section 5.7 *Indemnified Amounts.* In the event of a Breach, except as otherwise provided in Section 5.10, Seller and Guarantor(s), jointly and severally, shall assume liability for and do hereby agree to indemnify, protect, save and keep harmless Buyer and its agents and servants, from and against any and all liabilities, claims, losses, obligations, damages, penalties, actions, and suits of whatsoever kind and nature imposed on, incurred by or asserted against Buyer or its agents and servants, in any way relating to or growing out of such Breach (collectively, "Indemnified Amounts"), *including, without limitation, the payment of all costs and expenses of every kind of enforcement of Buyer's rights and remedies hereunder and/or the collection of amounts due to Buyer hereunder, including attorneys' fees and costs in any trial court or appellate court proceeding, any administrative proceeding, any arbitration or mediation, or any negotiations or consultations in connection with any Breach. Such Indemnified Amounts shall bear interest at the highest [*6] rate of interest allowed by applicable law until paid* (emphasis added).

A letter addendum ("Addendum"), which was also executed the same day as the Agreement, allowed each party to recalculate the daily payments every two weeks. Specifically, the Addendum provided:

Pursuant to the Merchant Agreement, Buyer has agreed to make a cash advance to Seller in the

2017 N.Y. Misc. LEXIS 1983, *6; 2017 NY Slip Op 31111(U), **4

amount of the "Purchase Price" in order to purchase the "Purchased Amount" of either (a) the Seller's future credit card, debit card, bank card and/or other charge card (collectively, "credit card") *receivables* due to Seller from its credit card processor, or (b) the proceeds of future sales by Seller whether the proceeds are paid by cash, check, credit card and/or and other means. The Merchant Agreement specifies whether Buyer has purchased a specified percentage of future credit card receipts (the "Credit Card Program") or a specified percentage of future revenues of [**5] Seller (the "Total Revenue Program").

Seller desires to participate in Buyer's "Adjustable ACH Program" pursuant to which, in lieu of Seller's credit card processor making payments directly to Buyer of a portion of all future credit card *receivables*, Buyer or its agents [*7] will initiate daily electronic check or automated clearinghouse (ACH) payments from Seller's bank account on each business day until the Buyer has received an amount equal to the Purchased Amount.
* * *
B. Buyer shall initiate, on a daily basis on each business day, electronic check or ACH payments from the bank account identified in the ACH Authorization . . . maintained with the bank holding the Bank Account (the "Bank"), in an amount determined by Buyer in accordance with the provisions of this letter which represents the "Purchased Percentage" of Seller's daily average credit card receipts (in the case of the Credit Card Program) or daily average revenues (in the case of the Total Revenue Program), as specified in the Merchant Agreement (the "Daily Payment Amount").
C. The initial Daily Payment Amount shall be $593.75 per day. The Daily Payment Amount is subject to adjustment as set forth in Paragraphs D and E below.

D. Every two (2) weeks after the funding of the Purchase Price to Seller (each such time period, a "Calculation Period"), either Buyer or Seller (the "notifying party") may give written notice to the other (the "receiving party") requesting an increase or decrease in the [*8] Daily Payment Amount based upon . . . . daily average revenues . . . during the preceding Calculation Period. The Daily Payment Amount may be (1) increased if the amounts collected by Buyer from Seller during the most recently ended Calculation Period were less

than the Purchased Percentage of all Credit card receipts or all revenues . . . of Seller during such Calculation Period, or (2) decreased if the amounts collected by Buyer from Seller during the most recently ended Calculation Period were more than the Purchased Percentage of all Credit Card receipts or all revenues . . . of Seller during such Calculation Period. The new Daily Payment Amount shall be equal to the product of (a) the Purchased Percentage times (b) . . . daily average revenues . . . of Seller during the most recent Calculation. *The intent of the foregoing adjustments shall be for Buyer to receive the Purchased Percentage of all Credit Card receipts or all revenues, as applicable, of Seller until Buyer has received an amount equal to the Purchased Amount* (emphasis added).

[**6]  * * *

H. In the event that Buyer cannot access the Bank Account or in the event that an electronic check or ACH payment initiated by Buyer from [*9] the Bank Account is not paid in full based upon insufficient funds in the Bank Account or otherwise, then to the extent not prohibited by applicable law and without duplication, Buyer will be entitled to collect a $35 fee (or, if less, the maximum amount allowed to be charged under applicable law) for each business day Buyer does not have access to the Bank Account and for each electronic check or ACH payment that is not paid in full, which shall be in addition to the Daily Payment Amounts that otherwise became due. In addition, in the event that Buyer does not have access to the Bank Account because of a Breach, then, without limiting Buyer's other rights and remedies, Buyer will be entitled to collect from Seller the greater of the then-current Daily Payment Amount or the initial Daily Payment amount for each business day Buyer does not have access to the Bank Account.

On December 18, 2015, Merchant deposited the purchase price into the Company's account at JPMorgan Chase Bank ("Bank"). Merchant collected $8,906.25 of the purchased future sales proceeds until January 20, 2016, after which Merchant tried, but was unable to collect, any more of the future sales. The Company "specifically [*10] instructed" the Bank "not to honor [Merchant's] debits of its 11% from the designated revenue deposit account" (Affidavit in Support at ¶ 12 [Motion Seq. No. 2]). The balance of future proceeds owing to Merchant is $90,843.75 (Complaint at ¶ 12; Affidavit in Support at 1119 [Motion Seq. No. 2]).

2017 N.Y. Misc. LEXIS 1983, *10; 2017 NY Slip Op 31111(U), **6

On March 7, 2016, Merchant commenced the instant action alleging causes of action for, *inter alia*, breach of contract and breach of a guaranty.

Defendants' answer, which contains general admissions and denials, also asserts, *inter [**7] alia*, *usury* as an affirmative defense.[1]

Merchant now moves for an order pursuant to: *CPLR 3211(b)* dismissing Defendants affirmative defenses; and *CPLR 3212* granting it summary judgment with respect to the causes of action for breach of contract, breach of guaranty, and attorneys' fees.

Defendants also moved, by order to show cause, for an order "vacating the plaintiff's *pendent lite* lien and restraint on defendants' PayPal account; and restraining plaintiff from any further liens or restraints" pending the entry of judgment (Motion Seq. No. 3).

For the reasons that follow, the motions of Merchant are granted and the motion of the Defendants is denied.

**The Court's Determination**

*Merchant's Motion [*11] to Dismiss Affirmative Defenses*

In support of its motion to dismiss Defendants' *usury* defense, Merchant submits an attorney affirmation, the pleadings, a copy of the Agreement, and numerous judicial orders by various judges dismissing defenses predicated upon *usury* in similar transactions.

According to Merchant, there were multiple contingencies (under which the Defendants would not be obliged to deliver anything to Merchant) which run counter to the "distinguishing

---

[1] Defendant's *usury* affirmative defense alleges that: the transaction at bar is a "*usurious loan*"; that Merchant may not recover either interest or principal; and that pursuant to the Agreement, Defendant's had been paying $594 per day towards a total of $99,750 after having received proceeds of only $75,000, and therefore were charged annual interest of 50% (Answer at ¶¶ 38, 40, 43). Defendants also assert in their answer that: Merchant, in seeking "to enforce a barred debt", damaged the Defendants' business; payment "was made of any valid obligations"; and any "default" or "blocked account" fees "are an unenforceable penalty and not any reasonable liquidated damage" (Answer at ¶¶ 38, 40, 43-46).

[**8] hallmark of a *loan*" which is the "lender's absolute right to repayment of the principal" (Affirmation in Support at ¶¶ 17, 19; Memorandum of Law in Support at pp 9-12 [Motion Seq. No. 1]).

In opposing Merchant's motion, Defendants argue that the subject transaction was a *loan*, that it was not for the purchase of *receivables*, and it did not eliminate all risk or contingency of Merchant getting paid.

A defendant raising the defense of criminal *usury* must allege and prove that the lender: 1) knowingly charged, took or received; 2) annual interest exceeding 25%; 3) on a *loan* or forbearance (*Penal Law § 190.40*).[2]

The fundamental element of *usury* is the existence of a *loan* or forbearance of money and thus, where there is no *loan* or forbearance, there [*12] can be no *usury* (*Seidel v 18 E. 17th St. Owners, Inc., 79 NY2d 735, 744, 598 N.E.2d 7, 586 N.Y.S.2d 240 [1992]*);(*Donatelli v Siskind 170 AD2d 433, 565 N.Y.S.2d 224 [2d Dept 1991]; Feinberg v Old Vestal Rd. Assoc., Inc., 157 AD2d 1002, 550 N.Y.S.2d 482 [3rd Dept 1990]*). In determining whether a transaction is *usurious*, the law looks not to its form, but its substance, or real character (see *Min Capital Corp. Retirement Trust v Pavlin, 88 AD3d 666, 930 N.Y.S.2d 475 [2d Dept 2011]; O'Donovan v Galinski, 62 AD3d 769, 878 N.Y.S.2d 443 [2d Dept 2009]*).

"There is a strong presumption against the finding of *usury*" (*Giventer v Arnow, 37 NY2d 305, 309, 333 N.E.2d 366, 372 N.Y.S.2d 63 [1975]*) and a "heavy burden rests upon the party seeking to impeach a transaction based upon *usury*. Thus, *usury* must be proved by clear and convincing evidence as to all its elements and *usury* will not be presumed" (*Hochman v LaRea, 14 AD3d 653, 789 N.Y.S.2d 300 [2d Dept 2005]; Freitas v Geddes Say. & Loan Ass'n, 63 NY2d 254, 471 N.E.2d 437, 481 N.Y.S.2d 665 [1984]; Lehman v Roseanne Investors Corp., 106 AD2d 617, 483 N.Y.S.2d 106 [2d Dept 1984]*).

[**9] Unless a principal sum advanced is repayable absolutely, the transaction is not a *loan* (*Rubenstein v Small, 273 AD 102, 75 N.Y.S.2d 483 [1st Dept 1947]*). Where payment or enforcement rests on a contingency, the contract is valid even though it provides for a return

---

[2] The first element requires proof of the general intent to charge a rate in excess of the legal rate rather than the specific intent to violate the *usury* statute (*Angelo v Brenner, 90 AD2d 131, 457 N.Y.S.2d 630 [3d Dept 1982]*).

in excess of the legal rate of interest (*Kelly, Grossman & Flanagan, LLP v Quick Cash, Inc., 35 Misc 3d 1025[A], 950 N.Y.S.2d 723, 2012 NY Slip Op 50560[U] [Sup Ct Suffolk County 2012]*; *Professional Merchant Advance Capital, LLC v Your Trading Room, LLC, 2012 N.Y. Misc. LEXIS 6757, 2012 WL 12284924, at \*5 [Sup Ct, Suffolk County 2012]*; see: also *Lehman v Roseanne Investors Corp., 106 AD2d at 617*, supra ["**loan** is not **usurious** merely because there is a possibility that the lender will receive more than the legal rate of interest"]).

Here, Merchant has demonstrated that the Agreement was not a **loan** and, thus, the affirmative defense alleging that the transaction was based upon a **usurious loan** is without merit (*CPLR 3211[b]*). In this regard, the court notes the following: the Agreement allowed for the debit from the Company's designated bank account of 11% of the Company's daily **receivables** up until Merchant, as buyer, [*13] received the purchased amount of $99,750; each party had the mutual right to adjust the daily payment amount in accordance with the daily revenues generated by the Company[3]; because the sale proceeds generated by the Company was a variable, the parties could not determine how long it would ultimately take for the Company to fully perform; any bankruptcy or cessation of business by the Company would not be considered a breach by the Company or obligate the Guarantor to pay the purchased amount; and Merchant and the Company expressly agreed that the transaction entered into was not intended to be construed as a **loan** (see *Greenfield v Phillies Records, 98 NY2d 562, 780 N.E.2d 166, 750 N.Y.S.2d 565 [2002]* [best evidence of what parties to a written agreement intend is what they say in their writing]).

[**10] Accordingly, the affirmative defense of **usury** is dismissed (*CPLR 3211[b]*).

### Merchant's Motion for Summary Judgment

Merchant moves for summary judgment against the Defendants with respect to the causes of action for breach of contract, breach of the guaranty, and attorneys' fees.[4]

Merchant's submissions, including the pleadings, the Merchant Agreement, and the affidavit of Robert Knox, Vice-President of Retention at Merchant; indicating an outstanding amount of $90,843.75, prima facie establish [*14] its entitlement to judgment as a matter of law with respect to the breach of contract claims (see *Palmetto Partners v AJW Qualified Partners, 83 AD3d 804, 921 N.Y.S.2d 260 [2d Dept 2011]*; *Furia v Furia, 116 AD2d 694, 498 N.Y.S.2d 12 [2d Dept 1986]*).[5] The Company has failed to raise a triable issue of fact in opposition. In addition, the court grants Merchant's motion for summary judgment on its third cause of action for breach of guaranty.

In the fourth cause of action, Merchant seeks the recovery of costs, disbursements, and attorneys' fees based upon the express language of the Agreement which provides that the Company and the Guarantor agree to pay all costs associated with a breach and enforcement of the Agreement (see Ex. "B" at § 5.7 [Motion Seq. No. 2]).

Inasmuch as Merchant is entitled to summary judgment on the first, second, and third [**11] causes of action, the court also grants the branch of Merchant's motion seeking attorneys' fees pursuant to the Agreement and Guaranty in the amount of $3,620.00.[6]

### Defendants ' Motion for a Preliminary Injunction

---

[3] In this regard, section "D" of the addendum provides that the intent of such adjustment, which maybe recalculated every two weeks, is for Merchant to receive the purchased percentage of 11% of the Company's revenues until Merchant has received an amount equal to the'purchased amount. If the Company's revenues dropped, the Company could request a decrease in the daily payment amount which would, in turn, extend the time in which Merchant would recover the amount equal to the purchased amount.

[4] Notably, Merchant does not seek summary judgment on its fifth cause of action sounding in conversion.

[5] The affidavit of Merchant's Vice-President, Robert Knox, establishes that the parties entered into the Agreement and that Merchant fulfilled its obligation under the terms thereof. Knox stated in his affidavit that on January 20, 2016, the Defendants denied Merchant access to the Company's account at the Bank and, consequently, deprived Merchant of its daily sales proceeds and, further, that all of Merchant's attempts to debit 11% of sales proceeds from the Company's account were rejected. Furthermore, the Defendants have failed to deliver the purchased sales proceeds to Merchant by any other means. Merchant has collected only $8,906.25 of the purchased **receivables**, leaving an outstanding balance of $90,843.75 (Affidavit in Support at ¶¶ 10-13, 19 [Motion Seq. No. 2]).

[6] In support of its application for attorneys' fees, counsel submits an affirmation as well as billing statements for services rendered in the instant action.

The Defendants' motion seeking to: enjoin Merchant from imposing any liens or restraints on Defendants' accounts; and to vacate the "pendent lite lien and restraint on" Defendants' Paypal account is denied inasmuch as Defendants have failed to satisfy their burden of demonstrating, by clear [*15] and convincing evidence, a likelihood of ultimate success on the merits, irreparable injury if the injunction were not granted, and a balancing of equities in favor of granting the injunction (*Family-Friendly Media, Inc. v Recorder Television Network, 74 AD3d 738, 903 N.Y.S.2d 80 [2d Dept 2010]*).

In this regard, the court notes that the granting of summary judgment in favor of Merchant, as well as dismissal of Defendants' affirmative defense of ***usury*** herein negates Defendants' "likelihood of success on the merits." Furthermore, Defendants have failed to set forth that it will suffer irreparable harm absent the granting of an injunction (*see 306 Rutledge, LLC v City of New York, 90 AD3d 1026, 935 N.Y.S.2d 619 [2d Dept 2011]* [where the movant can be fully compensated by a monetary award, an injunction will not be granted because no irreparable harm will be sustained in the absence of injunctive relief ]; *Liotta v Mattone, 71 AD3d 741, 900 N.Y.S.2d 62 [2d Dept 2010]*; *Ginsburg v Ock-A-Bock Community Ass 'n, Inc., 34 AD3d 637, 825 N.Y.S.2d 119 [2d Dept 2006]*).

## Conclusion

Based on the foregoing, it is hereby

Ordered that the motion of the Plaintiff for an order pursuant to *CPLR 3211(b)* is granted [**12] and the affirmative defense interposed in the Defendants' answer alleging that the transaction at bar is based upon a ***usurious loan*** is dismissed; and it is further

Ordered that the motion of the Plaintiff for an order pursuant to *CPLR 3212* on the first, second, third and fourth causes of action is granted and Plaintiff is granted judgment against Defendants [*16] for the amount demanded in the complaint; and it is further

Ordered that the Plaintiff is awarded attorneys' fees in the amount of $3,620.00, plus interest, costs, and disbursements, and it is further

Ordered that the motion of the Defendants is denied.

This constitutes the decision and order of the court.

Dated: March 2, 2017

/s/ Vito M. DeStefano

Hon. Vito M. DeStefano, J.S.C.

---

**End of Document**



Cited
As of: May 10, 2018 5:34 PM Z

## *Chartock v National Bank of California*

Supreme Court of New York, Queens County

January 17, 2017, Decided

708688/16

**Reporter**
2017 N.Y. Misc. LEXIS 673 *; 2017 NY Slip Op 30357(U) **

[**1]  DANIEL CHARTOCK, Plaintiff, -against- NATIONAL BANK OF CALIFORNIA, 1 GLOBAL CAPITAL, LLC., Defendants. Index No. 708688/16

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

cause of action, allegations, *receivables*, *usurious*

**Judges:** [*1] PRESENT: HON. TIMOTHY J. DUFFICY, J.S.C.

**Opinion by:** TIMOTHY J. DUFFICY

## Opinion

[**2]  Upon the foregoing papers, it is ordered that the motion is granted.

This action involves the purchase of *receivables* by 1 Global Capital LLC (Global) and a non-party, The Attitude Group Inc. (Attitude). Plaintiff pro se claims, *inter alia*, that the transaction was a *usurious loan*. Movant California allegedly initiated *usurious loan* debits and credits via ACH on behalf of Global to and from customer accounts such as Attitude. Under the agreement, Attitude agreed to sell $207,000 of future *receivables* for an up-front discounted price of $150,000. Attitude further agreed to deposit future *receivables* into a bank account and authorize Global to obtain a specified percentage of the deposits of future *receivables* until such time as Global receive the full $207,000 purchased amount. The agreement authorized Global to debit such portion of future *receivables* from Attitude's bank account on a daily

basis. The agreement also authorized Global to debit a specified daily amount each day of $1,162.92, which would be reconciled monthly such that the ultimate amount paid would reflect the agreed-upon portion of the deposits of future *receivables* [*2] to be paid to Global. The $207,000 purchased amount was to be paid over an indeterminate amount of time. Attitude's payment of the purchased amount was contingent on Attitude's actually generating future *receivables*. The amount of time it would take for Global to obtain the purchased amount was contingent upon the amount of proceeds generated by Attitude. Global bore the risk that Attitude might pay the purchased amount over a very long period of time. Moreover, if Attitude did not generate future proceeds from its business, Global had no recourse against Attitude.

On a motion to dismiss a complaint for failure to state a cause of action, all factual allegations must be accepted as truthful, the complaint must be construed in the light most favorable to plaintiffs, and plaintiffs must be given the benefit of all reasonable inferences. (*See Allianz Underwriters Ins. Co. v Landmark Ins. Co., 13 AD3d 172, 174, 787 N.Y.S.2d 15 [1st Dept. 2004]*). The Court determines only whether the facts as alleged fit within any cognizable legal theory. (*See Leon v. Martinez, 84 NY2d 83, 87-88, 638 N.E.2d 511, 614 N.Y.S.2d 972 [1994]*). The court may deny a motion to dismiss, "if, from the pleading's four corners, factual allegations are discerned which, taken together, manifest any cause of action cognizable at law." (*511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152, 773 N.E.2d 496, 746 N.Y.S.2d 131 [2002]*).

"[N]evertheless, allegations consisting of bare legal conclusions, as well [*3] as factual claims either inherently incredible or contradicted by documentary evidence, are not entitled to such consideration." (*Quatrochi v Citibank, N.A., 210 AD2d 53, 53, 618 N.Y.S.2d 820 [1st Dept 1994]*) (*Internal citation omitted*).

The first and second causes of action of the plaintiff's

2017 N.Y. Misc. LEXIS 673, *3; 2017 NY Slip Op 30357(U), **2

complaint allege criminal *usury* as against movant California. The third cause of action contains allegations based on an improper *usurious loan*. The fourth cause of action was intended to assert a cause of action for aiding and abetting civil *usury*. The fifth cause of action alleges that California aided and abetted the allegedly *usurious* lenders violation of New York's criminal *usury* law. The sixth cause of action alleges that California was unjustly enriched by virtue of wrongfully retaining transaction fees. The seventh cause of action alleges that California engaged in deceptive business practices. The eighth cause of action alleges that California should be enjoined from serving as an originating depository financial institution for allegedly *usurious* lenders. Hence, the thrust of all eight causes of action are allegations of *usury*. The complaint, albeit inartfully, seeks to represent a class.

The Court initially notes that the signatory to the subject agreement was [*4] the corporation with which the plaintiff was affiliated, rather than the individual plaintiff. Although the plaintiff may have been Attitude's sole officer and shareholder, a corporation has a separate legal existence from its shareholders even where the corporation is wholly owned by a single individual (*see Harris v Stony Clove Lake Acres, 202 AD2d 745, 747, 608 N.Y.S.2d 584 [3d Dept. 1994]; New Castle Siding Co. v Wolfson, 97 AD2d 501, 502, 468 NYS2d 20 [2d Dept. 1983]*, affd *63 NY2d 782, 470 N.E.2d 868, 481 N.Y.S.2d 70 [1984]*). "[C]ourts are loathe to disregard the corporate form for the benefit of those who have chosen that form to conduct business" (*Baccash v. Sayegh, 53 AD3d 636, 639, 862 N.Y.S.2d 564 [2d Dept. 2008] citing Harris v Stony Clove Lake Acres, supra at 747*). Accordingly, the plaintiff lacks standing, and his complaint is dismissible on that basis.

However, even assuming that standing were conferred, the agreement between the parties is unquestionably a purchase of *receivables*, and hence, not a *loan*, to which the laws of *usury* apply. This was established in *Merchant Cash & Capital v Edgewood Group, LLC, 2015 U.S. Dist. LEXIS 94018, 2015 WL 4451057 (U.S.D.C., S.D.N.Y, Koeltl, J.)*, [**4] *Merchant Cash & Capital, LLC v Yehowa Med. Servs., Inc., 2016 NY Misc. LEXIS 3065 *, 2016 NY Slip Op 31590(U)* [Sup Ct. Nassau Co. 2016; Murphy, J.]); *Merchant Cash & Capital, LLC v Liberation Land Co., LLC, 2016 NY Misc. LEXIS 4854, 2016 NY Slip Op 32589(U)* [Sup Ct. Nassau Co. 2016; Mahon, J.]; *Retail Capital, LLC. d/b/a Credibly v Spice Intentions Inc. d/b/a Curry Heights, and AK M Karim, Index No. 713376/15, 2016 N.Y. Misc. LEXIS 4883, 2016 NY Slip Op 32614(U), Sup. Ct.*

*Queens Co.* [2016; this Court]) and other courts facing this issue.

Even further assuming that the agreement was a *loan*, *usury* is an affirmative defense, [*5] and a heavy burden rests upon the party seeking to impeach a transaction based upon *usury* (*see Hochman v. LaRea, 14 AD3d 653, 654, 789 N.Y.S.2d 300; Gandy Mach. v Pogue, 106 AD2d 684, 483 N.Y.S.2d 744*). The maximum per annum interest rate for a *loan* or forbearance of money is 16%, under New York's civil *usury* statute, and 25% under the state's criminal *usury* statutes (*see General Obligations Law § 5-501* [civil *usury*]; *Penal Law §§ 190.40, 190.42* [criminal]). It is well settled, however, that where a *loan* is made to a corporation, the corporation and the individual guarantors of a corporate obligation are prohibited by statute from interposing the defense of *usury* (*see General Obligations Law § 5-521; Schneider v Phelps, 41 NY2d 238, 359 N.E.2d 1361, 391 N.Y.S.2d 568; Webar, Inc. v Capra, 212 AD2d 594, 595, 622 N.Y.S.2d 585 [1st Dept. 1995]*). An exception to the general rule is recognized, however, "'where the corporate form is used to conceal a *usurious loan* to an individual to discharge his personal obligations, and not to further a corporate enterprise'" (*Webar, Inc. v Capra, supra, at 595 quoting Sanders & Assocs. v Friedman, 137 AD2d 677, 524 N.Y.S.2d 768; see eg Donenfeld v Brilliant Tech. Corp., 2011 NY Misc. LEXIS 934, *11, 2011 NY Slip Op 30554(U), 10 [Sup Ct. NY Co. 2011] )*. The applicability of this exception has not been demonstrated.

To successfully raise the defense of *usury*, a debtor must allege and prove by clear and convincing evidence that a *loan* or forbearance of money, requiring interest in violation of a *usury* statute, was charged by the holder or payee with the intent to take interest in excess of the legal rate (*see Giventer v Arnow, 37 NY2d 305, 309, 333 N.E.2d 366, 372 N.Y.S.2d 63)*. If *usury* can be gleaned from' the face of an instrument, intent will be implied [*6] and *usury* will be found as a matter of law (*see Fareri v Rain's Intl., 187 AD2d 481, 482, 589 N.Y.S.2d 579)*. *Usury* must be proved by clear and convincing evidence as to all its elements and *usury* will not be presumed (*see Freitas v Geddes Say. & Loan Assn., 63 NY2d 254, 261, 471 N.E.2d 437, 481 N.Y.S.2d 665)*.

[**5] Here, Attitude is precluded by *General Obligations Law §5-521(1)* from interposing the defense of civil *usury*, and cannot assert criminal *usury* as a cause of action, rather than as an affirmative defense.

2017 N.Y. Misc. LEXIS 673, *6; 2017 NY Slip Op 30357(U), **5

Finally, the *pro se* plaintiff has fallen woefully-short of establishing that he can represent a putative class for several reasons. First, he has not demonstrated that he is aggrieved by the complained - of conduct, since he was not a party to the agreement. Second, he has not demonstrated class definition and numerosity (*see Colbert v Rank Am., Inc., 1 AD3d 393, 768 N.Y.S.2d 13 [2d Dept. 2003]; CPLR 901[a]*. Next, he is appearing *pro se*, has no counsel, and has not demonstrated adequacy of representation; that is, that he has the experience and skills necessary to undertake this type of litigation. Fourth, he fails to demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (*CPLR 901[a][5]*). Finally, the parties' agreement contains a waiver of class actions, which would preclude such class action, in any event.

Accordingly, for all of the foregoing reasons, it is hereby,

**ORDERED [*7]** , that motion by defendant **NATIONAL BANK OF CALIFORNIA** for an order pursuant to *CPLR 3211(a)(7)* dismissing the instant action for failure to state a cause of action is granted in all respects; and it is further,

**ORDERED**, that all other applications not specifically addressed herein are denied in all respects.

**Dated: January 17, 2017**

/s/ Timothy J. Dufficy

**TIMOTHY J. DUFFICY, J.S.C.**

---

**End of Document**

No *Shepard's* Signal™
As of: May 10, 2018 5:24 PM Z

## *Merchant Cash & Capital, LLC v Frederick & Cole, LLC*

Supreme Court of New York, Nassau County

December 21, 2016, Decided; January 9, 2017, Entered

603517/16

**Reporter**

2016 N.Y. Misc. LEXIS 5084 *; 2016 NY Slip Op 32730(U) **

[**1] MERCHANT CASH AND CAPITAL, LLC, Plaintiff, -against- FREDERICK & COLE, LLC d/b/a BRICK CITY PIZZA, ASHLEY D. FREDERICK, and DAVID COLE, Defendant. INDEX NO.: 603517/16

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

Merchant, Buyer, proceeds, credit card, purchase price, Funding, bank account, future sale, *receivables*, card, affirmative defense, Defendants', electronic, collected, repayment, credit card receipt, sales proceeds, *usurious loan*, business day, cross motion, contingencies, processor, debit

**Judges:** [*1] Present: HON. VITO M. DESTEFANO, J.S.C.

**Opinion by:** VITO M. DESTEFANO

## Opinion

### Interlocutory Order

In an action, *inter alia*, to recover damages for breach of contract, the Plaintiff moves for an order pursuant to *CPLR 3211(b)* dismissing Defendants' affirmative defense of *usury* (Motion Sequence Number 1). The Defendants cross-move, *inter alia*, for an order pursuant to *CPLR 3212(a)* granting them summary judgment dismissing the complaint on the ground that the transaction at bar constituted a *usurious loan* (Motion Sequence Number 2).

**[**2] Background**

The Plaintiff, Merchant Cash and Capital, LLC ("Merchant") is engaged in the purchase and sale of future *receivables* and sale proceeds between commercial entities, often referred to as a "merchant cash advance." Defendant Frederick & Cole, LLC d/b/a Brick City Pizza ("Company") is a limited liability company which is owned and operated by individual Defendants Ashley D. Frederick and David Cole (collectively referred to as "Defendants").

According to Merchant, on October 27, 2015, it Merchant and the Company entered into an agreement whereby Merchant purchased $34,720 of the Company's future sales proceeds for a purchase price of $28,000 (Affidavit in Opposition to Cross Motion at ¶ 7).[1]

On February [*2] 5, 2016, a letter agreement was executed by the Defendants which set forth the following terms:

We refer to the merchant advance agreement dated February 5, 2016 (the"Existing Merchant Agreement") between you and Merchant Cash and Capital, LLC d/b/a Bizfi Funding ("Bizfi Funding").

This will confirm our telephone conversation of today's date wherein we agreed that Bizfi Funding would make an additional purchase of a percentage of each future credit card, debit card, bank card and/or other charge card (collectively, "Credit Card") *receivables* due to you from you[r] Credit Card processor.

In connection with such additional purchases, we will enter into a new merchant advance agreement between you and Bizfi Funding (the "New Merchant Agreement"). Pursuant to the New Merchant Agreement, Bizfi Funding (the "New Merchant

---

[1] The court notes that the October 27, 2015 agreement is not in the record before the court.

2016 N.Y. Misc. LEXIS 5084, *2; 2016 NY Slip Op 32730(U), **2

Agreement"). Pursuant to the New Merchant Agreement, Bizfi Funding will purchase from you a percentage, as specified below (the "Purchase Percentage"), of each future Credit Card receivable due to you from your Credit Card processor until Bizfi Funding has received a total amount of $58,080.00 (the "Purchased Amount") for a total purchase price of $44,000.00 ("Purchase Price").

[**3] A [*3] portion of the Purchase Price under the New Merchant Agreement, in the amount of $17,635.28, will be withheld from today's cash advance and applied to the "Purchased Amount" under the Existing Merchant Agreement following which Bizfi Funding will be deemed to have received the entire "Purchased Amount" under the Existing Merchant Agreement and the Existing Merchant Agreement will be terminated except for those provisions which expressly survive termination thereof.

You acknowledge that following application of such amount from today's cash advance and funding of the Purchase Price under the New Merchant Agreement, the aggregate total of the Purchase Price paid is equal to $72,000.00 and the aggregate total of the Purchased Amount is equal to $92,800.00.

A $500.00 processing fee will be deducted from the Purchase Price leaving a net funded amount of $25,864.72 that will be deposited to your account.

Lastly, this will confirm that the "Purchase Percentage" under the New Merchant Agreement will be 10%.

That same day, February 5, 2016, Merchant, as Buyer, and Company, as Seller, entered into another merchant agreement pursuant to which the Company sold additional future *receivables* and sales [*4] proceeds with a value of $58,080 to Merchant for a lump-sum payment of $44,000 ("Merchant Agreement").[2] The Merchant Agreement states:

Merchant Cash and Capital, LLC, d/b/a Bizfi Funding (together with its successors and/or assigns, the "Buyer") hereby purchases from the merchant set forth above (the "Seller"), a percentage, as specified below (the "Purchased Percentage"), of the proceeds of each future sale

by Seller whether the proceeds are paid by cash, check, ACH, credit card, debit card, bank card, charge card and/or and other means (collectively "Future Sale Proceeds") until the Buyer has received the amount specified below (the "Purchased Amount") for the purchase price ("Purchase Price") set forth below.

⊞*Go to table1*

[**4] Pursuant to the Merchant Agreement, the Company agreed to pay Merchant $58,080 by ensuring that all of its sales proceeds and *receivables* were deposited into one designated deposit account and permitting Merchant to electronically debit from that account 10% percent of the Company's daily sales proceeds until such time as Merchant collected the contracted for amount of $58,080. The Merchant Agreement [*5] contained personal guaranties by both of the individual Defendants.

Other provisions in the Agreement provide, in relevant part:

Section 4.1 *Sale of Future Sale Proceeds*. *The Seller /Company] and the Buyer [Merchant] acknowledge and agree that the Purchase Price paid by the Buyer in exchange for the Purchased Amount of Future Sale Proceeds is a sale of the Purchased Amount and is not intended to be, nor shall it be construed as, a **loan** from the Buyer to the Seller. The Buyer is the owner of the Future Sale Proceeds purchased by the Buyer hereunder, and the Future Sale Proceeds purchased by the Buyer hereunder represents a bona tide sale by the Seller to a customer . . . .*

Section 4.3 *Collection of **Receivables***. As provided herein, the Purchased Percentage of each Future Sale Proceeds due to the Seller shall be paid to Buyer by the credit card processor approved by Buyer, or shall be collected by Buyer from electronic check or ACH payments initiated by Buyer or its agents from the Bank Account . . . .

Section 4.4 *Remedies*. In the event of (a) any breach or default in the performance by Seller of any covenant or agreement contained in this Agreement . . . , or (b) any breach or inaccuracy of any representation or warranty [*6] made by Seller in this Agreement . . . , the Buyer shall be entitled to all remedies available hereunder, under *Article 9 of the Uniform Commercial Code* or other applicable

---

[2] Thereby bringing the total purchased amount of future *receivables* and sales proceeds to $92,800 for an upfront sum of $72,000 (Complaint at ¶ 9; Affidavit in Opposition to Cross Motion at ¶ 8).

2016 N.Y. Misc. LEXIS 5084, *6; 2016 NY Slip Op 32730(U), **4

law. In the event that Buyer cannot access the Bank Account because of a Breach, then, without limiting Buyer's other rights and remedies, Buyer will be entitled to collect from Seller an estimated daily payment that represents the "Purchased Percentage" of Seller's Future Sales Proceeds for each business day Buyer does not have access to the Bank Account . . . . *Buyer, Seller and Guarantor(s) acknowledge and agree that if Seller [**5] has not violated the terms of this Agreement, the fact that it goes bankrupt or out of business shall not (a) be considered a Breach, or (b) obligate Guarantor(s) to pay the Purchased Amount to Seller* (emphasis added).

A letter addendum ("Addendum"), which was also executed the same day as the Merchant Agreement, allowed each party to recalculate the daily payments every two weeks. Specifically, the Addendum provided:

Pursuant to the Merchant Agreement, Buyer has agreed to make a cash advance to Seller in the amount of the "Purchase Price" in order to purchase the "Purchased Amount" of either (a) the Seller's future credit card, [*7] debit card, bank card and/or other charge card (collectively, "credit card") *receivables* due to Seller from its credit card processor, or (b) the proceeds of future sales by Seller whether the proceeds are paid by cash, check, credit card and/or and other means. The Merchant Agreement specifies whether Buyer has purchased a specified percentage of future credit card receipts (the "Credit Card Program") or a specified percentage of future revenues of Seller (the "Total Revenue Program").

Seller desires to participate in Buyer's "Adjustable ACH Program" pursuant to which, in lieu of Seller's credit card processor making payments directly to Buyer of a portion of all future credit card *receivables*, Buyer or its agents will initiate daily electronic check or automated clearinghouse (ACH) payments from Seller's bank account on each business day until the Buyer has received an amount equal to the Purchased Amount.
\* \* \*

B. Buyer shall initiate, on a daily basis on each business day, electronic check or ACH payments from the bank account identified in the ACH Authorization . . . maintained with the bank holding the Bank Account (the "Bank"), in an amount determined by Buyer in accordance with [*8] the

provisions of this letter which represents the "Purchased Percentage" of Seller's daily average credit card receipts (in the case of the Credit Card Program) or daily average revenues (in the case of the Total Revenue Program), as specified in the Merchant Agreement (the "Daily Payment Amount").

C. The initial Daily Payment Amount shall be $230.48 per day. The Daily Payment Amount is subject to adjustment as set forth in Paragraphs D and E below.

[**6] D. Every two (2) weeks after the funding of the Purchase Price to Seller (each such time period, a "Calculation Period"), either Buyer or Seller (the "notifying party") may give written notice to the other (the "receiving party") requesting an increase or decrease in the Daily Payment Amount based upon . . . . daily average revenues . . . during the preceding Calculation Period. The Daily Payment Amount may be (1) increased if the amounts collected by Buyer from Seller during the most recently ended Calculation Period were less than the Purchased Percentage of all Credit Card receipts or all revenues . . . of Seller during such Calculation Period, or (2) decreased if the amounts collected by Buyer from Seller during the most recently ended [*9] Calculation Period were more than the Purchased Percentage of all Credit Card receipts or all revenues . . . of Seller during such Calculation Period. The new Daily Payment Amount shall be equal to the product of (a) the Purchased Percentage times (b) . . . daily average revenues . . . of Seller during the most recent Calculation. *The intent of the foregoing adjustments shall be for Buyer to receive the Purchased Percentage of all Credit Card receipts or all revenues, as applicable, of Seller until Buyer has received an amount equal to the Purchased Amount* (emphasis added).
\* \* \*

H. In the event that Buyer cannot access the Bank Account or in the event that an electronic check or ACH payment initiated by Buyer from the Bank Account is not paid in full based upon insufficient funds in the Bank Account or otherwise, then to the extent not prohibited by applicable law and without duplication, Buyer will be entitled to collect a $35 fee (or, if less, the maximum amount allowed to be charged under applicable law) for each business day Buyer does not have access to the Bank Account and for each electronic check or ACH payment that is not paid in full, which shall be in

2016 N.Y. Misc. LEXIS 5084, *9; 2016 NY Slip Op 32730(U), **6

addition to the Daily [*10] Payment Amounts that otherwise became due. In addition, in the event that Buyer does not have access to the Bank Account because of a Breach, then, without limiting Buyer's other rights and remedies, Buyer will be entitled to collect from Seller the greater of the then-current Daily Payment Amount or the initial Daily Payment amount for each business day Buyer does not have access to the Bank Account.

On February 10, 2016, Merchant deposited the purchase price into the Company's bank account. Merchant collected $45,277.60 of the purchased future sales proceeds until April 7, 2016, after which Merchant tried, but was unable to collect any more of the future sales. The balance of future proceeds owing to Merchant is $47.277.60 (Complaint at ¶¶ 14, 15; Affidavit in Opposition at ¶¶ 20-24). According to Merchant, on April 20, 2016, Defendant Cole "made a [**7] blanket refusal to cooperate in any capacity and demanded that [Merchant] file suit against him" (Affidavit in Opposition at 24).

On May 17, 2016, Merchant commenced the instant action alleging causes of action for, *inter alia*, breach of contract and breach of a guaranty.

Defendants' answer, which contains general admissions and denials, [*11] also asserts, *inter alia*, *usury* as an affirmative defense.[3]

Thereafter, Merchant moved for an order pursuant to *CPLR 3211(b)* dismissing the affirmative defense of *usury*.

In support of its motion, Merchant submits an attorney affirmation, the pleadings, a copy of the Merchant Agreement, and a decision and order dated June 8, 2016 (Murphy, J.).[4]

[**8] According to Merchant, there were multiple contingencies under which the Defendants would not be obligated to deliver anything to Merchant. One such contingency is Merchant's right to collect sales proceeds which was wholly contingent upon the Company's successful generation of future sales proceeds. Moreover, if the Company could not generate sufficient revenue to continue operating and had to cease operating or file bankruptcy, then Merchant would never collect the full purchased amount and there would be no liability to the Company or the individual guarantors. These contingencies, Merchant argues, run counter to the "distinguishing hallmark of a *loan*" which is the "lender's absolute right to repayment of the principal" (Memorandum of Law in Support at pp 5-8).

Defendants opposed Merchant's motion and cross-moved for an order granting them summary judgment dismissing the complaint on the ground that the transaction at bar constituted a *usurious loan*.[5]

For the reasons that follow, [*13] the motion is granted and the cross motion is denied.

**The Court's Determination**

A defendant raising the defense of criminal *usury* must allege and prove that the lender: 1) knowingly charged,

---

Justice Murphy:

[e]ssentially, *usury* laws are applicable only to *loans* or forbearances, and if the transaction is not a *loan*, there can be no *usury*. As onerous as a repayment requirement may be, it is not *usurious* if it does not constitute a *loan* or forbearance. The Agreement was for the purchase of future *receivables* in return for an up-front payment. The repayment was based upon a percentage of daily receipts, and the period over which such payment would take place was indeterminate. Plaintiff took the risk that there could be no daily receipts, and defendants took the risk that, if receipts were substantially greater than anticipated, repayment of the obligation could occur over an abbreviated period, with the sum over and above the amount advanced being more than 25%. The request for the Court to convert [*12] the Agreement to a *loan*, with interest in excess of 25% would require unwarranted speculation, and would contradict the explicit terms of the sale of future *receivables* in accordance with the Merchant Agreement.

---

[3] Defendant's *usury* affirmative defense alleges that: the transaction at bar is a "*usurious loan*"; that Merchant may not recover either interest or principal; and that pursuant to the Agreement, Defendant's "had been paying a fixed daily amount per day towards a total repayment amount after having received certain proceeds and therefore were charged annual interest for exceeding 25% per annum" (Answer at ¶¶ 38, 40, 43).

[4] In *Platinum Rapid Funding Group Ltd. v VIP Limousine Services, Inc. and Joseph Cotton* (Index No. 604163-15), Judge Murphy dismissed defendants' affirmative defense that the agreement therein, which was similar to the agreement at issue herein, was civilly and criminally *usurious*. According to

[5] Defendant's cross motion also seeks to "deem [ ] defendants' answer amended to include the allegations in defendants' affidavit".

2016 N.Y. Misc. LEXIS 5084, *12; 2016 NY Slip Op 32730(U), **8

took or received; 2) annual interest exceeding 25%; 3) on a *loan* or forbearance (*Penal Law § 190.40*).[6]

The fundamental element of *usury* is the existence of a *loan* or forbearance of money. Where there is no *loan* there can be no *usury* (*Seidel v 18 E. 17th St. Owners, Inc., 79 NY2d 735, 598 N.E.2d 7, 586 N.Y.S.2d 240, 744 [1992]*; [**9] *Feinberg v Old Vestal Rd. Assoc., Inc., 157 AD2d 1002, 550 N.Y.S.2d 482* [3''' Dept 1990]). In determining whether a transaction is *usurious*, the law looks not to its form, but its substance, or real character (see *Min Capital Corp. Retirement Trust v Pavlin, 88 AD3d 666, 930 N.Y.S.2d 475 [2d Dept 2011]*; *O'Donovan v Galinski, 62 AD3d 769, 878 N.Y.S.2d 443 [2d Dept 2009]*).

"There is a strong presumption against the finding of *usury*" (*Giventer v Arnow, 37 NY2d 305, 309, 333 N.E.2d 366, 372 N.Y.S.2d 63 [1975]*) and a "heavy burden rests upon the party seeking to impeach a transaction based upon *usury*. Thus, *usury* must be proved by clear and convincing evidence as to all its elements and *usury* will not be presumed" (*Hochman v LaRea, 14 AD3d 653, 789 N.Y.S.2d 300 [2d Dept 2005]*; *Freitas v Geddes Say. & Loan Ass'n, 63 NY2d 254, 471 N.E.2d 437, 481 N.Y.S.2d 665 [1984]*; *Lehman v Roseanne Investors Corp., 106 A.D.2d 617, 483 N.Y.S.2d 106 [2d Dept 1984]*).

Unless a principal sum advanced is repayable absolutely, the transaction is not a *loan* (*Rubenstein v Small, 273 AD 102, 75 N.Y.S.2d 483* [1' Dept 1947]). Where payment or enforcement rests on a contingency, the contract is valid even though it provides for a return in excess of the legal rate of interest (*Kelly, Grossman & Flanagan, LLP v Quick Cash, Inc., 35 Misc 3d 1205[A], 950 N.Y.S.2d 723, 2012 NY Slip Op 50560[U] [Sup Ct Suffolk County 2012]*; *Professional Merchant Advance Capital, LLC v Your Trading Room, LLC, 2012 N.Y. Misc. LEXIS 6757, 2012 WL 12284924, at *5 [Sup Ct, Suffolk County 2012]*; see also *Lehman v Roseanne Investors Corp., 106 AD2d at 617*, supra ["*loan* is not *usurious* merely because [*14] there is a possibility that the lender will receive more than the legal rate of interest"]).

Here, Merchant has demonstrated that the Merchant Agreement was not a *loan* and thus, the law with respect to *usury* does not apply and the affirmative defense alleging that the transaction was based upon a *usurious loan* is without merit (*CPLR 3211[b]*). In this regard, the court notes the following: the Merchant Agreement allowed for the debit from the Company's designated bank account of 10% of the Company's daily *receivables* up until Merchant, as buyer, received the purchased amount of $58,080; each party had the mutual right to adjust the daily [**10] payment amount in accordance with the daily revenues generated by the Company[7]; Merchant and the Company expressly agreed that the transaction entered into was not intended to be construed as a *loan* (see *Greenfield v Phillies Records, 98 NY2d 562, 780 N.E.2d 166, 750 N.Y.S.2d 565 [2002]* [best evidence of what parties to a written agreement intend is what they say in their writing]); and that any bankruptcy or cessation of business by the Company would not be considered a breach by the Company or obligate either of the guarantors to pay the purchased amount.

Defendants' cross motion is denied inasmuch as the court has granted Merchant's motion dismissing [*15] the affirmative defense of *usury*.

## Conclusion

Based on the foregoing, it is hereby

Ordered that the motion of the Plaintiff is granted and the affirmative defense interposed in the Defendants' answer alleging that the transaction at bar is based upon a *usurious loan* is dismissed; and it is further

[**11] Ordered that the motion of the Defendants is denied in its entirety.

This constitutes the decision and order of the court.

Dated: December 21, 2016

/s/ Vito M. DeStefano

---

[6] The first element requires proof of the general intent to charge a rate in excess of the legal rate rather than the specific intent to violate the *usury* statute (*Angelo v Brenner, 90 AD2d 131, 457 N.Y.S.2d 630 [3d Dept 1982]*).

[7] In this regard, section "D" of the addendum provides that the intent of such adjustment, which maybe recalculated every two weeks, is for Merchant to receive the purchased percentage of 10% of the Company's revenues until Merchant has received an amount equal to the purchased amount. If the Company's revenues dropped, the Company could request a decrease in the daily payment amount which would, in turn, extend the time in which Merchant would recover the amount equal to the purchased amount.

2016 N.Y. Misc. LEXIS 5084, *15; 2016 NY Slip Op 32730(U), **11

**Hon.    Vito    M.    DeStefano,    J.S.C.**

2016 N.Y. Misc. LEXIS 5084, *15; 2016 NY Slip Op 32730(U), **11

**Table1 (*Return to related document text*)**

| Purchase Price | Purchased Percentage | Purchased Amount |
|---|---|---|
| $44,000.00 | 10% Purchase | $58,080.00 |

**Table1 (*Return to related document text*)**

---

**End of Document**


Cited
As of: May 10, 2018 7:26 PM Z

# *Retail Capital, LLC v Spice Intentions Inc.*

Supreme Court of New York, Queens County

December 9, 2016, Decided; January 3, 2017, Filed

713376/15

## Reporter

2016 N.Y. Misc. LEXIS 4883 *; 2016 NY Slip Op 32614(U) **

[**1] RETAIL CAPITAL, LLC d/b/a CREDIBLY, Plaintiff, -against- SPICE INTENTIONS INC. d/b/a CURRY HEIGHTS, and AK M KARIM, Defendants. Index No.: 713376/15

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

sales proceeds, affirmative defense, defendants', *receivables*, parties, cause of action, allegations, collecting

**Judges:** [*1] PRESENT: HON. TIMOTHY J. DUFFICY, J.S.C.

**Opinion by:** TIMOTHY J. DUFFICY

## Opinion

Upon the foregoing papers, it is ordered that the motion is determined as follows.

Plaintiff Retail Capital, LLC. d/b/a Credibly (Credibly) is engaged in the business of purchasing future *receivables* and sales proceeds from other commercial entities for an up front payment. Defendant Spice Intentions d/b/a Curry Heights entered into an agreement with the plaintiff on or about July 13, 2015. Credibly purchased hundred and $43,028 of the defendants' future sales proceeds and *receivables* for an up front payment of $104,400. Pursuant to the agreement, Credibly would collect 14.14% of the defendants' daily revenue until such time as the plaintiff received the full purchased [**2] amount or the defendants failed to generate sufficient revenue to

continue operating and rendering the purchased accounts and sales proceeds uncollectible to the plaintiff and defendants. The agreement explicitly stated that the parties agreed that the purchase price under the agreement is in exchange for the purchased amount and that the purchase price is not intended to be, nor shall it be construed as a *loan* from the plaintiff to the defendants. The defendants [*2] were required to deposit all sales proceeds and revenue into a designated bank account, from which the plaintiff and defendants would each collect their respective portion of the purchased sales proceeds. The agreement provided a reconciliation on demand provision whereby the parties will reach permitted to demand the monthly reconciliation of funds from the other to ensure that neither entity collected more or less of the sales proceeds than they were contractually entitled to collect from the designated bank account. The agreement does not provide for a fixed payment term and provides for the plaintiff's collection of sales proceeds to fluctuate with the actual revenue of the defendants' business. Thus at the time the agreement was entered into, it was impossible for the parties to determine when, if ever, the plaintiff would receive the full purchased amount because the defendants future revenue was variable, and outside the control of the plaintiff. The agreement does not provide the plaintiff with any recourse in the event that the sales proceeds are not generated by the defendants unless the defendants took specific enumerated acts that were calculated to prevent the plaintiff [*3] from collecting the purchased *receivables* in contravention of the defendants' representations, warranties, and covenants, and in breach of the agreements express terms. As part of the agreement, the defendants retained no rights to the purchased *receivables* and sales proceeds, and plaintiff became the sale and exclusive owner of the purchased *receivables* and sales proceeds.

On July 14, 2015, the plaintiff paid the purchase price less any agreed-upon amounts to the defendants into an account designated by the defendants pursuant to

2016 N.Y. Misc. LEXIS 4883, *3; 2016 NY Slip Op 32614(U), **2

the agreement. On or about October 23, 2015, the plaintiff claims that the defendants and its principal began interfering with the plaintiff's collection of the purchased *receivables* and sales proceeds so as to deprive the plaintiff of the benefit bargained for in the agreement. The plaintiff also claims that the defendants continue to generate *receivables* and collect sales proceeds while continuing to actively prevent the plaintiff from collecting its portion of the purchased *receivables*.

[**3] A party may move to dismiss a defense "on the ground that a defense is not stated or has no merit" (*CPLR 3211 [b]*). When moving to dismiss or strike an affirmative defense, the plaintiff [*4] bears the burden of demonstrating that the affirmative defense is "'without merit as a matter of law'" (*Galasso, Langione & Batter, LLP v. Liotti, 81 AD3d 880, 882, 917 N.Y.S.2d 664* quoting *Greco v Christoffersen, 70 AD3d 769, 896 N.Y.S.2d 363* quoting *Vita v New York Waste Servs., LLC, 34 AD3d 559, 824 N.Y.S.2d 177*). "In reviewing a motion to dismiss an affirmative defense, the court must liberally construe the pleadings in favor of the party asserting the defense and give that party the benefit of every reasonable inference" (*Fireman's Fund Ins. Co. v Farrell, 57 AD3d 721, 723, 869 N.Y.S.2d 597*]; *see Courthouse Corporate Ctr. LLC v Schulman, 74 AD3d 725, 727, 902 N.Y.S.2d 160*). "If there is any doubt as to the availability of a defense, it should not be dismissed" (*Federici v Metropolis Night Club, Inc., 48 AD3d 741, 853 N.Y.S.2d 160*)

The affirmative defenses and counterclaims for fraud and conversion are hereby dismissed. It is settled that "[n]either fraud nor conversion can be predicated upon breach of contract" (*Parekh v Cain, 96 AD3d 812, 948 N.Y.S.2d 72*; *Gym Door Repairs, Inc. v Astoria Gen. Contr. Corp., 2016 N.Y. App. Div. LEXIS 7889*). In substance, "a cause of action will be found to sound in tort rather than in contract only when the legal relations binding the parties are created by the utterance of a falsehood, with fraudulent intent and reliance thereon, and the cause of action is entirely independent of contractual relations between the parties" (*Lee v Matarrese, 17 AD3d 539, 793 N.Y.S.2d 457*). Here, the defendants' fraud allegations are predicated upon, and arise out of, the same operative facts relied upon in connection with the plaintiff's breach of contract cause of action (*Refreshment Mgt. Servs., Corp. v Complete Off Supply Warehouse Corp., 89 AD3d 913, 914-915, 933 N.Y.S.2d 312*). These allegations do not establish the existence of a duty collateral [*5] or extraneous to that created by the parties' alleged contract; rather, they merely recast, as "an alternative theory of liability," the

complaint's previously interposed breach of contract claim (*A. Montilli Plumbing & Heating Corp. v Valentino, 90 AD3d 961, 962, 935 N.Y.S.2d 647*). Hence these defenses must be dismissed.

Moreover, these affirmative defenses, as well as that of misrepresentation, falter since the circumstances constituting the wrong are not stated in detail, as required by *CPLR 3016[b]*. "A cause of action to recover damages for fraud requires allegations of (1) a false representation of fact, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) damages" (*Greenberg v Blake, 117 AD3d 683, 985 N.Y.S.2d 279* quoting *Stein v Doukas, 98 AD3d 1024, 1025, 951 N.Y.S.2d 173*. "Pursuant to *CPLR 3016(b)*, a cause of action alleging [**4] fraud must be pleaded with particularity so as to inform the defendant of the alleged wrongful conduct and give notice of the allegations the plaintiff intends to prove" (*Greenberg v Blake, supra* quoting *McDonnell v Bradley, 109 AD3d 592, 593, 970 N.Y.S.2d 612*). "Although there is certainly no requirement of 'unassailable proof at the pleading stage under *CPLR 3016(b)*, 'the complaint must'allege the basic facts to establish the elements of the cause of action'" (*Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553 at 559, 910 N.E.2d 976, 883 N.Y.S.2d 147* quoting from *Pludeman v Northern Leasing Sys., Inc., 10 NY3d 486, 491-492, 890 N.E.2d 184, 860 N.Y.S.2d 422*). "*CPLR 3016(b)* is satisfied when the facts suffice to permit a 'reasonable inference' of the alleged misconduct." (*Eurycleia Partners, LP v Seward & Kissel, LLP, supra*; *see Pace v Raisman & Assoc., Esqs., LLP, 95 AD3d 1185, 945 N.Y.S.2d 118 [2d Dept 2012]*). The misrepresentation and [*6] fraud defense fail to satisfy the requirements of *CPLR 3016 (b)* because they contain only bare and conclusory allegations against the movants without any supporting detail. Hence dismissal of the defenses and counterclaims as to frauds and misrepresentation is warranted.

The affirmative defenses of illegality and *usury* are also dismissed. *Usury* is an affirmative defense, and a heavy burden rests upon the party seeking to impeach a transaction based upon *usury* (*see Hochman v. LaRea, 14 A.D.3d 653, 654, 789 N.Y.S.2d 300*; *Gandy Mach. v Pogue, 106 A.D.2d 684, 483 N.Y.S.2d 744*). The maximum per annum interest rate for a *loan* or forbearance of money is 16%, under New York's civil *usury* statute, and 25% under the state's criminal *usury* statutes (*see General Obligations Law§ 5-501* [civil *usury*]; *Penal Law §§ 190.40, 190.42* [criminal]). With some exceptions that do not apply here, a corporation

2016 N.Y. Misc. LEXIS 4883, *6; 2016 NY Slip Op 32614(U), **4

may assert criminal *usury* as a defense where the amount of the *loan* or forbearance is more than $250,000.00 and less than $2,500,000.00 (see *General Obligations Law § 5-521 [3]; Blue Wolf Capital Fund II L.P. v American Stevedoring Inc., 105 AD3d 178, 961 N.Y.S.2d 86*). To successfully raise the defense of *usury*, a debtor must allege and prove by clear and convincing evidence that a *loan* or forbearance of money, requiring interest in violation of a *usury* statute, was charged by the holder or payee with the intent to take interest in excess of the legal rate (see *Giventer v Arnow, 37 NY2d 305, 309, 333 N.E.2d 366, 372 N.Y.S.2d 63*). If *usury* can be gleaned from the [*7] face of an instrument, intent will be implied and *usury* will be found as a matter of law (see *Fareri v Rain's Int'l, Ltd., 187 AD2d 481, 482, 589 N.Y.S.2d 579*). *Usury* must be proved by clear and convincing evidence as to all its elements and *usury* will not be presumed (see *Freitas v Geddes Sav. & Loan Assn., 63 NY2d 254, 261, 471 N.E.2d 437, 481 N.Y.S.2d 665*). Not only do the [**5] defendants fail to properly allege the existence of a *loan*, but the clear terms of the agreement state explicitly that the transaction between the parties was not a *loan*. *Receivables* purchasing is an accepted form of business transaction, and is not a *loan*.

Defendants' breach of contract counterclaim and defense is improperly plead. Moreover, the defendants have failed to allege that it sustained any damages from the plaintiff's breach of contract. Hence, it is dismissed.

Accordingly, for all of the foregoing reasons, it is hereby,

**ORDERED**, that the plaintiff's motion seeking to dismiss the defendants' affirmative defenses is granted, and the 10th 14th 19th and 23rd affirmative defenses in the defendants' answer are dismissed; and it is further,

**ORDERED**, that the defendants' cross-motion to enter a default as against the plaintiff on its affirmative defenses and counterclaims is denied as academic, and otherwise without legal basis; and it is further,

**ORDERED**, that [*8] all other applications not specifically addressed herein are denied in all respects.

**Dated: December 9, 2016**

/s/ Timothy J. Dufficy

**TIMOTHY J. DUFFICY, J.S.C.**

shanna kaminski

No *Shepard's* Signal™
As of: May 10, 2018 7:26 PM Z

## MERCHANT CASH AND CAPITAL, LLC, Plaintiff, v. HOBBY HORSE WELDING, INC., and ROBBIE JO CARPENTER, Defendants.

Supreme Court of New York, Nassau County

December 21, 2016, Decided; December 21, 2016, Entered

Index No. 605357/15

### Reporter

2016 N.Y. Misc. LEXIS 4894 *

MERCHANT CASH AND CAPITAL, LLC, Plaintiff, v. HOBBY HORSE WELDING, INC., and ROBBIE JO CARPENTER, Defendants.

**Notice:** NOT APPROVED BY REPORTER OF DECISIONS FOR REPORTING IN STATE REPORTS.

## Core Terms

affirmative defense, proceeds, future sale, *receivables*, motion to dismiss, illegality, interposed, discovery, contends, parties, argues

**Judges:** [*1] Present: Hon. Randy Sue Marber, J.S.C.

**Opinion by:** Randy Sue Marber

## Opinion

Upon the foregoing papers, the motion by the attorneys for the Plaintiff, MERCHANT CASH AND CAPITAL, LLC (hereafter "MCC") seeking an order dismissing the affirmative defenses[1] asserted by the Defendants, HOBBY HORSE WELDING, INC., and ROBBIE JO CARPENTER (hereafter "Hobby Horse" and "Carpenter") pursuant to *CPLR § 3211 (b)* is determined as hereinafter provided.

On October 18, 2013, the parties executed an Agreement which provided that the Plaintiff, MCC, as buyer, purchased from the seller, the Defendant, Hobby Horse, six (6%) percent of the proceeds of future sales

---

[1] In a So-Ordered Stipulation dated September 28, 2016, the Defendants agreed to withdraw their affirmative defenses regarding jurisdiction, venue, statute of limitations, waiver and fraud. The Plaintiff's motion is therefore limited to the affirmative defenses of illegality and *usury*.

of Hobby Horse in the amount of $86,250 for a purchase price of $62,500. The Plaintiff contends that the Agreement provides that Hobby Horse's payments of the purchased *receivables* and future sale proceeds were contingent upon Hobby Horse actually generating the purchased *receivables* and future sale proceeds. The Agreement does not provide for a fixed payment term as the Plaintiff was only entitled to a percentage of Hobby Horse's future sale proceeds and *receivables*. Counsel for the Plaintiff contends that the Agreement in no way contemplates a *loan* of any money and that MCC has no [*2] recourse in the event the sale proceeds are not generated.

The Defendants have interposed a 9th affirmative defense alleging that the Agreement is unenforceable on the grounds of "illegality" of contract and a 10th affirmative defenses alleging that the payments due the Plaintiff "are based upon an interest rate that is in excess of that allowed by New York State Law" (the *usury* affirmative defense). (See Answer attached to the Notice of Motion as Exhibit "B")

The Plaintiff's counsel argues that the 9th and 10 affirmative defenses are meritless and duplicative of one another. He argues that the Agreement between the parties was not a *loan* or forbearance of money. As such, the *usury* claim must fail.

In opposition, the Defendants' counsel submits that the Plaintiff's motion is premature as discovery has not been completed. He maintains that the dismissal of the two affirmative defenses cannot occur until after discovery is complete.

"*CPLR § 3211 (b)* authorizes a plaintiff to move, at any time, to dismiss a defendant's affirmative defense on the ground that it 'has no merit'" (*Greco v. Christoffersen, 70 A.D.3d 769, 896 N.Y.S.2d 363 [2d Dept. 2010]*). In moving to dismiss an affirmative defense, "the plaintiff bears the burden of demonstrating that the affirmative

2016 N.Y. Misc. LEXIS 4894, *2

defense **[*3]** is 'without merit as a matter of law'". (*Id.*, quoting *Vita v. New York Waste Servs., LLC, 34 A.D.3d 559, 824 N.Y.S.2d 177 [2d Dept. 2006]*; see *Bank of Am., N.A. v. 414 Midland Ave. Assoc., LLC, 78 A.D.3d 746, 911 N.Y.S.2d 157 [2d Dept. 2010]*)

The Defendants' contention that the Agreement is *usurious* is without merit. A corporation is prohibited from asserting a defense of civil *usury*. Additionally, an individual guarantor of a corporate obligation is also precluded from raising such a defense. (*See Arbuzova v. Skalet, 92 A.D.3d 816, 938 N.Y.S.2d 811 [2d Dept. 2012]*) The terms of the Agreement do not constitute a *loan* within the meaning of the *usury* laws. (*See Kaufman v. Horowitz, 178 A.D.2d 632, 577 N.Y.S.2d 879 [2d Dept. 1991]*)

Accordingly, it is hereby

**ORDERED**, that the Plaintiff's motion to dismiss the ninth and tenth affirmative defenses, interposed by the Defendants, is **GRANTED**.

This constitutes the Decision and Order of the Court.

All applications not specifically addressed herein are **DENIED**.

DATED: Mineola, New York

December 13, 2016

/s/ Randy Sue Marber

**Hon. Randy Sue Marber, J.S.C.**

---

**End of Document**

No *Shepard's Signal*™
As of: May 10, 2018 7:23 PM Z

### *Merchant Cash & Capital, LLC v Fire Suppression Servs., Inc.*

Supreme Court of New York, Nassau County

December 16, 2016, Decided; December 21, 2016, Filed

603413/16

**Reporter**
2016 N.Y. Misc. LEXIS 4855 *; 2016 NY Slip Op 32590(U) **

[**1] MERCHANT CASH AND CAPITAL, LLC, Plaintiff, -against- FIRE SUPPRESSION SERVICES, INC., and CAREY PICKETT, Defendants. Index No. 603413/16

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

affirmative defense, proceeds, future sale, *receivables*, *usurious*, motion to dismiss, interposed, contends, parties, argues

**Judges:** [*1] Present: HON. RANDY SUE MARBER, JUSTICE.

**Opinion by:** RANDY SUE MARBER

## Opinion

Upon the foregoing papers, the motion by the attorneys for the Plaintiff, MERCHANT CASH AND CAPITAL, LLC, (hereafter "MCC") seeking an order dismissing the affirmative defense[1] asserted by the Defendants, FIRE SUPPRESSION SERVICES, INC., and CAREY PICKETT, (hereafter "Fire" and "Pickett") pursuant to *CPLR § 3211(b)*, is determined as hereinafter provided.

On September 1,2015, the parties executed an Agreement which provided that [**2] the Plaintiff, MCC, as buyer, purchased from the seller, the Defendant, Fire, twelve (12%) percent of the proceeds of future sales of Fire in the amount of $67,500.00 for a purchase

price of $50,000.00. The Plaintiff contends that the Agreement provides that Fire's payments of the purchased *receivables* and future sale proceeds were contingent upon Fire actually generating the purchased *receivables* and future sale proceeds. The Agreement does not provide for a fixed payment term as the Plaintiff was only entitled to a percentage of Fire's future sale proceeds and *receivables*. Counsel for the Plaintiff contends that the Agreement in no way contemplates a *loan* of any money and that MCC has no recourse in the event the sale [*2] proceeds are not generated.

The Defendants have interposed several affirmative defenses alleging that the Agreement is unenforceable on the grounds that it is an illegal agreement for the lending of money in exchange of a secured interest in the *receivables* of the Defendant at a *usurious* rate of interest. (See Answer attached to the Notice of Motion as Exhibit "B")

The Plaintiff's counsel argues that the affirmative defenses are meritless. He argues that the Agreement between the parties was not a *loan* or forbearance of money. As such, the *usury* claim must fail.

"*CPLR § 3211(b)* authorizes a plaintiff to move, at any time, to dismiss a defendant's affirmative defense on the ground that it 'has no merit'" (*Greco v. Christoffersen, 70 A.D.3d 769, 896 N.Y.S.2d 363 [2d Dept. 2010]*). In moving to dismiss an affirmative defense, "the plaintiff bears the burden of demonstrating that the affirmative defense is [**3] 'without merit as a matter of law'". (*Id.*, quoting *Vita v. New York Waste Servs., LLC, 34 A.D.3d 559, 824 N.Y.S.2d 177 [2d Dept. 2006]*; see *Bank of Am., NA. v. 414 Midland Ave. Assoc., LLC, 78 A.D.3d 746, 911 N.Y.S.2d 157 [2d Dept, 2010]*)

The Defendants' contention that the Agreement is *usurious* is without merit. A corporation is prohibited from asserting a defense of civil *usury*. Additionally, an individual guarantor of a corporate obligation is also precluded from raising such a defense. (See *Arbuzova v. Skalet, 92 A.D.3d 816, 938 N.Y.S.2d 811 [2d Dept.*

---

[1] It appears that all of the defenses listing in the Defendants' Answer comprise of only one (1) claim, that the interest rate is *usurious*.

2016 N.Y. Misc. LEXIS 4855, *2; 2016 NY Slip Op 32590(U), **3

*2012])* The terms of the Agreement do not constitute a **_loan_** within **[\*3]** the meaning of the **_usury_** laws. (*See Kaufman v. Horowitz, 178 A.D.2d 632, 577 N.Y.S.2d 879 [2d Dept. 1991])*

Accordingly, it is hereby

**ORDERED**, that the Plaintiff's motion to dismiss the affirmative defenses, interposed by the Defendants, is **GRANTED**.

This constitutes the Decision and Order of the Court.

All applications not specifically addressed herein are **DENIED**.

DATED: Mineola, New York

December 16, 2016

/s/ Randy Sue Marber

**Hon. Randy Sue Marber, J.S.C.**

---

**End of Document**

🛈 Cited
As of: May 10, 2018 5:43 PM Z

# *Merchant Cash & Capital, LLC v Liberation Land Co., LLC*

Supreme Court of New York, Nassau County

December 12, 2016, Decided; December 21, 2016, Filed

603342/16

## Reporter

2016 N.Y. Misc. LEXIS 4854 *; 2016 NY Slip Op 32589(U) **

[**1] MERCHANT CASH and CAPITAL, LLC, Plaintiff(s), - against - LIBERATION LAND COMPANY, LLC d/b/a WHISPERING WINDS APARTMENTS and THOMAS FISH, Defendant(s). INDEX NO. 603342/16

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

defendants', *receivables*, receipts, affirmative defense, cause of action, forbearance, repayment

**Judges:** [*1] Present: HON. ROY S. MAHON, Justice.

**Opinion by:** ROY S. MAHON

## Opinion

Upon the foregoing papers, the motion by plaintiff for an Order to dismiss all of defendants' affirmative defenses for failure to state a cause of action, upon documentary evidence, and because defendants' defenses are meritless and strike scandalous and irrelevant content from defendants' Answer pursuant to *CPLR 3024(b)* and 3, is determined as hereinafter provided:

The Court initially observes that the plaintiff cites to the holding of the Court in Merchant Cash and Capital, LLC v Yehowa Medical Services, d/b/a Florence Medical Clinic and Thomas N. Tweh, Jr., Index No. 602039/16 (Sup Ct., Nassau County). In its entirety, Justice Murphy stated:

"PRELIMINARY STATEMENT

In Sequence No. 001, plaintiff brings this application for an order dismissing defendants' affirmative defense of *usury* for failure to state a cause of action, upon documentary evidence, and because defendants' *usury* defense is meritless. Opposition to this application has been submitted by defendants.

In Sequence No. 002, defendants bring this application for an order for summary judgment [**2] dismissing the action under *CPLR § 3212(a)* and, in the alternative, defendants seek to replead the answer to include [*2] the proof of a criminally *usurious loan* as established by this motion. Opposition to this application has been submitted by plaintiff.

BACKGROUND

This action seeks to recover monetary damages sustained by plaintiff as a result of an alleged breach of a Merchant's Agreement (Revenue Program) by defendants. The Agreement, dated May 2, 2015, Exh. "C" to Motion, called for plaintiff to deposit with Yehowa Medical Services, Inc., d/b/a Florence Medical Clinic ("Yehowa") $56,806.00, and to receive in return $81,232.58, in payments of 10% of the daily receipts of Yehowa on five business days per week, until the sum of $81,232.58 was paid.

The Agreement specifically provided that the arrangement was not intended to be a *loan*, but a sale of future sale proceeds. The Buyer, Merchant Cash and Capital, LLC, was stated to be the owner of future sale proceeds purchased by them, and that this represents a bona fide sale by Seller to a customer. The payment of a percentage of *receivables* was contingent upon the generation of sales proceeds, and the term over which payments would be made were indeterminable, since the daily payment depended upon the receipt of revenue by defendant.

Plaintiff commenced [*3] this action by filing a Summons and Complaint on March 25, 2016 (Exh. "A"). The Complaint alleges the parties entered into the Agreement, and that defendant Thomas N. Tweh. Jr., personally guaranteed payment. The parties have

2016 N.Y. Misc. LEXIS 4854, *3; 2016 NY Slip Op 32589(U), **2

consented to the jurisdiction of the Courts of New York in accordance with the terms of the Agreement.

Plaintiff alleges that it paid the purchase price of $56,806.00 to defendant, but that defendant has breached its obligations to forward *receivables* to plaintiff. While defendant made some payments totaling $44,331.88, there remains an unpaid balance of $36,900.70 from February 8, 2016. Plaintiff alleges two Cause of Action against the business defendant, one Cause of Action against the personal guarantor, and one Cause of Action jointly against the business defendant and the individual guarantor.

Defendants interposed an Answer dated May 9, 2016. It contains admissions and denials of specific allegations of the Complaint, and, while denominated as an Affirmative Defense, asserts at ¶ J 38 - 40 that the transaction upon which the action purports to be based is a *usurious*

*loan* as to defendants; that the transaction was for an amount less than $2,500,000.00 and provides [*4] for an interest rate which violates *Penal Law § 190.40*, in that it calls for daily payments of $322.36, resulting in an interest rate of 43%, with no contingency under which principal would not be paid back.

Plaintiff moves to dismiss the claim of *usury*, on the ground that the Agreement under which payment is sought is not a *loan* or forebearance, and is not subject to the laws of *usury*. Defendants controvert this position, asserting that the Agreement did not constitute a bona fide business investment; rather, it was a *loan* of $56,806.00, to be repaid in the amount of $81,233.00 with daily payments five days per week of $322.26. Defendants claim that there was no provision in the Agreement which would permit Yehowa to pay less than $322.36 per day.

In Reply, plaintiff points to the Agreement, which specifies the daily payment to be 10% of the daily receipts. As the daily receipts were an unknown quantity at the time of contracting, by letter dated May 28, 2015, plaintiff advised defendant of the provisions for modification of the daily payment amount based upon [**3] a two-week Calculation Period for determining the average daily receipts required to be paid.

DISCUSSION

Motion Sequence No. 1

Defendants' contention [*5] that the Agreements violate

*General Obligation Law § 5-501[1]* and *Banking Law § 14-a[1]*, and are civilly and criminally *usurious* is without merit. A corporation is prohibited from asserting a defense of civil *usury* (*Arbuzova v. Skalet, 92 A.D.3d 816, 938 N.Y.S.2d 811 [2d Dept. 2012]*). An individual guarantor of a corporate obligation is also precluded from raising such a defense. (Id.). Defendants have failed to adequately allege a defense of criminal *usury* in violation of *Penal Law § 190.40*, in that they failed to allege that the lender knowingly charged, took or received annual interest exceeding 25% on a *loan* or forbearance of money.

Defendant hypothesizes that the terms of the Agreement could result in payment of criminally excessive interest, but this is clearly insufficient under the pleading requirements.

Essentially, *usury* laws are applicable only to *loans* or forbearances, and if the transaction is not a *loan*, there can be no *usury* (*Kaufman v. Horowitz, 178 A.D.2d 632, 577 N.Y.S.2d 879 [2d Dept. 1991]*). As onerous as a repayment requirement may be, it is not *usurious* if it does not constitute a *loan* or forbearance.

The Agreement was for the purchase of future *receivables* in return for an up front payment. The repayment was based upon a percentage of daily receipts, and the period over which such payment would take place was indeterminate. Plaintiff took the risk that there could be no [*6] daily receipts, and defendants took the risk that, if receipts were substantially greater than anticipated, repayment of the obligation could occur over an abbreviated period, with the sum over and above the amount advanced being more than 25%. The request for the Court to convert the Agreement to a *loan*, with interest in excess of 25%, would require unwarranted speculation, and would contradict the explicit terms of the sale of future *receivables* in accordance with the Merchant Agreement.

In *Merchant Cash & Capital v. Edgewood Group, LLC, 2015 U.S. Dist. LEXIS 94018, 2015 WL 4451057 (U.S.D.C., S.D.N.Y, Koeltl, J.)*, the Court adopted the Report and Recommendation of Magistrate Judge Freeman, *2015 U.S. Dist. LEXIS 94162, 2015 WL 4430643*. Magistrate Freeman undertook an extensive examination of the enforceability of an Agreement of June 21, 2013, whereby Edgewood Group sold $163,726.00 of its business *receivables*/revenue to plaintiff, for an upfront payment of $115,300.00. Edgewood Group agreed that the "business *receivables*/revenue" would be paid from a percentage

2016 N.Y. Misc. LEXIS 4854, *6; 2016 NY Slip Op 32589(U), **3

of its daily revenue, but no percentage was set forth in the agreement.

After defendant failed to appear, plaintiff moved for default judgment. The Agreement contained terms consistent with the Agreement presently before this Court. It provided that defendant would pay Edgewood $930.26 per day on each business day until such time as Edgewood had **[*7]** paid plaintiff $163,726.00. Edgewood agreed not to change the designated bank account from which automated deductions would be made, and not to permit necessary licenses or permits to lapse, and the proprietor of Edgewood agreed to be personally liable for the obligations of Edgewood.

At fn. 5, Magistrate Judge Freeman stated that "(i)t is not entirely clear to this Court what differentiates this arrangement from a *loan*, to which lending laws (such as *usury* caps) would apply, She further noted that the absence of a percentage of daily receipts to be deducted on a daily basis resulted **[**4]** in an obligation on the part of Edgewood to make payments over an eight month period, including 42% more than it received. As she stated "(t)his arrangement looks substantially like a *loan* (as opposed to Plaintiffs acquisition of a portion of Edgewood's farther *receivables*), but with an effective interest rate of over 50% per year."

She nevertheless concluded that the Court cannot conclude, as a matter of law, that the transaction at issue was a *loan*, citing *Express Working Capital, LLC v. Starving Students, Inc. 28 F. Supp.3d 660, 669 (N.D. Tex. 2014)*. In analyzing the contractual language, and noting that *usury* was an affirmative defense which can be waived, based upon defendant's default, the Court **[*8]** accepted plaintiffs characterization of the agreement as a sale of *receivables*, rather than a *loan*.

This case does not involve a default, and defendants have actively opposed the motion to strike their claims of *usury*. Aside from the fact that the clear language of the Agreement is that it involves a purchase of *receivables*, and is not intended to constitute a *loan*, and is unaffected by laws regarding *usury*. The essence of a *loan* or forbearance is a lender's absolute right to repayment, and at all events, or that the principal in some way be secured as distinguished from being put in hazard (*Rubenstein v. Small, 273 A.D. 102, 75 N.Y.S.2d 483 [1st Dept. 1947]*). Under the terms of the subject Agreement, if Seller/Defendant produces no daily revenue, no payments are required, and there is no absolute obligation of repayment.

While the terms of payment provided for in the

Agreement may be onerous, they do not involve a *loan* or forbearance of money, and are unaffected by civil or criminal *usury* statutes.

The motion by plaintiff to strike the affirmative defense of *usury*, to the extent that it is pleaded in the Answer, is granted.

Motion Sequence No. 2

Defendant moves for summary judgment dismissing the Complaint, or, alternatively, for leave to serve an Amended **[*9]** Answer setting forth the defense of Criminal *Usury* in violation of *Penal Law §190.40*. For the reasons set forth with respect to Motion Sequence No. 1, that the Agreement between the parties did not constitute a *loan*, and is unaffected by *usury* statutes, this motion by defendants is denied.

To the extent requested relief has not been granted, it is denied.

This constitutes the Decision and Order of the Court."

The Court upon review of the foregoing finds the rationale set forth therein applicable to the plaintiff's instant application, as such, the plaintiff's motion for an Order to dismiss all of defendants' affirmative defenses for failure to state a cause of action, upon documentary evidence, and because defendants' defenses are meritless and strike scandalous and irrelevant content from defendants' Answer pursuant to *CPLR 3024(b)* and 3, is **granted**

SO ORDERED.

DATED: 12/12/2016

/s/ Roy S. Mahon

J.S.C.

_____

**End of Document**

**A** Neutral
As of: May 10, 2018 7:17 PM Z

# *Merchant Cash & Capital, LLC v South Jersey Speed LLC*

Supreme Court of New York, Nassau County

December 13, 2016, Decided

604673/16

**Reporter**
2016 N.Y. Misc. LEXIS 4852 *; 2016 NY Slip Op 32591(U) **

[**1] MERCHANT CASH AND CAPITAL, LLC, Plaintiff, - against - SOUTH JERSEY SPEED LLC d/b/a CAR AND AUDIO OF SOUTH JERSEY and RONALD MAKINO, Defendants. Index No. 604673/16

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

**Subsequent History:** Summary judgment granted by *Merchant Cash & Capital, LLC v. South Jersey Speed LLC, 2018 N.Y. Misc. LEXIS 819 (N.Y. Sup. Ct., Jan. 31, 2018)*

## Core Terms

affirmative defense, defendants', terms of the agreement, repayment, alleges, motion to dismiss, guarantor, decrease, defenses, provides, *usurious*, Jersey, goes

**Counsel:** [*1] For Plaintiff: Giuliano McDonnell & Porrone, LLP; Merchant Cash and Capital, LLC, Christopher R. Murray, Esq., Mineola, New York.

For Defendant: Amos Weinberg, Great Neck, NY.

**Judges:** PRESENT: Honorable Anna R. Anzalone, Justice of the Supreme Court.

**Opinion by:** Anna R. Anzalone

## Opinion

Motion by the plaintiff for an order, pursuant to *CPLR 3211*, dismissing all of the defendants' affirmative defenses, is granted.

This action was commenced by the electronic filing of a summons and complaint on June 23, 2016. The complaint alleges that on or about September 3, 2015 and November 11, 2015, the plaintiff entered into two agreements ("the Agreements") with defendant, South Jersey Speed LLC d/b/a Car and Audio of South Jersey ("the Corporate Defendant"), by which the Corporate Defendant sold [**2] $25,344,00 of its business *receivables*/revenue to the plaintiff, to be paid to the plaintiff from a percentage of the Corporate Defendant's daily revenue, for an up-front sum of $19,800.00 paid to the Corporate Defendant by the plaintiff. The defendant, Ronald Makino, signed the Agreements as guarantor for the Corporate Defendant. The Complaint further alleges that the Corporate Defendant made payments totaling $17,458.44, but that the defendants [*2] have breached the Agreements by failing to pay the balance of $7,885.56 due to the plaintiff under the Agreements.

The defendants filed an answer on July 25, 2016. The answer includes the affirmative defense of *usury*. The plaintiff moves to strike all of the defendants' affirmative defenses for failure to state a cause of action, upon documentary evidence and because the defendants' defenses are meritless.

*CPLR 3211(b)* provides that a party may move for judgment dismissing one or more defenses, on the ground that a defense is not stated or has no merit. A plaintiff moving to dismiss an affirmative defense bears the burden of proving that the affirmative defense is without merit as a matter of law. On such a motion to dismiss, the Court must liberally construe the pleadings in favor of the defendant asserting the affirmative defenses and give that defendant the benefit of every favorable inference (*Gonzalez v Wingate at Beacon, 137 AD3d 747, 26 N.Y.S.3d 562 [2d Dept 2016]*).

Defendants' answer alleges that the transaction upon which this action purports [**3] to be based is a *usurious loan* which violates *Penal Law §190.40, Section 190.40* of the Penal Law provides, in relevant part, that a person is guilty of criminal *usury* if he

2016 N.Y. Misc. LEXIS 4852, *2; 2016 NY Slip Op 32591(U), **3

knowingly charges interest in excess of 25% on a *loan*.

Essentially, *usury* laws are [*3] applicable only to *loans* or forbearances, and if the transaction is not a *loan*, there can be no *usury* (*Donatelli v Siskind, 170 AD2d 433, 565 N.Y.S.2d 224 [2d Dept 1991]*; *Kaufman v Horowitz, 178 AD2d 632, 577 N.Y.S.2d 879 [2d Dept 1991]*). Unless the principal sum advanced is repayable absolutely, there can be no *usury* (*Transmedia Restaurant Co. v 33 East 61st St. Restaurant Corp., 184 Misc 2d 706, 710 N.Y.S.2d 756 [Sup Ct, New York County 2000]*; *Pearl Capital Rivis Ventures, LLC v RDN Constr., Inc.,     Misc 3d    , 41 NYS3d 397, 2016 NY Slip Op 26344, 2016 WL 6245103 [Sup Ct, Westchester County 2016]*).

The terms of the Agreements specifically provide that the purchase price paid by the plaintiff "is not intended to be, nor shall it be construed as, a *loan*" from the plaintiff to the Corporate Defendant (Agreements, §4.1). While this language is not determinative in and of itself, the Agreements further provide that the plaintiff's right to repayment is not absolute because the Agreements specify that if the Corporate Defendant has not violated the terms of the Agreements, the fact that it goes bankrupt or goes out of business shall not be considered a breach or obligate the guarantor to pay (Agreements, §4.4). Since payment is conditional, not absolute, the Agreements [**4] do not constitute a *loan* and therefore cannot be *usurious*.

Moreover, while the defendants hypothesize that the terms of the Agreements could result in payment of criminally excessive interest, this is based upon mere speculation. The plaintiff set an initial daily payment amount, but that amount may be increased or decreased based upon the [*4] daily average revenues, and therefore the duration of the repayment period may also increase or decrease. Since the Agreements cannot be said to constitute a *loan* and since there is no proof that the plaintiff intended to charge impermissible interest, the defendants' affirmative defense of *usury* must fail.

Accordingly, the motion by the plaintiff to dismiss the affirmative defenses in the defendants' answer is granted.

This constitutes the decision and order of this Court.

DATED: December 13, 2016

Mineola, New York

ENTER:

/s/ Anna R. Anzalone

Hon. Anna R. Anzalone, JSC

---

**End of Document**

**ⓘ** Cited
As of: May 10, 2018 7:31 PM Z

## _Merch. Cash & Capital, LLC v. Ethnicity Inc._

Supreme Court of New York, Nassau County

December 8, 2016, Decided

603262/16

**Reporter**
2016 N.Y. Misc. LEXIS 4856 *; 2016 NY Slip Op 32593(U) **

[**1]  MERCHANT CASH and CAPITAL, LLC, Plaintiff, - against - ETHNICITY INC., and LASHAWNNA STANLEY, Defendants. Index No. 603262/16

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

affirmative defense, defendants', scandalous, documentary evidence, parties, asserts, cause of action, matter of law, allegations, prejudicial, determines, refutes, utterly, fail to state a cause of action, forbearance of money, favorable inference, motion to dismiss, written agreement, separate defense, legal theory, purportedly, cognizable, provisions, guarantor, provides, stricken, moves

**Judges:** [*1] Present: ANTONIO I. BRANDVEEN, J.S.C.

**Opinion by:** ANTONIO I. BRANDVEEN

## Opinion

The plaintiff moves pursuant to _CPLR 3211_ for an order to dismiss all of the defendants' affirmative defenses for failure to state a cause of action, and upon documentary evidence because the defenses are without merit. The plaintiff also moves pursuant to _CPLR 3024(b)_ to strike scandalous and irrelevant content from the defendants' answer.

The plaintiff asserts the affirmative defense of _**usury**_ should be dismissed because the subject agreement was not a _**loan**_, and the plaintiffs right to collect payment was [**2] contingent on factors outside its

control. The plaintiff avers it could not have knowingly taken or charged interest at a rate above 25% on a _**loan**_ or forbearance of money because it was and remains mathematically impossible to calculate a rate of interest about 25% on the subject transaction, and because the parties expressly did not intend to enter into a _**loan**_ transaction. The plaintiff maintains the Court should strike paragraphs one through and including eight of the defendants' "separate defenses" as scandalous, irrelevant and prejudicial claims.

In opposition, the defendants contend the parties' transaction was not one for the purchase of _**receivables**_, [*2] but was a _**loan**_. The defense asserts the provisions in the agreement under which the fixed daily payment was due regardless of whether any revenue was received that day. The defense maintains the provisions in the agreement purportedly allowing an adjustment to the daily payment are unenforceable.

In reply, the plaintiff reiterates the _**usury**_ defense fails for threshold reasons and should be dismissed. The plaintiff asserts the defense arguments are unsupported and conclusory.

"In considering a motion to dismiss for failure to stale a cause of action pursuant to _CPLR 3211(a)(7)_, the court must accept the facts as alleged in the complaint as true, accord plaintiff's the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." "A motion to dismiss a cause of action pursuant to _CPLR 3211 (a) (1)_ may be granted only if 'documentary [**3] evidence utterly refutes [the] plaintiff's factual allegations, thereby conclusively establishing a defense as a matter of law'" [citations omitted] _**Bivona v Danna & Assoc, P.C.**, 123 A.D.3d 956, 957, 999 N.Y.S.2d 490 [2d Dept. 2014]_.

The Court accepts the facts as alleged in the answer as true, accords the defendants the benefit of every possible favorable inference, and determines only that

2016 N.Y. Misc. LEXIS 4856, *2; 2016 NY Slip Op 32593(U), **3

the facts [*3] as alleged by the defendants fit within cognizable legal theories, and not whether the defendants have affirmative defenses (*CPLR 3211[a][7]*; *see **Bokhour v GTI Retail Holdings, Inc.**, 94 A.D.3d 682, 941 N.Y.S.2d 675 [2d Dept. 2012]*). However, the Court determines the plaintiff satisfies the burden to dismiss all of the defendants' affirmative defenses upon documentary evidence (*CPLR 3211[a][1]*). The plaintiff provides the agreement dated November 30, 2015, executed by the corporate defendant, through its chief executive officer and the natural defendant, as guarantor of payment; the advance agreement dated November 24, 2015, between the same corporate parties as seller and buyer with the natural defendant, as guarantor of payment. The documentary evidence supplied by the plaintiff utterly refutes the defense affirmative defenses as a matter of law. The written agreement among the parties is complete, clear and unambiguous on its face, and must be enforced according to the plain meaning of the contract's terms (***Obstfeld v Thermo Niton Analyzers, LLC***, *112 A.D.3d 895, 977 N.Y.S.2d 371 [2d Dept. 2013]*).

In opposition, the defendant contends the written agreement concerns a *loan* among the parties. However, there is no promissory note upon which the defendant [**4] contentions depend (*see generally **Hort v Devine**, 1 A.D.3d 266, 769 N.Y.S.2d 376 [2d Dept. 2003]*). Contrary to the defense assertions, the evidence proffered by the plaintiffs utterly refutes the [*4] affirmative defense of a *loan*. As a matter of law, there is no *usury* in the absence of a *loan* or forbearance of money (*see generally **Fareri v Rain's Intl.**, 187 A.D.2d 481, 589 N.Y.S.2d 579[2d Dept. 1992]*).

*CPLR 3024(b)* provides that "[a] party may move to strike any scandalous or prejudicial matter unnecessarily inserted in a pleading." This rule is applicable to bills of particulars as well (*see **Aronis v. TLC Vision Ctrs., Inc.**, 49 A.D.3d 576, 578, 853 N.Y.S.2d 621*). In reviewing a motion pursuant to *CPLR 3024(b)*, "the inquiry is whether the purportedly scandalous or prejudicial allegations are relevant to a cause of action" (***Irving v Four Seasons Nursing & Rehabilitation Ctr.***, *121 A.D.3d 1046, 1047-1048, 995 N.Y.S.2d 184 [2d Dept. 2014]*).

The Court determines the paragraphs numbered one through and in the answer entitled "separate defenses should be stricken pursuant to *CPLR 3024(b)*. The plaintiff shows the defense allegations of criminal *usury* are scandalous and

relevant. In opposition, the defendants fail to show the paragraphs numbered one through and including eight are necessary to the viability of the answer and would cause undue prejudice to the defendants should those items be stricken from the answer.

ORDERED that the branch of the plaintiff's motion is GRANTED to dismiss all of the defendants' affirmative defenses upon documentary evidence, and it is also,

[**5] ORDERED that the branch of the plaintiff's motion is DENIED to dismiss all of the defendants' [*5] affirmative defenses for failure to state a cause of action, and it is further,

ORDERED that the branch of the plaintiff's motion is GRANTED to strike scandalous and irrelevant content from the defendants' answer.

This will constitute the decision and order of the Court.

So ordered.

Dated: **December 8, 2016**

ENTER:

/s/ Antonio I. Brandveen

J.S.C.

_____

**End of Document**

(A) Neutral
As of: May 10, 2018 7:21 PM Z

# *Tate v National Bank of California*

Supreme Court of New York, Nassau County

November 28, 2016, Decided; December 6, 2016, Filed

606106/2016

**Reporter**
2016 N.Y. Misc. LEXIS 4514 *; 2016 NY Slip Op 32396(U) **

[**1] EUGENE TATE, Plaintiff -against- NATIONAL BANK OF CALIFORNIA, Defendant. Index No.: 606106/2016

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

**Prior History:** *Merchant Cash & Capital v. Royal Tate, LLC, 2016 N.Y. Misc. LEXIS 4522 (N.Y. Sup. Ct., Nov. 7, 2016)*

## Core Terms

cause of action

**Judges:** [*1] PRESENT: HON. EDWARD A. MARON, J.S.C.

**Opinion by:** EDWARD A. MARON

## Opinion

Defendant moves by Notice of Motion, dated September 12, 2016, seeking an order pursuant to *C.P.L.R. §3211(a)(7)* dismissing the Plaintiff's Complaint as against Defendant, National Bank of California (hereinafter referred to as "NBC"). Plaintiff has not submitted an Affidavit in opposition to the application, but rather a Memorandum of Law. In the Memorandum of Law, Plaintiff states he has "moved to this court with its Memorandum of Law in Support of its Complaint and in Support of its Motion seeking the transfer of this matter to a NACHA Complaint Department." Plaintiff has not properly moved for such relief and the Court will not consider the arguments or allegations contained in Plaintiff's Memorandum of Law pertaining to such purported application to transfer.

### RELEVANT BACKGROUND

This action was brought by Plaintiff, Eugene Tate (hereinafter referred to as "Tate"), as an individual and *pro se*, to recover damages and other relief available at law and in equity on behalf of [**2] himself as well as on behalf of his sole proprietor business, Royal Tate, LLC d/b/a Grazing Here (hereinafter referred to as "Royal Tate").

In his Complaint, Tate sets forth allegations [*2] related to a financial transaction between Merchant Cash and Capital, LLC (hereinafter referred to as "MCC") and Royal Tate. Pursuant to a contract dated November 23, 2015, Royal Tate sold $105,000.00 of its business sales *receivables*/revenue to MCC, to be paid to Plaintiff from a percentage of Royal Tate's daily revenue/bank deposits, for an upfront sum of $75,000.00 from MCC. The Complaint asserts allegations against Defendant that it, as an Originating Depository Financial Institution ("ODFI"), initiated alleged *usurious loan* debits and credits in the Automatic Clearing House ("ACH") Network for entities such as MCC (or other third party senders acting on its behalf) to and from customer accounts such as Royal Tate, LLC. The Complaint further makes references to a class action suit, and characterizes the contract dated November 23, 2015 as a *usurious* transaction. NBC is not a party to the contract.

NBC argues that Tate lacks standing to bring this action as he was not a party to the *loan*. Tate does not refute that the contract was between MCC and Royal Tate, but he argues instead that he is "a sole proprietor, although his company is incorporated. Accordingly, all debts accrued by [*3] 'Royal Tate, LLC d/b/a Grazing Here' are effectively Plaintiff's personal debts, an upon which [Tate] is inherently personably liable. There being no legal separation between Plaintiff [Tate], and [Royal Tate], the monies given to Plaintiff [Tate] as such, is

2016 N.Y. Misc. LEXIS 4514, *3; 2016 NY Slip Op 32396(U), **2

considered a consumer debt, rather than commercial debt." Plaintiff's argument is simply legally unfounded.

## DECISION AND ORDER

"Generally, corporations have an existence separate and distinct from that of their shareholders, and an individual shareholder cannot secure a personal recovery for an alleged wrong done to a corporation (*New Castle Siding Co. v. Wolfson, 97 A.D.2d 501, 502, 468 N.Y.S.2d 20 [2nd Dept. 1983]), aff'd, 63 N.Y.2d 782, 470 N.E.2d 868, 481 N.Y.S.2d 70 [1984]* [internal citations omitted]). "The fact that an individual closely affiliated with a corporation (for example, a principal shareholder, or even a sole shareholder), is incidentally injured by an injury to the corporation does not confer on the injured individual standing to sue on the basis of either that indirect injury or the direct injury to the corporation" (*Id.*). Here, Royal Tate, as a duly incorporated entity, entered into the purchase and sale agreement with MCC, a contract to which Tate was not a party. Tate therefore lacks standing to bring this action thereby warranting dismissal of [*4] the action. But, even if, *arguendo*, Tate brought this action on behalf of Royal Tate, the action must even so be dismissed since a limited liability company cannot appear *pro se* but [**3] must appear by and be represented by an attorney (*see C.P.L.R. §321*).

*C.P.L.R. §3211(a)(7)* states that "a party may move for judgment dismissing one or more causes of actions asserted against him on the ground that the pleading fails to state a cause of action". When seeking dismissal pursuant to *C.P.L.R. §3211(a)(7)*, the standard generally is whether the pleading states a cause of action, not whether the proponent of the pleading has a cause of action" (*D'Amico v. Arnold Chevrolet, LLC, 31 Misc. 3d 1201[A], 926 N.Y.S.2d 343, 2011 NY Slip Op 50457[U] [Sup. Ct. Suff. Cty. 2011]*).

The court must accept the facts as alleged in the complaint as true, accord plaintiff the benefit of every possible inference and determine only whether the facts as alleged fit into any cognizable theory (*Id., Nonnon v. City of New York, 9 N.Y.3d 825, 874 N.E.2d 720, 842 N.Y.S.2d 756 [2007]*). However, allegations consisting of bare legal conclusions are not entitled to the consideration of every favorable inference and should be disregarded by the court (*Beattie v. Brown & Wood, 243 A.D.2d 395, 663 N.Y.S.2d 199 [1st Dept. 1997]*). Here, even if the Court found that Tate had standing to bring this action on his own behalf or even on behalf of

Royal Tate, the Complaint fails to state even a single cause of action for any claims lying [*5] in *usury*.

It is not refuted or disputed that all of the causes of action pleaded by Tate in the Complaint sound in *usury*. It is clear that *General Obligations Law §5-501* applies to *loans* or forebearances of any money, goods, other things in action, and "[a]lthough the *usury* statute in issue (*General Obligations Law, § 5-511, subd. 1*) speaks of 'money, goods or other things in action,' a necessary element of [a] statutory cause of action in *usury* is the existence of a *loan* of money (*DeSimon v. Ogden Associates, 88 A.D.2d 472, 477, 454 N.Y.S.2d 721, 725 [1982]* [internal citations omitted])". The Court has reviewed the documents annexed to the Complaint and funds that the contract at issue here is clearly and unequivocally structured as a purchase and sale agreement - not a *loan*. Accordingly, it also for this reason that the Complaint must be dismissed in its entirety.

In consideration of the foregoing, it is hereby

**ORDERED** that Plaintiff's Complaint is dismissed in its entirety.

All matters not decided or requests for relief not granted herein are hereby **DENIED**.

This constitutes the decision and order of this Court.

Dated: November 28, 2016

Mineola, New York

**ENTER**:

/s/ Edward A. Maron

**EDWARD A. MARON**, J.S.C.

End of Document

Ⓐ Neutral
As of: May 10, 2018 7:14 PM Z

## *Merchant Cash & Capital v Royal Tate, LLC*

Supreme Court of New York, Nassau County

November 7, 2016, Decided; November 16, 2016, Entered

602162/2016

### Reporter

2016 N.Y. Misc. LEXIS 4522 *; 2016 NY Slip Op 32394(U) **

[**1] MERCHANT CASH AND CAPITAL, Plaintiff, -against- ROYAL TATE, LLC D/B/A GRAZING HERE and EUGENE TATE, Defendants. Index No. 602162/2016

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

**Subsequent History:** Related proceeding at *Tate v. National Bank of California, 2016 N.Y. Misc. LEXIS 4514 (N.Y. Sup. Ct., Nov. 28, 2016)*

### Core Terms

corporate defendant, Proceeds, summary judgment, *receivables*, future sale, counterclaims, summary judgment motion, card

**Judges:** [*1] PRESENT: Honorable Karen V. Murphy, Justice of the Supreme Court.

**Opinion by:** Karen V. Murphy

## Opinion

Plaintiff moves this Court for an Order granting summary judgment against both defendants in the sum of $66,000.78, together with pre judgment interest at 9% from March 28, 2016 to the date of entry of judgment, and post-judgment interest at the statutory rate, plus costs, disbursements, and attorneys' fees. Plaintiff also seeks dismissal of all counterclaims. Defendant Eugene Tate opposes the requested relief.

At the outset, the Court is compelled to reiterate its determination made in its Decision and Order dated August 3, 2016 that Eugene Tate, appearing *pro se*,

may not represent the corporate co-defendant in this action, that the corporation must appear by counsel, and that the corporation's failure to properly appear by counsel can result in the corporate defendant being held in default. In its prior Decision and Order, this Court concluded that, "the *pro se* answer interposed by Eugene Tate serves as his answer only, and is determined not to have been served on behalf of the corporate co-defendant." [**2] Plaintiff has not made any application to this Court for a default judgment against the corporate defendant [*2] in this matter.

Having determined that the *pro se* answer is not interposed on behalf of the corporate defendant in this matter, summary judgment against the corporation may not issue. *CPLR § 3212 (a)* provides in pertinent part that, "[a]ny party may move for summary judgment in any action, after issue has been joined. . ." Where issue has not been joined, a court is powerless to grant summary judgment (*Chakir v. Dime Savings Bank of New York, 234 AD2d 577, 651 N.Y.S.2d 622 [2d Dept 1996]*), and a summary judgment motion made under those circumstances is properly denied as premature (*Enriquez v. Home Lawn Care and Landscaping, Inc., 49 AD3d 496, 854 N.Y.S.2d 410 [2d Dept 2008]*). Accordingly, that branch of plaintiff's motion for summary judgment against the corporate defendant, Royal Tate d/b/a Grazing Here, is denied.

In support of its summary judgment motion against Eugene Tate, plaintiff submits, *inter alia*, Tate's verified answer, and the affidavit of plaintiff's vice president, annexed to which is a copy of the agreement that forms the basis for this action.

It is well recognized that summary judgment is a drastic remedy and as such should only be granted in the limited circumstances where there are no triable issues of fact. (*Andre v Pomeroy, 35 NY2d 361, 320 N.E.2d 853, 362 N.Y.S.2d 131 [1974]*). Summary judgment should only be granted where the Court finds as a matter of law that there is no genuine issue as to any

2016 N.Y. Misc. LEXIS 4522, *2; 2016 NY Slip Op 32394(U), **2

material fact. (*Cauthers v Brite Ideas, LLC, 41 AD3d 755, 837 N.Y.S.2d 594 [2d Dept 2007]*). The Court's analysis [*3] of the evidence must be viewed in the light most favorable to the non-moving party, herein the defendants (*Makaj v Metropolitan Transportation Authority, 18 AD3d 625, 796 N.Y.S.2d 621 [2d Dept 2005]*).

With respect to its breach of contract claim, plaintiff must establish its *prima facie* entitlement to summary judgment by providing evidence in admissible form of the existence of a contract between the parties, plaintiff's performance and defendant's alleged breach. (*Furia v Furia, 116 AD2d 694, 498 N.Y.S.2d 12 [2d Dept 1986]*).

This action seeks to recover monetary damages sustained by plaintiff as the result of an alleged breach of the Merchant's Agreement executed by both defendants on November 23, 2015. The Agreement provides that Royal Tate d/b/a Grazing Here (the corporate defendant) agreed to sell its future **receivables** with a face value of $105,000.00 to plaintiff for an upfront, discounted price of $75,000.00. The **receivables** were purchased by plaintiff as a percentage (9%) of the proceeds of each future sale by the corporate defendant, whether the proceeds were paid by cash, check, ACH (automatic clearing house), credit card, debit card, bank card, charge card and/or any other means. On that same date, the parties executed a separate agreement related to the manner in which plaintiff was to receive payment of the percentage of [*4] daily average credit card [**3] receipts or daily average revenues, until such time as plaintiff received the $75,000.00 purchase price advanced to the corporate defendant. In sum, the corporate defendant was obligated to deposit all of its **receivables** into a particular bank account to which the plaintiff would have access, in order to extract the daily payments. Adjustment of the daily payments, up or down, could be accomplished pursuant to the terms, upon written notice to the other. According to the terms, the initial daily payment amount was set at $416.67; however, every two weeks was designated as a "Calculation Period," and the daily payment could be increased or decreased, depending upon the daily revenue of the corporate defendant.

In consideration of the plaintiff entering into the Agreement, and to induce plaintiff to enter into the Agreement, defendant Eugene Tate (Tate) personally guaranteed the obligations of the corporate defendant. Tate signed the Agreement in his capacity as "owner,"

and personally.

Section 3.9 of the Agreement specifically states that, "[t]he Seller [corporate defendant] agrees and acknowledges that it is not a debtor of the Buyer [plaintiff] as of the date of this Agreement." [*5]

Section 4.1 of the Agreement provides in pertinent part that, "[t]he Seller and the Buyer acknowledge and agree that the Purchase Price paid by the Buyer in exchange for the Purchased Amount of Future Sale Proceeds is a sale of the Purchased Amount and is not intended to be, nor shall it be construed as, a **loan** from the Buyer to the Seller. The Buyer is the owner of the Future Sale Proceeds purchased by the Buyer hereunder, and the Future Sale Proceeds purchased by the Buyer hereunder represents a bona fide sale by the Seller to a customer."

In the event of a breach of the Agreement, Section 4.4 provides that the plaintiff is entitled to, *inter alia*, collect from the defendants an estimated daily payment that represents the "Purchased Percentage" (9%) of the corporate defendant's Future Sales Proceeds for each business day that the plaintiff does not have access to the designated bank account of the corporate defendant.

The affidavit of plaintiff's vice president, Robert Knox, establishes not only that the parties entered into the Agreements as outlined, but that plaintiff fulfilled its obligation under the terms thereof. Mr. Knox further states that, in total, plaintiff has collected only $38,999.22 of the purchased [*6] **receivables**, leaving an outstanding balance of $66,000.78. Knox further alleges that, on or about March 28, 2016, Tate and the corporate defendant began interfering with plaintiff's ability to collect the purchased sales proceeds by placing a stop payment order on the designated bank account. Furthermore, the defendants have failed to deliver the purchased sales proceeds to [**4] plaintiff by any other means. According to Knox, this constitutes defendants' breach of the terms of the Agreement.

Defendant Tate's answer contains a general denial of plaintiff's claims, asserts eight perfunctory defenses, and alleges four counterclaims sounding in **usury**, criminal **usury**/declaration that the **loan** is void ab initio, civil **usury**, and illegal pay day **loan**.

As to the counterclaims for **usury**, "there can be no **usury** in the absence of a **loan** or forbearance of money" (*Donatelli v. Siskind, 170 AD2d 433, 565 N.Y.S.2d 224 [2d Dept 1991]*). "In order for a transaction

2016 N.Y. Misc. LEXIS 4522, *6; 2016 NY Slip Op 32394(U), **4

to constitute a *loan*, there must be a borrower and a lender; and it must appear that the real purpose of the transaction was, on the one side, to lend money at *usurious* interest reserved in some form by the contract and, on the other side, to borrow upon the *usurious* terms dictated by the lender" (Id.).

Here, the [*7] intention of the parties is made clear pursuant to the written terms of the agreement itself. As discussed, the terms of the agreement state that the transaction is not a *loan*, and that the purchase of the *receivables* "is not intended to be, nor shall it be construed as, a *loan* from the Buyer to the Seller. The Buyer is the owner of the Future Sale Proceeds purchased by the Buyer hereunder, and the Future Sale Proceeds purchased by the Buyer hereunder represents a bona fide sale by the Seller to a customer."

Moreover, neither of the defendants is obliged to repay the amount absolutely under the agreement, unless there is a breach that triggers plaintiff's remedy to collect the undelivered future *receivables* as damages. Also, not only were the payments made contingent upon the corporate defendant's daily revenue, and could be adjusted accordingly, but the payments were not secured by any form of collateral, and there is no deadline by which to pay the *receivables*. As such, the monies advanced by the plaintiff were put at risk; thus, the transaction at issue is not a *loan*, and defendant Tate's counterclaims for *usury* must be dismissed (see *Frey v. Malrath Real Estate Development Corporation [*8]* , 199 AD2d 713, 605 N.Y.S.2d 451 [3d Dept. 1993]; *Rubenstein v. Small, 273 AD 102, 75 N.Y.S.2d 483 [1st Dept. 1947]*).

For the same reasons, the counterclaim sounding in an illegal payday *loan* is also dismissed. Not only has this Court determined that the transaction was not a *loan*, but the fact that Tate executed the guarantee does transport this transform this commercial transaction into a consumer debt. The cash advance was obtained for Tate's business.

Accordingly, plaintiff has established its *prima facie* entitlement to summary judgment as a matter of law as to the *receivables* due and owing from defendant Tate.

[**5] In opposition to the instant summary judgment motion, Tate submits[1] a memorandum of law, which is

not evidence. The opposition papers, as such, are insufficient to raise a triable issue of fact sufficient to defeat plaintiff's summary judgment as to Tate, and the counterclaims have been dismissed.

Plaintiff's summary judgment motion is granted as to defendant Eugene Tate.

Submit a judgment, on notice, accompanied by an affirmation as to reasonable attorneys' fees and a bill of costs.

The foregoing constitutes the Order of this Court.

Dated: November 7, 2016

Mineola, NY

/s/ Karen V. Murphy

J.S.C

---

**End of Document**

---

[1] It is questionable as to whether Tate himself actually e-filed the opposition papers. Document 66 is entitled "Legal Process Outsourcing Verification," the meaning of which escapes this

Court. The "verification" is purportedly signed by an individual named "Jordan A. Christiansen," who claims that he is a "Supervising non-attorney paralegal under my business Seneca BPO and I assist the plaintiff herein." This purported verification is utterly meaningless, as is Christiansen's claim that he believes the submission to be true, upon his information and belief. Christiansen is not an attorney, and this document is unsworn.

No *Shepard's* Signal™
As of: May 10, 2018 7:00 PM Z

# *Merchant Cash & Capital, LLC v. Cramer E. Construction*

Supreme Court of New York, Nassau County

November 2, 2016, Decided; November 4, 2016, Filed and Entered

Index No. 603503/16

**Reporter**

2016 N.Y. Misc. LEXIS 4647 *

MERCHANT CASH AND CAPITAL, LLC, Plaintiff v. CRAMER E. CONSTRUCTION LLC, and JOHN E. CRAMER, Defendants.

**Notice:** NOT APPROVED BY REPORTER OF DECISIONS FOR REPORTING IN STATE REPORTS.

## Core Terms

defendants', interest rate, affirmative defense, *receivables*, asserting

**Judges:** [*1] PRESENT: Hon. Robert A. Bruno, J.S.C.

**Opinion by:** Robert A. Bruno

## Opinion

### DECISION & ORDER

Upon the foregoing papers, plaintiff's motion for an Order (i) dismissing defendants' affirmative defenses pursuant to *CPLR §3211*; and (ii) striking scandalous and irrelevant content from defendants' answer pursuant to *CPLR §3024(b)*; is determined as set forth below.

### BACKGROUND

This is an action alleging breach of an agreement for the purchase and sale of *receivables*. In the Complaint, dated May 16, 2016 [*Mot Exh. A*], plaintiff MERCHANT CASH AND CAPITAL, LLC ("MCC" or "plaintiff") alleges that on or about February 9, 2015 and February 18, 2015, MCC entered into the subject purchase and sales agreements (collectively, the "Agreement" [*Mot. Exh. C*]) with defendants CRAMER E. CONSTRUCTION LLC (the "Business Defendant") and JOHN E. CRAMER (the "Guarantor Defendant"). Pursuant to the Agreement, the Business Defendant sold $60,325.00 of its future sales

proceeds and *receivables* to MCC for an upfront sum of $47,500.00. The Agreement provided for MCC to receive the "purchased amount" in daily payments representing a percentage of the Business Defendant's daily revenue, until the payments reached the total sum of $60,325.00. The Agreement included a [*2] personal guarantee of the Business Defendant's performance by the Guarantor Defendant. The Complaint alleges that defendants defaulted under the Agreement as of September 10, 2015, and that there is presently a balance due and owing of $26,548.80.

In their Answer filed on or about June 21, 2016 [*Mot. Exh. B*], defendants assert the affirmative defense of *usury*. Essentially, Defendants allege that the transaction characterized by Plaintiff as purchase and sale was, in reality, a *loan* in the amount of $47,500.00, for which Defendants were obligated to pay $60,325.00. Based upon the calculations set forth in the Answer, defendants allege that the *loan* contemplates an annual interest rate of over 40%, which violates *New York Penal Law §190.40* and voids the *loan*.

Plaintiff now moves to dismiss defendants' affirmative defenses for failure to state a cause of action, upon documentary evidence, and because defendants' defenses are meritless. Plaintiff argues: (1) that the subject Agreement was not a *loan* — MCC's right to payment was not absolute, but was contingent on factors outside of MCC's control (the Business Defendant's receipt of revenue); (ii) that the Agreement was not *usurious* — insofar as the length of time [*3] it would take for the purchased amount to be paid in full depended upon the Business Defendant's daily revenues, the term of the purported *loan*, and thus, the purported interest rate, could not be determined at the outset; (iii) that there was no *usurious* intent — the Agreement expressly stated that the transaction was not intended as a *loan*, but as a sale of future *receivables*. Plaintiff also seeks to strike paragraphs 37-46 of the Answer on the ground that the allegations of criminal conduct are meritless, irrelevant and prejudicial.

2016 N.Y. Misc. LEXIS 4647, *3

In opposition, defendants argue that the true nature of the Agreement was a *loan*. CRAMER asserts that "[t]his Agreement was sold to me as a low interest *loan* to pay off prior debts, primarily, the amount due to MCC under a prior agreement (CRAMER Aff., ¶2). According to CRAMER, the proposition that the daily payments were linked to the Business Defendant's daily revenues is belied by the provisions of the letter addendum to the Agreement (CRAMER Aff, Exh. A). The letter addendum specifies the initial daily payment amount as $358.28, subject to adjustment as set forth in paragraphs D and E of the addendum. CRAMER asserts, in essence, that the possibility of [*4] adjustment based upon the Business Defendants' actual revenues was illusory — among other things, the provision for adjustment was unenforceable because there was no time limit for MCC to respond to defendants' request for adjustment.

To demonstrate *usury*, CRAMER calculates the "interest rate" as follows: Defendants were required to repay $67,325.00 for *loan* of $47,500.00. The difference ($12,825.00), if payable within one year, would represent 27% interest. Insofar as the *loan* was payable at $358.28 per business day, however, the full amount of the *loan* would be payable in 236 days or 2/3 of a year. An interest rate of 27% for 2/3 of a year translates into an annual interest rate of 40% (CRAMER Aff., ¶¶ 26-27).

In reply, plaintiff reiterates its argument that the subject transaction was, as expressly stated in the Agreement, a purchase and sale of ***receivables***. Plaintiff emphasizes that MCC bore the risk that it might never be entitled to collect the full purchased amount, that the purchased future ***receivables*** might never be collected, that it might take far longer than expected to collect the purchased amount (in which case, the purported interest rate would be far lower than that calculated [*5] by defendants), or that the Business Defendant might not generate sufficient revenue to continue operating. Section 4.4 of the Agreement provides that, so long as the defendants did not violate the terms of the Agreement, the fact that the Business Defendant goes bankrupt or out of business would not be considered a breach and would not obligate either defendant to pay any balance due.

Further, plaintiff argues that, even if viewed as a *loan*, the principal amount is under $250,000.00 and thus, the purported *loan* is too small to permit a defense of criminal *usury*, citing *Blue Wolf Capital Fund II, L.P. v Am. Stevedoring Inc., 105 AD3d 178, 182, 961 N.Y.S.2d 86 (1st Dept 2013)*.

## DISCUSSION

A corporation, and the individual guarantor of a corporate obligation, are barred from asserting a defense of civil ***usury*** (*Arbuzova v Skalet, 92 AD3d 816, 938 N.Y.S.2d 811 (2d Dept. 2012)*; see *General Obligations Law §5-521*). Thus, defendants are limited to allegations of criminal *usury* (see *Penal Law §§ 190.40, 190.42*). Contrary to plaintiff's argument, the Court does not find clear authority for the proposition that there is a minimum threshold for asserting the defense of criminal *usury*. Although the First Department in *Blue Wolf* [*105 AD3d at 182*] states, "a corporation may assert criminal *usury* as a defense where the amount of the *loan* or forbearance is more than $250,000.00 and less than $2,500,000.00", that statement is permissive, rather than [*6] exclusive. It does not imply the converse — that criminal *usury* cannot be asserted with respect to a *loan* of a lesser amount. Rather, it implies that the $250,000.00 cap applicable to the defense of civil *usury* does not apply in the case of criminal *usury* (see *GOL §5-501[6][a]*).

Nonetheless, the party asserting the affirmative defense of *usury* bears the burden of proof. *Hochman v LaRea, 14 AD3d 653, 789 N.Y.S.2d 300 (2d Dept. 2005)*. The burden is a heavy one. *Usury* must be proven by clear and convincing evidence as to all of its elements. *Giventer v Arnow, 37 NY2d 305, 333 N.E.2d 366, 372 N.Y.S.2d 63 (1975)*; *Hochman, 14 AD3d at 654*. *Usury* will not be presumed from facts equally consistent with a lawful purpose. *Kaufman v. Horowitz, 178 A.D.2d 632, 577 N.Y.S.2d 879 (1991)*. See also *Giventer, 37 NY2d at 309*; *Hochman, 14 AD3d at 654*. Rather, where the terms of the agreement are at issue and the evidence is conflicting, the payee is entitled to a presumption that the transaction was not *usurious*. *Giventer, 37 NY2d at 309*.

To successfully raise the defense of *usury*, the defendant must allege and prove: (i) that a *loan* or forbearance of money; (ii) requiring interest in violation of a *usury* statute; (iii) was charged by the payee with the intent to take interest in excess of the legal rate. *Blue Wolf, 105 AD3d at 183*. If *usury* can be gleaned from the face of the agreement, intent will be implied. *Id.*

There is no *usury* if the transaction is not a *loan*. *Seidel v 18 E 17th St. Owners, 79 NY2d 735, 598 N.E.2d 7, 586 N.Y.S.2d 240 (1992)*; *Donatelli v Siskind, 170 AD2d 433, 565 N.Y.S.2d 224 (2d Dept. 1991)*. Although generally a contract is interpreted in accordance [*7]

2016 N.Y. Misc. LEXIS 4647, *7

with the plain meaning of its terms and the parties' intent is found within the "four corners" of the contract (*Ellington v EMI Music, Inc.*, 24 NY3d 239, 997 N.Y.S.2d 339, 21 N.E.3d 1000 [2014]), when the defense of *usury* is asserted, the Court will look beyond the form of the agreement to the nature and substance of the transaction. *Seidel, 79 NY2d at 744*; *Blue Wolf 105 AD3d at 183*.

To constitute a true *loan*, the agreement must "provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard." *Rubenstein v Small, 273 AD 102, 75 N.Y.S.2d 483 (1st Dept. 1947)*. "Where the plaintiff runs the risk of losing all that he has advanced to the defendant," the transaction is not a *loan*. *Id., at 104*.

Applying the above principles to the case at bar, the Court finds the express terms of the Agreement refute the defense of *usury* as a matter of law. Under the terms of the Agreement, plaintiff assumed the risk of nonpayment in the event of business failure or bankruptcy. Further, the Agreement provided that the amount of daily payments toward the total purchased amount could be adjusted downward in the event that the average daily receipts were less than anticipated, and adjusted upward in the event that the average daily receipts were greater than anticipated. Thus, plaintiff assumed the risk that, if the receipts were less [*8] than anticipated, the period of repayment would be correspondingly longer, and the investment would yield a correspondingly lower annual return.

Defendants' argument that the mechanism for adjustment is "utterly unenforceable by the defendants and rendered useless" (*Memorandum of Law, p.10*) is not borne out by any reasonable interpretation of the provisions in question (see *Mot. Exh. C, letter addendum to Agreement, Paragraphs D and E*). When a contract does not specify a time for performance, the law implies a reasonable time. *Tedeschi v. Northland Builders, LLC, 74 AD3d 1613, 904 N.Y.S.2d 786 (3d Dept. 2010)*. Moreover, defendants' calculation of "interest" is speculative at best, and rests upon the unwarranted presumption that the daily payment amount is immutable. In view of the foregoing, the Court finds no basis to re-characterize the Agreement as a *usurious loan*.

Turning to that portion of the motion which seeks that to strike paragraphs 37-46 from the Answer, the Court notes that the request is untimely (*CPLR 3024[c]*). To the extent that the Court has discretion to disregard

such defect, the Court declines to exercise it in the absence of a showing sufficient to demonstrate that the material is scandalous or prejudicial, and not merely rendered unnecessary or irrelevant [*9] by the Court's dismissal of the *usury* defense. See *Matter of Emberger, 24 A.D.2d 864, 264 N.Y.S.2d 277 (2d Dept. 1965)*.

The Court has considered the remaining contentions of the parties and finds that they do not warrant discussion.

Based upon the foregoing, it is

**ORDERED**, that the plaintiff's motion is *granted in part*, to the extent that the affirmative defense of *usury* is dismissed. In all other respects, the motion is *denied*,

All matters not decided herein are denied.

This constitutes the Decision and Order of this Court.

Dated: November 2, 2016

Mineola, New York

ENTER:

/s/ Robert A. Bruno

Hon. Robert A. Bruno, J.S.C.

---

**End of Document**

✦ Positive
As of: May 10, 2018 6:59 PM Z

# *Merchant Cash & Capital, LLC v Transfer Intl. Inc*

Supreme Court of New York, Nassau County

November 2, 2016, Decided; November 4, 2016, Entered

605136/16

**Reporter**
2016 N.Y. Misc. LEXIS 4515 *; 2016 NY Slip Op 32395(U) **

[**1]  MERCHANT CASH AND CAPITAL, LLC, Plaintiff, -against- TRANSFER INTERNATIONAL INC D/B/A ANDRADE TRANSFER, and STEVE ANDRADE, Defendants. Index No.: 605136/16

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

defendants', interest rate, affirmative defense, *receivables*, asserting

**Judges:** [*1] PRESENT: Hon. Robert A. Bruno, J.S.C.

**Opinion by:** Robert A. Bruno

# Opinion

### DECISION & ORDER

Upon the foregoing papers, plaintiff's motion for an Order (i) dismissing defendants' affirmative defenses pursuant to *CPLR §3211*; and (ii) striking scandalous and irrelevant content from defendants' answer pursuant to *CPLR §3024(b)*; is determined as set forth below.

### BACKGROUND

This is an action alleging breach of an agreement for the purchase and sale of *receivables*. In the Complaint, dated July 7, 2016 [*Mot Exh. A*], plaintiff MERCHANT CASH AND CAPITAL, LLC ("MCC" or "plaintiff") alleges that on or about February 5, 2016, MCC entered into the subject purchase and sales agreement (the "Agreement" [*Mot. Exh. C*]) with defendants TRANSFER

INTERNATIONAL INC D/B/A ANDRADE TRANSFER (the "Business Defendant") and STEVE ANDRADE (the "Guarantor Defendant"). Pursuant to the [**2] Agreement, the Business Defendant sold $115,200.00 of its future sales proceeds and *receivables* to MCC for an upfront sum of $80,000.00. The Agreement provided for MCC to receive the "purchased amount" in daily payments representing a percentage (13%) of the Business Defendant's daily revenue, until the payments reached the total sum of $115,200.00. The Agreement included a personal [*2] guarantee of the Business Defendant's performance by the Guarantor Defendant. The Complaint alleges that defendants defaulted under the Agreement as of April 23, 2016, and that there is presently a balance due and owing of $81,122.00.

In their Answer filed on August 31, 2016 [*Mot. Exh. B*], defendants assert the affirmative defense of *usury*. Essentially, Defendants allege that the transaction characterized by Plaintiff as purchase and sale was, in reality, a *loan* in the amount of $80,000.00, for which Defendants were obligated to pay $115,200.00. Based upon the calculations set forth in the Answer, defendants allege that the *loan* contemplates an annual interest rate of 59%, which violates *New York Penal Law §190.40* and voids the *loan*.

Plaintiff now moves to dismiss defendants' affirmative defenses for failure to state a cause of action, upon documentary evidence, and because defendants' defenses are meritless. Plaintiff argues: (i) that the subject Agreement was not a *loan* — MCC's right to payment was not absolute, but was contingent on factors outside of MCC's control (the Business Defendant's receipt of revenue); (ii) that the Agreement was not *usurious* — insofar as the length of time it would take for the purchased [*3] amount to be paid in full depended upon the Business Defendant's daily revenues, the term of the purported *loan*, and thus, the purported interest rate, could not be determined at the outset; (iii) that there was no *usurious* intent — the Agreement expressly stated that the transaction was not

2016 N.Y. Misc. LEXIS 4515, *3; 2016 NY Slip Op 32395(U), **2

intended as a *loan*, but as a sale of future *receivables*. Plaintiff also seeks to strike paragraphs 1-11 under the heading "Separate Defenses" from the Answer on the ground that the allegations of criminal conduct are meritless, irrelevant and prejudicial.

In opposition, defendants argue that the true nature of the Agreement was a *loan*. ANDRADE asserts that "[t]his Agreement was sold to me as a low interest *loan* to pay off a prior agreement with MCC (ANDRADE Aff., ¶2). According to ANDRADE, the proposition that the daily payments were linked to the Business Defendant's daily revenues is belied by the provisions of the letter addendum to the Agreement (*ANDRADE Aff, Exh. A*). The letter addendum specifies the initial daily payment amount as $609.00, subject to adjustment as set forth in paragraphs D and E of the addendum. ANDRADE asserts, in essence, that the possibility of adjustment based upon the Business **[*4]** Defendants' actual revenues was illusory –– among other things, the provision for adjustment was unenforceable because there was no time limit for MCC to respond to defendants' request for adjustment.

**[**3]** To demonstrate *usury*, ANDRADE calculates the "interest rate" as follows: Defendants were required to repay $115,200.00 for *loan* of $80,000.00. The difference ($35,200.00), if payable within one year, would represent 44% interest. Insofar as the *loan* was payable at $609.00 per business day, however, the full amount of the *loan* would be payable in 265 days or 3/4 of a year. An interest rate of 44% for 3/4 of a year translates into an annual interest rate of 59% (ANDRADE Aff., ¶¶ 27-28).

In reply, plaintiff reiterates its argument that the subject transaction was, as expressly stated in the Agreement, a purchase and sale of *receivables*. Plaintiff emphasizes that MCC bore the risk that it might never be entitled to collect the full purchased amount, that the purchased future *receivables* might never be collected, that it might take far longer than expected to collect the purchased amount (in which case, the purported interest rate would be far lower than that calculated by defendants), or that **[*5]** the Business Defendant might not generate sufficient revenue to continue operating. Section 4.4 of the Agreement provides that, so long as the defendants did not violate the terms of the Agreement, the fact that the Business Defendant goes bankrupt or out of business would not be considered a breach and would not obligate either defendant to pay any balance due.

Further, plaintiff argues that, even if viewed as a *loan*, the principal amount is under $250,000.00 and thus, the purported *loan* is too small to permit a defense of criminal *usury*, citing *Blue Wolf Capital Fund II, L.P. v Am. Stevedoring, Inc., 105 AD3d 178, 182, 961 N.Y.S.2d 86 (1st Dept. 2013)*.

## DISCUSSION

A corporation, and the individual guarantor of a corporate obligation, are barred from asserting a defense of civil *usury* (*Arbuzova v Skalet, 92 AD3d 816, 938 N.Y.S.2d 811 (2d Dept. 2012)*; see *General Obligations Law §5-521*). Thus, defendants are limited to allegations of criminal *usury* (see *Penal Law §§ 190.40, 190.42*). Contrary to plaintiff's argument, the Court does not find clear authority for the proposition that there is a minimum threshold for asserting the defense of criminal *usury*. Although the First Department in *Blue Wolf [105 AD3d at 182]* states, "a corporation may assert criminal *usury* as a defense where the amount of the *loan* or forbearance is more than $250,000.00 and less than $2,500,000.00", that statement is permissive, rather than exclusive. It does not **[*6]** imply the converse — that criminal *usury* cannot be asserted with respect to a *loan* of a lesser amount. Rather, it implies that the $250,000.00 cap applicable to the defense of civil *usury* does not apply in the case of criminal *usury* (see *GOL §5-501[6][a]*).

**[**4]** Nonetheless, the party asserting the affirmative defense of *usury* bears the burden of proof. *Hochman v LaRea, 14 AD3d 653, 789 N.Y.S.2d 300 (2d Dept. 2005)*. The burden is a heavy one. *Usury* must be proven by clear and convincing evidence as to all of its elements. *Giventer v Arnow, 37 NY2d 305, 333 N.E.2d 366, 372 N.Y.S.2d 63 (1975)*; *Hochman, 14 AD3d at 654*. *Usury* will not be presumed from facts equally consistent with a lawful purpose. *Kaufman v Horowitz, 178 A.D.2d 632, 577 N.Y.S.2d 879 (1991)*. See also *Giventer, 37 NY2d at 309*; *Hochman, 14 AD3d at 654*. Rather, where the terms of the agreement are at issue and the evidence is conflicting, the payee is entitled to a presumption that the transaction was not *usurious*. *Giventer, 37 NY2d at 309*.

To successfully raise the defense of *usury*, the defendant must allege and prove: (i) that a *loan* or forbearance of money; (ii) requiring interest in violation of a *usury* statute; (iii) was charged by the payee with the intent to take interest in excess of the legal rate. *Blue Wolf 105 AD3d at 183*. If *usury* can be gleaned

2016 N.Y. Misc. LEXIS 4515, *6; 2016 NY Slip Op 32395(U), **4

from the face of the agreement, intent will be implied. *Id.*

There is no **_usury_** if the transaction is not a **_loan_**. *Seidel v 18 E 17th St. Owners, 79 NY2d 735, 598 N.E.2d 7, 586 N.Y.S.2d 240 (1992); Donatelli v Siskind, 170 AD2d 433, 565 N.Y.S.2d 224 (2d Dept. 1991).* Although generally a contract is interpreted in accordance with the plain meaning [*7] of its terms and the parties' intent is found within the "four corners" of the contract (*Ellington v EMI Music, Inc., 24 NY3d 239, 997 N.Y.S.2d 339, 21 N.E.3d 1000 [2014]*), when the defense of *usury* is asserted, the Court will look beyond the form of the agreement to the nature and substance of the transaction. *Seidel, 79 NY2d at 744; Blue Wolf, 105 AD3d at 183.*

To constitute a true **_loan_**, the agreement must "provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard." *Rubenstein v Small, 273 AD 102, 75 N.Y.S.2d 483 (1st Dept. 1947).* "Where the plaintiff runs the risk of losing all that he has advanced to the defendant," the transaction is not a **_loan_**. *Id., at 104.*

Applying the above principles to the case at bar, the Court finds the express terms of the Agreement refute the defense of **_usury_** as a matter of law. Under the terms of the Agreement, plaintiff assumed the risk of nonpayment in the event of business failure or bankruptcy. Further, the Agreement provided that the amount of daily payments toward the total purchased amount could be adjusted downward in the event that the average daily receipts were less than anticipated, and adjusted upward in the event that the average daily receipts were greater than anticipated. Thus, plaintiff assumed the risk that, if the receipts were less than anticipated, the period [*8] of repayment would be correspondingly longer, and the investment would yield a correspondingly lower annual return.

[**5] Defendants' argument that the mechanism for adjustment is "utterly unenforceable by the defendants and rendered useless" (*Memorandum of Law, p.10*) is not borne out by any reasonable interpretation of the provisions in question (see *Mot. Exh. C, letter addendum to Agreement, Paragraphs D and E*). When a contract does not specify a time for performance, the law implies a reasonable time. *Tedeschi v. Northland Builders, LLC, 74 AD3d 1613, 904 N.Y.S.2d 786 (3d Dept. 2010).* Moreover, defendants' calculation of "interest" is speculative at best, and rests upon the unwarranted presumption that the daily payment amount is immutable. In view of the foregoing, the Court

finds no basis to re-characterize the Agreement as a **_usurious loan_**.

Turning to that portion of the motion which seeks that to strike paragraphs 1-11 under the heading "Separate Defenses" from the Answer, the Court notes that the request is untimely (*CPLR 3024[c]*). To the extent that the Court has discretion to disregard such defect, the Court declines to exercise it in the absence of a showing sufficient to demonstrate that the material is scandalous or prejudicial, and not merely rendered unnecessary or irrelevant [*9] by the Court's dismissal of the **_usury_** defense. See *Matter of Emberger, 24 A.D.2d 864, 264 N.Y.S.2d 277 (2d Dept. 1965).*

The Court has considered the remaining contentions of the parties and finds that they do not warrant discussion.

Based upon the foregoing, it is

**ORDERED**, that the plaintiff's motion is *granted in part*, to the extent that the affirmative defense of **_usury_** is dismissed. In all other respects, the motion is *denied*,

All matters not decided herein are denied.

This constitutes the Decision and Order of this Court.

Dated: November 2, 2016

Mineola, New York

ENTER:

/s/ Robert A. Bruno

Hon. Robert A. Bruno, J.S.C.

_____

**End of Document**

 Positive

As of: May 10, 2018 7:16 PM Z

## *Platinum Rapid Funding Group Ltd. v VIP Limousine Servs., Inc.*

Supreme Court of New York, Nassau County

October 27, 2016, Decided; November 1, 2016, Entered

604163-15

**Reporter**

2016 N.Y. Misc. LEXIS 4131 *; 2016 NY Slip Op 32226(U) **

**[**1]** PLATINUM RAPID FUNDING GROUP LTD., Plaintiff, - against - VIP LIMOUSINE SERVICES, INC. and CHARLES COTTON, Defendants. Index No.: 604163-15

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

**Prior History:** *Platinum Rapid Funding Group Ltd. v. VIP Limousine Servs., Inc., 2016 N.Y. Misc. LEXIS 3068 (N.Y. Sup. Ct., June 8, 2016)*

## Core Terms

injunction, proceeds, damages, summary judgment, summary judgment motion, *receivables*, deposited, Services, accounts receivable, bank account, obligated, Disposal, Funding, alleges, costs

**Judges:** **[*1]** PRESENT: HON. JEROME C. MURPHY, J.S.C.

**Opinion by:** JEROME C. MURPHY

## Opinion

### AMENDED DECISION AND ORDER

PRELIMINARY STATEMENT

The purpose of this Amended Decision is to correct a typographical error which is corrected in the first full paragraph at the top of page 8.

**[**2]** In Sequence No. 004, plaintiff brings this application for an order granting summary judgment against the defendants jointly and severally in the amount of $66,964.94, plus pre judgment interest at 9% from the date of the defendants' breach to the date of entry of judgment, post judgment interest from the date of entry until paid, costs, disbursements, attorneys' fees, and such other, further and different relief as may be just and proper. Opposition to this application has been submitted.

In Sequence No. 005, plaintiff brings this application: (1) ordering the defendants to immediately transfer all sales proceeds, revenues, currently in defendant's bank accounts up to $66,964.94 into defendants' counsel's IOLA Trust Account pending the outcome of this litigation; (2) ordering defendant to remit 15% of its gross sales proceeds up to $66,964.94 into defendants' counsel's IOLA trust account pending the outcome of this litigation; (3) ordering defendants **[*2]** not to sell, dispose, or encumber any future sales proceeds or *receivables* pending the outcome of this litigation; and (4) granting plaintiff such other, future, and different relief as may be just, proper, and/or equitable.

In Sequence No. 006, defendants bring this application for an order staying this action pursuant to *CPLR § 2201* or, in the alternative, extending defendants' time to respond to plaintiff's motion for summary judgment; and vacating the Court's Temporary Restraining Order dated August 27, 2016. Opposition to this application has been submitted.

BACKGROUND

On or about December 18, 2014, VIP Limousine Services, Inc. ("VIP") entered into a Merchant Agreement with Platinum Rapid Funding Group, Inc. ("Platinum"), whereby Platinum sold its future *receivables* with a face value of $28,400.00 to Platinum for an upfront discounted price of $20,000.00 ("First Agreement"). Platinum deposited $20,000.00, less any agreed upon amounts, into a bank account designated by VIP.

On or about December 18, 2014, VIP Limousine

2016 N.Y. Misc. LEXIS 4131, *2; 2016 NY Slip Op 32226(U), **2

Services, Inc. ("VIP") entered into a second Merchant Agreement with Platinum Rapid Funding Group, Inc. ("Platinum"), whereby Platinum sold its future *receivables* with a face value [*3] of $71,000.00 to Platinum for an upfront discounted price of $50,000.00 ("Second Agreement"). Platinum deposited $50,000.00, less any agreed upon amounts, into a bank account designated by VIP.

In accordance with the Agreements, Platinum purchased, and was the sole owner of $99,400.00 if VIP's future revenue and *receivables*. Between December 28, 2014 and March 10, 2015, VIP paid Platinum $32,435.06 of the future *receivables*. Plaintiff contends that VIP breached its [**3] contract on or before March 10, 2015 by terminating Platinum's ability to electronically withdraw funds from their account through ACH, the Automated Clearing House.

Plaintiff served an Amended Verified Complaint dated December 29, 2015 (Exh. "A"). The First Cause of Action is for Breach of Contract for defendant's withholding the balance of $66,964.94, plus the costs and attorneys' fees incurred as a result of this action.

The Second Cause of Action alleges Breach of Representations and Warranties, in that defendant represented and warranted that it would "not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any advese effect upon Merchant's [*4] obligations under this Agreement . . ." without Platinum's prior written consent.

In the Third Cause of Action, plaintiff alleges a breach of the personal guarantee of performance of Charles Cotton. The Fourth Cause of Action alleges that, in accordance with the Agreement, Business Defendant and Defendant Cotton are obligated to pay all costs and attorneys' fees incurred as a result of a breach of the Agreement.

On February 5, 2016, defendants filed a Verified Answer with Affirmative Defenses and a Counterclaim (Exh. "B"). After generally denying the allegations of the Complaint, the Answer sets forth the following Affirmative Defenses: (1) failure to state a claim upon which relief can be granted; (2) claim barred by estoppel, unclean hands, waiver and doctrine *in pari delicto*; (3) defendants did not breach any duty or obligation allegedly owed to plaintiff; (4) claims are barred by plaintiff's failure to exercise due diligence to protect its interests and avoid injury; (5) plaintiff has failed to satisfy all conditions precedent; (6) to the extent

plaintiff has suffered damages, its claim is barred in whole or in part by its failure to mitigate damages; (7) defendants deny plaintiff [*5] was damaged by them; (8) any damages sustained by plaintiff were incurred as a result of acts or omissions of individuals or entities that defendants "did not retain, reserve or exercise control over, and for which Defendants are not legally responsible"; (9) any damages suffered by plaintiff were due to their own affirmative actions and/or omissions, and do not give rise to any liability of defendants; (10) defendants did not make any false or misleading representations to plaintiff; (11) plaintiff has committed civil and criminal *usury*; and (12) defendants reserve the right to move for leave to add additional defenses as discovery progresses.

By Decision and Order dated June 8, 2016, this Court granted plaintiff's motion to dismiss all but the Sixth Affirmative Defense, and the Counterclaim, to the extent that an Answer may be read to assert one. The Court also directed compliance by defendants with some, but not all of the outstanding [**4] discovery demands of plaintiff. The cross-motion by defendant to compel responses to document requests was also denied, on the ground that plaintiff has submitted responses.

DISCUSSION

*Motion Sequence No. 4*

When presented with a motion for summary judgment, [*6] the function of a court is "not to determine credibility or to engage in issue determination, but rather to determine the existence or nonexistence of material issues of fact." (*Quinn v. Krumland, 179 A.D.2d 448, 449 - 450, 577 N.Y.S.2d 868 [1st Dept. 1992]*); See also, (*S.J. Capelin Associates, Inc. v. Globe Mfg. Corp. 34 N.Y.2d 338, 343, 313 N.E.2d 776, 357 N.Y.S.2d 478, [1974]*).

To grant summary judgment, it must clearly appear that no material and triable issue of fact is presented (*Sillman v. Twentieth Century-Fox Film Corp., 3 N.Y.2d 395, 404, 144 N.E.2d 387, 165 N.Y.S.2d 498 [1957]*). It is a drastic remedy, the procedural equivalent of a trial, and will not be granted if there is any doubt as to the existence of a triable issue (*Moskowitz v. Garlock, 23 A.D.2d 943, 259 N.Y.S.2d 1003 [3d Dept. 1965]*); (*Crowley's Milk Co. v. Klein, 24 A.D.2d 920, 264 N.Y.S.2d 680 [3d Dept. 1965]*). However, where a party is otherwise entitled to judgment as a matter of law, an opposing party may not simply raise a feigned issue of fact to defeat the claim. To be "material issue of fact" it

2016 N.Y. Misc. LEXIS 4131, *6; 2016 NY Slip Op 32226(U), **4

"must be genuine, bona fide and substantial to require a trial." (*Leumi Financial Corp. v. Richter, 24 A.D.2d 855, 264 N.Y.S.2d 707 [1st Dept. 1965]*).

But this rule will not be applied where the opposition is evasive or indirect. The opposing party is obligated to come forward and bare his proof, by affidavit of an individual with personal knowledge, or with an attorney's affirmation to which appended material in admissible form, and the failure to do so may lead the Court to believe that there is no triable issue of fact (*Zuckerman v. City of New York, 49 N.Y.2d 557, 562, 404 N.E.2d 718, 427 N.Y.S.2d 595 [1980]*).

In its cross-motion (Motion Seqence No. 6), defendants seek a stay of this matter pending their appeal of [*7] the prior Decision and Order which determined that the Merchant Agreement did not constitute a *loan*, and was not governed by the statutory prohibitions against civil and criminal *usury* (*General Obligation Law § 5-501[1]* and *Banking Law § 14-a[1]*). They have submitted a copy of their Notice of Appeal, and assert that they are obligated to perfect their appeal by December 27, 2016. They also oppose the application by plaintiff for injunctive relief in the form of a direction that defendant transfer all sales proceeds, and revenues currently in VIP bank accounts up to $66,964.94 into their counsel's IOLA account pending the outcome of the litigation, and ordering VIP to remit 15% [**5] of its gross sales proceeds up to $66,964.94 into their counsel's IOLA account pending the outcome of this litigation.

Defendants, in their Memorandum of Law in Support of their Cross-Motion, and in Opposition to the Motion for Summary Judgment, refer to the matter of *Clever Ideas v. 999 Restaurant Corp, d/b/a Nello's Ristorante, et al., 2007 NY Slip Op. 33496U, 2007 N.Y. Misc. LEXIS 9248 (Sup.Ct., NY Co. [Ramos, J.])*. The matter involved an agreement for the purchase of accounts receivable, similar to that in this action. Defendants sought to dismiss the Complaint arguing that *usury* laws barred plaintiff's action. In the course of his Decision and Order, Justice Ramos stated that "[t]he transactions at issue here are [*8] clearly payable absolutely, and thus *loans*." But the Court denied the motion for summary judgment as premature, asserting that "further discovery is required to delve further into the parties' intent."

Justice Ramos had occasion to address the issue of summary judgment at the conclusion of discovery (*Clever Ideas, Inc. v. 999 Rest. Corp., 2009 NY Slip Op. 30284[U], 2009 N.Y. Misc. LEXIS 3994 [Sup.Ct., NY Co.])*. Defendants renewed their prior motion to dismiss

the Complaint on the grounds that the two *loan* agreements between the parties are civilly and criminally *usurious*. Seemingly stepping back from the language of the earlier decision, Justice Ramos stated that "[t]he Court will not assume that the parties entered into an unlawful agreement, and when the terms of the agreement are in issue, and the evidence is conflicting, the lender is entitled to a presumption that he did not make a *loan* at a *usurious* rate, citing *Giventer v. Arnow, 37 N.Y.2d 305, 309, 333 N.E.2d 366, 372 N.Y.S.2d 63 [1975]*. The Court denied the motion, leaving the determination as to whether the lenders intent met the clear and convincing standard of *usury* to the trier of fact.

This Court respectfully distinguishes the *Clever* findings in two material respects. The Court there stated that obligation to make payment was unconditional, but these are not the terms of the Merchant Agreements [*9] in the instant case. The only source of payment is deposited receipts from future transactions. Plaintiff assumes the risk that there will be no receipts, and therefore no payment. The personal guaranty is no broader than the obligations under the Agreement, and the requirement of payment by the Guarantor is no greater than that of the Merchant.

Secondly, this Court does not take the position that the intention of the Funder is relevant to an interpretation of an Agreement which is unambiguous on its face. Since the Agreement specifically provides that it involves the purchase of accounts receivable, and is not a *loan*, and does not require [**6] unconditional repayment by the Merchant or the Guarantor, it is not a *loan*, and thereby not governed by the General Obligations or Banking Law as they relate to *usury*.

There are no material facts which are undetermined. Plaintiff has established jurisdiction over defendants, and has submitted an affidavit of Ali Mayar, Chief Executive officer of Platinum Rapid Funding Group, Ltd., an individual with personal knowledge of the facts of the matter (Exh. "A"). Defendants, in response to a Notice to Admit, acknowledge that they have continued to operate [*10] and receive payments through at least December 30, 2015 (Exh. "G").

Plaintiff has established its prima facie entitlement to summary judgment. Defendants have failed to raise a material fact, except for their claim that the Agreement was barred by the *usury* statutes, which this Court has determined in its prior decision. **Plaintiff's motion for summary judgment against defendants in the**

2016 N.Y. Misc. LEXIS 4131, *10; 2016 NY Slip Op 32226(U), **6

amount of $66,964.94, together with interest at the rate of 9% from March 10, 2015, together with costs and disbursements is granted. Plaintiff has not submitted a Statement of Costs and Disbursements, or an Affidavit of Legal Services. The Court hereby schedules a hearing on these issues for December 19, 2016, at 9:30 A.M. in this Part 19.

### Motion Sequence No. 5

Plaintiff bases this application for injunctive relief on the ground that defendant is actively marketing the sale of their accounts receivable to competitors of plaintiff. Plaintiff alleges that based upon the terms of the Merchant Agreements, these *receivables* are owned by plaintiff, and the effort to dispose of them is an effort to make the Agreement unenforceable. In addition, counsel for defendants has submitted evidence and documentation from [*11] a similar case involving defendants in Westchester County attesting to the claim that defendants are judgment proof, and that efforts by plaintiff in this case to recover their purchased accounts receivable, will be fruitless.

In the Temporary Restraining Order issued in connection with the Order to Show Cause, this Court enjoined defendants from selling, disposing of, or otherwise encumbering VIP's future sales proceeds, and directed that defendants deposit the proceeds of their sales in their possession, up to the amount of $66,964.94, into the IOLA account of their attorney. Plaintiff asserts that they have not done so, in defiance of the Order, and this has not been contradicted by counsel for defendants. Defendants apparently fail to understand that the proceeds from the sales of services, up to the amount of $66,964.94, do not belong to them.

[**7] "To establish entitlement to a preliminary injunction, a movant must establish (1) a likelihood or probability of success on the merits, (2) irreparable harm in the absence of an injunction, and (3) a balance of the equities in favor of granting the injunction." (*Di Fabio v. Omnipoint Communications, Inc., et al., 66 A.D.3d 635, 887 N.Y.S.2d 168, 2009 WL 3210142 [N.Y.A.D. 2d Dept., 2009]);* citing, *CPLR 6301, Doe v. Axelrod, 73 N.Y.2d 748, 750, 532 N.E.2d 1272, 536 N.Y.S.2d 44 (1988), W.T. Grant v. Srogi, 52 N.Y.2d 496. 517, 420 N.E.2d 953, 438 N.Y.S.2d 761 (1981); See also, Automated Waste Disposal, Inc., v. Mid-Hudson Waste, Inc., 50 A.D.3d 1072 - 1073, 857 N.Y.S.2d 648 (2d Dept. 2008).*

"Irreparable injuries for the purpose of equity, [*12] has been held to mean any injury for which money damages are insufficient" (*Walsh v. Design Concepts, 221 A.D.2d 454, 455, 633 N.Y.S.2d 579 (2d Dept. 1995).* On the contrary, "(e)conomic loss, which is compensable by money damages, does not constitute irreparable harm" (*EdCia Corp. v. McCormack, 44 A.D.3d 991, 994, 845 N.Y.S.2d 104 (2d Dept. 2007).* Failure to enunciate non-economic loss constitutes a failure to demonstrate irreparable harm so as to warrant equitable relief in the form of an injunction (*Automated Waste Disposal at 1073).*

Likelihood of ultimate success on the merits does not import a predetermination of the issues, and does not constitute a certainty of success. The requirement is a protection against the exercise of a court's formidable equity power in cases where the moving party's position, no matter how emotionally compelling, is without legal foundation (*Tucker v. Toia, 54 A.D.2d 322, 326, 388 N.Y.S.2d 475 [4th Dept. 1976]).*

In balancing the equities, the court must weigh the harm each side will suffer in the absence or in the face of injunctive relief (*Washington Deluxe Bus, Inc. v. Sharmash Bus Corp., 47 A.D.3d 806, 850 N.Y.S.2d 516 [2d Dept. 2008]).* This is, by definition, a fact-sensitive inquiry. Thus, for example, where a pharmaceutical manufacturer of a non-prescription product was seeking to enforce exclusivity agreement and preliminarily enjoin defendant from importing and marketing the same product, the balance of equities favored defendant, since plaintiff could recover damages, while defendant would have [*13] to remove product from the shelves for an indeterminate length of time (*OraSure Technologies, Inc. v. Prestige Brands Holdings, Inc., 42 A.D.3d 348, 839 N.Y.S.2d 744 [1st Dept. 2007]).*

Plaintiff has established its entitlement to, and, in fact, has been granted summary judgment. The likelihood of success has been established. Certainly, equity favors plaintiff, who has paid for the proceeds of accounts receivable, which is the subject of the action. *CPLR § 6301* provides that "[a] preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual . . ."

[**8] The conduct of the defendants in depriving plaintiff of its right to possession of its own property, and the avowal that plaintiff will never be able to recover

2016 N.Y. Misc. LEXIS 4131, *13; 2016 NY Slip Op 32226(U), **8

their property from defendants, is precisely the type of conduct for which injunctive relief is available. **Plaintiff's motion for an injunction directing defendants to immediately deposit into their counsel's IOLA Account, funds from the provision of services presently in their possession, up to the amount of $66,694.94, and 15% of the future receipts for the provision [*14] of services, until the amount of $66,694.94 is deposited, is granted**.

#### *Motion Sequence No. 6*

Defendants seek a stay of the proceeding pending appeal, or, in the alternative, extending the time for defendants to respond to plaintiff's motion for summary judgment, and for a vacatur of the Temporary Restraining Order.

*CPLR § 2201* provides simply that "[e]xcept where otherwise prescribed by law, the court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just." "A determination as to whether or not to grant a stay pending appeal is a discretionary one 'as courts have the inherent power, and indeed responsibility, so essential to the proper administration of justice, to control their calendars and to supervise the course of litigation before them (*Kobrick v. New York State Div. of Housing and Community Renewal, 37 Misc.3d 1224[A] [Sup.Ct. NY Co. 2012*, quoting *Grisi v. Shainswit, 119 A.D.2d 418, 507 N.Y.S.2d 155 [1st Dept. 1986]*).

Defendants have filed a Notice of Appeal of the prior Order of this Court dated June 8, 2016, and have indicated that they are required to perfect the appeal on or before December 27, 2016. Plaintiff responds that defendants have done no more than file the Notice of Appeal, and that they have not been served with a Record on Appeal. While defendants may be in a position to perfect [*15] the appeal in a timely fashion, there is certainly no guarantee as to when a determination of the appeal will be forthcoming.

While this Court cannot predict the determination of the Appellate Division, it is of the opinion that its determination of June 8, 2016 was correct, and that the likelihood of a reversal is certainly not assured. There is no reason for plaintiff to be denied what are perceived to be its rights under the Merchant Agreement and the grant of summary judgment in this Decision and Order. **The Court therefor exercises its discretion in denying the motion for a stay pending appeal**.

**The Court also denies the application for additional time for defendants to oppose the [**9] motion for summary judgment**. The sole basis upon which defendants apparently rely is the claim that they are entitled to claim *usury*, and that the Agreement is void ab initio. This point has been clearly made by them, and there is no rational basis upon which the Court can justify denial of the relief requested by plaintiff.

This constitutes the Decision and Order of the Court.

Dated: Mineola, New York

October 27, 2016

**ENTER:**

/s/ Jerome C. Murphy

**JEROME C. MURPHY**

**J.S.C.**

---

End of Document

No *Shepard's* Signal™
As of: May 10, 2018 7:03 PM Z

# *Merchant Cash & Capital, LLC v Randa's Bakery, Inc.*

Supreme Court of New York, Nassau County

September 20, 2016, Decided; September 20, 2016, Entered

603446-16

**Reporter**
2016 N.Y. Misc. LEXIS 3342 *; 2016 NY Slip Op 31732(U) **

[**1] MERCHANT CASH & CAPITAL, LLC, Plaintiff, -against- RANDA'S BAKERY, INC. and AHMAD ABDULLA, Defendants. Index No.: 603446-16

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

*receivables*, default, Seller, default judgment, assertions, Verified, alleges, damages

**Judges:** [*1] PRESENT: HON. JEROME C. MURPHY, J.S.C.

**Opinion by:** JEROME C. MURPHY

## Opinion

**DECISION AND ORDER**

PRELIMINARY STATEMENT

Plaintiff brings this application for an order pursuant to *CPLR § 3215*, granting plaintiff's motion on default and entering judgment on sum certain damages against the defendant, and for such other and further relief as the Court deems just and proper. Defendants have submitted opposition to this application.

BACKGROUND

On July 15, 2015 Randa's Bakery, Inc. ("Randa's") entered into an agreement with Merchant Cash and Capital, Inc ("MCC") to sell $98,670 of its business sales *receivables*/revenue in return for an up front payment by Merchant of $71,500 (Exh. "A"). MCC provided $71,500 to Randa, and Randa tendered $37,144.20

toward the agreed upon purchase price of $98,670, leaving an unpaid balance of [**2] $61,525.80. Defendant Ahmad Abdullah ("Abdullah") personally guaranteed the Agreement.

Plaintiff commenced this action by filing a Summons and Complaint on May 16, 2016. They made service upon Abdulla by service upon his wife, Diana, at 1356 St. Louis Avenue, Bayshore, New York on May 17, 2016, and upon Randa's by service upon the Secretary of State on May 18, 2016. Additional service by mail was made to Abdulla and Randa's [*2] on May 23, 2016.

The Complaint alleges that Randa has been in default under the terms of the Agreement since January 7, 2016. The Complaint alleges Four Causes of Action: breach of contract against Randa's; failure of Randa's to pay the Balance due MCC pursuant to the Agreement; against Abdulla as personal guarantor of the Agreement; and against both defendants for costs associated with the enforcement of the Agreement, including court costs, disbursements, and attorney's fees, as provided for in § 5.7 of the Agreement.

Plaintiff submits an Affidavit of Robert Knox, Vice President of Collections for MCC. He asserts that MCC complied with its obligations under the Agreement, and that, beginning on or about January 7, 2016, Randa began diverting funds from the business bank account, thereby interfering with payments to MCC. Since the date of the breach, defendants have comingled the purchased *receivables* with Randa's operating funds, and have continued to withhold $61,528.80 of the *receivables* which were purchased by MCC.

Defendants oppose the motion for default judgment and submit a proposed Verified Answer, in which they include Affirmative Defenses of *Usury* and that the Agreement does not [*3] contain the name, title or date the Agreement was signed. Abdulla submits an Affidavit, in which he asserts that the yield on the *loan* is in excess of 25%, and is *usurious* under New York law.

2016 N.Y. Misc. LEXIS 3342, *3; 2016 NY Slip Op 31732(U), **2

He also contends that the Agreement (Exh. "A") is incomplete, as it does not identify the name of the seller, the title of the person signing on its behalf, or the date. As such, it is claimed to be unenforceable.

DISCUSSION

The decision whether to grant a default judgment is left to sound judicial discretion (*Shah v. New York State Dep't. Of Civil Service, 168 F.3d 610, 615 [2d Cir.1999]; Briarpatch Ltd. V. Geisler Roberdeau, Inc., 513 F.Supp.2d 1, 3 [S.D.N.Y. 2007]*). In considering whether a default **[**3]** judgment is appropriate, the Court must first consider whether service of process has been properly effectuated upon the defaulting defendant; and second, whether the unchallenged facts alleged in the complaint state a legitimate cause of action (*Kee v. Hasty, 2004 U.S. Dist. LEXIS 6385, 2004 WL 807071 at 4 [S.D.N.Y]* citing, 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2688 [3d ed. 1998 ]).

The plaintiff must establish by affidavit of an individual with personal knowledge, or similarly verified complaint, facts sufficient to establish the claims alleged (*Dyno v. Rose, 260 A.D.2d 694, 687 N.Y.S.2d 497 [3d Dept. 1999]*). Where the verified complaint is conclusory, and devoid of factual allegations, constituting the claim alleged, a motion for default judgment shall be denied (*Celnick v. Freitag, 242 A.D.2d 436, 662 N.Y.S.2d 37 [1st Dept. 1997]; Luna v. Luna, 263 A.D.2d 470, 691 N.Y.S.2d 913 [2d Dept. 1999]*).

The next consideration **[*4]** which the Court must consider is the appropriate level of damages to be awarded plaintiff. By defaulting, a defendant admits to all well-pleaded allegations, except those pertaining to damages (*Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 [2d Cir.1992]; Traffic Sports USA, Inc. v. Segura, 2008 WL 4890164 [E.D.N.Y.]*). "(W)here the plaintiff has filed reasonably detailed affidavits and a memorandum of law pertaining to the damages requested . . . and the defendant has failed to make an appearance in the case, the Court can make an informed recommendation regarding damages without an evidentiary hearing." *Id.* at 5.

Plaintiff has made a prima facie showing of a legitimate cause of action, service upon defendants, and provided an affidavit by an individual with personal knowledge of the facts of the action, and have itemized the basis of their claim for the unpaid balance.

Defendants have not appeared, answered or moved for

an extension of time within which to appear. In order to be relieved of this default, plaintiff is obligated to provide a justifiable excuse for failure to timely appear, as well as the existence of a meritorious defense (*Blazo v. Wyckoff Hgts. Med. Ctr., 125 A.D.3d 705, 4 N.Y.S.3d 99 [2d Dept. 2015]*). Whether an excuse is reasonable is left to the sound discretion of the Court (*Apladenaki v. Greenpoint Mtge. Funding, Inc., 117 A.D.3d 975, 976, 986 N.Y.S.2d 588 [2d Dept. 2014]*).

Defendants do not deny having been served on May 17, and May 18, 2016, nor do they deny **[**4]** receipt **[*5]** of the subsequent mailing of the Summons and Complaint to them on May 23, 2016. Plaintiff has established a presumption of receipt by the affidavit of mailing them to both defendants (*Residential Holding Corp. v. Scottsdale Ins. Co., 286 A.D.2d 679, 729 N.Y.S.2d 776 [2d Dept. 2001]*).

They claim that although the action is subject to Mandatory Electronic Filing, there is no evidence that either defendant was served by electronic filing, and, further, the allegation that defendants were served on May 17 and May 18, 2016 did not give them a reasonable opportunity to interpose their Verified Answer. While an action is commenced by the filing of a Summons and Complaint, whether or not electronically, does not alter the provisions of the CPLR with respect to service of process. Plaintiff has submitted affidavits of service, and defendants have not controverted such service. The time within which to appear, answer, or move for additional time within which to appear is governed by *CPLR §320 (a)*, and defendants have failed to comply.

Defendants have failed to establish a justifiable excuse for failure to appear in the action. In addition, their assertions of a meritorious defense is unsubstantiated. They contend that the Agreement is *usurious*, and that the Agreement is unenforceable since it is allegedly **[*6]** missing the name of the Seller, the title of the person signing on behalf of the corporation, and a date.

Defendants' contention that the Agreements violate *General Obligation Law § 5-501[1]* and *Banking Law § 14-a[1]*, and are civilly or criminally *usurious* is without merit. A corporation is prohibited from asserting a defense of civil *usury* (*Arbuzova v. Skalet, 92 A.D.3d 816, 938 N.Y.S.2d 811 [2d Dept. 2012]*). An individual guarantor of a corporate obligation is also precluded from raising such a defense (*Id.*). Defendants have failed to adequately allege a defense of criminal *usury* in violation of *Penal Law § 190.40*, in that they failed to

shanna kaminski

2016 N.Y. Misc. LEXIS 3342, *6; 2016 NY Slip Op 31732(U), **4

allege that the lender knowingly charged, took or received annual interest exceeding 25% on a *loan* or forbearance of money. Defendant hypothesizes that the terms of the Agreement could result in payment of criminally excessive interest, but this is clearly insufficient under the pleading requirements.

Essentially, *usury* laws are applicable only to *loans* or forbearances, and if the transaction is not a *loan*, there can be no *usury* (*Kaufman v. Horowitz, 178 A.D.2d 632, 577 N.Y.S.2d 879 [2d Dept. 1991]*). As onerous as a repayment requirement may be, it is not *usurious* if it does not constitute a *loan* or forbearance.

 [**5] The Agreement was for the purchase of future *receivables* in return for an up front payment. The repayment was based upon a percentage of daily receipts, [*7] and the period over which such payment would take place was indeterminate. Plaintiff took the risk that there could be no daily receipts, and defendants took the risk that, if receipts were substantially greater than anticipated, repayment of the obligation could occur over an abbreviated period, with the sum over and above the amount advanced being more than 25%. The request for the Court to convert the Agreement to a *loan*, with interest in excess of 25%, would require unwarranted speculation, and would contradict the explicit terms of the sale of future *receivables* in accordance with the Merchant Agreement.

In *Merchant Cash & Capital v. Edgewood Group, LLC, 2015 U.S. Dist. LEXIS 94018, 2015 WL 4451057 (U.S.D.C., S.D.N.Y, Koeltl, J.),* the Court adopted the Report and Recommendation of Magistrate Judge Freeman, *2015 U.S. Dist. LEXIS 94162, 2015 WL 4430643*. Magistrate Freeman undertook an extensive examination of the enforceability of an Agreement of June 21, 2013, whereby Edgewood Group sole $163,726.00 of its business *receivables*/revenue to plaintiff, for an upfront payment of $115,300.00. Edgewood Group agreed that the "business *receivables*/revenue" would be paid from a percentage of its daily revenue, but no percentage was set forth in the agreement.

After defendant failed to appear, plaintiff moved for default judgment. The Agreement contained terms consistent with the Agreement presently before this [*8] Court. It provided that defendant would pay Edgewood $930.26 per day on each business day until such time as Edgewood had paid plaintiff $163,726.00. Edgewood agreed not to change the designated bank account from

which automated deductions would be made, and not to permit necessary licenses or permits to lapse, and the proprietor of Edgewood agreed to be personally liable for the obligations of Edgewood.

At fn. 5, Magistrate Judge Freeman stated that "(i)t is not entirely clear to this Court what differentiates this arrangement from a *loan*, to which lending laws (such as *usury* caps) would apply. She further noted that the absence of a percentage of daily receipts to be deducted on a daily basis resulted in an obligation on the part of Edgewood to make payments over an eight month period, including 42% more than it received. As she stated "(t)his arrangement looks substantially like a *loan* (as opposed to Plaintiffs acquisition of a portion of Edgewood's future *receivables*), but with an effective interest rate of  [**6] over 50% per year."

She nevertheless concluded that the Court cannot conclude, as a matter of law, that the transaction at issue was a *loan*, citing *Express Working Capital, LLC v. Starving Students, Inc. 28 F. Supp.3d 660, 669 (N.D. Tex. 2014)*. In analyzing the contractual [*9] language, and noting that *usury* was an affirmative defense which can be waived, based upon defendant's default, the Court accepted plaintiff's characterization of the agreement as a sale of *receivables*, rather than a *loan*.

The assertion that the Agreement is unenforceable for lack of the name of the Seller, the title of the person who signed on behalf of the corporation, and is undated is insufficient. Despite these assertions, a review of Exh. "1" reflects a date of July 15, 2015, the identity of the Seller as "Randa's Bakery, Inc." The document provides that "[t]he person executing this Agreement on behalf of the Seller warrants and represents that he/she is authorized to bind the Seller to all of the terms and conditions set forth on this page and on the attached 'Additional Terms of Agreement' . . ." In the Verified Answer submitted with the Affidavit in Opposition, defendants do not deny the allegation of ¶ 4 of the Complaint, which alleges that "[d]efendant Personal Guarantor is the owner and operator of the Business Defendant."

**The motion by plaintiff for default judgment against defendants is granted.** Plaintiff Merchant Cash and Capital, LLC is entitled to the entry **of** judgment in their favor [*10] against Randa's Bakery, Inc. and Ahmad Abdulla in the amount of $61,525.80, together with interest at the rate of 9% from January 7, 2016, and costs and disbursements as taxed by the Clerk. Plaintiff has waived its claim for entitlement to legal fees.

2016 N.Y. Misc. LEXIS 3342, *10; 2016 NY Slip Op 31732(U), **6

This constitutes the Decision and Order of the Court.

Dated: Mineola, New York

August 26, 2016

**ENTER**:

/s/ Jerome C. Murphy

**JEROME C. MURPHY**

**J.S.C.**

---

**End of Document**

⚠ Caution
As of: May 10, 2018 6:38 PM Z

# *Merchant Cash & Capital, LLC v Yehowa Med. Servs., Inc.*

Supreme Court of New York, Nassau County

July 29, 2016, Decided; August 2, 2016, Entered

602039-16

**Reporter**
2016 N.Y. Misc. LEXIS 3065 *; 2016 NY Slip Op 31590(U) **

 [**1] MERCHANT CASH AND CAPITAL, LLC, Plaintiff, -against- YEHOWA MEDICAL SERVICES, INC. D/B/A FLORENCE MEDICAL CLINIC, and THOMAS N. TWEH, JR., Defendants Index No.: 602039-16

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS

**Subsequent History:** Motion granted by, Motion denied by, Summary judgment denied by, Summary judgment granted by *Merchant Cash & Capital, LLC v. Yeshowa Medical Servs., Inc., 2017 N.Y. Misc. LEXIS 1086 (N.Y. Sup. Ct., Mar. 22, 2017)*

Appeal dismissed by *Matter of Dismissal for Failure to Perfect, 2017 N.Y. App. Div. LEXIS 5847 (N.Y. App. Div. 2d Dep't, July 5, 2017)*

## Core Terms

*receivables*, receipts, forbearance, repayment

**Judges:** [**1] PRESENT: HON. JEROME C. MURPHY, J.S.C.

**Opinion by:** JEROME C. MURPHY

## Opinion

### DECISION AND ORDER

PRELIMINARY STATEMENT

In Sequence No. 001, plaintiff brings this application for an order dismissing defendants' affirmative defense of *usury* for failure to state a cause of action, upon documentary evidence, and because defendants' *usury*

defense is meritless. Opposition to this application has been submitted by defendants.

In Sequence No. 002, defendants bring this application for an order for summary judgment [**2] dismissing the action under *CPLR § 3212(a)* and, in the alternative, defendants seek to replead the answer to include the proof of a criminally *usurious loan* as established by this motion. Opposition to this application has been submitted by plaintiff.

BACKGROUND

This action seeks to recover monetary damages sustained by plaintiff as a result of an alleged breach of a Merchant's Agreement (Revenue Program) by defendants. The Agreement, dated May 2, 2015, Exh. "C" to Motion, called for plaintiff to deposit with Yehowa Medical Services, Inc., d/b/a Florence Medical Clinic ("Yehowa") $56,806.00, and to receive in return $81,232.58, in payments of 10% of the daily receipts of Yehowa on five business days per week, until the sum [*2] of $81,232.58 was paid.

The Agreement specifically provided that the arrangement was not intended to be a *loan*, but a sale of future sale proceeds. The Buyer, Merchant Cash and Capital, LLC, was stated to be the owner of future sale proceeds purchased by them, and that this represents a bona fide sale by Seller to a customer. The payment of a percentage of *receivables* was contingent upon the generation of sales proceeds, and the term over which payments would be made were indeterminable, since the daily payment depended upon the receipt of revenue by defendant.

Plaintiff commenced this action by filing a Summons and Complaint on March 25, 2016 (Exh. "A"). The Complaint alleges the parties entered into the Agreement, and that defendant Thomas N. Tweh, Jr., personally guaranteed payment. The parties have consented to the jurisdiction of the Courts of New York in accordance with the terms of the Agreement.

2016 N.Y. Misc. LEXIS 3065, *2; 2016 NY Slip Op 31590(U), **2

Plaintiff alleges that it paid the purchase price of $56,806.00 to defendant, but that defendant has breached its obligations to forward *receivables* to plaintiff. While defendant made some payments totaling $44,331.88, there remains an unpaid balance of $36,900.70 from February 8, 2016. [*3] Plaintiff alleges two Cause of Action against the business defendant, one Cause of Action against the personal guarantor, and one Cause of Action jointly against the business defendant and the individual guarantor.

Defendants interposed an Answer dated May 9, 2016. It contains admissions and denials of specific allegations of the Complaint, and, while denominated as an Affirmative Defense, asserts at ¶¶ 38 - 40 that the transaction upon which the action purports to be based is a *usurious* [**3] *loan* as to defendants; that the transaction was for an amount less than $2,500,000.00 and provides for an interest rate which violates *Penal Law § 190.40*, in that it calls for daily payments of $322.36, resulting in an interest rate of 43%, with no contingency under which principal would not be paid back.

Plaintiff moves to dismiss the claim of *usury*, on the ground that the Agreement under which payment is sought is not a *loan* or forebearance, and is not subject to the laws of *usury*. Defendants controvert this position, asserting that the Agreement did not constitute a bona fide business investment; rather, it was a *loan* of $56,806.00, to be repaid in the amount of $81,233.00 with daily payments five days per week of [*4] $322.26. Defendants claim that there was no provision in the Agreement which would permit Yehowa to pay less than $322.36 per day.

In Reply, plaintiff points to the Agreement, which specifies the daily payment to be 10% of the daily receipts. As the daily receipts were an unknown quantity at the time of contracting, by letter dated May 28, 2015, plaintiff advised defendant of the provisions for modification of the daily payment amount based upon a two-week Calculation Period for determining the average daily receipts required to be paid.

DISCUSSION

## *Motion Sequence No. 1*

Defendants' contention that the Agreements violate *General Obligation Law § 5-501[1]* and *Banking Law § 14-a[1]*, and are civilly and criminally *usurious* is without merit. A corporation is prohibited from asserting

a defense of civil *usury* (*Arbuzova v. Skalet, 92 A.D.3d 816, 938 N.Y.S.2d 811 [2d Dept. 2012]*). An individual guarantor of a corporate obligation is also precluded from raising such a defense (*Id.*). Defendants have failed to adequately allege a defense of criminal *usury* in violation of *Penal Law § 190.40*, in that they failed to allege that the lender knowingly charged, took or received annual interest exceeding 25% on a *loan* or forbearance of money. Defendant hypothesizes that the terms of the Agreement could result in payment of criminally excessive [*5] interest, but this is clearly insufficient under the pleading requirements.

Essentially, *usury* laws are applicable only to *loans* or forbearances, and if the transaction is not a *loan*, there can be no *usury* (*Kaufman v. Horowitz, 178 A.D.2d 632, 577 N.Y.S.2d 879 [2d Dept. 1991]*). As onerous as a repayment requirement may be, it is not *usurious* if it does not constitute a *loan* or forbearance.

[**4] The Agreement was for the purchase of future *receivables* in return for an up front payment. The repayment was based upon a percentage of daily receipts, and the period over which such payment would take place was indeterminate. Plaintiff took the risk that there could be no daily receipts, and defendants took the risk that, if receipts were substantially greater than anticipated, repayment of the obligation could occur over an abbreviated period, with the sum over and above the amount advanced being more than 25%. The request for the Court to convert the Agreement to a *loan*, with interest in excess of 25%, would require unwarranted speculation, and would contradict the explicit terms of the sale of future *receivables* in accordance with the Merchant Agreement.

In *Merchant Cash & Capital v. Edgewood Group, LLC, 2015 U.S. Dist. LEXIS 94018, 2015 WL 4451057 (U.S.D.C., S.D.N.Y, Koeltl, J.)*, the Court adopted the Report and Recommendation of Magistrate Judge Freeman, *2015 U.S. Dist. LEXIS 94162, 2015 WL 4430643*. Magistrate Freeman undertook an extensive examination of the enforceability of an [*6] Agreement of June 21, 2013, whereby Edgewood Group sold $163,726.00 of its business *receivables*/revenue to plaintiff, for an upfront payment of $115,300.00. Edgewood Group agreed that the "business *receivables*/revenue" would be paid from a percentage of its daily revenue, but no percentage was set forth in the agreement.

After defendant failed to appear, plaintiff moved for default judgment. The Agreement contained terms

2016 N.Y. Misc. LEXIS 3065, *6; 2016 NY Slip Op 31590(U), **4

consistent with the Agreement presently before this Court. It provided that defendant would pay Edgewood $930.26 per day on each business day until such time as Edgewood had paid plaintiff $163,726.00. Edgewood agreed not to change the designated bank account from which automated deductions would be made, and not to permit necessary licenses or permits to lapse, and the proprietor of Edgewood agreed to be personally liable for the obligations of Edgewood.

*At fn. 5*, Magistrate Judge Freeman stated that "(i)t is not entirely clear to this Court what differentiates this arrangement from a _loan_, to which lending laws (such as _usury_ caps) would apply. She further noted that the absence of a percentage of daily receipts to be deducted on a daily basis resulted in an obligation [*7] on the part of Edgewood to make payments over an eight month period, including 42% more than it received. As she stated "(t)his arrangement looks substantially like a _loan_ (as opposed to Plaintiff's acquisition of a portion of Edgewood's further [**5] _receivables_), but with an effective interest rate of over 50% per year."

She nevertheless concluded that the Court cannot conclude, as a matter of law, that the transaction at issue was a _loan_, citing _Express Working Capital, LLC v. Starving Students, Inc. 28 F. Supp.3d 660, 669 (N.D. Tex. 2014)_. In analyzing the contractual language, and noting that _usury_ was an affirmative defense which can be waived, based upon defendant's default, the Court accepted plaintiff's characterization of the agreement as a sale of _receivables_, rather than a _loan_.

This case does not involve a default, and defendants have actively opposed the motion to strike their claims of _usury_. Aside from the fact that the clear language of the Agreement is that it involves a purchase of _receivables_, and is not intended to constitute a _loan_, and is unaffected by laws regarding _usury_. The essence of a _loan_ or forbearance is a lender's absolute right to repayment, and at all events, or that the principal in some way be secured as distinguished from being put in hazard (_Rubenstein v. Small, 273 A.D.102, 75 N.Y.S.2d 483 [1st Dept. 1947])_ [*8] . Under the terms of the subject Agreement, if Seller/Defendant produces no daily revenue, no payments are required, and there is no absolute obligation of repayment.

While the terms of payment provided for in the Agreement may be onerous, they do not involve a _loan_ or forbearance of money, and are unaffected by civil or criminal _usury_ statutes.

**The motion by plaintiff to strike the affirmative**

**defense of _usury_, to the extent that it is pleaded in the Answer, is granted.**

_**Motion Sequence No. 2**_

Defendant moves for summary judgment dismissing the Complaint, or, alternatively, for leave to serve an Amended Answer setting forth the defense of Criminal _**Usury**_ in violation of _Penal Law § 190.40_. **For the reasons set forth with respect to Motion Sequence No. 1, that the Agreement between the parties did not constitute a _loan_, and is unaffected by _usury_ statutes, this motion by defendants is denied.**

[**6] To the extent requested relief has not been granted, it is denied.

This constitutes the Decision and Order of the Court.

Dated: Mineola, New York

July 29, 2016

**ENTER:**

/s/ Jerome C. Murphy

**JEROME C. MURPHY**

**J.S.C.**

_____

End of Document

⚠ Caution
As of: May 10, 2018 6:53 PM Z

# *Merchant Cash & Capital, LLC v G&E Asian Am. Enter., Inc.*

Supreme Court of New York, Nassau County

July 29, 2016, Decided; August 2, 2016, Entered

605800-15

**Reporter**
2016 N.Y. Misc. LEXIS 3067 *; 2016 NY Slip Op 31592(U) **

[**1] MERCHANT CASH & CAPITAL, LLC, Plaintiff, -against- G&E ASIAN AMERICAN ENTERPRISE, INC., GRACE VO, and YEN EVELYN VO, Defendants. Index No.: 605800-15

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS

**Subsequent History:** Appeal dismissed by *Matter of Dismissal for Failure to Perfect, 2017 N.Y. App. Div. LEXIS 5847 (N.Y. App. Div. 2d Dep't, July 5, 2017)*

## Core Terms

default, default judgment, *receivables*, vacate, alleges, cause of action, receipts

**Judges:** [*1] PRESENT: HON. JEROME C. MURPHY, J.S.C.

**Opinion by:** JEROME C. MURPHY

## Opinion

**DECISION AND ORDER**

PRELIMINARY STATEMENT

Defendants bring this application for an order pursuant to *CPLR § 5015(a)*, vacating the default judgment that was entered in this matter on March 15, 2016; and pursuant to *CPLR § 510*, transferring this matter to the County of New York. Opposition has been submitted by plaintiff to this application.

BACKGROUND

Plaintiff commenced this action on September 4, 2015,

by filing a Summons and Verified Complaint in Supreme Court, Nassau County. The Complaint alleges that on or about July 10, 2015, Merchant Cash & Capital ("MCC") entered into an Agreement with G&E Asian American [**2] Enterprise, Inc. ("G&E"), the performance of which was personally guaranteed by Grace Vo and Yen Evelyn yo. The Complaint claims that defendants have consented to the jurisdiction of the Supreme Court of New York pursuant to § 5.6(b) of the Agreement (Exh. 2 to Aff. of Jonathan R. Miller, Esq.).

The Agreement is designated as a Merchant Agreement (Revenue Program). It provides that, for $164,000.00, MCC is purchasing $242,720.00 *receivables*, which were to be paid by G&E to MCC in the form of 9% of the daily proceeds from the operation of the business, until the [*2] sum of $242, 720.00 is paid.

According to the Complaint, G&E made payments totaling $13,160.00 under the Agreement, leaving a balance of $229,560.00, and has been in default since July 25, 2015. The First Cause of Action alleges breach of contract against G&E. The Second Cause of Action, also against G&E, alleges failure to make payment of the balance. The Third Cause of Action alleges a breach of the obligations of the personal guarantors, and contends that they are jointly and severally liable to plaintiff.

The Fourth Cause of Action, against G&E and the individual defendants, alleges that the Agreement called for the payment of plaintiff's expenses, including court costs, disbursements, and legal fees, in the event of default. The Fifth Cause of Action against G&E alleges that the company is unlawfully in possession of assets belonging to plaintiff, and has deprived plaintiff of their use.

Defendants assert that plaintiff entered a default judgment against them on March 15, 2016 in the amount of $243,620.30 (Exh. 3 to Affirmation of Jonathan R. Miller, Esq.). The affirmation of counsel,

2016 N.Y. Misc. LEXIS 3067, *2; 2016 NY Slip Op 31592(U), **2

and the affidavit of Grace Vo contend that defendants were victimized by Premier Working Capital [*3] "Premier", a *loan* broker who agreed to obtain a business *loan* for G&E, but instead forged their signatures on the MCC Agreement. They claim, as immigrants from Vietnam, to be unknowledgeable about business affairs, and were improperly manipulated into being responsible for the payment of $242,700.00 in return for an up front payment of $164,000.00 by plaintiff.

Defendants contend that the default judgment should be vacated because of lack of personal jurisdiction, because the Agreement in which consent to jurisdiction was contained was a forgery. Defendants submit testimony and exemplars of their signatures in order to substantiate their claim that they did not sign the Agreement.

They also contend that the default should be vacated on the grounds of forum non [**3] conviens. They contend that none of the parties are residents of Nassau County, and that the only reason for the Nassau venue is the office address of counsel for plaintiff. Plaintiff's place of business is New York County. Defendants are residents of California, have no ties to New York, and the broker who effectuated the *loan* is in Florida. If the matter were to be in New York, it would be appropriately venued in New York County. [*4]

In opposition, plaintiff submits an affirmation of Christopher R. Murray, Esq. and an affidavit of David Zullo, an Underwriting Manager for plaintiff, as well as a Memorandum of Law. These documents allege that within two weeks of the July 2015 agreement, defendants began withholding the purchased *receivables* and sales proceeds, and refused to permit MCC to collect any further funds, and demanded that MCC rewrite the Agreement.

DISCUSSION

A motion to open a default is addressed to the discretion of the court. In order to qualify for relief from a judgment, a party is required to establish a justifiable excuse and a meritorious defense (*CPLR 5015(a)*; *Rugieri v. Bannister, 7 N.Y.3d 742, 853 N.E.2d 231, 819 N.Y.S.2d 861 [2006]*). In *Rugieri*, the Court affirmed the Appellate Division's vacating of a judgment of default and reinstating the complaint where plaintiff "proffered a reasonable excuse for default and facts indicating a meritorious cause of action". Similarly, in *Mena v. Choon-Ket Kong, 269 A.D.2d 575, 703 N.Y.S.2d 923 (2d Dept. 2000)*, the Appellate Division reversed the trial

court, and excused the default in answering, where it was satisfied that defendant provided a justifiable excuse for their default and established a meritorious defense to the action.

The availability of relief from a default judgment is set forth in *CPLR § 5015*, which provides [*5] as follows:

**(a) On motion.** The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of:
1. excusable default, if such motion is made within one year after service of a copy of the judgment or order with written notice of its entry upon the moving party, or, if the moving party has entered the judgment or order, within one year after such entry; or

2. newly-discovered evidence which, if introduced at the trial, would probably have produced a different result and which could not have been discovered in time to move for a new trial under *section 4404*; or

[**4] 3. fraud, misrepresentation, or other misconduct of an adverse party; or
4. lack of jurisdiction to render the judgment or order; or
5. reversal, modification or vacatur of a prior judgment or order upon which it is based.

**(b) On stipulation.** The clerk of the court may vacate a default judgment entered pursuant to *section 3215* upon the filing with him of a stipulation of consent to such vacatur by the parties personally or by their attorneys.

Plaintiff served Evelyn Vo on September 16, 2015, G&E Asian American Enterprise, Inc. [*6] On September 18, 2015, and Grace Vo on October 29, 2015. Follow-up service was thereafter made by mail. Defendants do not challenge service.

On February 17, 2016, plaintiff served copies of the proposed default judgment upon defendants, and mailed pleadings to them on March 3, 2016. Having received no appearance, Answer, or motion for additional time within which to respond, plaintiff entered a Clerk's Default Judgment on March 15, 2016. It was only after service of a copy of the Judgment with Notice of Entry that defendants sought to vacate the judgment.

2016 N.Y. Misc. LEXIS 3067, *6; 2016 NY Slip Op 31592(U), **4

Other than the claim of lack of funds for an attorney in New York, defendants offer no viable explanation for their failure to appear in the action. Defendants have not offered a justifiable basis for their failure to appear. If nothing else, they were in possession of $164,000.00 which was deposited in their account on July 15, 2015. Within ten (10) days of the deposit, defendants terminated the ability of MCC to withdraw 9% of the daily from their receipts, as provided in the Agreement.

Defendants assert as a defense that the Agreement was not signed by them, but was forged by their agent, Premier, whom they had retained to seek financing. [*7] It appears that defendants had considered multiple financing options before selecting MCC. While it is certainly questionable whether the claim of unauthorized execution of the agreement is correct, and their names were forged on the document, defendants ratified the Agreement by arranging for the automatic withdrawals from their account, and providing payments of $16, 160.00 under the terms of the Agreement (*Cashel v. Cashel, 65 A.D.3d 1182, 887 N.Y.S.2d 111 [2d Dept. 2009]).*

It is further significant to note that the defendants acknowledge receipt of approximately $164,000.00, but do not come forward with any other written agreement to show what the [**5] consideration was that they agreed to pay to obtain this money. Defendants, in their motion to vacate, would have the Court believe that they received this money without this detail being resolved.

Defendants also contend that the terms of the Agreement constitute a *usurious* and unenforceable *loan*. Defendants' contention that the Agreements violate *General Obligation Law § 5-501[1]* and *Banking Law§ 14-a[1]*, and are civilly and criminally *usurious* is without merit. A corporation is prohibited from asserting a defense of civil *usury* (*Arbuzova v. Skalet, 92 A.D.3d 816, 938 N.Y.S.2d 811 [2d Dept. 2012]).* An individual guarantor of a corporate obligation is also precluded from raising such a defense (*Id.*). Defendants have failed [*8] to adequately allege a defense of criminal *usury* in violation of *Penal Law § 190.40*, in that they failed to allege that the lender knowingly charged, took or received annual interest exceeding 25% on a *loan* or forbearance of money. Defendant hypothesizes that the terms of the Agreement could result in payment of criminally excessive interest, but this is clearly insufficient under the pleading requirements.

Essentially, *usury* laws are applicable only to *loans* or forbearances, and if the transaction is not a *loan*, there

can be no *usury* (*Kaufman v. Horowitz, 178 A.D.2d 632, 577 N.Y.S.2d 879 [2d Dept. 1991]).* As onerous as a repayment requirement may be, it is not *usurious* if it does not constitute a *loan* or forbearance.

The Agreement was for the purchase of future *receivables* in return for an up front payment. The repayment was based upon a percentage of daily receipts, and the period over which such payment would take place was indeterminate. Plaintiff took the risk that there could be no daily receipts, and defendants took the risk that, if receipts were substantially greater than anticipated, repayment of the obligation could occur over an abbreviated period, with the sum over and above the amount advanced being more than 25%. The request for the Court to convert the Agreement [*9] to a *loan*, with interest in excess of 25%, would require unwarranted speculation, and would contradict the explicit terms of the sale of future *receivables* in accordance with the Merchant Agreement.

In *Merchant Cash & Capital v. Edgewood Group, LLC, 2015 U.S. Dist. LEXIS 94018, 2015 WL 4451057 (U.S.D.C., S.D.N.Y, Koeltl, J.),* the Court adopted the Report and Recommendation of Magistrate Judge Freeman, *2015 U.S. Dist. LEXIS 94162, 2015 WL 4430643.* Magistrate Freeman undertook an extensive examination of the enforceability of an Agreement of June 21, 2013, whereby Edgewood Group sold $163,726.00 [**6] of its business *receivables*/revenue to plaintiff, for an upfront payment of $115,300.00. Edgewood Group agreed that the "business *receivables*/revenue" would be paid from a percentage of its daily revenue, but no percentage was set forth in the agreement.

After defendant failed to appear, plaintiff moved for default judgment. The Agreement contained terms consistent with the Agreement presently before this Court. It provided that defendant would pay Edgewood $930.26 per day on each business day until such time as Edgewood had paid plaintiff $163,726.00. Edgewood agreed not to change the designated bank account from which automated deductions would be made, and not to permit necessary licenses or permits to lapse, and the proprietor of Edgewood agreed to be personally liable for the obligations of Edgewood.

At fn. 5 [*10] , Magistrate Judge Freeman stated that "(i)t is not entirely clear to this Court what differentiates this arrangement from a *loan*, to which lending laws (such as *usury* caps) would apply. She further noted that the absence of a percentage of daily receipts to be

2016 N.Y. Misc. LEXIS 3067, *10; 2016 NY Slip Op 31592(U), **6

deducted on a daily basis resulted in an obligation on the part of Edgewood to make payments over an eight month period, including 42% more than it received. As she stated "(t)his arrangement looks substantially like a *loan* (as opposed to Plaintiff's acquisition of a portion of Edgewood's further *receivables*), but with an effective interest rate of over 50% per year."

She nevertheless concluded that the Court cannot conclude, as a matter of law, that the transaction at issue was a *loan*, citing *Express Working Capital, LLC v. Starving Students, Inc. 28 F. Supp.3d 660, 669 (N.D. Tex. 2014)*. In analyzing the contractual language, and noting that *usury* was an affirmative defense which can be waived, based upon defendant's default, the Court accepted plaintiff's characterization of the agreement as a sale of *receivables*, rather than a *loan*.

The claimed defense of *usury* is without merit, and defendants have not established a meritorious defense to the action. **The motion to vacate the default judgment and permit defendants to [*11] litigate the claims is in all respects denied.**

This constitutes the Decision and Order of the Court.

Dated: Mineola, New York

July 29, 2016

**ENTER:**

/s/ Jerome C. Murphy

**JEROME C. MURPHY**

J.S.C.

---

End of Document

 Neutral

As of: May 10, 2018 7:19 PM Z

## *Platinum Rapid Funding Group Ltd. v VIP Limousine Servs., Inc.*

Supreme Court of New York, Nassau County

June 8, 2016, Decided; June 10, 2016, Entered

604163-15

**Reporter**

2016 N.Y. Misc. LEXIS 3068 *; 2016 NY Slip Op 31591(U) **

[**1]  PLATINUM RAPID FUNDING GROUP LTD., Plaintiff, - against - VIP LIMOUSINE SERVICES, INC. and CHARLES COTTON, Defendants. Index No.: 604163-15

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS

**Subsequent History:** Summary judgment granted by, Injunction granted at, Stay denied by, Request denied by *Platinum Rapid Funding Group Ltd. v. VIP Limousine Servs., Inc., 2016 N.Y. Misc. LEXIS 4131 (N.Y. Sup. Ct., Oct. 27, 2016)*

**Prior History:** *Platinum Rapid Funding Group Ltd. v. VIP Limousine Servs., Inc., 2016 N.Y. Misc. LEXIS 5112 (N.Y. Sup. Ct., June 8, 2016)*

## Core Terms

documents, affirmative defense, days, Merchant, Requests, defendants', Funding, cause of action, counterclaim, allegations, asserting, discovery, *receivables*, demands, relevant information, motion to dismiss, communications, damages, records

**Judges:**  [*1] JEROME C. MURPHY, J.S.C.

**Opinion by:** JEROME C. MURPHY

## Opinion

## DECISION AND ORDER

PRELIMINARY STATEMENT

In Sequence No. 001, plaintiff brings this application for

an order dismissing defendants' affirmative defenses for failure to state a cause of action and upon documentary evidence, and to dismiss defendants' counterclaims insofar as defendants' answer can be construed as asserting a counterclaim. Defendants have submitted opposition to this application.

In Sequence No. 002, plaintiff brings this application for an order striking defendants'  [**2] answer for failure to produce discovery, or compelling the defendants to produce all outstanding discovery within twenty days or be precluded from offering any evidence or testimony in support of defendants' affirmative defenses, and granting plaintiff such other and further relief as the Court deems just and proper.

In Sequence No. 003, defendants bring this application for an order pursuant to *CPLR § 3124* compelling plaintiff to respond to defendants' document requests within twenty (20) days and precluding them from asserting objections thereto. Plaintiff has submitted opposition to this application.

BACKGROUND

On or about December 18, 2014, VIP Limousine Services, Inc. ("VIP") [*2] entered into a Merchant Agreement with Platinum Rapid Funding Group, Inc. ("Platinum"), whereby Platinum sold its future *receivables* with a face value of $28,400.00 to Platinum for an upfront discounted price of $20,000.00 ("First Agreement"). Platinum deposited $20,000.00, less any agreed upon amounts, into a bank account designated by VIP.

On or about December 18, 2014, VIP Limousine Services, Inc. ("VIP") entered into a second Merchant Agreement with Platinum Rapid Funding Group, Inc. ("Platinum"), whereby Platinum sold its future *receivables* with a face value of $71,000.00 to Platinum for an upfront discounted price of $50,000.00 ("Second Agreement"). Platinum deposited $50,000.00, less any agreed upon amounts, into a bank account designated

2016 N.Y. Misc. LEXIS 3068, *2; 2016 NY Slip Op 31591(U), **2

by VIP.

In accordance with the Agreements, Platinum purchased, and was the sole owner of $99,400.00 if VIP's future revenue and *receivables*. Between December 28, 2014 and March 10, 2015, VIP paid Platinum $32,435.06 of the future *receivables*. Plaintiff contends that VIP breached its contract on or before March 10, 2015 by terminating Platinum's ability to electronically withdraw funds from their account through ACH, the Automated Clearing House. [*3]

Plaintiff served an Amended Verified Complaint dated December 29, 2015 (Exh. "A"). The First Cause of Action is for Breach of Contract for defendant's withholding the balance of $66,964.94, plus the costs and attorneys' fees incurred as a result of this action.

The Second Cause of Action alleges Breach of Representations and Warranties, in that defendant represented and warranted that it would "not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any advese effect upon Merchant's obligations under this Agreement ..." without Platinum's prior written consent.

 [**3] In the Third Cause of Action, plaintiff alleges a breach of the personal guarantee of performance of Charles Cotton. The Fourth Cause of Action alleges that, in accordance with the Agreement, Business Defendant and Defendant Cotton are obligated to pay all costs and attorneys' fees incurred as a result of a breach of the Agreement.

On February 5, 2016, defendants filed a Verified Answer with Affirmative Defenses and a Counterclaim (Exh. "B"). After generally denying the allegations of the Complaint, the Answer sets forth the following Affirmative Defenses: [*4] (1) failure to state a claim upon which relief can be granted; (2) claim barred by estoppel, unclean hands, waiver and doctrine in pari delicto; (3) defendants did not breach any duty or obligation allegedly owed to plaintiff; (4) claims are barred by plaintiff's failure to exercise due diligence to protect its interests and avoid injury; (5) plaintiff has failed to satisfy all conditions precedent; (6) to the extent plaintiff has suffered damages, its claim is barred in whole or in part by its failure to mitigate damages; (7) defendants deny plaintiff was damaged by them; (8) any damages sustained by plaintiff were incurred as a result of acts or omissions of individuals or entities that defendants "did not retain, reserve or exercise control over, and for which Defendants are not legally responsible"; (9) any damages suffered by plaintiff were due to their own affirmative actions and/or omissions, and do not give rise to any liability of defendants; (10) defendants did not make any false or misleading representations to plaintiff; (11) plaintiff has committed civil and criminal *usury*; and (12) defendants reserve the right to move for leave to add additional defenses as discovery [*5] progresses.

DISCUSSION

***Motion Sequence No. 1***

In Motion Sequence No. 1, plaintiff moves to dismiss the affirmative defenses and counterclaims, to the extent that the Answer can be construed as asserting a counterclaim. There is no allegation designated as a counterclaim contained in the Answer. Both plaintiff and defendants submit a Memorandum of Law in support of their respective positions.

CPLR § 3211 (b) provides that "[a] party may move for judgment dismissing one or more defenses, on the ground that a defense is not stated or has no merit." In reviewing such a motion to dismiss affirmative defenses, the court must liberally construe the pleadings in favor of the party asserting the defense and give that party the benefit of every doubt (*Staropoli v. Agrelopo, LLC, 136 A.D.3d 791, 24 N.Y.S.3d 722 [2d Dept. 2016]*).

Affirmative defenses "1" through "10" are either general and unsubstantiated claims, or mere denials of the allegations of the Complaint. CPLR § 3211 (b) does not specify the grounds [**4] upon which defenses may be dismissed, but they may be dismissed upon the grounds set forth in CPLR § 3211 (a)(7), that the pleading fails to state a cause of action (SIEGEL, NEW YORK PRACTICE, 5th Ed., § 269).

When determining a motion to dismiss for failure to state cause of action, the pleadings must be afforded a liberal [*6] construction, facts as alleged in the complaint are accepted as true, and the plaintiff is accorded the benefit of every favorable inference, and the court must determine only whether the facts as alleged fit within any cognizable legal theory (*Uzzle v. Nunzie Court Homeowners Ass'n., Inc., 70 A.D.3d 928, 895 N.Y.S.2d 203 [2d Dept. 2010]*). A pleading will not be dismissed for insufficiency merely because it is inartistically drawn; rather, such pleading is deemed to allege whatever can be implied from its statements by fair and reasonable intendment; the question is whether the requisite allegations of any valid cause of action

2016 N.Y. Misc. LEXIS 3068, *6; 2016 NY Slip Op 31591(U), **4

cognizable by the state courts can be fairly gathered from all the averments (*Brinkley v. Casablancas*, 80 A.D.2d 428, 438 N.Y.S.2d 1004 [1st Dept. 1981]).

On a motion to dismiss, the court must "'accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory'" (*Braddock v. Braddock*, 60 A.D.3d 84, 871 N.Y.S.2d 68, 2009 WL 23307 [N.Y.A.D. 1st Dept. 2009]), (*citing Leon v. Martinez*, 84 N.Y.2d 83, 87-88, 638 N.E.2d 511, 614 N.Y.S.2d 972 [1994]).

The first through tenth affirmative defenses, with the exception of the sixth affirmative defense, do not specify any basis for their assertions. Defendants make no effort to set forth in what manner plaintiff had unclean hands, contributed to its own loss, failed to exercise due diligence, what **[*7]** conditions precedent plaintiff failed to satisfy, or what third parties caused injury to plaintiff. Defendant also asserts that they did not breach a contract nor did they make misrepresentations to plaintiff. These are wholly unsubstantiated generalities, which fail to state a defense to the action. Bare legal conclusion, unsupported by factual allegations, are insufficient to constitute an affirmative defense (*Robbins v. Growney*, 229 A.D.2d 356, 358, 645 N.Y.S.2d 791 [1st Dept. 2009]; *The Carlyle, LLC v. Beekman Garage, LLC*, 133 A.D.3d 510, 511, 19 N.Y.S.3d 520 [1st Dept. 2015]).

Defendants' contention that the Agreements violate *General Obligation Law § 5-501 [1]* and *Banking Law§ 14-a[1]*, and are civilly and criminally *usurious* is without merit. A corporation is prohibited from asserting a defense of civil *usury* (*Arbuzova v. Skalet*, 92 A.D.3d 816, 938 N.Y.S.2d 811 [2d Dept. 2012]). An individual guarantor of a corporate obligation is also precluded from raising such a defense (*Id.*). Defendants have failed to adequately allege a defense of criminal **[**5]** *usury* in violation of *Penal Law § 190.40*, in that they failed to allege that the lender knowingly charged, took or received annual interest exceeing 25% on a *loan* or forbearance of money. In its bill of particulars, defendant hypothesizes that the terms of the Agreement could result in payment of criminally excessive interest, but this is clearly insufficient under the pleading requirements.

Essentially, *usury* laws are applicable **[*8]** only to *loans* or forbearances, and if the transaction is not a *loan*, there can be no *usury*. As onerous as a repayment requirement may be, it is not *usurious* if it

does not constitute a *loan* or forbearance. The Agreement was for the purchase of future *receivables* in return for an upfront payment. The repayment was based upon a percentage of daily receipts, and the period over which such payment would take place was indeterminate. Plaintiff took the risk that there could be no daily receipts, and defendants took the risk that, if receipts were substantially greater than anticipated, repayment of the obligation could occur over an abbreviated period, with the sum over and above the amount advanced being more than 25%. The request for the Court to convert the Agreement to a *loan*, with interest in excess of 25%, would require unwarranted speculation, and would contradict the explicit terms of the sale of future *receivables* in accordance with the Merchant Agreement.

**Plaintiff's motion to dismiss all the Affirmative Defenses, with the exception of the sixth affirmative defense, and the Counterclaim, to the extent the Answer may be read to assert one, is granted.**

## Motion Sequence No. 2

Plaintiff **[*9]** seeks an Order striking defendants' Answer for failure to comply with outstanding discovery. On December 30, 2015, plaintiff served its 1st Demand for Discovery, Demand for a Verified Bill of Particulars, and a Notice to Admit. After an extension of time, responses were due by February 5, 2016. After a further extension, on February 12, 2016, defendants allegedly produced an unverified Bill of Particulars and an unverified response to the Notice to Admit.

In their response, defendants objected, and failed to answer, Demands 2 - 5. These demands requested the name of banks or credit unions in which VIP deposited its receipts; banks or credit unions used to hold, deposit or transfer funds for VIP Limousine; VIP Limousine's gross monthly revenues for each month from October 1, 2014 to the present date; and the identity of each and every corporation, partnership, limited liability company, or other business entities owned by defendant Charles Cotton.

**[*6]** In response to Request No. 6, defendants allege that plaintiff violated *§ 5-501 of the General Obligations Law*, *§ 14-a of the Banking Law*, and *§ 190.40 of the Penal Law*. In its response to Request No. 7, defendants identified witnesses as Charles Cotton, representatives of plaintiff, and Colonial Funding Network. In response to **[*10]** Requests Nos. 8 and 9, defendant categorizes the transaction as a *loan*, with

Case 8:19-ap-01050-SC    Doc 28    Filed 09/06/19    Entered 09/06/19 15:30:33    Desc
Main Document    Page 140 of 152

Page 4 of 5

2016 N.Y. Misc. LEXIS 3068, *10; 2016 NY Slip Op 31591(U), **6

payment of $270.48 per day for the initial transaction, and $563.50 per day for the second transaction, both to continue until full repayment is made, and calculates that the interest rate for the first transaction, payable over 147 days, is 104%, and the rate for the second transaction, over 175 days, produces an interest rate of 88%.

Among the provisions of the Merchant Agreement was a representation that defendants would not change banking institutions from the one from which plaintiff was authorized to make electronic withdrawals. To the extent that defendants have substituted other banking facilities from their original designation, they would be in violation of the Agreement. Requests Nos. 2 and 3 seek relevant information, and defendants are directed to provide the requested information within 20 days of service upon them with a copy of this Decision and Order with Notice of Entry.

Request No. 4 seeks the gross monthly revenue of defendant VIP Limousine for the months commencing October 1, 2014 onward. The calculation of the payments required under the Merchant Agreement is based upon VIP Limousine's [*11] revenue. This is relevant information, and defendant is directed to produce such information, also within 20 days of service of the Decision and Order with Notice of Entry.

Request No. 5 seeks the identity of all other businesses operated by defendant Cotton. While this may be relevant in connection with supplementary proceedings in the event of a judgment against Mr. Cotton, the Court does not regard this information as relevant or likely to lead to relevant information in connection with this action, and defendants are not required to respond to this Demand.

Defendant has adequately responded to Requests 6 - 9. Requests 10 and 11 seek copies of recorded communications, and other written communications between Platinum and defendants, both of which have been objected to by defendant. Defendants are directed to produce copies of such recorded and written documents within 20 days of service of a copy of this Decision and Order with Notice of Entry.

Request No. 12 seeks records of disbursements, draws, payments, and/or salary payments to any owner, shareholder, manager, member, director, and/or officer of VIP Limousine from October I, 2014 to the time of the demand. The Merchant Agreement [*12] does not provide for the [**7] deduction of any of the foregoing to arrive at what is referred to the "settlement amount"

from which 12 percent is to be directed to Platinum. The relevant issue is how much income defendant VIP Limousine derived, and whether they permitted the agreed-upon percentage to be electronically deducted by plaintiff. The distribution of the funds received is not relevant, or likely to lead to relevant information, and defendants are not obligated to provide the information requested in Demand No. 12.

Requests Nos. 13 and 14 call for the production of mortgage or *loan* agreements since December 1, 2014, and factoring agreements entered into by VIP Limousine from October 1, 2014. This information is not relevant to the issue of defendant VIP Limousine's income, and their obligation to permit electronic access to 12% of those funds. **Plaintiff's motion to compel production of this information is also denied as lacking in relevance, or likely to lead to the discovery of relevant information.**

Request No. 15 seeks documentation in the form of records identifying each date that VIP Limousine operated since December 18, 2014. This is an overly broad and ambiguous demand, which [*13] would impose upon defendants an onerous task of identifying what documents are required to be produced. The information as to the days VIP Limousine operated is relevant to the determination of the dates for which income is to be calculated as the basis for payment, but the means of production requested is overly burdensome. **The motion to compel production of this information is denied.**

The demand for "(c)opies of any document referring to Platinum in the possession of any defendant" is overly broad and unduly burdensome. **In the absence of a particularized category of documents, the motion to compel production of documents as set forth in Request No. 16 is denied.**

Defendant has responded to Request No. 17 for contracts and agreements between any defendant and Platinum by referring to the exhibits attached to the Amended Complaint as Exhibit "A".

Request No. 18 seeks the identity of any defendant which has bee dissolved, sold, assigned, or otherwise transferred and records of such activity. Defendant responds "Not Applicable", which the Court interprets as meaning that no such action has been undertaken with respect to VIP Limousine. The same applies to Request No. 19, which calls for [*14] information with respect to the dissolution or transfer of assets of VIP Limousine.

2016 N.Y. Misc. LEXIS 3068, *14; 2016 NY Slip Op 31591(U), **7

Request No. 20 calls for the production of all documents upon which defendant will rely [**8] in support of its First through Twelfth Affirmative Defenses. Defendants agreed to produce such documents, and are directed to comply with this request within 20 days of the receipt of a copy of this Decision and Order with Notice of Entry.

To the extent that defendants fail to respond to any of the foregoing Requests, to which a response is directed, they will be precluded from offering at trial any documentation sought by plaintiff.

### Cross-Motion Sequence No. 3

By this motion, defendant seeks to compel plaintiff to respond to their document requests within 20 days. Annexed as Exh. "A" to the Affirmation in Support of Cross-motion is a copy of the requests for the following:

1. Documents sufficient to identify Plaintiff's stockholders, officers and members of the Board of Directors.
2. All documents constituting Plaintiff's underwriting manual friends smallest and/or policies.
3. The underwriting file concerning either of the Defendants.

4. All communications between Plaintiff had Colonial Funding Networks ("Colonial") [*15] concerning either Defendant.
5. Documents constituting any contract, agreement, understanding, etc. with Colonial.
6. Documents identifying any instructions, regulations or practices provided by Plaintiff to Colonial that Colonial must abide by in connection with brokerage services provided by it to Plaintiff.
7. All communications within Plaintiff concerning either Defendant.
8. All communications with any individual or entity concerning either Defendant.
9. All documents reflecting payments by either Defendant to Plaintiff and/or Colonial.
10. All documents reflecting payments made by Plaintiff to any individual or entity using funds provided by Plaintiff.
11. Documents sufficient to identify all "merchant advance" brokers providing services to Plaintiff.
12. All documents constituting manuals for compliance with any federal, state or local statutes, regulations and rules.
13. Documents sufficient to identify all lawsuits commenced by Plaintiff since 2014 in connection with "merchant advance" transactions.

[**9] In its Reply Affirmation, plaintiff responds by objecting to each and every one of the foregoing demands as being overly broad, unduly burdensome, and irrelevant to the issues in this action [*16] (Exh. "11"). Plaintiff has not produced anything in response to the Demand of defendants. While defendants are undoubtedly dissatisfied with plaintiffs response to their Demands, the validity of the objections to those demands is not presently before the Court, and the Court takes no position with respect to the propriety of the demands, or the responses by plaintiff.

**To the extent requested relief has not been granted, it is denied.**

This case is now being set down for a further discovery conference in this Part I 9 on June 22, 2016 at 9:30 a.m.

This constitutes the Decision and Order of the Court.

Dated: Mineola, New York

June 8, 2016

**ENTER:**

/s/ Jerome C. Murphy

**JEROME C. MURPHY**

**J.S.C.**

---

**End of Document**


Positive
As of: May 10, 2018 6:55 PM Z

## *Professional Merchant Advance Capital, LLC v Your Trading Room, LLC*

Supreme Court of New York, Suffolk County

November 28, 2012, Decided

17469-12

**Reporter**
2012 N.Y. Misc. LEXIS 6757 *; 2012 NY Slip Op 33785(U) **

[**1] PROFESSIONAL MERCHANT ADVANCE CAPITAL, LLC, Plaintiff, -against- YOUR TRADING ROOM, LLC, LESLIE FREEMAN and RICHARD H. WARYN, Defendants. INDEX No. 17469-12

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

**Subsequent History:** Affirmed by, in part *Professional Merchant Advance Capital, LLC v. Your Trading Room, LLC, 123 A.D.3d 1101, 2014 N.Y. App. Div. LEXIS 9031 (2014)*

## Core Terms

cause of action, *receivables*, purchase agreement, amended complaint, motion to dismiss, guaranty, evidentiary, inducement, unavailing, deposits, sounding, terms

**Counsel:** [*1] For Plaintiff: JOHN H. GIONIS, ESQ., East Meadow, NY.

For Waryn, Defendant: TWOMEY, LATHAM, SHEA, ET AL, Riverhead, NY.

LESLIE FREEMAN & YOUR TRADING ROOM, LLC, Defendants, Pro se, Santa Monica, CA.

**Judges:** PRESENT: Hon. THOMAS F. WHELAN, Justice of the Supreme Court.

**Opinion by:** THOMAS F. WHELAN

## Opinion

**ORDERED** that this motion (#002) by defendant, Richard H Waryn, for an order dismissing the amended

complaint in so far as it asserts claims against him is considered under *CPLR 3211(a)(7)* and *(a)(8)* and is denied; and it is further

**ORDERED** that a preliminary conference shall be held on Friday, **February 1, 2013** at 9:30 a.m. in Part 45 in the courtroom of the undersigned located in the Supreme Court Annex Building at One Court Street, Riverhead, New York 11901.

This action arises out of the corporate defendant's purported breach of a September 29, 2011 sales agreement and the individual defendants' purported breaches of the terms of their written guarantees of the corporate defendant's performance under such agreement. The defendants are also charged with causing damage to the plaintiff by reason of the defendants' engagement in acts of fraud which purportedly induced the plaintiff to enter into the agreement. The material facts advanced on [*2] this motion are outlined below.

[**2] In 2010, the corporate defendant, Your Trading Room, LLC [hereinafter "YTR"] was engaged in the business of teaching and training people to be successful traders in the foreign exchange currency markets ["FOREX"]. YTR's business model included an on-line professional FOREX trading room from which teachers and advisors interfaced with student members enrolled in YTR and a financial brokerage division that engaged in servicing new traders at reduced brokerage acquisition costs. Following the 2010 opening of its first office in the United States in Santa Barbara, California, defendant Freeman, an Australian native and a principal operative in YTR, met with moving defendant Waryn, a resident of Colorado. In January of 2011, the defendants negotiated a distributor agreement whereby Waryn would develop a cash flow stream from the sale of YTR business products in a six state territory consisting of Colorado, Utah, Arizona, New Mexico, Hawaii and Alaska. In April of 2011, Waryn agreed to serve as CEO of YTR and to concentrate his efforts on

2012 N.Y. Misc. LEXIS 6757, *2; 2012 NY Slip Op 33785(U), **2

raising private equity to be used in the expansion of YTR's customer base.

In June of 2011, Waryn contacted PROMAC, a company [*3] seemingly related to the plaintiff, both having offices in Hauppauge, New York. PROMAC offers business financing by, among other things, the lump sum cash purchase of a company's future electronic _receivables_ by the plaintiff, LLC. Waryn completed a PRO MAC application form dated June 22, 2011, wherein he listed himself as an 8% owner of defendant YTR. On June 30, 2011, the plaintiff, LLC, as Purchaser, defendant, YTR as Seller, and the individual defendants as "Owners", entered into a Future _Receivables_ Purchase Agreement. Pursuant thereto, the plaintiff paid YTR the discounted sum of $100,000.00 for its credit card and other future receivable financing payments in exchange for the defendants' designation of a certain Citibank account as the sole account for the deposit of all of YTR's future receivable financing payments. Under the terms of the agreement, the plaintiff had the right to retain 38% of the daily deposits into such account until the contract price or "specified amount" of $138,000.00 had been received by the plaintiff.

On August 17, 2011, the parties entered into an Amended and Restated Future _Receivables_ Agreement whereby the plaintiff paid an additional $100,000 for [*4] the purchase of additional future _receivables_ which amount was added to the then existing $105,949.23 balance under the terms of the original purchase agreement. The retention rate on such balance was increased from 38% to 45% of the daily deposits into the specified Citibank bank account at a branch in New York. On September 29, 2011, the parties entered into a second Amended and Restated Future _Receivables_ Agreement whereby the plaintiff paid an additional $207,000.00 for the purchase of additional future _receivables_ adding to the existing balance of $176,184.16 for a total of $383,184.16. The plaintiff's retention rate under this agreement remained at 45% of the daily deposits into the specified account with Citibank in New York.

Defendant Waryn alleges that his interaction with PROMAC was rather limited after his initial discussions with it, all of which Waryn conducted by telephone, e-mail and fax from Colorado or California. Defendant Waryn did, however, travel to New York at the invitation of PROMAC who arranged a meeting with Metropolitan Equity Partners, a private equity group in Manhattan to discuss other ways in which YTR might raise capital

(see ¶ 20 of Waryn's affidavit [*5] in support).

In January of 2012, Waryn became alarmed at what he perceived to be fraudulent and other actionable conduct on the part of defendant Freeman and others with respect to security sales to dummy shareholder accounts and other acts aimed at syphoning monies from YTR. After conveying his [**3] concerns to defendant Freeman, Waryn and other executives resigned from YTR and informed authorities of the purportedly wrongful conduct. YTR allegedly collapsed shortly after the resignations.

In June of 2012, the plaintiff commenced this action to recover damages by reason of the defendants' failures to repay the monies due under the terms of the last purchase agreement. In its amended complaint, served shortly after defendant Waryn's service of his first motion to dismiss, the plaintiff added a second breach of contract claim and a tort claim sounding in fraudulent inducement against the defendants.

By the instant motion (#002), defendant Waryn seeks dismissal of the plaintiff's amended complaint on several grounds, including: 1) lack of personal jurisdiction; 2) _usury_; 3) failure to state claims for breach of contract due to the absence of an enforceable contract and/or payment obligation [*6] on the part of defendant Waryn; and 4) failure to state cognizable claims for fraud. For the reasons stated below, the motion is denied.

The legal standard to be applied in evaluating a motion to dismiss pursuant to _CPLR 3211(a)(7)_ is whether "the pleading states a cause of action, not whether the proponent of the pleading has a cause of action" (_Marist College v Chazen Envtl. Servs., Inc._, 84 AD3d 1181, 923 NYS2d 695 [2d Dept 2011], quoting _Sokol v Leader, 74 AD3d 1180, 1180-1181, 904 NYS2d 153 [2d Dept 2010]_). On such a motion to dismiss, the court must accept the facts alleged in the pleading as true, accord the plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory (see _Goshen v Mutual Life Ins. Co. of N.Y._, 98 NY2d at 314, 326, 774 N.E.2d 1190, 746 NYS2d 858 [2002]; _Leon v Martinez, 84 NY2d 83, 87, 638 N.E.2d 511, 614 NYS2d 972 [1994]_). Where a party offers evidentiary proof on a motion pursuant to _CPLR 3211(a)(7)_, and such proof is considered but the motion has not been converted to one for summary judgment, "the criterion is whether the proponent of the pleading has a cause of action, not whether he [or she] has stated one, and, unless it has been shown that a material fact as claimed

2012 N.Y. Misc. LEXIS 6757, *6; 2012 NY Slip Op 33785(U), **3

by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it ... dismissal should not eventuate" (*Guggenheimer v Ginzburg, 43 NY2d 268, 275, 372 N.E.2d 17, 401 NYS2d 182 [1997]*; see *Bua v Purcell & Ingrao, P.C., 99 AD3d 843, 952 NYS2d 592 [2d Dept 2012]*; *Jannetti v Whelan, 97 AD3d 797, 949 NYS2d 129 [2d Dept 2012]*); *Bokhour v GTI Retail Holdings, Inc., 94 AD3d 682, 941 NYS2d 675 [2d Dept 2012]*). Upon a court's consideration [*7] of evidentiary material, a motion to dismiss pursuant to *CPLR 3211(a)(7)* should be granted only when: (1) it has been shown that a material fact alleged in the complaint is not a fact at all; and (2) there is no significant dispute regarding it (see *Cucco v Chabau Café Corp., 99 AD3d 965, 952 NYS2d 463 [2d Dept 2012]*; *Norment v Interfaith Ctr. of New York, 98 AD3d 955, 951 NYS2d 531 [2d Dept 2012]*; *Basile v Wiggs, 98 AD3d 640, 950 NYS2d 148 [2d Dept 2012]*).

The court is permitted to consider evidentiary material submitted by a moving defendant, and where it does so, the criterion becomes whether the plaintiff has a cause of action, not whether he has stated one (see *Guggenheimer v Ginzburg, 43 NY2d 268, 372 N.E.2d 17, 401 N.Y.S.2d 182, supra*). However, the burden never shifts to the nonmoving party to rebut a *defense* asserted by the moving party (see *Quiroz v Zottola, 96 AD3d 1035, 948 NYS2d 77 [2d Dept 2012]*; *Sokol v Leader, 74 AD3d 1180, 904 N.Y.S.2d 153, supra*). "Thus, a plaintiff 'will not be penalized because he [or she] has not made an evidentiary showing in support of his [or her] complaint'" (*id. at 1181, 904 NYS2d 153*, quoting *Rovello v Orofino Realty Co., 40 NY2d 633, 635, 357 N.E.2d 970, 389 NYS2d 314 [1976]*). Affidavits submitted by a defendant "will almost never warrant dismissal [**4] under *CPLR 3211(a)(1)* unless they establish conclusively that the plaintiff has no cause of action" (*Sokol v Leader, 74 AD3d 1180, 904 N.Y.S.2d 153, supra*, quoting *Lawrence v Graubard Miller, 11 NY3d 588, 901 N.E.2d 1268, 873 NYS2d 517 [2008]*).

Defendant Waryn's claims of legal insufficiency with respect to the plaintiff's FIRST cause of action sounding in breach of Waryn's guaranty of corporate defendant's performance of covenants under the terms [*8] of the purchase agreement are rejected as unmeritorious. A claim of breach of a guaranty of performance gives rise to, among other things, a claim for damages by reason of the failure to perform on the part of the obligor or its guarantor (see *Bank of Tokyo-Mitsubishi v Kvaerner a.s., 243 AD2d 1, 671 NYS2d 905 [Pt Dept 1998]*). Waryn's claim that the plaintiff may not recover money damages because there was no guaranty of payment

under the terms of the written guaranty is thus unavailing. Likewise unavailing are Waryn's claims that the plaintiff's THIRD cause of action which sounds in breach of certain of the specific obligations imposed upon the corporate defendant under Paragraph II of the purchase agreement and upon Waryn under his guaranty. None of the defendant's submissions included proof that the factual averments upon which the THIRD cause of action are based are not facts at all and that there is no dispute with respect thereto (see *Cucco v Chabau Café Corp., 99 AD3d 965, supra*; *Bokhour v GTI Retail Holdings, Inc., 94 AD3d 682, 941 N.Y.S.2d 675, supra*).

Equally lacking in merit are Waryn's claims that the plaintiff's SECOND cause of action sounding in fraud in the inducement is legally insufficient. "The elements of a cause of action sounding in fraud are a [*9] material misrepresentation of an existing fact, made with knowledge of the falsity, an intent to induce reliance thereon, justifiable reliance upon the misrepresentation, and damages" (*Introna v Huntington Learning Ctrs., Inc., 78 AD3d 896, 898, 911 NYS2d 442 [2d Dept 2010]*). Corporate officers and directors may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally (see *High Tides, LLC v DeMichele, 88 AD3d 954, 931 NYS2d 377 [2d Dept 2011]*). The plaintiff alleges that Waryn fraudulently represented that he maintained a New York residence address and as proof thereof produced a New York drivers' license bearing such an address. Such production allegedly served as an inducement for the plaintiff's execution of the purchase agreement as guaranteed by Waryn which included terms by which any false representation or warranty would constitute a fraud against the plaintiff. Waryn now denies that he gave PROMAC agents the New York license that reflected a New York residence address and denies that he otherwise represented that such address was current. However, these denials do not establish that the allegations of fact advanced in the SECOND cause of action of action are not facts at all and that there is no dispute with respect thereto (see *Cucco v Chabau Café Corp., 99 AD3d 965, supra* [*10] ; *Bokhour v GTI Retail Holdings, Inc., 94 AD3d 682, 941 N.Y.S.2d 675, supra*).

Waryn additionally contends that the plaintiff's fraud claim is legally insufficient since the element of justifiable reliance is missing. In support of this contention, Waryn points to portions of the record evidencing the plaintiff's knowledge that Waryn was a residing in Colorado when the first purchase agreement

2012 N.Y. Misc. LEXIS 6757, *10; 2012 NY Slip Op 33785(U), **4

was negotiated. Such evidence includes proof of the plaintiff's receipt of documents which reflected Waryn's residence address in Colorado. However, this claim is unavailing since a person may have multiple residences. Waryn thus failed to establish that a factual averment upon which the SECOND cause of action of action rest is not a fact at all and that there is no dispute with respect thereto (see *Cucco v Chabau Café Corp.*, *99 AD3d 965, supra*; *Bokhour v GTI Retail Holdings, Inc.*, *94 AD3d 682, 941 N.Y.S.2d 675, supra*).

[**5] The moving defendant's claims that all of the plaintiff's claims against him are subject to dismissal because his signature on the September 29, 2011 purchase agreement was not affixed thereto by him but instead, was the product of a forgery is also unavailing. Forgery is a legal defense which, like other fraud based claims, must be established by clear and convincing [*11] proof (see *Simcuski v Saeli*, *44 NY2d 442, 377 N.E.2d 713, 406 NYS2d 259 [1978]*). Such a defense is more properly the subject of a *CPLR 3211(a)(1)* motion rather than a 3211(a)(7) motion, since under *3211(a)(7)*, the burden never shifts to the nonmoving party to rebut a *defense* advanced by the moving party seeking dismissal (see *Quiroz v Zottola, 96 AD3d 1035, 948 N.Y.S.2d 77, supra*; *Sokol v Leader, 74 AD3d at 1181, supra*). Waryn's conclusory claims that he did not sign the agreement failed to establish that the allegations of fact which underlie the plaintiff's pleaded claims for relief are not facts at all and that there is no dispute with regard thereto (see *JPMorgan Chase Bank, N.A. v. Bauer, 92 AD3d 641, 938 NYS2d 190 [2d Dept 2012]*; *North Fork Bank Corp. v Graphic Forms Assoc., 36 AD3d 676, 828 NYS2d 194 [2d Dept 2007]*; *JPMorgan Chase Bank v Gamut-Mitchell, Inc., 27 AD3d 622, 811 NYS2d 777 [2d Dept 2006]*; Waryn's further claims that his lack of an ownership interest in the corporate defendant at the time of the execution of the contract vitiates any personal liability on his part since only "Owners" are guarantors are similarly lacking in merit and insufficient to warrant dismissal of the plaintiff's complaint (see *211-54 Realty Corp. v Schneider, 77 A.D3d 915, 910 NYS2d 108 [2d Dept 2010]*).

Defendant Waryn's *usury* defense is similarly unavailing. Like his forgery defense, the defense of *usury* is more properly asserted on a motion pursuant to *CPLR 3211(a)(1)* to dismiss based upon documentary evidence rather than on a motion to dismiss for legal insufficiency under *CPLR 3211(a)(7)* due to the [*12] differing legal standards applicable in determining such motions. For example, a motion to

dismiss a complaint pursuant to *CPLR 3211(a)(1)* may be granted only if the documentary evidence that forms the basis of the defense resolves all factual issues as a matter of law and conclusively disposes of the plaintiff's claim (see *AG Capital Funding Partners, L.P. v State St. Bank and Trust Co., 5 NY3d 582, 590-591, 842 N.E.2d 471, 808 NYS2d 573 [2005]*; *Bua v Purcell & Ingrao, P.C. 99 AD3d 843, 952 NYS2d 592 [2d Dept 2012]*; *Fontanetta v Doe, 73 AD3d 78, 898 NYS2d 569, [2d Dept 2010]*). In contrast, evidentiary submissions considered by the court on a motion to dismiss pursuant to *CPLR 3211(a)(7)* will warrant dismissal of the complaint only when: (1) it has been shown that a material fact alleged in the complaint is not a fact at all; and (2) there is no significant dispute regarding it (see *Cucco v Chabau Café Corp., 99 AD3d 965, supra*; *Norment v Interfaith Ctr. of New York, 98 AD3d 955, 951 N.Y.S.2d 531, supra*). In light, however, of the parties' advancement of contentions and argument regarding whether the subject purchase agreement is a *loan* that is *usurious* and thus unenforceable upon application of in Waryn's criminal *usury* defense[1], the court shall consider them under *CPLR 3211(a)(1)* and *(a)(7)*.

[**6] *Section 190.40 of New York's Penal Law* prohibits persons from knowingly charging interest on a note or *loan* at a rate which exceeds 25% per annum. The defense afforded by this statute imposes a heavy burden on the party raising the defense to establish that the lender knowingly charged, took or received annual interest exceeding 25% on a *loan* or forbearance (see *Ujeta v Euro-Quest Corp., 29 AD3d 895, 814 NYS2d 551 [2d Dept 2006]*). The rudimentary element of *usury* is the existence of a *loan* or forbearance of money and where there is no *loan* there can be no *usury* (see *Feinberg v Old Vestal Rd. Assoc., Inc., 157 AD2d 1002, 550 NYS2d 482 [3d Dept 1990]*). In determining whether a transaction is *usurious*, the law looks not to its form, but its substance, or real character (see *Min Capital Corp. Retirement Trust v Pavlin, 88 AD3d 666, 930 NYS2d 475 [2d Dept 201]*); *O'Donovan v*

_____

[1] Neither corporations nor limited liability companies may interpose a defense of civil *usury* (see *GOL § 5-521[1]*; *LLC Law § 1104*; *Arbuzova v Skalet, 92 AD3d 816, 938 NYS2d 811 [2d Dept 2012]*). "An individual guarantor of a corporate obligation is also precluded from asserting such a defense... However, [*13] the prohibition against asserting such a defense does not apply to a defense of criminal *usury* where interest in excess of 25% per annum is knowingly charged.." (*Tower Funding, Ltd. v David Berry Realty, Inc., 302 AD2d 513, 755 NYS2d 413 [2d Dept 2003]*).

2012 N.Y. Misc. LEXIS 6757, *13; 2012 NY Slip Op 33785(U), **6

*Galinski*, 62 AD3d at 769, 878 NYS2d 443 [2d Dept 2009]).

Unless a principal sum advanced is repayable absolutely, the transaction is not a *loan* (see *Rubenstein v Small*, 273 AD 102, 75 NYS2d 483 [1st Dept 1947]; *Lynx Strategies, LLC v Ferreira*, 28 Misc.3d 1205[A], 957 N.Y.S.2d 636, 2010 NY Slip Op 51159[U], 2010 WL 2674144 [Sup Ct New York Cty. 2010]; *Clever Ideas, Inc. v 999 Rest. Corp.*, 2007 N.Y. Misc. LEXIS 9248, 2007 WL 3234747 [Sup. Ct. New York Cty. 2007]; *Zoo Holdings, LLC v Clinton*, 11 Misc. 3d 1051[A], 814 N.Y.S.2d 893, 2006 NY Slip Op 50167[U], 2006 WL 297730 [Sup. Ct. New York Cty. 2006]; *Transmedia Rest. Co., Inc. v 33 E. 61st St. Rest. Corp.*, 184 Misc.2d 706, 710 NYS2d 756, 760 [Sup. Ct. New York Cty. 2000]; *O'Farrell v Martin*, 161 Misc. 353, 292 NYS 581, 583-84 [New York City Ct. 1936]). Where payment or enforcement rests upon a contingency, the agreement is valid even though it provides for a return in excess of the legal rate of interest (see [*14] *Kelly, Grossman & Flanagan, LLP v Quick Cash, Inc.*, 35 Misc3d 1205[A], 950 NYS2d 723, 2012 NY Slip Op 50560[U] [Sup. Ct. Suffolk Cty. 2012]; *First Funds, LLC v Yoshi Trading Co., LLC*, [Sup Ct. New York Cty. Index No. 650030/2011; Edmead, J., 9/28/11]).

Upon review of the record adduced on this motion, the court finds that Waryn failed to establish that the subject agreement to purchase credit card *receivables* was a *loan* and not an agreement to purchase future *receivables* for a lump sum discounted purchase price payable in advance by the plaintiff in exchange for a contingent return. Waryn thus failed to establish his *usury* defense as a matter of law and/or that the plaintiff has no cognizable claim for breach of the purchase agreement and Waryn's written guarantee of performance. Dismissal of the breach of contract claims set forth in the plaintiff's complaint pursuant to either *CPLR 3211(a)(1)* or *(a)(7)* is, therefore, denied.

The moving defendant's alternate ground for dismissal rests upon the claim that he is not amenable to suit here in New York since he engaged in no acts which would subject him to the jurisdiction of this court under traditional jurisdictional concepts or under New York's long arm statute which is codified in *CPLR 302*. For the reasons stated, the court finds a sufficient basis [*15] for the exercise of jurisdiction over the defendant pursuant to *CPLR 302(a)*.

Under *CPLR 302(a)(1)*, "a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state" (*id.*). "*CPLR 302(a)* is a 'single act statute [and] ... proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted'" (*Daniel B. Katz & Assoc. Corp. v Midland*, 90 AD3d 977, 937 NYS2d 236 [2d Dept 2011]; quoting *Kimco Exch. Place Corp. v Thomas Benz, Inc.*, 34 AD3d 433, 434, 824 NYS2d 353, quoting *Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d 65, 71, 850 N.E.2d 1140, 818 NYS2d 164 [2006], [**7] cert. denied 549 U.S. 1095, 127 S. Ct. 832, 166 L. Ed. 2d 665 [2006]). "Purposeful activities are those with which a defendant, through volitional acts, 'avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'" (*Fischbarg v Doucet*, 9 NY3d 375, 380, 880 N.E.2d 22, 849 NYS2d 501 [2007]; quoting *McKee Elec. Co. v Rauland—Borg Corp.*, 20 N.Y.2d 377, 382, 229 N.E.2d 604, 283 NYS2d 34 [1967]). Thus, a defendant need not be physically present in New York to transact business there within the meaning of the first clause of *section 302(a)(1)* (see *Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d 65, supra).

Here, there is [*16] sufficient evidence in the record to conclude that defendant Waryn's activities in negotiating the several purchase agreements on behalf of YTD and Waryn's execution of the personal guaranty of performance were both purposeful and substantially related to the claims asserted herein by the plaintiff in its amended complaint. Moreover, Waryn may fairly be considered to have availed himself of the benefits and protections of New York law when he purposely submitted the *loan* application to PROMAX in New York on behalf of YTR, thereby establishing sufficient minimum contacts with New York to justify personal jurisdiction even in the absence of a continuing relationship within the state (see *Vaughan Co. v Global Bio-Fuels Tech., LLC*, 1:12-CV-1292, NYLJ 1202578598630, at *1 [NDNY, November 15, 2012] citing *Chloe v Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 [C.A.2d N.Y., 2010]). Moreover, because Waryn's performance guarantee included YTR's performance of its obligation to deposit daily credit card *receivables* into a specified bank account in the state of New York, Waryn's conduct may fairly be characterized as falling within the penumbra of the "contracts

2012 N.Y. Misc. LEXIS 6757, *16; 2012 NY Slip Op 33785(U), **7

anywhere to supply good or services in the state"
provisions of _CPLR 302(a)(1)_ (see **_Summit Constr.
Servs. Group, Inc. v ACT Abatement, LLC, 34 Misc3d
823, 935 NYS2d 499 [Sup. Ct Westchester Cty.
2011]_**. [*17] Waryn's demand for dismissal of the
complaint pursuant to _CPLR 3211(a)(8)_ due to a
purported lack of personal jurisdiction over him is thus
denied.

In view of the foregoing, the instant motion (#002) by
defendant Waryn for dismissal of the plaintiff's amended
complaint is denied. Counsel are directed to appear on
February 1, 2013 for the preliminary conference
scheduled above, by which date, answers to the
amended complaint are expected to have been served
by the defendants.

DATED: 11/28/12

/s/ Thomas F. Whelan

THOMAS F. WHELAN, J.S.C.

___

**End of Document**



Cited
As of: May 10, 2018 7:15 PM Z

## *MERCHANTS ADVANCE, LLC, Plaintiff, -against- TERA K, LLC T/A TRIBECA FRANK CARABETTA, Defendants.*

Supreme Court of New York, New York County

December 16, 2008, Decided; December 19, 2008, Entered

No Number in Original

**Reporter**

2008 N.Y. Misc. LEXIS 10889 *

MERCHANTS ADVANCE, LLC, Plaintiff, -against- TERA K, LLC T/A TRIBECA FRANK CARABETTA, Defendants. INDEX NO.: 004214/2008

**Notice:** THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING RELEASE OF THE FINAL PUBLISHED VERSION.
THIS OPINION IS UNCORRECTED AND SUBJECT TO REVISION BEFORE PUBLICATION IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

amend, summary judgment, card

## Case Summary

### Overview

HOLDINGS: [1]-The first party to an agreement was entitled to summary judgment because the transaction at issue was not *usurious* where the agreement lacked the necessary elements of a *loan* transaction, the advance contemplated by the agreement would only assuredly be repaid if the second party defaulted, and the parties themselves agreed that the first party paid a purchase price for future credit card *receivables*.

### Outcome

Motion to amend denied, motion for summary judgment granted, and judgment entered.

## LexisNexis® Headnotes

Civil Procedure > ... > Summary

Judgment > Supporting Materials > Affidavits

Civil Procedure > ... > Summary
Judgment > Burdens of Proof > Movant Persuasion & Proof

Civil Procedure > ... > Summary
Judgment > Burdens of Proof > Nonmovant Persuasion & Proof

***HN1***[ ] **Supporting Materials, Affidavits**

Summary judgment permits a party to show, by affidavit or other evidence, that there is no material issue of fact to be tried, and that judgment may be directed as a matter of law. Where movant sustains its prima facie burden entitling it to judgment as a matter of law, the burden shifts to defendants to show the existence of a viable issue.

Civil Procedure > ... > Summary
Judgment > Burdens of Proof > Movant Persuasion & Proof

Civil Procedure > ... > Summary
Judgment > Burdens of Proof > Nonmovant Persuasion & Proof

***HN2***[ ] **Burdens of Proof, Movant Persuasion & Proof**

In order to raise issues of fact sufficient to defeat a motion for summary judgment where the movant has presented prima facie evidence in support of its entitlement to such relief, it is incumbent upon the party opposing summary judgment to raise triable issues of fact based upon more than the mere conclusory or unsupported assertions.

2008 N.Y. Misc. LEXIS 10889, *10889

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

### HN3[↧] Amendment of Pleadings, Leave of Court

Under *CPLR 3025(b)*, a party may amend a pleading at any time by leave of court. Leave to amend pleadings shall be freely given upon just terms.

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Governments > Legislation > Interpretation

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

### HN4[↧] Judges, Discretionary Powers

*CPLR 3025(b)* should be liberally construed to permit pleadings to be amended so as to ensure full litigation of a controversy. However, the decision to grant or deny the motion rests in the sound discretion of the court.

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

### HN5[↧] Amendment of Pleadings, Leave of Court

A court has no obligation to permit an amendment either where it lacks merit or where a substantial question exists as to its sufficiency.

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

Evidence > Burdens of Proof > Allocation

### HN6[↧] Amendment of Pleadings, Leave of Court

Leave to amend pleadings should be denied where it results in prejudice or surprise to the non-moving party. The non-moving party has the burden of showing any such prejudice or surprise from the proposed amendments.

Contracts Law > Defenses > *Usury*

### HN7[↧] Defenses, Usury

A primary indicia of *usury* is repayment of the principal sum advanced absolutely.

**Judges:** [*1] PRESENT: HON. IRA B. WARSHAWSKY, J.S.C.

**Opinion by:** IRA B. WARSHAWSKY

## Opinion

This motion by plaintiff for an order pursuant to *CPLR 3212* granting summary judgment against defendant in the principal amount of $115,145.07 with interest from December 10, 2007, plus attorney fees, and the cross-motion by defendant for leave to amend the answer are determined as follows.

Plaintiff commenced this action to recover the outstanding balance due on a "Merchat Cash Advance" Purchase and Sale Agreement (the Agreement). On November 7, 2007, the pares entered into the Agreement wherein plaintiff agreed to pay $100,000.00 and defendant agreed to exchange $136,000.00 worth of future credit card *receivables*. The sum of $136,000.00 was to be repaid as an 18 percentage point allocation of each future credit card receivable until paid in full. Defendant's performance of the Agreement was guaranteed by defendant Frank Carabetta.

The mechanism for accomplishing this payout was by use of a specific processor approved by plaintiff, only. See Section 4 of the Agreement. However, plaintiff alleges that defendant on December 10, 2007 contracted with another processor rather than the one they agreed to be used exclusively for credit card transactions, [*2] or debits, and is therefore in breach of contract. Plaintiff is accordingly unable to recover its contractual percentage on an ongoing basis, and a balance of $115,145.07 is outstanding.

It is well established that *HN1*[↑] "[s]ummary judgment permits a par to show, by affidavit or other evidence, that there is no material issue of fact to be tried, and that judgment may be directed as a matter of law.... *Brill v City of New York, 2 N.Y.3d 648, 651, 814 N.E.2d 431, 781 N.Y.S.2d 261 (2004)*. Where movant sustains its prima facie burden entitling it to judgment as a matter of law, see *Zuckerman v City of New York, 49 N.Y.2d 557, 562, 404 N.E.2d 718, 427 N.Y.S.2d 595*, the burden shifts to defendants to show the existence of a viable

issue as to whether they are in breach of the Agreement to repay the sum of $136,000.000, by using plaintiff's processor on future credit card transactions.

*HN2*[↑] In order to raise issues of fact sufficient to defeat a motion for summary judgment where the movant has presented prima facie evidence in support of its entitlement to such relief, it is incumbent upon a par opposing summary judgment to raise triable issues of fact based upon more the mere conclusory or unsupported assertions. See *Sun Yau Ko v Lincoln Savings Bank, 99 A.D.2d 943, 473 N.Y.S.2d 397, aff'd, 62 N. Y.2d 938, 468 N.E.2d 51, 479 N.Y.S.2d 213 (1984)* (citing to *Zuckerman v City of New York, 49 N.Y.2d 557, 404 N.E.2d 718, 427 N.Y.S.2d 595 (1980)*).

Although defendants' [*3] answer consists of a general denial, in opposition to the motion defendants seek leave to assert an amended answer asserting *usury* as an affirmative defense. Defendants argue that they are exempt from the prohibition against a corporation interposing the defense of criminal *usury* pursuant to G.O.L. 5-521.1. They argue the defense as described in *section 190.40 of the Penal Law*, see G.O.L.5-521.3, where the exemption applies to a *loan* which violates the *usury* laws of this State. Where no rate of interest exceeding twenty-five per centum per anum is allowed by statute, plaintiff gained $36,000 on the $100,000 payment to defendants.

Finally, defendants submit that the proper remedy in the event that plaintiff is awarded summary judgment is specific performance in lieu of damages.

*HN3*[↑] Under *3025(b) of the New York Civil Practice Law and Rules* ("CPLR"), a party may amend a pleading at any time by leave of court. Leave to amend pleadings shall be freely given upon just terms. *McCaskey, Davies and Assoc., Inc. v. N.Y. City Health and Hospitals Corp., 59 N.Y.2d 755, 757, 450 N.E.2d 240, 463 N.Y.S.2d 434 (1983)*. *HN4*[↑] The statutory provision should be liberally construed to permit pleadings to be amended so as to ensure full litigation of a controversy. *Rife v. Union College, 30 A.D.2d 504, 505, 294 N.Y.S.2d 460 (3d Dept. 1968)*. However, the decision to grant or deny the motion rests in the sound discretion of the court. *Cippitelli Bros. Towing and Collision, Inc. v. Rosenfeld, 171 A.D.2d 637, 639, 566 N.Y.S.2d 950 (2d Dept. 1991)*. *HN5*[↑] The court has no obligation to permit an [*4] amendment either where it lacks merit or where a substantial question exists as to its sufficiency. *Berardino v. Ochlan, 2 A.D.3d 556, 770 N.Y.S.2d 75 (2d Dept. 2003); Hauptman v. N.Y. City Health and Hospital*

*Corp., 162 A.D.2d 588, 589, 556 N.Y.S.2d 929 (2d Dept. 1990)*. *HN6*[↑] Leave to amend pleadings should also be denied where it results in prejudice or surprise to the non-moving party. *Fahey v. County of Ontario, 44 N.Y.2d 934, 935, 380 N.E.2d 146, 408 N.Y.S.2d 314 (1978)*. The non-moving party has the burden of showing any such prejudice or surprise from the proposed amendments. *Ozen v. Yilmaz, 181 A.D.2d 666, 667, 580 N.Y.S.2d 468 (2d Dept. 1992)*.

As an initial procedural matter, defendant failed to submit a proposed amended answer with the cross-motion. *Loehner v Simons, 224 A.D.2d 591, 639 N.Y.S.2d 700 (2d Dept. 1996)*.

Addressing the *usury* defense, there is authority that the relationship established in the Agreement is not that of borrower and lender, and therefore is not *usurious*. Advanceme Inc. v. Avitto II, (NY Sup 2006); *Transmedia Restaurant Co. v. 33 E. 61st Street Corp., 184 Misc.2d 706, 710 N.Y.S.2d 756 (NY Sup 2000)*. *HN7*[↑] A primary indicia of *usury* is repayment of the principal sum advanced absolutely. See 72 NY Jur, Interest and *Usury* 85; *Rubenstein v. Small, 273 A.D. 102, 75 N.Y.S.2d 483 (1st Dept. 1947)*. Yet in the underlying agreement in this lawsuit the advance will only assuredly by repaid if the defendant defaults. Moreover, plaintiff surrendered control of repayment. See *Transmedia v. 33 E. 61st Street, at 711* ("except in the case of a default or breach of the ... Agreement, Transmedia bears the risk of not being repaid the advanced funds. The ... Agreement thus does not constitute a *loan* of money and in the absence of a *loan* there can be no *usury*.")

Finally, [*5] it is clear from a review of the record before me that not only does the Agreement lack the necessary elements of a *loan* transaction but also the parties themselves agreed that plaintiff paid a purchase price for future credit card *receivables*. Accordingly, the defendants motion to amend the answer is denied, and, insofar as there is no opposition raising a triable issue of fact, plaintiff's motion for summary judgment is granted. Now, therefore, it is

ORDERED and ADJUDGED that plaintiff have judgment against defendants, Tera K, LLC T/A Tribeca and Fran Carabetta, in the amount of $115,145.07 plus interest from December 10, 2007, together with costs and disbursements as taxed by the Clerk, and the Clerk of the County of Nassau is directed to enter judgment accordingly.

The issue of counsel fees shall be determined upon

2008 N.Y. Misc. LEXIS 10889, *5

future written submissions of the parties.

Dated: December 16, 2008

/s/ Ira B. Warshawsky

J.S.C.

_____

**End of Document**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Lesnick Prince & Pappas LLP, 315 W. Ninth Street, Suite 705, Los Angeles, CA 90015

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 09/06/2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ryan W Beall**    rbeall@lwgfllp.com, vrosales@wgllp.com;kadele@wgllp.com
- **Beth Gaschen**    bgaschen@wgllp.com,
  kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com
- **Jeffrey I Golden**    jgolden@wgllp.com, kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com
- **Matthew A Lesnick**    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **Richard A Marshack (TR)**    pkraus@marshackhays.com, rmarshack@iq7technology.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 09/06/2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Scott C. Clarkson
U.S. Bankruptcy Court
411 W. Fourth St., Suite 5130
Santa Ana, CA 929701

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/06/2019 | Janet A. Mack | /s/Janet A. Mack |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                        **F 9013-3.1.PROOF.SERVICE**